

Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com

Attorneys for the Government of Guam

# IN THE DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br>      Plaintiff,<br><br>vs.<br><br>ALICIA G. LIMTIACO, etc., et al.,<br><br>      Defendants. | Civil Case No. 09-00029<br><br>**DEFENDANT ATTORNEY GENERAL ALICIA G. LIMTIACO'S MOTION TO DISMISS & SUPPORTING MEMORANDUM OF LAW** |

Pursuant to Federal Rules of Civil Procedure 12(b)(6), defendant Alicia G. Limtiaco, sued only in her official capacity as Attorney General for the Territory of Guam, respectfully moves the court that she be dismissed, and further moves the court to dismiss the entirety of plaintiff's demands for declaratory and injunctive relief against all defendants with prejudice.

## Introduction

The facts that follow are derived from the complaint, and are only provisionally accepted as true for the limited purposes of presenting this motion to dismiss.[1] James L. Adkins claims to

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "When there are well-pleaded

be a "prominent and successful Guam businessman" who was wrongfully arrested, detained and incarcerated by Guam Police Department Officers Serafino Artui and D.B. Anciano for taking photographs of an accident scene with his cell phone. (First Amended Complaint ¶¶ 5, 9, 12; hereafter "FAC"). Adkins alleges that on October 4, 2009 he was driving out of his yard in Tamuning down Paseo de Oro in the direction of Carmen Memorial Drive when he saw a green truck crashed into a wall, and that he "took out his cell phone with camera and took pictures of the accident while in his car." (FAC ¶ 12). It is unclear from the complaint, but presumably he was stopped to do so. Adkins then states that as he was "driving away, a police officer told plaintiff to stop"; that the officer told Adkins that he could not take pictures, that Adkins replied "there is nothing wrong with taking pictures"; that after consulting with a second officer, the first officer demanded Adkins turn over his cell phone; that Adkins refused; the first officer demanded the cell phone a second time; Adkins refused again; that when the second officer approached Adkins the scenario was repeated, with Adkins telling the second officer "there's no law against taking pictures"; that when Adkins refused yet again, the "second officer then demanded that plaintiff get out of his car, and plaintiff said, 'the only way I will get out is if I am under arrest' "; that the second officer then obliged Adkins by placing him under arrest. (FAC ¶¶ 13, 14)

Adkins was taken first to the Tumon precinct and then to the Hagåtña police station for booking, his cell phone confiscated, and then released. He asserts a "police sergeant demanded that he delete the pictures from his cell phone [but that he] refused." (FAC ¶¶ 16, 17) The entire episode, from arrest to release, lasted about four hours, from 4:30 p.m. to 8:30 p.m. (FAC ¶ 17)

---

factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, 556 U.S. at ___, 129 S.Ct. at 1950 (emphasis added).

2

Before being released, Adkins was given notice to appear in court on September 29, 2010 on charges of "obstruction of governmental operations," *see* 9 GCA § 55.45,[2] and "failure to comply."[3] (FAC ¶¶ 1, 18 – 20)

## Analysis of the First Amended Complaint

Adkins has sued Guam Police Officers Artui and Anciano; the Guam Police Department ("GPD"); Guam's Chief of Police, Paul Suba; Attorney General of Guam Alicia G. Limtiaco; and the Office of Attorney General, pursuant to 42 U.S.C. § 1983. He seeks declaratory and injunctive relief against all defendants, and monetary damages against all defendants except Attorney General Limtiaco, who is sued in her official capacity only. This motion is concerned solely with Adkins' complaint against the Attorney General and his demands for declaratory and injunctive relief against all defendants, because they are necessarily intertwined.

Invoking his rights under the first, fourth, fifth, and fourteenth amendments to the United States Constitution, Adkins' first cause of action at ¶¶ 21 – 25 of his first amended complaint is generically titled, "First Cause of Action (Violation of Civil Rights Under 42 U.S.C. § 1983) (Against Defendants Suba, GPD, Anciano, Artui)." There is no such cause of action. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating

---

[2] Title 9 GCA § 55.45 provides in its entirety: "Obstructing Governmental Functions; Defined & Punished. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."

[3] Not cited in the complaint, the offense of "failure to comply" is found at 16 GCA § 3503.3(d) ("It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority."). Although plaintiff directly challenges 9 GCA § 55.45 as "the Act," he appears unaware that "the Charge" he is challenging as unconstitutionally vague is also statutorily based.

3

federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, (1979)). Adkins' second cause of action (violation of due process of law) against all defendants asserts that "[t]he Act and the Charge on their face and as applied fail to provide adequate notice as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally protected rights and inviting selective prosecution. They are [Adkins alleges] therefore void for vagueness, as they deprive the plaintiff of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1421b of the Organic Act." Adkins' third cause of action asserts some kind of "free speech" claim, although it is not at all obvious that the "taking of photographs in [one's] car on a public road" (FAC ¶ 30) has ever been deemed "speech" protected by the first amendment. Nevertheless, Adkins asserts the charges he was arrested for are "void for vagueness, as they penalize plaintiff's right of free speech within their scope and application." Adkins' fourth cause of action asserts that the charges on which he was arrested violate the fourth amendment and the Organic Act "in that the operation of the Act and the Charge invade plaintiff's right to privacy by allowing the arrest and incarceration of plaintiff and seizure of plaintiff's property without probable cause or a duly authorized warrant." (FAC ¶ 32).[4]

Adkins' ninth and tenth causes of action are the heart of his official capacity claims against all defendants, including the Attorney General. He demands declaratory relief against all defendants simply because "[a] controversy has arisen between plaintiff and defendants relative

---

[4] Adkins' fifth, sixth, seventh and eighth causes of action at ¶¶ 33 – 56 of his first amended complaint are against Officers Anciano and Artui alone and assert what appear to be local law claims for false arrest and false imprisonment; assault and battery; some theory of statutory negligence under local law; and theft of property and conversion. Those claims are not at issue here because they do not involve the Attorney General nor appear related to Adkins' demands for declaratory and injunctive relief. They are, however, be addressed in a separate motion joined in by all defendants.

4

to their legal rights and duties under the Act and the charge" for which he was arrested, (FAC ¶ 58), and he seeks injunctive relief enjoining all defendants from prosecuting him criminally in the local courts of Guam. Specifically, Adkins claims that "[i]f the Act and the Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration." (FAC ¶ 64) Adkins' eleventh cause action demands punitive damages against Suba, Anciano and Artui, but does not seek relief against the Attorney General.

## Standard of Review

This Court is familiar with the standard of review on motion to dismiss filed pursuant to Rule 12(b)(6), Fed.R.Civ.P.

> A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint.

> "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *See id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

> In short, the complaint must allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). If "plaintiffs [do]

5

not nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Finally, "[f]ederal pleading standards govern in federal court, even as to state claims." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (*citing AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 696 (9th Cir. 1999)).

*United States v. Lucky Dragon Development Co., Ltd.*, Civil Case No. 09-00022, Opinion and Order re: Motion to Dismiss, pp. 6, 7 (D. Guam Dec. 11, 2009) (editorial brackets in original), available at http://www.gud.uscourts.gov/sites/default/files/CV-09-00022-108.pdf.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

\* \* \*

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

6

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (editorial brackets in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

## DISCUSSION

### Adkins' Demands for Injunctive and Declaratory Relief are Barred by the *Younger* Abstention Doctrine

Adkins seeks declaratory and equitable relief to enjoin the defendants from prosecuting him criminally based upon the events of October 4, 2009. He claims that "[a] controversy has arisen between plaintiff and defendants relative to their legal rights and duties under the Act and the charge" for which he was arrested; that "[i]f the Act and the Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration"; and that "[u]nless and until the relief demanded in this complaint is granted, plaintiff has good reason to believe that his civil rights, right of free speech, right to privacy, right to be free of unlawful arrest and seizure, and right to due process of law will continued to be infringed, chilled, threatened, impeded and otherwise interfered with." (FAC ¶¶ 58, 64, 65).

What Adkins evidently did not know as of the time of filing his complaint, indeed what none of the specifically named defendants knew before they were served with a federal complaint and inquired of one another, was that the Prosecution Division of the Attorney General's Office had, on October 5, 2009, two months prior to the filing of the complaint in this case, issued a memorandum declining prosecution. What that actually means is that Adkins'

7

claims for declaratory and injunctive relief were moot two months before his lawsuit was ever filed. Rather than introduce evidence at this juncture,[5] the Attorney General will address the claims as if they were still ripe, taking the complaint as she finds it, and will address the issues of mootness, plaintiff's standing and non-justiciability in the alternative.[6]

> Generally, federal courts will not intervene in a pending criminal proceeding absent extraordinary circumstances where the danger of irreparable harm is both great and immediate. *See Younger v. Harris*, 401 U.S. 37, 45-46 (1971); *see also Fort Belknap Indian Community v. Mazurek*, 43 F.3d 428, 431 (9th Cir.1994), cert. denied, 516 U.S. 806 (1995) (abstention is appropriate if ongoing state judicial proceedings implicate important state interests and offer adequate opportunity to litigate federal constitutional issues); *World Famous Drinking Emporium v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir.1987) (*Younger* abstention doctrine applies when the following three conditions exist: (1) ongoing state judicial proceeding; (2) implication of an important state interest in the proceeding; and (3) an adequate opportunity to raise federal questions in the proceedings).

*Douglas v. McCarthy*, 2009 WL 4395707 (W.D. Wash. 2009).

The *Younger* abstention doctrine applies to claims for both injunctive and declaratory relief. In *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004), the Ninth Circuit Court of Appeals, sitting en banc, addressed the application of *Younger* and its progeny to suits implicating important state interests when the state-criminal-defendant-come-federal-plaintiff has an adequate opportunity to raise his federal questions in an ongoing state or local judicial proceeding.

---

[5] Plaintiff's counsel has since been personally advised, sometime during the latter part of the weekend of December 14, 2009, that the Adkins' criminal case was declined for prosecution by the Attorney General's Office, and invited to dismiss the Attorney General and plaintiff's claims for declaratory and injunctive relief..

[6] Before being asked, the Attorney General advises that while Adkins' cell phone was being kept as evidence in connection with his criminal prosecution before all concerned learned that prosecution had been declined, on the advice of the undersigned counsel, it is now being retained as evidence in this civil lawsuit. The Attorney General will be happy to arrange for its return provided the evidence it contains is secured either pursuant to agreement or court order.

8

> *Younger* itself involved a state criminal prosecution which the federal plaintiff sought to enjoin on the ground that the state's criminal syndicalism law, under which he was charged, was unconstitutional. The Court held that equitable relief was unwarranted because a proceeding was pending in state court when the federal plaintiff sought to enjoin it, this proceeding afforded the claimant an opportunity to raise his constitutional claims, and there was no showing that the state prosecution was brought in bad faith. In reaching this conclusion the Court observed that Congress over the years has manifested an intent to permit state courts to try state cases free of federal interference. It identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our federal system. Courts have long had discretion not to exercise equity jurisdiction when alternatives are available, and narrowly confined ability to do so when the object is a criminal prosecution. In modern times, as *Younger* explains, equitable principles prevent erosion of the role of the jury and duplication of legal proceedings when a single suit would be adequate to protect the rights asserted. Principles of comity, on the other hand, preserve respect for state functions such that the national government protects federal rights and interests in a way that will not "unduly interfere with the legitimate activities of the States." 401 U.S. at 43-45, 91 S.Ct. 746. Of these two, as the Court continues to make clear, comity is the more "vital consideration." Id. at 44, 91 S.Ct. 746; *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*NOPSI*) (noting that *Younger* rested "primarily on the 'even more vital consideration' of comity"); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (noting comity as *Younger*'s second and "even more vital" explanation for its decision); *Juidice v. Vail*, 430 U.S. 327, 334, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (emphasizing that comity is the "more vital consideration").
>
> The Court was soon called upon to decide whether *Younger* extends to a federal plaintiff's request for declaratory relief. The federal plaintiffs in *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), sought a declaration that the state statute under which they were being prosecuted was unconstitutional. The Court held that *Younger* applies to requests for declaratory relief because "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Id.* at 72, 91 S.Ct. 764. The Court stated that this is so for two independent reasons: a declaration could be the basis for an injunction, and even if it were not used for this purpose, "the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.*

*Gilbertson*, 381 F.3d 970-71 (footnotes omitted). The court then said:

> In sum, Supreme Court precedent tells us that comity is the main reason for federal court restraint in the face of ongoing state judicial proceedings, and

9

another is to avoid unwarranted determinations of federal constitutional law. For these reasons, federal courts should almost never enjoin state criminal proceedings; federal courts should also refrain from exercising jurisdiction in actions for declaratory relief because declaratory relief has the same practical impact as injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal court judgment; and federal courts should be governed by the same principles when the state proceeding is civil but in such cases, the proceeding must be pending when the federal action is filed, it must be in the nature of a judicial proceeding that implicates important state interests (akin to those involved in criminal prosecutions), and it must afford the federal plaintiff an adequate opportunity to present his federal constitutional challenges. Finally, an abstention-based stay order, rather than a dismissal, is appropriate when damages are at issue.

*Gilbertson*, 381 F.3d at 975.

The Court of Appeals then announced that the test set forth in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), was to be applied henceforth when determining whether the *Younger* abstention doctrine controls:

> *If* a state-initiated proceeding is ongoing, and *if* it implicates important state interests (as refined by *NOPSI*), and *if* the federal litigant is not barred from litigating federal constitutional issues in that proceeding, *then* a federal court action that would enjoin the proceeding, or have the practical effect of doing so, would interfere in a way that *Younger* disapproves. Therefore, we shall no longer require "direct interference" as a condition, or threshold element, of *Younger* abstention.

*Gilbertson*, 381 F.3d at 978 (emphasis in original). The conclusion is inescapable that if a criminal prosecution were still pending against Adkins, and if the Attorney General had not declined to prosecute two months before the filing of this lawsuit, then the test adopted in *Gilbertson* would have been met. "If *Younger* applies, a court may not retain jurisdiction, but should dismiss the action." *Devaughn v. Sniff*, 2009 WL 3838252 (C.D. Cal. 2009) (citing *Juidice v. Vail*, 430 U.S. 327, 348 (1977); and *Beltran v. State of California*, 871 F.2d 777, 782

10

(9th Cir. 1988)). Adkins' demands for injunctive and declaratory relief, were they not already moot before they were filed, would be barred by *Younger*.

### In the Alternative, Adkins Lacks Standing to Demand Prospective Injunctive and Declaratory Relief Based on Allegations of Past Injury.

Whether considered in terms of mootness, justiciability, or simply standing, Adkins must allege that he has a personal stake in the outcome of each separate claim for relief. He cannot do so. The fact that he may or may not have articulated a claim for damages for past conduct does not mean he is entitled to prospective declaratory and injunctive relief.

> "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment. *See id.* at 185-86; *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

*Mayfield v. United States*, ___ F.3d ___, ___, 2009 WL 4674172 * 4 (9th Cir. 2009). In order to pursue prospective declaratory and injunctive relief, Adkins must allege in more than speculative terms that he faces an imminent threat that he will suffer illegal conduct in the future. Allegations of past injury will not suffice.

> To establish Article III standing, a plaintiff must show inter alia that he faces imminent injury on account of the defendant's conduct. *Defenders of Wildlife*, 504 U.S. at 560. Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. *Id.* at 564. Nor does speculation or "subjective apprehension" about future harm support standing. *Friends of the Earth*, 528 U.S. at 184; *see also Defenders of Wildlife*, 504 U.S. at 560. Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat ... that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111 (1983).

*Mayfield*, ___ F.3d at ___, 2009 WL 4674172 * 5.

11

It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. *Flast v. Cohen*, 392 U.S. 83, 94-101, 88 S.Ct. 1942, 1949-1953, 20 L.Ed.2d 947 (1968); *Jenkins v. McKeithen*, 395 U.S. 411, 421-425, 89 S.Ct. 1843, 1848-1850, 23 L.Ed.2d 404 (1969) (opinion of MARSHALL, J.). Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *See, e.g., Golden v. Zwickler*, 394 U.S. 103, 109-110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75, 89-91, 67 S.Ct. 556, 564-565, 91 L.Ed. 754 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

In *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), we dealt with a case brought by a class of plaintiffs claiming that they had been subjected to discriminatory enforcement of the criminal law. Among other things, a county magistrate and judge were accused of discriminatory conduct in various respects, such as sentencing members of plaintiff's class more harshly than other defendants. The Court of Appeals reversed the dismissal of the suit by the District Court, ruling that if the allegations were proved, an appropriate injunction could be entered.

We reversed for failure of the complaint to allege a case or controversy. 414 U.S., at 493, 94 S.Ct., at 674. Although it was claimed in that case that particular members of the plaintiff class had actually suffered from the alleged unconstitutional practices, we observed that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.*, at 495-496, 94 S.Ct., at 675-676. Past wrongs were evidence bearing on "whether there is a real and immediate threat of repeated injury." *Id.*, at 496, 94 S.Ct., at 676. But the prospect of future injury rested "on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners." *Ibid.* The most that could be said for plaintiffs' standing was "that if [plaintiffs] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed." *Id.*, at 497, 94 S.Ct., at 676. We could not find a case or controversy in those circumstances: the threat to

12

> the plaintiffs was not "sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses...." *Id.*, at 496, 94 S.Ct., at 676. It was to be assumed "that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners." *Id.*, at 497, 94 S.Ct., at 676.

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101-03 (1983) (editorial brackets and ellipsis in original).

The only way Adkins would be entitled to seek prospective declaratory and injunctive relief on his claim of past injury would be for him to allege that he intends to engage in the same conduct that got him arrested in the first place. He cannot. First, the law will not assume for standing purposes that Adkins will refuse to comply with a lawful order of a law enforcement officer in the future; second, there is no reason to believe that either he will encounter and refuse to obey a lawful order from Officers Artui and Anciano, or that there is a department-wide policy in place requiring the arrests of "innocent passers-by" who take photographs of crime or accident scenes. The Supreme Court's discussion in *Lyons* is directly on point to Adkins' claims.

> Another relevant decision for present purposes is *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), a case in which plaintiffs alleged widespread illegal and unconstitutional police conduct aimed at minority citizens and against City residents in general. The Court reiterated the holding in *O'Shea* that past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy. The claim of injury rested upon "what one or a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception" of departmental procedures. 423 U.S., at 372, 96 S.Ct., at 604. This hypothesis was "even more attenuated than those allegations of future injury found insufficient in *O'Shea* to warrant [the] invocation of federal jurisdiction." *Ibid.* The Court also held that plaintiffs' showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of the named defendants, did not provide a basis for equitable relief.
>
> * * *

*Lyons*, 461 U.S. 103-04 (editorial brackets in original; footnote omitted).

13

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. ... [A]ny future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.

*Lyons*, 461 U.S. 105-06 (footnote omitted). "As we have said, however, it is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." *Id.*, 461 U.S. 108.

A plaintiff's usual response to the argument that he lacks standing to seek prospective declaratory relief because the underlying controversy is moot is often to invoke the "capable of repetition yet evading review" exception to mootness. But that exception is limited to class actions, and the argument is unavailing absent a realistic and *imminent threat of future injury* by the same defendants (or all Guam police officers under some official policy of the department that is not alleged in the complaint) involving the same plaintiff class representative, in the same or similar set of circumstances. "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. As we have indicated, Lyons has not made this demonstration." *Lyons*, 461 U.S. 109 (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974));

14

*accord, Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871-72 (9th Cir. 2002) ("We find no indication in Bernhardt's complaint that she will be subjected to the same situation again.").

The fact that Adkins might be able to articulate a claim for damages against individual officers if they violated his clearly established constitutional rights does not entitle him to prospective equitable and declaratory relief absent a reasonable expectation that he will find himself in similar circumstances again. The complaint makes no such suggestion. To paraphrase the Supreme Court, "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, [Adkins] is no more entitled to an injunction than any other citizen of [Guam]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional…A federal court, however, is not the proper forum to press such claims unless the requirements for entry and the prerequisites for injunctive relief are satisfied." *Lyons*, 461 U.S. 111-12 (citations and footnote omitted). Adkins' demands for injunctive and declaratory relief are due to be dismissed with prejudice.

## CONCLUSION

**WHEREFORE**, Alicia G. Limtiaco, Attorney General for the Territory of Guam, respectfully moves the court to be dismissed, and to dismiss the entirety of plaintiff's demands for declaratory and injunctive relief against all defendants with prejudice.

Respectfully submitted this  23  day of December, 2009.

ALICIA G. LIMTIACO, ATTORNEY GENERAL

_____
J. Patrick Mason
Deputy Attorney General
For defendants Limtiaco and
Office of Attorney General

15

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2009, I served a copy of the forgoing on counsel for the plaintiff by hand delivery or first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X, Hagåtña, Guam 96910
Email: acalaw@teleguam.net

J. Patrick Mason
Deputy Attorney General

16