James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509    (671) 472-4036 (fax)
email: james.mitchell@gpd.guam.gov

Attorney for defendants Suba, Artui, Anciano,
and Guam Police Department

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br>　　　　　Plaintiff,<br><br>vs.<br><br>ALICIA G. LIMTIACO, etc., et al.,<br><br>　　　　　Defendants. | Civil Case No. 09-00029<br><br>**DEFENDANT PAUL SUBA'S<br>MOTION TO DISMISS & SUPPORTING<br>MEMORANDUM OF LAW** |

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Paul Suba, sued in his individual and official capacity as Chief of Police for the Territory of Guam, respectfully moves the court for dismissal of all claims for damages against him on the grounds that the complaint fails to state a claim upon which relief from which he is not entitled to qualified immunity.

## Introduction

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "When there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, 556 U.S. at ___, 129 S.Ct. at 1950 (emphasis added). The facts that follow are

allegations described in the complaint, and as such are provisionally accepted as true for the limited purposes of presenting this motion to dismiss.

James L. Adkins claims to be a "prominent and successful Guam businessman" who was wrongfully arrested, detained and incarcerated by Guam Police Department Officers Serafino Artui and D.B. Anciano for taking photographs of an accident scene with his cell phone. (First Amended Complaint ("FAC") ¶¶ 5, 9, 12). Adkins alleges that on October 4, 2009 he was driving out of his yard in Tamuning down Paseo de Oro in the direction of Carmen Memorial Drive when he saw a green truck crashed into a wall, and that he "took out his cell phone with camera and took pictures of the accident while in his car." (FAC ¶ 12). It is unclear from the complaint, but presumably he was stopped to do so. Adkins then states that as he was "driving away, a police officer told plaintiff to stop"; that the officer told Adkins that he could not take pictures, that Adkins replied "there is nothing wrong with taking pictures"; that after consulting with a second officer, the first officer demanded Adkins turn over his cell phone; that Adkins refused; the first officer demanded the cell phone a second time; Adkins refused again; that when the second officer approached Adkins the scenario was repeated, with Adkins telling the second officer "there's no law against taking pictures"; that when Adkins refused yet again, the "second officer then demanded that plaintiff get out of his car, and plaintiff said, '*the only way I will get out is if I am under arrest*' "; and that the second officer then obliged Adkins by placing him under arrest. (FAC ¶¶ 13, 14) (emphasis added).

Adkins was taken first to the Tumon precinct and then to the Hagåtña police station for booking, his cell phone confiscated, and then released. He asserts a "police sergeant demanded that plaintiff delete the pictures from his cell phone [but that he] refused." (FAC ¶¶ 16, 17) The entire episode, from arrest to release, took about four hours, from 4:30 p.m. to 8:30 p.m. (FAC

2

¶ 17) Before being released, Adkins was given notice to appear in court on September 29, 2010 on charges of "obstruction of governmental operations," *see* 9 GCA § 55.45,[1] and "failure to comply."[2] (FAC ¶¶ 1, 18 – 20)

### Analysis of the First Amended Complaint Applied to Chief Suba

Adkins has sued Guam Police Officers Artui and Anciano; the Guam Police Department ("GPD"); Guam's Chief of Police, Paul Suba; Attorney General of Guam Alicia G. Limtiaco; and the Office of Attorney General, pursuant to 42 U.S.C. § 1983. He seeks declaratory and injunctive relief against all defendants, and monetary damages against all defendants except Attorney General Limtiaco.[3] Adkins has sued Chief Suba in his official and individual capacities asserting that Suba "is responsible for the implementation and enforcement of the Act and the Charge, and for training police officers and ensuring that they comply with the law in implementing and enforcing the Act and the Charge." (FAC ¶ 7)

Adkins' second cause of action (violation of due process of law) against all defendants asserts that "[t]he Act and the Charge on their face and as applied fail to provide adequate notice

---

[1] Title 9 GCA § 55.45 provides in its entirety: "Obstructing Governmental Functions; Defined & Punished. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."

[2] Not cited in the complaint, the offense of "failure to comply" is found at 16 GCA § 3503.3(d) ("It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority."). Although plaintiff directly challenges 9 GCA § 55.45 as "the Act," he appears unaware that "the Charge" he is challenging as unconstitutionally vague is also statutorily based.

[3] The Attorney General has filed a motion to dismiss all claims for declaratory and injunctive relief against all defendants, and all defendants have filed a motion to dismiss all claims against the "entity" defendants and all claims against those defendants sued in their official capacities. Those arguments are expressly adopted and incorporated by reference here. *See* Fed.R.Civ.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

3

as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally protected rights and inviting selective prosecution. They are therefore [Adkins contends] void for vagueness, as they deprive the plaintiff of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1421b of the Organic Act." Adkins' third cause of action asserts some kind of "free speech" claim, although it is not at all obvious that the "taking of photographs in [one's] car on a public road" (FAC ¶ 30) has ever been deemed "speech" protected by the first amendment. Nevertheless, Adkins asserts the charges he was arrested for are "void for vagueness, as they penalize plaintiff's right of free speech within their scope and application." Adkins' fourth cause of action asserts his arrest violated the fourth amendment and the Organic Act "in that the operation of the Act and the Charge invade plaintiff's right to privacy by allowing the arrest and incarceration of plaintiff and seizure of plaintiff's property without probable cause or a duly authorized warrant." (FAC ¶ 32). Adkins' eleventh cause action demands punitive damages against Suba, Anciano and Artui. The theory of liability on Adkins' demand for punitive damages against Chief Suba will be the same as that asserted generally in Adkins' first cause of action. The entirety of Adkins' claims for damages against Police Chief Paul Suba are due to be dismissed.[4]

---

[4] Adkins' fifth, sixth, seventh and eighth causes of action at ¶¶ 33 – 56 of his first amended complaint are against Officers Anciano and Artui alone and assert claims for false arrest and false imprisonment; assault and battery; some theory of statutory negligence under local law; and theft of property and conversion. Those claims are not at issue here because they do not involve Chief Suba. In his ninth and tenth causes of action, Adkins demands declaratory and injunctive relief against all defendants claiming that "[i]f the Act and the Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration." (FAC ¶ 64) As stated earlier, those claims are subject to separately filed motions to dismiss and those arguments are expressly adopted and incorporated by reference here. *See again* Fed.R.Civ.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

**Standard of Review**

This motion to dismiss is presented in the context of the defense of qualified immunity, a question ordinarily phrased in terms of whether a particular government official named as a defendant in a civil rights lawsuit has violated a person's clearly established constitutional rights. Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid*. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).
>
> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *modified* by *Pearson v. Callahan*, 555 U.S. ___, ___, 129 S.Ct. 808 (2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. ___, 129 S.Ct. 815.

Whether a defendant is entitled to qualified immunity depends upon the answers to two questions: (1) whether a plaintiff has, as a matter of pleading, alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time it was allegedly violated. *Saucier*, 533 U.S. at 201. The order in which those questions are decided is within the courts' discretion. *See Pearson*, 555 U.S. ___, 129 S.Ct. at 818 ("[W]e conclude that, while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory"); *Phillips v. Hust*, ___ F.3d ___, 2009 WL 4281998 * 2 (9th Cir. 2009) ("Thus, if we see fit, we may now skip the first step of the *Saucier* analysis and proceed directly to the qualified immunity question."). Whichever order the questions are decided, qualified immunity determinations on motions to dismiss will turn on whether the factual allegations in a complaint meet the standard necessary to plead a constitutional violation in the first place.

> [W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense the sufficiency of respondent's pleadings is both "inextricably intertwined with," *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), and "directly implicated by," *Hartman*, *supra*, at 257, n. 5, 126 S.Ct. 1695, the qualified immunity defense.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1946-47 (2009) (quoting *Hartman v. Moore*, 547 U.S. 250, 257 n. 5 (2006)).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), the Supreme Court held that the "no set of facts" standard of review on motion to dismiss first articulated more than half a century ago in *Conley v. Gibson*, 355 U.S. 41 (1957), had "earned its retirement." This court is familiar enough with the standard of review of a motion to dismiss filed pursuant to Rule 12(b)(6), Fed.R.Civ.P., since *Twombly*.

> A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint.

6

> "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *See id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.
>
> In short, the complaint must allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). If "plaintiffs [do] not nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.
>
> Finally, "[f]ederal pleading standards govern in federal court, even as to state claims." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (*citing AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 696 (9th Cir. 1999)).

*United States v. Lucky Dragon Development Co., Ltd.*, Civil Case No. 09-00022, Opinion and Order re: Motion to Dismiss, pp. 6, 7 (D. Guam Dec. 11, 2009) (editorial brackets in original), available at http://www.gud.uscourts.gov/sites/default/files/CV-09-00022-108.pdf.

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-

7

> harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (editorial brackets in original; emphasis added).

The allegations in Adkins' complaint against Chief Suba assert nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Twombly*, 550 U.S. at 555, nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* That is not enough.

## DISCUSSION

The only allegations of consequence against Chief Suba in Adkins' complaint are not statements of fact, but legal conclusions.

> 23. Defendants Suba, GPD, Anciano, Artui, and each of them, knew or should have known that plaintiff was not violating any laws and was not subject to arrest.
>
> 24. Upon information and belief, defendants Suba and GPD, with deliberate indifference to the constitutional rights of persons within their jurisdiction, maintained or permitted on or more of the following official policies or customs:
>
>    A. Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the arrest of individuals and seizure of property;
>
>    B. Failure to provide adequate training and supervision to police officers with respect to the proper procedures to be followed in dealing with individuals who are exercising their right of free speech;
>
>    C. Failure to take adequate steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct;
>
>    D. Ratification of the summary punishment handed out by officers who arrest individuals or seize property under the Act or the Charge without probable or reasonable cause.

(FAC ¶¶ 23, 24) But those are merely recitations of Adkins' legal theory of liability, not allegations that factually and causally connect Chief Suba to Adkins' claims of unconstitutional injury. There is no showing of personal participation by Chief Suba in the events of October 4, 2009, only boilerplate assertions of "failure to train and supervise" Officers Anciano and Artui. In its best light, that is in the nature of a respondeat superior or supervisory liability claim that seeks to hold Chief Suba answerable for Artui's and Anciano's actions.

9

**There is No Respondeat Superior Liability Under 42 U.S.C. § 1983**

Respondeat superior liability does not exist under 42 U.S.C. § 1983. *See Ewing v. City of Stockton*, ___ F.3d ___, ___, 2009 WL 4641736 * 14 (9th Cir. 2009) ("[T]here is no respondeat superior liability under § 1983.") (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.")); and *see Larrison v. Butte County Superior Court*, 2009 WL 4573281 * 2 (E.D. Cal. 2009) ("Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.") (citations omitted).[5]

**The Complaint Fails to Articulate Facts that Support a "Supervisory Liability" Claim Against Chief Suba**

If Adkins is asserting some theory of "supervisory liability" claim against Chief Suba at ¶¶ 22 – 24 of the amended complaint, his allegations fail to satisfy the minimum pleading requirements necessary to state a § 1983 claim. Adkins may have alleged the *elements* of a claim

---

[5] Guam law is consistent with federal law that employers will not be held liable for the intentional torts of their employees on a respondeat superior theory absent personal participation by way of authorization or ratification. *See* 18 GCA § 20310 ("A principal is responsible for no other wrongs committed by his agent than those mentioned in § 20309, unless he has authorized or ratified them, even though they are committed while the agent is engaged in his services."); *and see*, *Fajardo ex rel. Fajardo v. Liberty House Guam*, 2000 Guam 4 ¶ 10 ("Our plain reading of the aforementioned statutes leads to the conclusion that if the agent is liable to the third party because of some negligent conduct committed in the scope of the agent's employment then, by operation of the doctrine of respondeat superior, the principal becomes vicariously liable to the third party. However, if the agent commits an intentional tort, then the doctrine of respondeat superior will not hold the principal vicariously liable to the third party unless the principal had authorized or ratified the conduct.").

of supervisory liability, but he alleges no *facts* that link Chief Suba to the underlying constitutional violations. There is no causal connection between Suba and Adkins, or between Suba and the action of Anciano and Artui, other than the mere fact that he is their superior. "In a § 1983 or a Bivens action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009); *Graham v. County of Santa Clara*, 2009 WL 4723376 * 2 (N.D. Cal. 2009) ("A supervisor may be liable under section 1983 [only] upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (citing *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)); *see again Larrison v. Butte County Superior Court*, 2009 WL 4573281 * 1 ("[Section 1983] requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.") (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.")).[6]

---

[6] *Johnson v. Duffy*, cited in *Larrison*, is instructive. "Section 1983 provides, in pertinent part, that '(e)very person who, under color of any statute of any state . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .' . A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the

11

Adkins' first amended complaint is completely empty of any non-conclusory facts that might tend to even suggest, let alone demonstrate any "personal involvement" or any "causal link between [Suba] and the claimed constitutional violation." *See again Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). All that Adkins presents at ¶¶ 22 – 24 of his amended complaint against Chief Suba is a "formulaic recitation of the elements" of a claim of supervisory liability, nothing but naked assertions devoid of further factual enhancement. Even under *Conley*'s "no set of facts standard," that is not nearly enough to state a claim upon which relief can be granted, and from which Chief Suba is not immune.

## CONCLUSION

**WHEREFORE**, Guam Chief of Police Paul Suba respectfully moves the court for an order of dismissal of all claims against him, for damages or otherwise, with prejudice.

Respectfully submitted this 30th day of December, 2009.

/s/ **James T. Mitchell**
JAMES T. MITCHELL
Attorney for defendants Suba, Artui, Anciano,
and Guam Police Department

---

constitutional injury." *Duffy*, 588 F.2d 743-44 (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). Adkins alleges no facts that would support a claim of supervisory liability under this standard of pleading.

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

| | |
|---|---|
| Anita P. Arriola, Esq., | J. Patrick Mason |
| Arriola, Cowan & Arriola | Deputy Attorney General |
| 259 Martyr Street, Suite 201 | 287 West O'Brien Drive |
| P.O. Box X, | Hagåtña, Guam 96910 |
| Hagåtña, Guam 96910 | pmason@guamattorneygeneral.com |
| Email: acalaw@teleguam.net | |

This 30th day of December, 2009.

                            /s/    **James T. Mitchell**
                            JAMES T. MITCHELL

13

Case 1:09-cv-00029   Document 29   Filed 12/30/2009   Page 13 of 13