James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509    (671) 472-4036 (fax)
email: james.mitchell@gpd.guam.gov
Attorney for defendants Artui and Anciano

# IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| **JAMES L. ADKINS**, | ) | |
| Plaintiff, | ) | Civil Case No. 09-00029 |
| | ) | |
| vs. | ) | |
| | ) | |
| **ALICIA G. LIMTIACO, etc., et al.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### DEFENDANTS SERAFINO ARTUI'S AND D.B. ANCIANO'S
### MOTION TO DISMISS & SUPPORTING MEMORANDUM OF LAW

# TABLE OF AUTHORITITES

Cases

*Adams v. Praytor*, 2004 WL 1490021 (N.D. Tex. 2004) ..............................................13

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..............................................................18

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937 (2009).........................................1, 6, 7

*Asociacion de Periodistas de Puerto Rico v. Mueller*, 2007 WL 5312566
   (D. Puerto Rico 2007)................................................................................................18

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).....................................................16

*Bates v. Arata*, 2008 WL 820578 (N.D. Cal. 2008) ....................................................12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...........................................1, 6, 7

*Burnett v. Bottoms*, 368 F.Supp.2d 1033 (D. Ariz. 2005) ............................................13

*Cavanagh v. Humboldt County*, 1999 WL 96017 (N.D. Cal. 1999) ...........................13

*Chavez v. City of Oakland*, 2009 WL 1537875 (N.D. Cal. 2009)................................17

*Conley v. Gibson*, 355 U.S. 41 (1957)..........................................................................6

*Connell v. Town of Hudson*, 733 F.Supp. 465 (D. N.H. 1990)....................................18

*Dallas v. City of Okolona, Mississippi*, 1999 WL 33537145 (N.D. Miss. 1999)..........16

*Devenpeck v. Alford*, 543 U.S. 146 (2004)........................................................9, 10, 11

*Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003)...................................................18

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003) ..................19

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)...................................................................4

*Hartman v. Moore,* 547 U.S. 250 (2006)....................................................................5, 6

*Hope v. Pelzer*, 536 U.S. 730 (2002).......................................................................18, 19

*Lawyer v. City of Council Bluffs*, 361 F.3d 1099 (8th Cir. 2004)....................12, 13, 16

*M.D. ex rel. Daniels v. Smith*, 504 F.Supp.2d 1238 (M.D. Ala. 2007) ..................11, 12

*Maryland v. Wilson*, 519 U.S. 408 (1997)....................................................................15

*McCabe v. McCauley*, 2008 WL 2980013 (N.D. Iowa 2008).................................12, 13

*Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808 (2009) ..........................................5

*Pennsylvania v. Mimms*, 434 U.S. 106 (1977) ........................................................13, 15

*Phillips v. Hust*, ___ F.3d ___, 2009 WL 4281998 (9th Cir. 2009) ...............................5

*Saucier v. Katz*, 533 U.S. 194 (2001) ...........................................................................5

*Tennen v. Shier*, 1995 WL 398991 (N.D. Ill. 1995)....................................................13

*Terry v. Ohio*, 392 U.S. 1 (1968)..........................................................................14, 15

*U.S. v. White*, 2006 WL 1360165 (D. Kan. 2006).......................................................13

*United States v. Lucky Dragon Development Co., Ltd.*, Civil Case No. 09-00022,
   Opinion and Order re: Motion to Dismiss, (D. Guam Dec. 11, 2009), available at
   http://www.gud.uscourts.gov/sites/default/files/CV-09-00022-108.pdf ....................7

*Ybarra v. City of Miami*, 2003 WL 25564426 (S.D. Fla. 2003)...................................13

*Zemel v. Rusk*, 381 U.S. 1 (1965) ................................................................................17

Guam Statutes

8 GCA § 20.15(a)(1).....................................................................................................19

8 GCA § 20.15(b) .........................................................................................................19

9 GCA § 55.45...............................................................................................2, 3, 12, 16

16 GCA § 3503.3(d) .................................................................................................2, 16

Federal Statutes

18 U.S.C. § 3056 ......................................................................................................................13
42 U.S.C. § 1983 ............................................................................................................3, 10, 16

Rules

Fed.R.Civ.P. 10(c) ....................................................................................................................3, 4
Rule 12(b)(6), Fed.R.Civ.P. .......................................................................................................1, 6

## DEFENDANTS SERAFINO ARTUI'S AND D.B. ANCIANO'S
## MOTION TO DISMISS & SUPPORTING MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 12(b)(6), defendants Serafino Artui and D.B. Anciano, sued in their individual and official capacities as Officers of the Guam Police Department, respectfully move the court for dismissal of all claims for damages against them with prejudice. The complaint fails to state a claim upon which relief against them and from which they are not entitled to qualified immunity under federal law as to plaintiff's federal claims, and statutory immunity as to plaintiff's local law claims.

### Introduction

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "When there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, 556 U.S. at ___, 129 S.Ct. at 1950 (emphasis added). The facts that follow are allegations described in the complaint, and as such are provisionally accepted as true for the limited purposes of presenting this motion to dismiss.

James L. Adkins claims he is a "prominent and successful Guam businessman" who was wrongfully arrested, detained and incarcerated by Guam Police Department Officers Serafino Artui and D.B. Anciano for taking photographs of an accident scene with his cell phone. (First Amended Complaint ("FAC") ¶¶ 5, 9, 12). Adkins alleges that on October 4, 2009, he was driving out of his yard in Tamuning down Paseo de Oro in the direction of Carmen Memorial Drive when he saw a green truck crashed into a wall, and that he "took out his cell phone with camera and took pictures of the accident while in his car." (FAC ¶ 12). It is unclear from the

complaint, but he must have been stopped to do so, because Adkins then states that as he was "driving away, a police officer told plaintiff to stop"; that the officer told Adkins that he could not take pictures, that Adkins said, "there is nothing wrong with taking pictures"; that after consulting with a second officer, the first officer demanded Adkins turn over his cell phone; that Adkins refused; the first officer demanded the cell phone a second time; Adkins refused again; that when the second officer approached Adkins the scenario was repeated, with Adkins telling the second officer "there's no law against taking pictures"; that when Adkins refused yet again, the "second officer then demanded that plaintiff get out of his car, and plaintiff said, '*the only way I will get out is if I am under arrest*' "; and that the second officer then obliged Adkins by placing him under arrest. (FAC ¶¶ 13, 14) (emphasis added).

Adkins was taken first to the Tumon precinct and then to the Hagåtña police station for booking, his cell phone confiscated, and then released. He asserts a "police sergeant demanded that plaintiff delete the pictures from his cell phone [but that he] refused." (FAC ¶¶ 16, 17). The entire episode, from arrest to release, took about four hours, from 4:30 p.m. to 8:30 p.m. (FAC ¶ 17) Before being released, Adkins was given notice to appear in court on September 29, 2010 on charges of "obstruction of governmental operations," *see* 9 GCA § 55.45,[1] and "failure to comply."[2] (FAC ¶¶ 1, 18 – 20).

---

[1] Title 9 GCA § 55.45 provides in its entirety: "Obstructing Governmental Functions; Defined & Punished. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."

[2] Not cited in the complaint, the offense of "failure to comply" is found at 16 GCA § 3503.3(d) ("It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority."). Although plaintiff directly

2

Adkins has sued Guam Police Officers Artui and Anciano; the Guam Police Department; Guam's Chief of Police, Paul Suba; Attorney General of Guam Alicia G. Limtiaco; and the Office of Attorney General, pursuant to 42 U.S.C. § 1983. He seeks declaratory and injunctive relief against all defendants, and monetary damages against all defendants except Attorney General Limtiaco.[3] Adkins has sued Serafino Artui and D.B. Anciano in their individual capacities for damages claiming violations of his rights under the first, fourth, fifth and fourteenth amendments to the Constitution, and analogous provisions of Guam's Organic Act.

Adkins' second cause of action (violation of due process of law) against all defendants asserts that "[t]he Act and the Charge on their face and as applied fail to provide adequate notice as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally protected rights and inviting selective prosecution. They are therefore [Adkins contends] void for vagueness, as they deprive the plaintiff of due process of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 1421b of the Organic Act." Adkins' third cause of action asserts some kind of "free speech" claim, although it is not at all obvious that the "taking of photographs in [one's] car on a public road" (FAC ¶ 30) is a clearly established right protected by the first amendment. Nevertheless, Adkins asserts the charges he was arrested for are "void for vagueness, as they penalize plaintiff's right of free

_____

challenges 9 GCA § 55.45 as "the Act," he appears unaware that "the Charge" he is challenging as unconstitutionally vague is also statutorily based.

[3] The Attorney General has filed a motion to dismiss all claims for declaratory and injunctive relief against all defendants, and all defendants have filed a motion to dismiss all claims against the "entity" defendants and all claims against those defendants sued in their official capacities. Those arguments are expressly adopted and incorporated by reference here. *See* Fed.R.Civ.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

speech within their scope and application." Adkins' fourth cause of action asserts his arrest violated the fourth amendment and the Organic Act "in that the operation of the Act and the Charge invade plaintiff's right to privacy by allowing the arrest and incarceration of plaintiff and seizure of plaintiff's property without probable cause or a duly authorized warrant." (FAC ¶ 32). Adkins' eleventh cause action demands punitive damages against Suba, Anciano and Artui. [4]

**Standard of Review**

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid*. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

---

[4] Adkins' fifth, sixth, seventh and eighth causes of action at ¶¶ 33 – 56 of his first amended complaint are against Officers Anciano and Artui alone and assert claims for false arrest and false imprisonment; assault and battery; some theory of statutory negligence under local law; and theft of property and conversion. To the extent those claims are asserted against Officers Artui and Anciano in their official capacities, they are addressed in a separate motion filed jointly by all defendants on December 23, 2009 to dismiss all claims against any defendant based on local law. Those arguments are expressly adopted by reference here. *See again* Fed.R.Civ.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."). In his ninth and tenth causes of action, Adkins demands declaratory and injunctive relief against all defendants claiming that "[i]f the Act and the Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration." (FAC ¶ 64) As stated earlier, those claims are subject to a separately filed motion to dismiss filed by the Attorney General, and her arguments are expressly adopted by reference here.

4

A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *modified* by *Pearson v. Callahan*, 555 U.S. ___, ___, 129 S.Ct. 808 (2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. ___, 129 S.Ct. 815.

Whether a defendant is entitled to qualified immunity depends upon the answers to two questions: (1) whether a plaintiff has, as a matter of pleading, alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time it was allegedly violated. *Saucier*, 533 U.S. at 201. The order in which those questions are decided is within the courts' discretion. *See Pearson*, 555 U.S. ___, 129 S.Ct. at 818 ("[W]e conclude that, while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory."); *Phillips v. Hust*, ___ F.3d ___, 2009 WL 4281998 * 2 (9th Cir. 2009) ("Thus, if we see fit, we may now skip the first step of the *Saucier* analysis and proceed directly to the qualified immunity question."). Whichever order the questions are decided, qualified immunity determinations on motions to dismiss will turn on whether the factual allegations in a complaint meet the standard necessary to plead a constitutional violation in the first place.

[W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded. In that sense the sufficiency of respondent's pleadings is both "inextricably intertwined with," *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), and "directly implicated by," *Hartman*, *supra*, at 257, n. 5, 126 S.Ct. 1695, the qualified immunity defense.

5

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1946-47 (2009) (quoting *Hartman v. Moore,* 547 U.S. 250, 257 n. 5 (2006)).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), the Supreme Court held that the "no set of facts" standard of review on motion to dismiss first articulated more than half a century ago in *Conley v. Gibson*, 355 U.S. 41 (1957), had "earned its retirement." This court is familiar enough with the standard of review of a motion to dismiss filed pursuant to Rule 12(b)(6), Fed.R.Civ.P., since *Twombly*.

A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint.

"A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *See id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557.

In short, the complaint must allege "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is "plausible on its face" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). If "plaintiffs [do] not nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

6

Finally, "[f]ederal pleading standards govern in federal court, even as to state claims." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1025 (N.D. Cal. 2007) (*citing AlliedSignal, Inc. v. City of Phoenix*, 182 F.3d 692, 696 (9th Cir. 1999)).

*United States v. Lucky Dragon Development Co., Ltd.*, Civil Case No. 09-00022, Opinion and

Order re: Motion to Dismiss, pp. 6, 7 (D. Guam Dec. 11, 2009) (editorial brackets in original),

available at http://www.gud.uscourts.gov/sites/default/files/CV-09-00022-108.pdf.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (editorial brackets in original;

emphasis added).

## DISCUSSION

By the terms of his complaint, Adkins was arrested when either Officer Artui or Anciano,

he is unsure who, "demanded that plaintiff get out of his car, and plaintiff said, '*the only way I

will get out is if I am under arrest.*' " (FAC ¶¶ 13, 14) (emphasis added). But let the reader of

Adkins' complaint scroll back in time to when his story begins: Adkins left home one afternoon

and came upon the scene of an accident, a green truck crashed into a wall. So, he stopped to

7

photograph the accident from his car with his cell phone. (FAC ¶ 12). As he was "driving away, a police officer told plaintiff to stop." In order to be "driving away," he must have been stopped originally in order to take pictures. Thus, the reader of Adkins' complaint knows that he was not merely passing through on his way to wherever he was going, taking photos while rolling by, but that he was stopped at or in very near proximity to the scene of an accident, possibly even a crime – an accident or crime scene still under investigation, the reader knows or may reasonably infer from the complaint, because of the presence of multiple police officers.

Where precisely Adkins was in proximity to the accident the complaint does not say, but the reader of his complaint knows it was close enough for not one but two police officers to walk over to his vehicle from whatever they were doing. And it was there that Adkins engaged two officers of the law –already engaged at the scene of an accident if not crime – in a debate over his "constitutional right" to take photos of that scene. When told by one police officer he was not permitted to take pictures, Adkins proceeded to argue "there is nothing wrong with taking pictures." (FAC ¶ 13). Had Adkins moved along, that might have been the end of it. But that would be speculating, because Adkins intended to argue about it. And at that point, the first officer consulted a second. Notably, the complaint does not say that the first officer proceeded to arrest Adkins, but that he consulted with another officer.[5] Adkins says that after consulting with the second officer, the first officer demanded Adkins turn over his cell phone, but that Adkins refused: "The first officer talked to a second officer *who was nearby* and the first officer

---

[5] Adkins' speculation into the officers' mental processes that "the crime they suspected him of committing was taking photographs with his cell phone camera of a car accident in his neighborhood" (FAC ¶ 1), is belied by the rest of his narrative which describes his arguing with the officers about the legality of taking photographs, and his refusal to get out of his vehicle on command.

8

demanded, 'give me your camera.' " And when "[t]he first officer demanded that plaintiff give him the camera a second time, [Adkins again] refused." (FAC ¶ 13) (emphasis added).

As may reasonably be inferred from an objective reading of Adkins' complaint, a satellite scene had now developed in orbit around the accident with the green truck. Now Adkins was arguing with *two* police officers, that "there's no law against taking pictures." (FAC ¶ 14). By the terms of his own complaint, Adkins was arguing with two police officers about whether he could or could not take photographs of an accident scene while it was being investigated. And when, according to Adkins' complaint, they demanded that he turn over his cell phone, which now contained *evidence* of that accident or crime scene, Adkins refused. And it was then that the "second officer demanded that plaintiff get out of his car." This is Adkins' chronology of the events.

But Adkins knew the law, he says, and rather than comply with an officer of the law and get out of the car, in what he must have believed was an act of civil disobedience, Adkins declared, "*The only way I will get out is if I am under arrest*." So it was that Adkins was arrested. These are the facts from Adkins' complaint. These are his words.

In *Devenpeck v. Alford*, 543 U.S. 146 (2004), Officer Joi Haner of the Washington State Patrol pulled over Jerome Alford's vehicle on suspicion that Alford was impersonating a police officer. Sergeant Gerald Devenpeck, Haner's supervisor, joined Haner at the scene where during the course of questioning Alford, Devenpeck noticed that Alford was tape recording the conversation, which Devenpeck believed to be a violation of Washington's privacy law.

> Sergeant Devenpeck arrived on the scene a short time later. After Haner informed Devenpeck of the basis for his belief that respondent had been impersonating a police officer, Devenpeck approached respondent's vehicle and inquired about the wig-wag headlights. As before, respondent said that the headlights were part of his alarm system and that he did not know how to activate

9

them. Like Haner, Devenpeck was skeptical of respondent's answers. In the course of his questioning, Devenpeck noticed a tape recorder on the passenger seat of respondent's car, with the play and record buttons depressed. He ordered Haner to remove respondent from the car, played the recorded tape, and found that respondent had been recording his conversations with the officers. Devenpeck informed respondent that he was under arrest for a violation of the Washington Privacy Act, Wash. Rev.Code § 9.73.030 (1994). Respondent protested that a State Court-of-Appeals decision, a copy of which he claimed was in his glove compartment, permitted him to record roadside conversations with police officers. Devenpeck returned to his car, reviewed the language of the Privacy Act, and attempted unsuccessfully to reach a prosecutor to confirm that the arrest was lawful. Believing that the text of the Privacy Act confirmed that respondent's recording was unlawful, he directed Officer Haner to take respondent to jail.

A short time later, Devenpeck reached by phone Mark Lindquist, a deputy county prosecutor, to whom he recounted the events leading to respondent's arrest. The two discussed a series of possible criminal offenses, including violation of the Privacy Act, impersonating a police officer, and making a false representation to an officer. Lindquist advised that there was "clearly probable cause," and suggested that respondent also be charged with "obstructing a public servant" "based on the runaround [he] gave [Devenpeck]," Devenpeck rejected this suggestion, explaining that the State Patrol does not, as a matter of policy, "stack charges" against an arrestee.

*Devenpeck*, 543 U.S. at 149-51 (footnote and citations to the record and decision of the court below omitted; editorial brackets in original). The state trial court later dismissed the Privacy Act charges against Alford and Alford sued the officers for violations of his fourth amendment rights pursuant to 42 U.S.C. § 1983. The Supreme Court held that the officer's subjective intent in charging Alford was irrelevant to the purely objective question whether probable cause existed at the time of Alford's arrest.

Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). In this case, the Court of Appeals held that the probable-cause inquiry is further confined to the known facts bearing upon the offense actually invoked at the time of arrest, and that (in addition) the offense supported by these known facts must

10

be "closely related" to the offense that the officer invoked. We find no basis in precedent or reason for this limitation.

*Id.*, 543 U.S. at 152-53 (citation to the decision of the court of appeals omitted). The Court said that the qualified immunity analysis is not determined from a subjective point of view, whether the legal validity of the charges articulated at the time of arrest which may later turn out to be in error, but from an objective point of view whether there was any probable cause for an arrest.

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam). **That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.** As we have repeatedly explained, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren*, *supra*, at 813, 116 S.Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)). "[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." *Whren*, supra, at 814, 116 S.Ct. 1769. "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." *Horton v. California*, 496 U.S. 128, 138, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

*Id.*, 543 U.S. at 153-54 (emphasis in bold added; editorial brackets in original).

> Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.

*Id.*, 543 U.S. at 154-54 (emphasis in original). "In *Devenpeck*, the Court held that the subjective intent for an arrest is irrelevant: Even if the stated basis for the arrest is flawed, the officer is excused if another basis, supported by probable cause, existed to arrest the suspect." *M.D. ex rel. Daniels v. Smith*, 504 F.Supp.2d 1238, 1244 (M.D. Ala. 2007) (distinguishing *Devenpeck* on

11

other grounds). *Accord*, *Bates v. Arata*, 2008 WL 820578 (N.D. Cal. 2008); *see Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1106 (8th Cir. 2004) ("The arrest was lawful, however, if there was probable cause to believe Timothy had violated any applicable statute, even one not contemplated by the officers at the moment of arrest.").[6]

Whether or not Adkins was correct in his lay interpretation of the law that he was constitutionally entitled to take photos of an accident or crime scene ("there's no law against taking pictures"), the inquiry here is whether there was probable cause to arrest him when, in the midst of his verbal exchange with two police officers he refused to comply with a direct command to exit his vehicle, and challenged those officers to arrest him with "*the only way I will get out is if I am under arrest*." Of course there was probable cause. Even under Adkins' version of the facts, any other interpretation of the fourth amendment is an invitation to anarchy.[7]

---

[6] Adkins' claim of ignorance as to the meaning of the charge of obstructing governmental function, *see* 9 GCA § 55.45 ("A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act…"), is nothing but conceit. Adkins must concede that an accident or crime scene that is still being investigated is no place for rubber-necking members of the public to stop and add to their photo album. Surely he will agree that the presence of people who have no reason to be there may by their presence distract investigating officers if not compromise evidence. But by the terms of his own complaint, when told he could not take photographs by the first officer, Adkins made his own legal determination that it was his constitutional prerogative to argue with the officer rather than move on. " 'The purpose of criminalizing conduct that interferes with official police action is to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance.' " *Lawyer v. City of Council Bluffs*, 361 F.3d at 1107 (quoting *State v. Buchanan*, 549 N.W.2d 291, 294 (Iowa 1996)); *accord*, *McCabe v. McCaulay*, 2008 WL 2980013 * 7 (N.D. Iowa 2008). The fact that the Attorney General declined to prosecute either charge of "obstructing governmental functions" or "failure to comply," does not, in the probable cause calculus, mean Adkins was any less of a distraction to the performance of the officers' duties at an accident or crime scene, any more than it suggests Adkins was innocent of violating a lawful order to exit his vehicle before engaging in further debate over his right to take photographs. Even if there were a factual dispute over whether Adkins was obstructing governmental functions, it does not matter, because there was probable cause to arrest him for failure to comply. "Even if the stated basis for the arrest is flawed, the officer is excused if another basis, supported by probable cause, existed to arrest the suspect." *M.D. ex rel. Daniels v. Smith*, 504 F.Supp.2d 1238, 1244 (M.D. Ala. 2007).

[7] There are actually more than a few cases filed in federal court where plaintiffs have sought damages for fourth amendment violations they claim resulted from arbitrary application of local or federal laws criminalizing "refusal" or "failure to comply" and "obstruction of governmental operations." *See, e.g.*, *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1107 (8th Cir. 2004) ("[T]he term "obstruct" is considered broader than "resist," and "includes putting obstacles in the path of officers completing their duties. While the Iowa courts have said that the use of actual or

12

"A law enforcement officer may order the driver out of a vehicle during a lawful traffic stop." *Lawyer v. City of Council Bluffs*, 361 F.3d at 1105 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). There is no clearly established law to suggest on the facts of Adkins' complaint, embroiled in legal debate as he was with two officers of the law over his "right" to stop and take pictures of the scene of an accident during its investigation, that it was unconstitutional to instruct him to step out of the car, particularly inasmuch as he made it plain he was not going to comply unless arrested.

---

constructive force is sufficient to support a violation of § 719.1, we have found no case holding that the use of such force is required to establish a violation.") (citations omitted). Counsel for defendants has unearthed no cases that have ever held that either type of statute, cited in numerous decisions, was void for vagueness under the first and fourteenth amendments as Adkins contends in his complaint. *See, e.g.*, *McCabe v. McCauley*, 2008 WL 2980013 * 6 (N.D. Iowa 2008) ("A reasonable officer in Defendant Macaulay's position would have believed Plaintiffs were knowingly and willfully obstructing, resisting or interfering with a Secret Service officer in the performance of his authorized protective functions.") (citing 18 U.S.C. § 3056); *U.S. v. White*, 2006 WL 1360165 * 11 (D. Kan. 2006) (finding probable cause to find defendant in violation of Kansas "failure to comply" statute). *Compare*, *Burnett v. Bottoms*, 368 F.Supp.2d 1033 (D. Ariz. 2005) (genuine issue of material fact precluded summary judgment on issue of probable cause to arrest plaintiff for violation of Arizona refusal to comply statute); and *Adams v. Praytor*, 2004 WL 1490021 (N.D. Tex. 2004) (construing Texas law) ("Defendants claim that when ordered to step to the other side of the parking lot, Adams refused to move away. Adams disputes this statement. Because there remains a fact issue as to whether Adams refused to comply with Praytor's order, the Court cannot conclude as a matter of law that probable cause existed for his arrest on a charge of Failure to Obey, or that his subsequent detention was lawful."); with *Ybarra v. City of Miami*, 2003 WL 25564426 (S.D. Fla. 2003) (probable cause sufficient to satisfy qualified immunity when undisputed facts demonstrated plaintiff violated Florida statute which makes "unlawful and a misdemeanor of the second degree … for any person to willfully fail or refuse to comply with any lawful order or direction of any law enforcement officer"); *Cavanagh v. Humboldt County*, 1999 WL 96017 ** 5, 6 (N.D. Cal. 1999) ("[L]ike their predecessors who fought so valiantly for civil rights and free speech, plaintiffs must be willing to accept the consequences of their civil disobedience… Under these circumstances, it is inappropriate for them to sue the defendants simply for lawfully reacting to plaintiffs' conduct – which is what the plaintiffs desired in the first place."); and *Tennen v. Shier*, 1995 WL 398991 * 8 (N.D. Ill. 1995) ("A prudent officer would have believed probable cause existed to arrest plaintiff for disobedience to police officers if he reasonably believed plaintiff willfully refused to comply with a lawful order of an officer invested with authority to regulate traffic."). Because Adkins acknowledges if not boasts in his complaint that he would not comply with the order to exit his vehicle unless placed under arrest, there was probable cause to arrest him. That makes his complaint distinguishable from the complaint and proof in cases such as *McCabe v. Macauley*, 551 F.Supp.2d 771 (N.D. Iowa 2007), in which there was a genuine issue of material fact as to whether plaintiffs were complying with law enforcement officers' orders to leave the premises. Here there is no dispute. Adkins' own complaint states he would not exit his vehicle unless placed under arrest.

13

Adkins cannot contend that law enforcement officers are without authority to order him to step out of his vehicle in the circumstances presented. Precedent negating that kind of argument has been "clearly established" for over thirty years.

> We think it too plain for argument that the State's proffered justification– the safety of the officer–is both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry v. Ohio*, supra, 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, *Police Officer Shootings-A Tactical Evaluation*, 54 J.Crim.L.C. & P.S. 93 (1963)." *Adams v. Williams*, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. *United States v. Robinson*, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." *Id*., at 234, n. 5, 94 S.Ct. at 476, n. 5.

> The hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations. Rather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and off onto the shoulder of the road where the inquiry may be pursued with greater safety to both.

> Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis*. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a " 'petty indignity.' " *Terry v. Ohio*, supra, 392 U.S. at 17, 88 S.Ct. at 1877. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

14

*Mimms*, 434 U.S. at 110-11 (quoting *Terry v. Ohio*, 392 U.S. 1 (1968)) (footnote omitted); *accord*, *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (noting the same concern for officer safety and applying the rule in *Mimms* to passengers).

Adkins will likely seek to focus the court's attention on the merits of his constitutional debate with Officers Artui and Anciano. By his reasoning, if he is correct that "there is nothing wrong with taking pictures," then the officers' subsequent commands, resulting in his arrest for "failure to comply," must be unconstitutional. Adkins may argue that his verbal exchange challenging the officers' reasons for telling him to stop taking photos is why he was arrested. But it is Adkins' admitted refusal to get out of the car, not his belief of the state of the law governing photographs at accident scenes, which provide context to the questions of probable cause and qualified immunity he presents.

> In the instant case, however, Dallas was arrested and charged with disobeying a lawful order of a police officer for not returning to his vehicle, not for verbally opposing or criticizing Maher. Although his statements were in the nature of verbal challenges to Maher's request, it was his accompanying inaction that gave rise to the charge against him. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir.1998) ("When a police officer has probable cause to believe that a person is committing a particular offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

> It is well-settled that police officers may constitutionally order drivers and passengers to exit or remain inside a vehicle during a routine traffic stop as a precautionary safety measure. *See Maryland v. Wilson*, 519 U.S. 408, 412, 117 S.Ct. 882, 885-86, 137 L.Ed.2d 41 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106, 109-110, 98 S.Ct. 330, 332-33 (1977); *Ohio v. Robinette*, 519 U.S. 33, 38, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996); *Macias v. Raul A.*, 23 F.3d 94, 98 (5th Cir.1994); *United States v. Ramos*, 42 F.3d 1160, 1163 (8th Cir.1994), cert. denied, 514 U.S. 1134, 115 S.Ct. 2015 (1995). Officer Maher's order was such a request. Dallas admitted that he refused to comply with Maher's request because he did not want to return to the vehicle and agitate his children.

> Notwithstanding Dallas' admission, at the time of the arrest, the facts and circumstances within Maher's knowledge were sufficient to justify a reasonable belief that Dallas had violated Mississippi's failure to obey statute. Dallas has,

15

> therefore, failed to allege a constitutional violation as to the 1998 arrest.
> Accordingly, the court finds that Maher had probable cause to arrest Dallas and
> qualified immunity bars Dallas' § 1983 action against Maher for false arrest.

*Dallas v. City of Okolona, Mississippi*, 1999 WL 33537145 * 6 (N.D. Miss. 1999).

As right as Adkins may have believed himself to be on the question whether he was legally entitled to take photographs of an accident or crime scene and disregard the police, and whether or not he might have been subject to arrest for obstructing governmental functions under 9 GCA § 55.45, he is in error to believe himself immune from arrest under 16 GCA § 3503.3(d) for violating an order to exit his vehicle before engaging in further argument about it with the police. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The arrest was lawful. The officers are immune.

### There is No Clearly Established Constitutional Right to Take Photographs in the Circumstances Presented by the Complaint

"Even if … [a court or the Attorney General] were to conclude later that conduct such as [Adkins'] does not violate the statute, the officers are entitled to qualified immunity. Police officers are not expected to parse code language as though they were participating in a law school seminar…." *Lawyer v. City of Council Bluffs*, 361 F.3d at 1108. Had Adkins been arrested merely for taking photographs while passing by, this might be a different case. Had he complied with the first officer and not argued, it might be different. But that is not what his complaint shows. Contrary to Adkins' insistence in argument with the police at the scene of the green truck's accident, there is no clearly established law, under the first amendment or otherwise, that authorizes members of the general public access to a crime or accident scene simply because it is

16

newsworthy or appeals to their morbid curiosity. "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965).

In *Chavez v. City of Oakland*, 2009 WL 1537875 (N.D. Cal. 2009), a newspaper photographer was arrested for exiting his car on a freeway to take photographs of an accident, after specifically being instructed not to and to move on by police. Chavez alleged "that defendants violated his First Amendment right 'not to be detained or arrested to prevent him from taking photographs of a newsworthy event.' " 2009 WL 1537875 * 3. The court had little difficulty disposing of the argument.

> The press has no First Amendment right to access accident or crime scenes if the general public is excluded. *See Houchins v. KQED*, 438 U.S. 1, 10-11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (holding that the press does not enjoy a constitutional right to access to news sources); *Branzburg v. Hayes*, 408 U.S. 665, 684-85, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) ("Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded."); *see also Los Angeles Free Press Inc. v. City of Los Angeles*, 9 Cal.App.3d 448, 455, 88 Cal.Rptr. 605 (1970) ("Restrictions on the right of access to particular places at particular times are consistent with other reasonable restrictions on liberty based upon the police power, and these restrictions remain valid even though the ability of the press to gather news and express views on a particular subject may be incidentally hampered.").
>
> Even assuming, as plaintiff contends, that the officers arrested plaintiff to prevent him from taking a photograph, he did not have a First Amendment right to take the photograph in the first place in the absence of evidence that the general public is allowed such access to accident sites, and this accident in particular. Plaintiff, however, does not offer any evidence that suggests that the general public had a right to exit their vehicles on the freeway and stand in the freeway to take photographs. His declaration assertion that at the time of his arrest he saw at least one other stopped vehicle with its occupant outside the car is insufficient. There is no evidence in the record as to what that person was doing; perhaps the person was a witness to the accident. Moreover, common sense dictates that members of the general public are not allowed to exit their cars in the middle of the freeway to view an accident scene.

*Chavez*, * 3. "At a minimum, the law was not clearly established that an officer could not arrest someone for exiting his car in the lane of a freeway to take photographs of an accident scene.

17

The law was also not clearly established that an officer could not arrest someone for refusing to comply with an order from the officer when, rather than immediately complying, the person asserts that he has the right to stand in the freeway and take photographs." *Id.*, * 6. Adkins' complaint is no different than Chavez's. If the press has no greater right of access to accident or crime scenes than the general public, there is certainly no clearly established constitutional right protected by the first amendment that authorizes a citizen to argue with police about it.[8]

The Supreme Court has said, "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.' " *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal citations omitted). "In order to find that the law was clearly established ... we need not find a prior case with identical, or even 'materially similar' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful."

---

[8] *Compare, Asociacion de Periodistas de Puerto Rico v. Mueller*, 2007 WL 5312566 * 3 (D. Puerto Rico 2007) (noting cases cited by plaintiffs for the generic proposition that there exists "a general, but qualified, right of the press to gather news" and holding, that "[c]ontrary to Plaintiffs' assertions, these cases do not establish specific rights of the press during the recording of live events from public locations or at an investigatory scene."); *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003) (police officer who arrested freelance cameraman for refusal to comply and move on entitled to qualified immunity); *Connell v. Town of Hudson*, 733 F.Supp. 465, 470 (D. N.H. 1990) ("The undisputed facts demonstrate that Connell followed all instructions reasonably designed to prevent interference with police and emergency activities. Although he may have crossed a police perimeter, that perimeter was not clearly delineated, and, when asked to move, he moved."); *id*. ("It is hard to imagine how Connell could have interfered with police or emergency activities by taking pictures from the second floor of a house that others were using to view the accident."). The only cases in which there was even a hint that a picture-taking plaintiff stated a claim against police officers under the first or fourth amendments is when there was a dispute as to whether the plaintiff had complied with the police officer's directive to move away from an accident or crime scene. Adkins does not allege he was in the process of complying with police. The whole premise of his complaint is that he was constitutionally entitled to argue with them.

18

*Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136-37 (9th Cir. 2003) (citing *Hope*, 536 U.S. at 740). Adkins cannot demonstrate that "preexisting law provided … 'fair warning' " to police that telling him he had no right to take photos and to move on from the scene of an accident, was unlawful.

### Immunity from Local Law Claims

Adkins' fifth, sixth, seventh and eighth causes of action at ¶¶ 33 – 56 of his first amended complaint against Officers Anciano and Artui alone assert claims for false arrest and false imprisonment; assault and battery; some theory of statutory negligence; and theft of property and conversion. Title 8 GCA § 20.15(a)(1) provides "A peace officer may make an arrest in obedience to a warrant, or may, without a warrant, arrest a person … Whenever the officer has reasonable cause to believe that the person to be arrested has committed an offense in the officer's presence." And Title 8 GCA § 20.15(b) provides: "There shall be no civil liability on the part of, and no cause of action shall arise against, a peace officer for false arrest or false imprisonment for an arrest which is lawful under Subsection (a)." As demonstrated above, regardless of whether he was constitutionally entitled to photograph an accident or crime scene in the middle of being investigated, and regardless whether he was legally entitled to engage two officers of the law in debate about it, Adkins *was* lawfully arrested when he refused a lawful command from an officer of the law to exit his vehicle. By the terms of his own complaint, Adkins was in the midst of an argument with not one but two police officers, creating a scene of his own when he was ordered out of his vehicle. His refusal to comply with a lawful order to exit his vehicle made his arrest lawful under local and federal law. Officers Anciano and Artui are immune.

19

## CONCLUSION

**WHEREFORE**, defendants Serafino Artui and D.B. Anciano respectfully move the court for an order of dismissal of all claims for damages against them, with prejudice, on the grounds that the complaint fails to state a claim upon which relief can be granted. As a matter of law, defendants are entitled to qualified immunity from plaintiff's constitutional claims, and statutory immunity as to plaintiff's claims based upon local law.

Respectfully submitted this 30th day of December, 2009.


/s/      James T. Mitchell_____
JAMES T. MITCHELL
 Attorney for defendants Artui and Anciano


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,                     J. Patrick Mason
Arriola, Cowan & Arriola                    Deputy Attorney General
259 Martyr Street, Suite 201                287 West O'Brien Drive
P.O. Box X,                                 Hagåtña, Guam 96910
Hagåtña, Guam 96910                         pmason@guamattorneygeneral.com
Email: acalaw@teleguam.net

This 30th day of December, 2009.


/s/      James T. Mitchell_____
JAMES T. MITCHELL


20