**ANITA P. ARRIOLA, ESQ.**
**JOAQUIN C. ARRIOLA, ESQ.**
**LEEVIN T. CAMACHO, ESQ.**
**ARRIOLA, COWAN & ARRIOLA**
259 MARTYR STREET, SUITE 201
P.O. BOX X, HAGATNA, GUAM 96910
TELEPHONE: (671) 477-9730/33
TELECOPIER: (671) 477-9734

Attorneys for Plaintiff James L. Adkins

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br><br>                Plaintiff,<br><br>     vs.<br><br>ALICIA G. LIMTIACO, ATTORNEY GENERAL OF GUAM; OFFICE OF THE ATTORNEY GENERAL OF GUAM; PAUL SUBA, CHIEF OF GUAM POLICE DEPARTMENT; GUAM POLICE DEPARTMENT; D.B. ANCIANO; SERAFINO ARTUI; AND DOES I THROUGH X,<br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL CASE NO. CV09-00029 |

**PLAINTIFF JAMES L. ADKINS'**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION**
**TO DISMISS FILED BY ATTORNEY GENERAL ALICIA G. LIMTIACO**

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

## INTRODUCTION

Plaintiff James L. Adkins ("Mr. Adkins") asserts two causes of action against defendant Attorney General Alicia G. Limtiaco ("AG") in his First Amended Complaint ("FAC"). He seeks a declaratory judgment that the statutes he has challenged are unconstitutional on their face and as applied to him, and he seeks injunctive relief to enjoin any prosecution of him criminally in the courts of Guam. The AG has filed a Rule 12(b)(6) motion to dismiss Mr. Adkins' claims against her based on three grounds: (1) Mr. Adkins' claims are moot because the AG issued a "Prosecution Decline Memorandum" declining to prosecute Mr. Adkins; (2) Mr. Adkins lacks standing to sue; and (3) the Court must abstain from adjudicating this case under the doctrine articulated in <u>Younger v. Harris,</u> 410 U.S. 37, 45-56 (1971). None of these grounds have any merit.

There is no evidence before the Court that the AG has declined to prosecute Mr. Adkins. Even if such evidence was presented, a "Prosecution Decline Memorandum" is not binding or permanent and has no effect, legal or otherwise, on this case. The AG may prosecute Mr. Adkins at will. Moreover, defendants continue to defend the constitutionality of the statutes challenged by Mr. Adkins, such that a genuine, credible threat of prosecution against Mr. Adkins persists. The case is therefore not moot; Mr. Adkins' claims against the AG are live and continuing.

In support of her argument that Mr. Adkins lacks standing to sue, the AG relies upon decisions that are inapplicable to this case. The standing requirements are altogether different where, as here, a plaintiff seeks injunctive and declaratory relief based upon a constitutional challenge to statutes under which he was arrested <u>and</u> faces the threat of prosecution. Mr. Adkins has standing because he has a personal stake in the outcome of this action - he has

1

suffered both actual and imminent injuries, including being arrested and incarcerated without a warrant or probable cause; prior restraint of his free speech rights by the unlawful seizure of his cell phone camera without probable cause; and embarrassment, humiliation, and damage to his reputation. These injuries are directly traceable to the challenged action by the AG because the AG not only has a general duty to enforce the statutes at issue here, but under Guam law, the authority to prosecute Mr. Adkins lies entirely within her control. As required by the standing rules, this Court has the power to redress Mr. Adkins' injuries and prevent further injury. And Mr. Adkins faces a very significant possibility of future harm due to the threat of imminent prosecution under the statutes he has challenged.

The *Younger* abstention doctrine does not apply here. The threshold requirement for *Younger* abstention to apply is lacking – there is no state judicial proceeding from which this Court may abstain.

Mr. Adkins' FAC alleges more than sufficient facts to state declaratory and injunctive relief claims against the AG that are plausible on their face and which lead to the reasonable inference that the AG will prosecute Mr. Adkins under the challenged statutes unless restrained or enjoined. For all of these reasons, the AG's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Mr. Adkins is a resident of Guam and is a prominent and successful Guam businessman. FAC ¶ 4. On October 4, 2009 he drove out of his yard down Paseo de Oro to Carmen Memorial Drive in Tamuning. Id. ¶ 13. As he drove around a curve he saw a green truck crashed into a wall. Id. Mr. Adkins took out his cell phone camera and took pictures of the accident while in his car. Id. As he was driving away, a police officer stepped out in front of his car and told him

2

stop. Id. Mr. Adkins stopped his car and the officer told him that he could not take pictures. Id. Mr. Adkins said, "there is nothing wrong with taking pictures". The first officer talked to a second officer who was nearby and the first officer demanded, "give me your camera." Id. Mr. Adkins refused. The first officer demanded that Mr. Adkins give him the camera a second time, and again plaintiff refused. Id. Upon information and belief, the first officer who stopped plaintiff was either D.B. Anciano or Serafino Artui. Id.

The second police officer approached plaintiff in his car and demanded plaintiff's camera. FAC ¶ 14. Mr. Adkins repeated, "there's no law against taking pictures." Id. The second officer again demanded plaintiff's camera and plaintiff refused. Id. The second officer then demanded that he get out of the car, and Mr. Adkins said, "the only way I will get out is if I am under arrest." Id. The second officer then told plaintiff that he was "under arrest" and Mr. Adkins got out of his car. Id. Upon information and belief, the second officer who arrested plaintiff was either Anciano or Artui. Id.

Anciano or Artui handcuffed plaintiff and put him in a police car. FAC ¶ 15. While he was in the police car, plaintiff retrieved his cell phone and called his wife to tell her he had been arrested and to call his attorney. Id. Anciano or Artui grabbed plaintiff's cell phone and confiscated it. Id. Anciano or Artui took Mr. Adkins to the Tumon police station, where he was incarcerated. FAC ¶ 16. He was later taken to a conference room. Id. A police sergeant demanded that plaintiff delete the pictures from his cell phone camera. Id. Mr. Akins refused. Id.

Later that night Mr. Adkins was taken to the Hagatna police station by one other police officer where he was booked, fingerprinted, and photographed. FAC ¶ 17. Mr. Adkins was restrained and detained for about 4 hours, from 4:30 p.m. to 8:30 p.m. Id. Plaintiff's cell phone

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

3

camera was never returned to him. Id. After his release, plaintiff was given a notice to appear in court on Sept. 29, 2010. FAC ¶ 17. In the notice to appear Mr. Adkins learned for the first time that he was charged with "obstructing governmental function" and "failure to comply."[1] Id.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS AGAINST THE AG ARE NOT MOOT, AS THERE IS A GENUINE, CREDIBLE THREAT OF PROSECUTION.

A case becomes moot only when the issues are no longer live or the parties lack a legally cognizable interest in the outcome. United States v. Ripinsky, 20 F.3d 359, 361 (9th Cir. 1994). The AG bears the burden of establishing mootness, and that burden is a heavy one. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (burden of establishing mootness is heavy); GATX/Airlog Co. v. United States Dist. Court, 192 F.3d 1304, 1306 (9th Cir. 1999) (party asserting mootness has heavy burden of establishing that no effective relief remains for court to provide).

The AG discloses that the Prosecution Division of the AG's Office had, on October 5, 2009, issued a "memorandum" declining prosecution of Mr. Adkins.[2] The "Prosecution Decline

---

[1] The notice to appear did not give the statutory basis for the "failure to comply" charge, nor was Mr. Adkins advised of such basis. Accordingly, he will file an amended complaint to include 16 G.C.A. § 3503(d) as the basis of his "failure to comply" claim.

[2] On or about December 17, 2009, Deputy Attorney General Pat Mason advised plaintiff's counsel that the Prosecution Division had declined prosecution of Mr. Adkins on October 5, 2009. Plaintiff's counsel requested a copy of the "Prosecution Decline Memorandum" and he agreed to supply a copy. He also suggested that plaintiff's counsel discuss the matter with the prosecutor who had signed the memorandum. In a conversation on December 18, 2009, an Asst. Deputy AG agreed to supply the memorandum, but also informed plaintiff's counsel that there was a "division of opinion" in his office about whether to prosecute Mr. Adkins. Later on December 18, despite previously agreeing to provide the memorandum, the Asst. Deputy AG refused to provide it, stating that it was "confidential" and could not be released unless by court order. When plaintiff's counsel wrote a letter contesting its confidentiality, the memorandum was finally provided to plaintiff's counsel on December 23, 2009, approximately a half-hour prior to her receiving the AG's motion to dismiss. The Prosecution Decline Memorandum states that it is declining prosecution only as to the "obstruction of governmental function" charge, it does not address the "failure to comply" charge.

4

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

Memorandum" is not properly before the Court on this Rule 12(b)(6) motion to dismiss. If the Court is inclined to consider the memorandum,[3] the AG contends in a one-sentence argument that this "memorandum" renders Mr. Adkins lawsuit against the AG "moot". Unsurprisingly, the AG cites no caselaw or authority to support this argument.

In City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983), the U.S. Supreme Court held that a police department's moratorium on police officers' use of chokeholds, a practice that was challenged in the case, did not render the case moot because it was not "permanent." Similarly, the AG's decision not to prosecute Mr. Adkins is neither binding nor permanent, and has no effect on this case or Mr. Adkins' claims against the AG.[4] At any time, the Prosecution Division may change its mind for any reason and prosecute the case against Mr. Adkins at will. The fact that there was a division of opinion in the Prosecution Division about whether to prosecute Mr. Adkins, see footnote 2, *supra,* demonstrates that there are still some prosecutors who favor his prosecution. Finally, and most importantly, the defendants continue to vouchsafe the constitutionality of the statutes, indicating their intent to enforce them. See Anciano and Artui Mot. at 12, n.6, 13-16.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, ____ U.S. ____, 129 S. Ct. 1937, 1949-50 (2009). Taking the facts alleged by plaintiff as true, there is undoubtedly a controversy between Mr. Adkins and the AG concerning legal rights and duties under the statutes at issue. FAC ¶ 58. Mr. Adkins believes that the statutes are

---

[3] Should the Court consider the memorandum and treat the motion as one for summary judgment, plaintiff's counsel requests a reasonable opportunity under Rule 12(d) to present material that is pertinent to the motion.

[4] If the AG has no intention of prosecuting Mr. Adkins, she would have accepted plaintiff's counsel's request to Mason on December 7, 2009 that the parties stipulate to an order that the AG would not prosecute Mr. Adkins pending a final decision in this case. However, Mason, on behalf of the AG, adamantly refused.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

unconstitutional and that his arrest and incarceration under the two statutes were wrongful and in violation of his civil and constitutional rights. Id. ¶ 59. The AG and her office believe that the statutes are constitutional and they will enforce the statutes by prosecuting plaintiff under both. Id. ¶ 61. The AG has presented no competent evidence or argument otherwise.

All of the above factors point toward the continuing existence of a case or controversy that remains live. Mr. Adkins has a cognizable interest in the outcome, since there continues to be a genuine, credible threat of imminent prosecution by the AG's office. See Deakins v. Monaghan, 484 U.S. 193, 200 n. 4 (1988), *quoting* U.S. v. Phosphate Export Ass'n, 393 U.S. 199, 203 (1968) (cessation of allegedly illegal conduct does not moot a case; if it did, courts would be compelled to leave a defendant "free to return to his own ways"); U.S. v. WT. Grant Co., 345 U.S. 629, 631 (1953) (voluntary cessation of allegedly illegal conduct does not make a case moot); N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 16-17 (1st Cir. 1996) (AG's refusal to disclaim possibility of enforcement and defendants' vouchsafing of constitutionality of statute indicated they would enforce it).[5]

## II.     MR. ADKINS HAS STANDING TO SUE.

The constitutional test for standing has three prongs. A plaintiff must establish: (1) an injury-in-fact, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1 (1992); (2) that the injury "fairly can be traced to the challenged action", Whitmore v. Arkansas, 495 U.S. 149, 155 (1980); and (3) the plaintiff's injury likely will be redressed by a favorable decision. McConnell v. FEC, 540 U.S. 93, 229 (2003). Because Mr. Adkins seeks declaratory and injunctive relief only against the AG, in the Ninth Circuit there is a further requirement that he must show a very

---

[5] Similarly, the AG's belated offer to return Mr. Adkins' cell phone camera with conditions, AG Mot. at 8, n.6, appears self-serving. U.S. v. Oregon State Medical Society, 343 U.S. 326 (1952) (courts should beware of efforts to defeat injunctive relief by protestations of penance and reform, especially when abandonment seems timed to anticipate suit).

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

6

significant possibility of future harm. Bras v. California Pub. Util. Comm'n, 59 F.3d 869, 873 (9th Cir. 1995), *cert. denied,* 516 U.S. 1084 (1996). The AG barely addresses only the first prong of the test, but as shown below, Mr. Adkins satisfies all of these requirements.

    A.    Mr. Adkins has a personal stake in the claims asserted against the AG.

To have an injury-in-fact, a plaintiff must have a "personal stake" in the matter to be adjudicated. Lujan, 504 U.S. at 560 n. 1. A plaintiff must have suffered a distinct and concrete harm. Doe v. Madison School Dist. No. 321, 177 F.3d 789, 797 (9th Cir. 1999). The injury component of the standing doctrine requires an "actual or imminent" injury. Summers v. Earth Island Institute, ___ U.S. ___, 129 S.Ct. 1142 (2009). The injury must have already been inflicted or it must be likely to occur "imminently." Id. A threatened injury will qualify if it is sufficiently probable. Pennell v. San Jose, 485 U.S. 1, 8 (1988).

Mr. Adkins suffered actual, concrete harm.[6] He was arrested and incarcerated without probable cause, and deprived of his liberty. FAC ¶¶ 25, 41. His cell phone camera was seized without a warrant and without probable cause. FAC ¶ 15. He suffered great mental anguish and suffering, physical injury, humiliation, shame, and embarrassment, and has been damaged in his good name and reputation. FAC ¶¶ 25, 41. See Meese v. Keene, 481 U.S. 465, 473-74 (1987) (harm to a plaintiff's reputation in the community is a cognizable injury which affords a plaintiff standing to bring suit); McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Jud. Conference of the U.S., 264 F.3d 52, 57 (D.C. Cir. 2001) (district judge had standing to challenge public reprimand from Judicial Council as blight on his reputation even though reprimand had no legal effect on judge).

_____

[6] Plaintiff incorporates by reference herein his Opposition to the Motion to Dismiss filed by Defendants Anciano and Artui, which sets forth in greater detail the harm he suffered.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

Mr. Adkins also suffers imminent injury. If the statutes are allowed to be enforced and executed by the defendants, Mr. Adkins will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration. FAC ¶ 64. See Pennell v. San Jose, 485 U.S. 1, 8 (1988) (likelihood of enforcement of ordinance was sufficient threat of actual injury to satisfy requirement that plaintiff who challenges statute must demonstrate danger of sustaining direct injury as a result of statute's operation or enforcement). This injury is not remote, indefinite, or a mere possibility, as the one-year statute of limitations applies to prosecution of Mr. Adkins under the statutes. 8 G.C.A. § 10.30.

The AG relies upon two cases in support of her argument that Mr. Adkins lacks standing to sue, Lyons, 461 U.S. 95, and Mayfield v. U.S., ___ F.3d ___, 2009 WL 4674172 (9th Cir. 2009). Both cases are cited for the proposition that Mr. Adkins lacks standing because the possibility that he will suffer the same injuries (i.e., arrest and incarceration based on the same acts) are remote. AG Mot. at 12-13. Neither decision, however, establishes the applicable rule for standing in this case.

In City of Los Angeles, Lyons sought damages arising out of injuries he received from an illegal chokehold administered by the Los Angeles police. He sought declaratory and injunctive relief concerning a statute which allowed the chokeholds. The Supreme Court found that the single episode in which Lyons was harmed by the statute's application was insufficient to confer standing, absent a realistic likelihood that the statute would, in the future, be applied to his own detriment. Lyons, 462 U.S. at 106.

In Mayfield, the plaintiff was arrested and imprisoned for two weeks under the Foreign Intelligence Surveillance Act (FISA), as amended by the Patriot Act. After his release, Mayfield filed a lawsuit against the government for unlawful arrest and imprisonment and unlawful

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

8

seizures and searches. The parties reached a settlement agreement, in which Mayfield agreed to release all claims against the government, except one – Mayfield could seek declaratory judgment that certain portions of the FISA violated the Fourth Amendment. Mayfield argued that he had standing to sue because the government continued to retain derivative materials it had unlawfully seized from him. The court held that the only relief that would redress this alleged Fourth Amendment violation was an injunction requiring the government to return or destroy such materials, but because he had bargained this form of relief away, a declaratory judgment would not redress Mayfield's past injuries or prevent likely future injuries. Mayfield, 2009 WL 4674172 *6.

There are two critical distinctions between Lyons, Mayfield, and the instant case which dictate a different standard and a different result. First, in Lyons and Mayfield there was no threat of prosecution, as is the case here. For this reason, the applicable standard is found in Steffel v. Thompson, 415 U.S. 452 (1974). There, the Court held that an individual who had been threatened with prosecution for distributing literature at a shopping center, and whose companion had been arrested when he refused to stop distributing the literature, had standing to challenge the constitutionality of the statute because he showed a credible threat of prosecution. Steffel, 415 U.S. at 475. For injunctive and declaratory relief, a federal plaintiff has standing when he demonstrates "a genuine threat of enforcement of a disputed criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." Id. (equitable relief is available when a prosecution based on an assertedly unconstitutional state statute is threatened, but is not pending); see Younger v. Harris, 401 U.S. 37, 42 (1971) (to establish standing to challenge the constitutionality of a criminal statute, plaintiff must show a "credible threat" that the statute will be enforced against him). In contrast to Steffel, where the plaintiff

9

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

was not arrested but only threatened with prosecution, here Mr. Adkins *was* arrested and incarcerated. As discussed above in Part I, the threat of prosecution and enforcement of the statutes against Mr. Adkins is genuine and credible.

Second, unlike this case, Lyons and Mayfield did not claim any constitutional right to act as they had prior to their arrest. In <u>Steffel</u>, *supra*, and <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 490 (1965), the Supreme Court allowed anticipatory relief against threatened state law enforcement. Both cases turned on that enforcement's deterrent threat to the plaintiffs' constitutional, in particular First Amendment, rights. <u>See also Hernandez v. Cremer</u>, 913 F.2d 230, 234-35 (5th Cir. 1990) (finding that <u>Lyons'</u> standing requirements did not apply where plaintiff was engaged in activity protected by the Constitution, exercising his right to travel outside the U.S.). Here, Mr. Adkins was exercising his right to free speech in taking photographs of the accident scene and in stating his understanding of the law to Anciano and Artui. He was arrested for both. An actual injury exists when a plaintiff is chilled from exercising his right to free expression or forgoes expression in order to avoid enforcement consequences. <u>See Meese</u>, 481 U.S. at 473. Further, within the First Amendment context, courts properly apply an expanded notion of standing to determine who may institute the asserted claim for relief. <u>Virginia v. American Booksellers Ass'n</u>, 484 U.S. 383, 392-93 (1988); <u>St. Paul Area Chamber of commerce v. Gaertner,</u> 439 F.3d 481, 487 (8th Cir. 2006) (the chilling effect of a threat of prosecution on a plaintiff's exercise of First Amendment's rights constitutes the injury); <u>Mangual v. Rotger-Sabat</u>, 317 F.3d 45, 56-57 (1st Cir. 2003) (the evidentiary bar that must be met to determine a First Amendment plaintiff's credible threat of prosecution is extremely low).

    B.    <u>Mr. Adkins' injuries "fairly can be traced to the [AG's] challenged action".</u>

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

When a state officer is sued to enjoin enforcement of state law, she must have "some connection" with enforcement or suit against him would be equivalent to suit against the state and would violate the Eleventh Amendment. <u>Ex Parte Young</u>, 209 U.S. 128, 150 (1908). Mr. Adkins alleges that the AG is the chief law enforcement officer on Guam and that she is responsible for enforcement of the statues at issue here. FAC ¶ 5. These allegations are supported by Guam law.

The AG is the "Chief Legal Officer" of the Government of Guam. 1 G.C.A. § 1421g(d)(1). She does not merely have a general broad power to execute and enforce the law, she has the duty to initiate criminal prosecutions. 5 G.C.A. § 30109(b) (providing that it is the duty of AG to "[d]raw all informations, conduct grand jury proceedings"). The credible threat of prosecution is therefore not merely "traced" to the challenged actions of the AG, there is a *direct* connection because the prosecution of any criminal case is entirely within the control of the AG. She has the fundamental prosecutorial authority to enforce statutes, including the ones challenged by Mr. Adkins here. She therefore has the ultimate authority to determine whether to prosecute Mr. Adkins. <u>Culinary Workers Union, Local 226 v. Del Papa</u>, 200 F.3d 614, 617-19 (9th Cir. 1999) (union had standing in section 1983 suit seeking injunctive and declaratory relief barring attorney general from threatening to enforce statute criminalizing willful and malicious making of derogatory statements about banks).

C.    <u>Mr. Adkins' injuries likely will be redressed by a favorable decision.</u>

The "redressability" prong requires the court "to examine whether the court has the power to right or to prevent the claimed injury." <u>Railway Labor Executives Ass'n v. Dole</u>, 760 F.2d 1021, 1023 (9th Cir. 1985), *quoting* <u>Gonzales v. Gorusch</u>, 688 F.2d 1263, 1267 (9th Cir. 1985). Redressability does not require that the plaintiff actually be entitled to the relief sought;

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

11

it is enough that the requested relief, if granted, would redress the plaintiff's injury. Public Citizen v. DOT, 317 F.3d 1002, 1016-1019 (9th Cir. 2003), *rev'd on other grounds*, 541 U.S. 752 (2004).

If the statutes are found unconstitutional by this Court, either on their face or as applied, they will not be enforced by the AG against Mr. Adkins. Further, if the Court enjoins the AG from enforcing the statutes or prosecuting Mr. Adkins, plaintiffs' injuries would be redressed. See Gillespie v. City of Indianapolis, 185 F.3d 693, 700-703 (7th Cir. 1999) (police officer had standing to challenge Gun Control Act provisions because if they are declared unconstitutional, plaintiff would regain right to carry gun). The redressability prong of the standing inquiry is met here.

D.     There is a very significant possibility of future harm to Mr. Adkins.

The harm that Mr. Adkins will suffer if declaratory and injunctive relief are not granted is neither remote nor hypothetical. He was handcuffed, arrested, and incarcerated for "obstructing governmental functions" and "failure to comply." The threat of prosecution by the AG is real and imminent. All of the facts alleged in the FAC, (see Statement of Facts, *supra*) support the conclusion that the AG and her office believe that the Act and the Charge are constitutional and they will enforce the Act and the Charge by prosecuting plaintiff under both. FAC ¶ 61. The same facts support the conclusion that "If the Act and the Charge are allowed to be enforced and executed by all of the defendants against plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration." FAC ¶ 64. Finally, Mr. Adkins alleges, "[u]nless and until the relief demanded in this complaint is granted, plaintiff has good reason to believe that his civil rights, right of free speech, right to privacy, right to be free of unlawful arrest and seizure, and right to due process

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

12

of law will continue to be infringed, chilled, threatened, impeded and otherwise interfered with by all of the defendants. The relief requested by plaintiff in this complaint is essential to prevent interference with plaintiff's civil and constitutional rights." FAC ¶ 65. Taking all of these allegations to be true, as this Court must, Iqbal, 129 S. Ct. at 1949-50, the Court should dismiss the AG's motion to dismiss for lack of standing.

## III. THE *YOUNGER* ABSTENTION DOCTRINE DOES NOT APPLY HERE, WHERE THERE IS NO PENDING STATE JUDICIAL PROCEEDING.

There are limited circumstances in which abstention by federal courts is appropriate, and those circumstances are "carefully defined" and "remain the exception, not the rule." New Orleans Pub. Serv., Inc. v. Counsel of City of New Orleans, 491 U.S. 350, 359, (1989) ("NOPSI"). In Younger, 401 U.S. 37, the U.S. Supreme Court articulated a doctrine for federal courts to abstain in certain matters in order to permit state courts to try state cases free of federal interference. *Younger* abstention is required when: (1) state judicial proceedings are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the federal issue, meaning that there is no procedural bar preventing a party from raising the issue. World Famous Drinking Emporium v. City of Tempe, 820 F.2d 1079, 1082 (9th Cir. 1987). Because the AG has failed to meet the first, threshold requirement, its motion to dismiss must be denied.

*Younger* and its progeny "espouse a strong federal policy against federal-court interference with *pending state judicial proceedings* absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, (1982) (emphasis added) (involving constitutional challenge to state bar disciplinary rules that were the subject of a pending disciplinary proceeding in state supreme court). *Younger* abstention therefore applies only when there are pending state judicial proceedings. Gilbertson v. Albright,

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

13

381 F.3d 965, 976 (9th Cir. 2004) (*Younger* applies in an action for damages under 42 U.S.C. § 1983 in which the federal plaintiff brings a constitutional challenge to a state proceeding that is "ongoing" and is "of a judicial nature"); see NOPSI, 491 U.S. at 372 (a challenge to completed legislative action is not "the interference with ongoing judicial proceedings against which *Younger* was directed"). The critical date for purposes of deciding whether abstention principles apply is the date the federal action is filed. Gilbertson, 381 F.3d at 969, n.4. The question is whether the state proceedings were underway *before* initiation of the federal proceedings. Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir. 1987).

It is undisputed that no judicial proceeding was filed in local Guam courts nor is one pending in order for this Court to apply the *Younger* doctrine.[7] Absent a pending local judicial proceeding that was underway before this case was filed, there is no merit to the AG's argument that the Court should abstain from adjudicating Mr. Adkins' claims against her.[8]

## CONCLUSION

For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. U.S. Secret Service, 572 F.3d 962, 966 (9th Cir. 2009). The facts alleged in the First Amended Complaint clearly establish that this case is not moot, Mr. Adkins has standing to sue, and abstention is not applicable here.

For all of the foregoing reasons, plaintiff James L. Adkins respectfully requests that the

---

[7] "When no state proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system . . . " Steffel, 415 U.S. at 462.

[8] As the Fifth Circuit Court of Appeal has observed, " . . one who seeks to challenge a state statute as violative of the federal constitution may not sue before he is truly injured; yet he may not wait until he is charged with a crime. He may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction." KVUE, Inc. v. Austin Broadcasting Corp., 709 F.2d 922, 928 (5th Cir. 1983). Mr. Adkins did precisely that.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

Court deny defendant Attorney General Alicia G. Limtiaco's motion to dismiss in its entirety. In the event that the Court grants the motion to dismiss, plaintiff James L. Adkins respectfully requests that the Court grant him leave to amend his First Amended Complaint. <u>Moss</u>, 572 F.3d at 964.

  Dated this 19th day of January, 2009.

**ARRIOLA, COWAN & ARRIOLA**
Attorneys for Plaintiff James L. Adkins


By: _____
   **ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of January, 2010, a true and correct copy of Plaintiff James L. Adkins' Memorandum of Points and Authorities in Opposition to Motion to Dismiss filed by Attorney General Alicia G. Limtiaco was personally delivered to:

**J. PATRICK MASON, ESQ.**
Deputy Attorney General
Office of the Attorney General
287 West O'Brien Drive
Hagatna, Guam 96910

**JAMES T. MITCHELL, ESQ.**
Legal Counsel
Guam Police Department
Bldg. 233, Central Ave.
Tiyan, Guam 96913

Dated this 19th day of January, 2010.

**ANITA P. ARRIOLA**

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910