**ANITA P. ARRIOLA, ESQ.**
**JOAQUIN C. ARRIOLA, ESQ.**
**LEEVIN T. CAMACHO, ESQ.**
**ARRIOLA, COWAN & ARRIOLA**
259 MARTYR STREET, SUITE 201
P.O. BOX X, HAGATNA, GUAM 96910
TELEPHONE: (671) 477-9730/33
TELECOPIER: (671) 477-9734

Attorneys for Plaintiff James L. Adkins

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS, | ) CIVIL CASE NO. CV09-00029 |
| Plaintiff, | ) |
| vs. | ) |
| ALICIA G. LIMTIACO, ATTORNEY GENERAL OF GUAM; OFFICE OF THE ATTORNEY GENERAL OF GUAM; PAUL SUBA, CHIEF OF GUAM POLICE DEPARTMENT; GUAM POLICE DEPARTMENT; D.B. ANCIANO; SERAFINO ARTUI; AND DOES I THROUGH X, | ) |
| Defendants. | ) |

**PLAINTIFF JAMES L. ADKINS'**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO MOTION TO DISMISS FILED BY**
**DEFENDANTS SERAFINO ARTUI AND D.B. ANCIANO**

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

# TABLE OF AUTHORITIES

**Cases**

Adams v. Praytor, 2004 WL 1490021 (N.D. Tex.)....................................................................10

Anderson v. Creighton, 483 U.S. 635 (1987) ..............................................................3, 9, 17

Ashcroft v. Iqbal, ____U.S. ____, 129 S. Ct. 1937 (2009) ......................................................6, 18

Association de Periodistas de Puerto Rico v. Mueller, 2007 WL 5312566 (D. Puerto Rico).......17

Baker v. City of New York, 2002 WL 31132880 (S.D.N.Y.) ........................................................14

Beck v. City of Upland, 527 F.3d 853 (9th Cir. 2008) ..................................................2, 11, 13, 17

Beck v. Ohio, 379 U.S. 89 (1964).................................................................................................9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)...............................................................18

Berkemer v. McCarty, 468 U.S. 420 (1984)...............................................................................5

Brown v. Texas, 443 U.S. 47 (1979) ...........................................................................................4

Burnett v. Bottoms, 368 F.Supp.2d 1033 (D. Ariz. 2005).........................................................9

Channel 10, Inc. v. Gunnarson, 337 F. Supp. 634 (D. Minn. 1972).........................................17

Chavez v. City of Oakland, 2009 WL 1537875 (N.D. Cal. 2009).............................................15

City of Houston v. Hill, 482, U.S. 451 (1987).............................................................................11

Coates v. Cincinnati, 402 U.S. 611 (1971) ................................................................................4

Connell v. Town of Hudson, 733 F. Supp. 465 (D.N.H. 1990) ..................................................16

D'Amario v. Providence Civic Center, 639 F. Supp. 1538 (D.R.I. 1986)....................................14

Delaware v. Prouse, 440 U.S. 648 (1979)...................................................................................4

Durruthy v. Pastor, 351 F.3d 1080 (11th Cir. 2003)          .................................................9, n.7

Duran v. City of Douglas, Arizona, 904 F.2d 1372 (9th Cir. 1989)....................................6, 12, 13

*i*

ETW Corp. V. Jireh Pub., Inc. 332 F.3d 915 (6th Cir. 2003) ..........................................13

Enlow v. Tishomingo County, Miss., 962 F.2d 501 (5th Cir. 1992) ..............................14

Erznoznik v. City of Jacksonville, 422 U.S. 205 (1975) ...............................................8

Grayned v. City of Rockford, 408 U.S. 104 (1972) .......................................................8

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...................................................................2

Illinois v. Caballes, 543 U.S. 405, 408 (2005) .............................................................5

Kaplan v. California, 413 U.S. 115, 118-19 (1973) .....................................................14

Lewis v. City of New Orleans, 415 U.S. 130 (1974) ....................................................12

M.D. v. Smith, 504 F. Supp. 2d 1238 (M.D. Ala. 2007) ...............................................9

Mackinney v. Nielsen , 69 F.3d 1002 (9th Cir. 1995) .................................................12

McCabe v. MacAulay, 2008 WL 2980013 (N.D. Iowa) ...............................................9

McCurdy v. Montgomery County, 240 F.3d 512 (6th Cir. 2001) ...............................12

Medeiros v. Shimoda, 889 F.2d 819 (9th Cir. 1989) ....................................................3

Minnesota v. Dickerson, 508 U.S. 366 (1993) .............................................................4

Moss v. Secret Services, 572 F. 3d 962 (9th Cir. 2009) .............................................18

Newell v. Sauser, 79 F.3d 115 (9th Cir. 1996) .............................................................6

People of Guam v. Norbert P. Perez, Jr., 2000 Guam 15 .............................................5

Pennsylvania v. Mimms, 434 U.S. 106 (1977) .............................................................8

Porat v. Lincoln Towers County Ass'n, 2005 WL 646093 (S.D.N.Y.) ........................14

Rankin v. McPherson, 483 U.S. 378 (1987) ...............................................................15

Robinson v. Fetterman, 387 F. Supp.2d 534 (E.D. Pa. 2005) ..........................14, 15, 17

Royer v. Florida, 460 U.S. 491 (1983) .........................................................................5

Saucier v. Katz, 533 U.S. 194 (2001) ........................................................................2, 6

*ii*

Showalter v. Brubaker, 493 F. Supp.2d 752 (E.D. Pa. 2007).........................................................14

Smith v. City of Cumming, 212 F3d 1332 (11th Cir. 2000).........................................................14

Terry v. Ohio, 392 U.S. 1 (1968)........................................................................................3, 4, 5, 6

Tennen v. Shier, 1995 WL 398991 (N.D. Ill.) .................................................................................9

U.S. v. Hensley, 469 U.S. 221 (1985).............................................................................................3

U.S. v. Napier, 861 F.2d 547 (9th Cir. 1988) .................................................................................5

U.S. v. Place, 462 U.S. 696 (1983) ...............................................................................................10

U.S. v. White, 2006 WL 1360165 (D. Kan) ....................................................................................9

Univ. of Alabama Bd. of Trustees v. New Life Art Inc., 2009 WL 5213713 (N.D. Ala.) ............14

Village of Hoffman Estates v. Flipside Hoffman Estates, Inc., 455 U.S. 489 (1982) .....................8

Whitmore v. Arkansas, 495 U.S. 149 (1980)..................................................................................18

Ybarra v. City of Miami, 2003 WL 25564426 (S.D. Fla.) ..............................................................9

**Guam Statutes**

8 G.C.A. §§ 20.15(a)(2),(b) ...........................................................................................................17

9 G.C.A. § 55.45 ..........................................................................................................................4, 5

16 G.C.A. § 3503(d) .............................................................................................................. *passim*

**Other Statutes**

Ariz. Rev. Stat. § 280622...............................................................................................................7

California Vehicle Code § 22400 ..................................................................................................15

625 Ill. Code 5/11-203 ...................................................................................................................7

Iowa Code § 321.229 .....................................................................................................................7

Miss. Code Annot. § 63-3-203 .......................................................................................................7

*iii*

Ohio R.C. § 2921.331(A) ...........................................................................................7

Rhode Island Gen. Laws 1956 § 31-12-3 ................................................................7

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

*iv*

# INTRODUCTION

Defendants Serafino Artui and D.B. Anciano (collectively "the Officers") have filed a motion to dismiss under Rule 12(b)(6) on three grounds: (1) qualified immunity; (2) lack of standing, mootness, and abstention; and (3) statutory immunity. On the first issue, the Officers contend that so long as they had probable cause to arrest plaintiff James L. Adkins ("Mr. Adkins") under 16 G.C.A. § 3503(d) ("section 3503(d)"), qualified immunity shields them from liability. This simplistic analysis lends no support to the Officers' plea for qualified immunity, as they must establish that they are protected from liability on each and every one of Mr. Adkins claims against them, not merely his arrest. They have failed to do so.

There was no reasonable suspicion to detain Mr. Adkins, as he had not committed, nor was he in the process of committing, a crime. The Officers' stop of Mr. Adkins' vehicle was therefore an unlawful detention and seizure under the Fourth Amendment. The subsequent arrest of Mr. Adkins was illegal because they failed to obtain a warrant and it was without probable cause. Further, section 3503(d) is violated when a vehicle operator fails to comply with a "*lawful* order" by the Officers. The Officers' order that Mr. Akins get out of his car was unlawful because section 3503(d) is impermissibly and unconstitutionally vague; any orders issued pursuant to Mr. Adkins' illegal detention were unlawful; and he was ordered out of his car and arrested in retaliation for his comments that "there's no law against taking pictures" and because he refused to give the Officers his cell phone camera. The seizure of Mr. Adkins' cell phone camera was likewise illegal, as the Officers failed to obtain a warrant for the cell phone camera and there was no probable cause to seize it.

Mr. Adkins' First Amendment claims stem from the fact that he was ordered to get out of his car and he was arrested, in part, for allegedly arguing with the Officers when he told them,

1

"there's no law against taking pictures". He was also arrested for taking photographs of the automobile accident scene and the Officers took away his cell phone camera, resulting in an unlawful prior restraint of his protected speech.

All of the above-mentioned First and Fourth Amendment rights were clearly established and the Officers should have known that they were acting illegally when they stopped his vehicle and detained him, ordered him out of the car, arrested him, and seized his cell phone camera – all without probable cause. Consequently, qualified immunity does not protect the Officers here.

For the reasons discussed in Mr. Adkins' memorandum in opposition to the Attorney General's motion to dismiss, the Officers' arguments relating to standing, mootness and abstention, are without merit. Finally, the Officers' statutory immunity argument is based solely on their contention that they had probable cause to arrest Mr. Adkins which, as shown above and discussed more fully below, is unsupported by the facts or the law.

**ARGUMENT**

Under the doctrine of qualified immunity, state actors are protected from civil liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A qualified immunity inquiry uses a two-step process. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, if a violation is found, the court must determine whether, in the "specific context of the case", the right was clearly established. Id.; Beck v. City of Upland, 527 F.3d 853, 863 (9th Cir. 2008) (applying qualified immunity standard in a false arrest and retaliatory arrest case). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would

2

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).

## I. THE OFFICERS VIOLATED MR. ADKINS' CLEARLY ESTABLISHED FOURTH AMENDMENT RIGHT TO BE FREE OF UNLAWFUL SEIZURES.

### A. <u>The Officers' vehicle stop was an illegal detention and seizure of Mr. Adkins</u> .

On October 4, 2009, Mr. Adkins drove out of his yard down Paseo de Oro to Carmen Memorial Drive in Tamuning. FAC ¶ 12. As he drove around a curve he saw a green truck crashed into a wall. <u>Id</u>. Plaintiff took out his cell phone camera and took pictures of the accident while in his car. <u>Id</u>. As plaintiff was driving away, a police officer stepped out in front of his car and told plaintiff to stop. FAC ¶ 13. Plaintiff stopped his car and the officer told him that he could not take pictures. <u>Id</u>. Plaintiff said, "there is nothing wrong with taking pictures". <u>Id</u>. The first officer talked to a second officer who was nearby and the first officer demanded, "give me your camera." <u>Id</u>. Plaintiff refused. <u>Id</u>. The first officer demanded that plaintiff give him the camera a second time, and again plaintiff refused. <u>Id</u>. The second police officer approached plaintiff in his car and demanded plaintiff's camera. <u>Id</u>. Plaintiff repeated, "there's no law against taking pictures." The second officer again demanded plaintiff's camera and plaintiff refused. <u>Id</u>.

When his vehicle was stopped by the fully uniformed first officer, Mr. Adkins was not free to leave and he was clearly in police custody. <u>Medeiros v. Shimoda</u>, 889 F.2d 819 (9th Cir. 1989) (where defendant's automobile was stopped by police, defendant held to be in custody, since a reasonable person in such circumstances would conclude that he would not be free to leave). Plaintiff's detention was a seizure under the Fourth Amendment. <u>Terry v. Ohio</u>, 392 U.S. 1, 29 (1968) ("*Terry*") (whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person); <u>see U.S. v. Hensley</u>, 469 U.S. 221 (1985)

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

3

(stopping a vehicle and detaining its occupant is a "seizure" under the Fourth Amendment); Delaware v. Prouse, 440 U.S. 648, 653 (1979) (vehicle stops are considered seizures and accorded Fourth Amendment protection "even though the purpose of the stop is limited and the resulting detention quite brief").

The Fourth Amendment prohibits "unreasonable searches and seizures". U.S. Const., Amend. IV. Searches and seizures, conducted outside the judicial process, without a warrant, "are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). One such exception is the "*Terry* stop." The stop of the vehicle was lawful only if based upon a reasonable suspicion that Mr. Adkins had committed an unlawful act, Terry, 392 U.S. at 21-22, or that some criminal activity was afoot. Brown v. Texas, 443 U.S. 47 (1979).

The Officers had no reasonable suspicion to justify detaining Mr. Adkins. While the Officers state that Mr. Adkins was "in very near proximity to the scene of . . . an accident or crime scene still under investigation", Mot. at 8, and that his cell phone "contained *evidence* of that accident or crime scene", id. at 9 (emphasis in original), they do not, and cannot, argue that taking pictures of an automobile accident in one's vehicle on a public road is a crime. It is telling that the Officers do not cite 9 G.C.A. § 55.45[1] as the reason for their detention of Mr. Adkins.[2] The Officers not only fail to provide any "reasonable suspicion" that Mr. Adkins had

---

[1] 9 G.C.A. § 55.45 provides in its entirety: "Obstructing Governmental Functions; Defined & Punished. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal t o subnit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions."

[2] Plaintiff has asserted the unconstitutionality of 9 G.C.A. § 55.45 on its face and as applied to Mr. Adkins. A statute is unconstitutional if it is couched in terms "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Coates v. Cincinnati, 402 U.S. 611, 614 (1971). While defense counsel states that he has unearthed no cases in which an "obstructing governmental function" statute has

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

committed a crime or was about to commit one, they studiously ignore this illegal detention and seizure of Mr. Adkins, pretending that it never happened. Unfortunately for them, it did, and it set off a chain of events that went from bad to worse.

The purpose of a *Terry* stop is to allow a police officer the opportunity to follow up on suspected criminal activity, and it must be limited in scope to the justification for the stop. Terry, 392 U.S. at 29. An officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information conforming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984). A seizure that goes beyond Terry's limited scope must be supported by probable cause in order to withstand constitutional challenge. See Illinois v. Caballes, 543 U.S. 405, 408 (2005) (a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission); Royer v. Florida, 460 U.S. 491, 496 (1983). The seizure of

---

been found void for vagueness, Mot. at 12-13, n.7, the more salient point is that he fails to cite a single case establishing that a reasonable person, as a matter of common intelligence or in light of ordinary human experience, would believe that taking photographs on a cell phone camera in the privacy of his car while on a public road, constitutes obstructing, impairing, or perverting a governmental function by force, violence, physical interference, obstacle or other unlawful act. Before criminal penalties can be imposed, "fair warning should be given to the world in language that the common world will understand, of what the law intends to do it a certain line is passed." U.S. v. Napier, 861 F.2d 547 (9th Cir. 1988) (defendant's conviction reversed because bank bribery statute did not clearly apply to him). Section 55.45 fails to do that.

But even assuming *arguendo* that the statute is constitutional, it does not assist the Officers. In People of Guam v. Norbert P. Perez, Jr., 2000 Guam 15, the Guam Supreme Court reversed a jury conviction under section 55.45, holding that "[t]he record is devoid of any evidence that Appellant engaged in some action directed at preventing the police from monitoring traffic along Route 4." Perez, 2000 Guam 15, ¶ 19. Similarly, construing the facts in the FAC as true, Mr. Adkins' act of taking photographs in his car was not directed at preventing the Officers' duties in investigating the automobile accident. Further, none of his actions were done "by force, violence, physical interference or obstacle." (It should be noted that in Perez, the defendant did not challenge the constitutionality of section 55.45, as Mr. Adkins does here, so that the Guam Supreme Court had no occasion to address the statute's constitutionality). If anyone was interfering, it was the Officers themselves. Instead of performing their investigative duties, they chose to stop and harass a citizen for taking pictures in the privacy of his vehicle. Instead of staying at the scene of the accident, they arrested a citizen for telling them his understanding of the law and for refusing to turn over his cell phone camera, then transported him to a police station for incarceration.

Mr. Adkins went well beyond the limited scope authorized by Terry. The Officers did not try to determine Mr. Adkins' identity or obtain information confirming or dispelling whatever suspicions they may have had about Mr. Adkins' actions. Had they simply asked for his name and address, they could have obtained a warrant and arrested him later if they truly believed that he had committed a crime. Instead, it is patently obvious that the Officers' sole reason for stopping and detaining Mr. Adkins was to get his cell phone camera. The Officers repeatedly demanded his cell phone camera, and continued to detain him, instead of releasing him as required by Terry and its progeny. There was no probable cause to demand or obtain his cell phone camera and no probable cause for Mr. Adkin's continued detention.

The constitutional requirement that a vehicle stop may not be made unless there is reasonable suspicion that a crime has been or will be committed, is one of the most basic and well-established Fourth Amendment tenets. Mr. Adkins' right to be free of an illegal detention and seizure was clearly established at the time it was violated. Saucier, 533 U.S. at 201; Duran v. City of Douglas, Arizona, 904 F.2d 1372, 1376 (9th Cir. 1989) (the most fundamental limit on what police officers may do in discharging their duties is that they may not interfere with the freedom of private persons unless it be for specific, legitimate reasons). Taking all of plaintiff's allegations as true,[3] it was "sufficiently clear" that the Officers should have understood that their vehicle stop and continued detention of Mr. Adkins violated that right. Newell v. Sauser, 79 F.3d 115, at 117 (9th Cir. 1996). The Officers are not entitled to qualified immunity for the illegal detention and seizure of Mr. Adkins.

    B.      The Officers made an illegal arrest and seizure of Mr. Adkins.

---

[3] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give use to an entitlement to relief." Ashcroft v. Iqbal, ___U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

After the first police officer repeatedly demanded that Mr. Adkins turn over his cell phone camera, and Mr. Adkins refused, FAC ¶ 13, the second police officer approached plaintiff in his car and demanded plaintiff's camera. Id. ¶ 14. Plaintiff repeated, "there's no law against taking pictures." Id. The second officer again demanded plaintiff's camera and plaintiff refused. The second officer then demanded that plaintiff get out of the car, and plaintiff said, "the only way I will get out is if I am under arrest." Id. The second officer then told plaintiff that he was "under arrest" and plaintiff got out of his car. Id.

The Officers' arrest of Mr. Adkins was purportedly based on 16 G.C.A. § 3503(d), which provides in its entirety, "[i]t shall be unlawful for the operator of a vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority." However, section 3503(d) is void for vagueness on its face.

Like other "failure to comply" statutes, section 3503(d) is found in Guam's Vehicle Code. But unlike other comparable statutes, section 3503(d) is not limited to orders given by a peace officer in connection with the control or regulation of traffic or motor vehicles.[4] While these statutes limit the type of orders for which "failure to comply" constitutes a crime, (i.e., as

---

[4] Compare 16 G.C.A. § 3503(d) with Ariz. Rev. Stat. § 280622 ("A person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic."); 625 Ill. Code 5/11-203 (No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer, fireman or uniformed adult school crossing invested by law with authority to direct, control, or regulate traffic); Iowa Code § 321.229 ("No person shall willfully fail or refuse to comply with any lawful order or direction of any peace officer invested by law with authority to direct, control, or regulate traffic".); Miss. Code Annot. § 63-3-203 ("No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control, or regulate traffic".); Ohio R.C. § 2921.331(A) ("No person shall fail to comply with any lawful order or direction of any police officer invested with authority to direct, control or regulate traffic."); Rhode Island Gen. Laws 1956 § 31-12-3 ("No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic, including any order or direction pertaining to fire lane parking violations whether on private or public property.").

7

they relate to control or regulation of traffic or motor vehicles), Guam's statute does not. There are no standards or criteria under which a "failure to comply" is illegal under section 3503(d).

To survive a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and "provide explicit standards for those who apply [the statute]." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Section 3503(d) impermissibly delegates power to police officers to issue whatever orders they wish to the driver of a vehicle, without any standards, limitations, or criteria, and then to arrest that individual for "failure to comply", in violation of the Constitution and the Organic Act.[5] That is precisely what happened here. Mr. Adkins committed no crime, and was not committing any crime, yet the Officers stopped him and ordered him out of his car.

In addition, a stringent vagueness test applies to a law that interferes with the right of free speech. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982). As discussed below at 12-17, *infra,* the Officers' order to get out of the car and Mr. Akins' subsequent arrest were due in part to his comments about his understanding of the law, in violation of the First Amendment. Consequently, section 3503(d) has a real and substantial deterrent effect on expression. See Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975). Section 3503(d) is vague on its face and vague as applied to Mr. Adkins.

Even if section 3503(d) is found to be constitutional, it is of no assistance to the Officers. Violation of the statute is expressly conditioned upon a driver's refusal to comply with a "*lawful order*" of a police officer.[6] The Officers' order to Mr. Adkins to get out of his car was <u>unlawful</u>

---

[5] For example, under the Officers' interpretation of section 3503(d), the Officers could have ordered Mr. Adkins to take off his shirt or his underwear, and if he refused, he would be arrested.

[6] This is consistent with the Supreme Court's admonition that a law enforcement officer may order the driver out of a vehicle during a <u>lawful</u> traffic stop. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977).

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

– it was in violation of the *Terry* prohibition against unreasonable detentions and seizures; it was in violation of the limited scope of authority for a *Terry* stop; and there was no reasonable suspicion or probable cause to believe that Mr. Adkins had committed a crime justifying the order to exit his vehicle. In addition, the Officers' order was unlawful because it was based upon Mr. Adkins' refusal to give them his cell phone camera and in retaliation for Mr. Adkins' comments that "there's no law against taking pictures." See discussion at 12-17, *infra*.

These circumstances distinguish <u>all</u> of the "failure to comply" cases cited by the Officers. Those cases were premised upon the failure to comply with lawful orders issued by police officers where the vehicle or individual stop was justified by reasonable suspicion or probable cause that a traffic or motor vehicle violation had been or was about to be committed.[7] Significantly, Mr. Adkins was not issued a traffic or vehicle citation, nor was he told by the Officers or in the Notice to Appear that he had committed a traffic violation. The apparent interpretation of section 3503(d) offered by the Officers, which would criminalize a person's refusal to exit his vehicle unless he shut up and turn over his cell phone camera, is plainly unconstitutional under the Fourth Amendment.

"The right to be free from arrest without probable cause is a clearly established constitutional right." <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964). Under the facts alleged in the FAC,

---

[7] See <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1089-1090 (11th Cir. 2003) (cameraman disobeyed order to leave street, officer had probable cause to arrest cameraman who was walking in street instead of on sidewalk as required by statute); <u>McCabe v. MacAulay</u>, 2008 WL 2980013 *6 (N.D. Iowa) (plaintiff violated agent's order to move after agent observed her standing in restricted area that the Secret Service had secured for the safety of the President); <u>M.D. v. Smith</u>, 504 F. Supp. 2d 1238, 1244 (M.D. Ala. 2007) (deputy sheriff could order minor out of his vehicle because he had probable cause to believe minor was violating disorderly conduct statute); <u>U.S. v. White</u>, 2006 WL 1360165 * 6 (D. Kan.) (officer had reasonable suspicion to stop vehicle when he observed the defendant driving over the speed limit and overtake another vehicle in an unsafe manner); <u>Burnett v. Bottoms</u>, 368 F.Supp.2d 1033, 1040 (D. Ariz. 2005) (defendants' qualified immunity motion for summary judgment denied where issues of fact existed regarding whether there was probable cause to arrest plaintiff for violating police officer's order that she not cross intersection left open for presidential route); <u>Ybarra v. City of Miami</u>, 2003 WL 25564426 *13 (S.D. Fla.) (plaintiff violated officer's order to get out of the street after there was probable cause to detain her for violating law prohibiting obstruction of free passage on sidewalks); <u>Tennen v. Shier</u>, 1995 WL 398991 *8 (N.D. Ill.) (police officer had probable cause to order plaintiff to remove his vehicle from airport roadway in order to control traffic).

which are assumed to be true, no reasonable police officer would have believed that Mr. Adkin's arrest was pursuant to a lawful order or was based on probable cause. <u>Anderson,</u> 483 U.S. at 640. Qualified immunity does not shield the Officers from liability for their illegal arrest of Mr. Adkins.

      C.    <u>The Officer's illegal seizure of Mr. Adkins' cell phone camera.</u>

As the foregoing makes clear, Mr. Adkins was illegally stopped and detained, illegally questioned, illegally ordered out of his car, then illegally arrested. But the Officers did not stop there. They handcuffed plaintiff and put him in a police car. FAC ¶ 15. While he was in the police car, plaintiff retrieved his cell phone and called his wife to tell her he had been arrested and to call his attorney. <u>Id.</u> The Officers then grabbed plaintiff's cell phone and confiscated it. <u>Id.</u>

By its plain terms, the Fourth Amendment protects the right of people to be secure in their persons. U.S. Const., Amend. IV. A seizure of personal property is *per se* unreasonable unless it is accomplished pursuant to a judicial warrant that was issued upon probable cause and particularly describes the items to be seized. <u>U.S. v. Place</u>, 462 U.S. 696, 701 (1983). The Officers failed to obtain a warrant here, though they certainly had sufficient time to obtain one. No recognized exception to this fundamental principle applies here – there were no exigent circumstances, the cell phone camera was not contraband or evidence of a crime, there was no potential destruction of evidence, and there was no hot pursuit of Mr. Adkins. The seizure of Mr. Adkins' cell phone camera, as alleged in the FAC, indicates "objectively unreasonable conduct by the Defendants that no competent officer would believe comports with clearly established law." <u>Adams v. Praytor</u>, 2004 WL 1490021 *5 (N.D. Tex.). The Officers are not immunized from liability for their seizure of Mr. Adkin's cell phone camera.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

10

## II. THE OFFICERS HAVE NO QUALIFIED IMMUNITY FROM VIOLATION OF MR. ADKINS' CLEARLY ESTABLISHED FREE SPEECH RIGHTS.

The Officers violated Mr. Adkins' First Amendment right to free speech in two ways: (1) they ordered him out of his car and arrested him, in part, for allegedly arguing with them; and (2) they arrested him for taking photographs of the automobile accident scene and then took away his cell phone camera, resulting in an unlawful prior restraint of his protected speech.

### A.    Mr. Adkins' was arrested in retaliation for the exercise of his First Amendment rights when he told the Officers "there is nothing wrong with taking pictures."

Throughout their motion, the Officers contend that Mr. Adkins was arguing with them. Mot. at 8, 9, 12, 15.   Their version of events is not credible, and in any event, the facts of the FAC must be taken as true.   When the first officer demanded that Mr. Adkins give them his cell phone camera, he refused, stating to the first officer, "there is nothing wrong with taking pictures".   FAC ¶ 13.   After the second officer approached him and demanded his cell phone camera, plaintiff repeated, "there's no law against taking pictures."   Id. ¶ 14.   Mr. Adkins was not arguing; he was merely stating his understanding of the law.    Nonetheless, the Officers ordered him to get out of his vehicle and then hastily arrested him in retaliation for his comments and because he refused to turn over his cell phone camera.

"[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston v. Hill, 482 U.S. 451, 461 (1987). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. at 462-63.   In the Ninth Circuit, a plaintiff claiming a retaliatory arrest due to exercise of his First Amendment rights must show the following:  (1) that the arrest lacked probable cause; (2) that the plaintiff's speech was protected under the First Amendment; and (3) that the defendant was

11

motivated by "retaliatory animus" in making the arrest. Beck, 527 F.3d at 865-66.

As discussed above in Part I, plaintiff has demonstrated indisputably that his arrest was without probable cause. Regardless of whether he was arguing or simply making a point, Mr. Adkins had a right to express his understanding of the law to the Officers, a right that is fully protected by the First Amendment. Mackinney v. Nielsen, 69 F.3d 1002, 1007 (9th Cir. 1995) (there is a clearly established "First Amendment right to challenge the police. Even when crass and inarticulate, verbal challenges to the police are protected."); Duran v. City of Douglas, Arizona, 904 F.2d 1372, 1378 (9th Cir. 1989) ("[W]hile police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment").[8]

The facts alleged in the FAC demonstrate the Officers' retaliatory animus. The Officers' purpose and intent in arresting plaintiff was to deprive him of his freedom of speech. FAC ¶ 29 The Officers knew or should have known that plaintiff was not violating any laws and was not subject to arrest. Id. ¶ 24. When the Officers demanded that plaintiff stop his car, give them his cell phone camera, and then get out of his car, they intended to create an imminent apprehension on plaintiff's part that they would use unreasonable force against plaintiff, including taking plaintiff's cell phone camera away from him if plaintiff did not cooperate with them, and handcuffing him. Id. ¶ 43. Plaintiff believed and anticipated that the Officers would forcibly take Plaintiff's camera away from him and forcibly restrain him with handcuffs, which they did. Id. ¶ 44. All of these facts, taken as true, establish the Officers' retaliatory animus - there was

---

[8] Compare other cases where First Amendment protection of speech directed at police officers has been upheld: Lewis v City of New Orleans, 415 U.S. 130 (1974) (plaintiff yelling obscenities and threats at an officer who was attempting to obtain a driver's license from the plaintiff's husband); McCurdy v. Montgomery County, 240 F.3d 512, 520 (6th Cir. 2001) (plaintiff repeatedly cursed at officers and refused to provide identification).

12

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

no need for the Officers to make such a hasty arrest of Mr. Adkins, nor was there any need to handcuff him or take away his cell phone camera. The Officers' took these actions because Mr. Adkins had the temerity to tell *them* what the law was.

The Officers make short shrift of the retaliatory arrest claim, stating that "it is Adkins' admitted refusal to get out of the car, not his belief of the state of the law governing photographs at accident scenes, which provide context to the questions of probable cause and qualified immunity he presents." Mot. at 15. But this conclusory statement does nothing to establish the Officers' entitlement to qualified immunity. Arresting someone in retaliation for the exercise of free speech rights is violative of law clearly established years ago. <u>Beck</u>, 527 F.3d at 871 (since 1990, it was "well established . . . that governmental officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows - or should know - that much"), *quoting* <u>Duran</u>, 904 F.2d at 1378. The Officers are not immune from suit for plaintiff's retaliatory arrest claim; they should have known that they were exercising their authority to arrest Mr. Adkins in violation of his well-established First Amendment rights. <u>See Beck,</u> 527 F.3d at 871 (police officers not entitled to qualified immunity on retaliatory arrest claim where they arrested plaintiff after he told police chief "you don't know who you're dealing with"); <u>Duran</u>, 904 F.2d at 1377 (police officer not entitled to qualified immunity on retaliatory arrest claim where he arrested plaintiff for making obscene gestures and yelling profanities in Spanish at him).

     B.    <u>Mr. Adkins' arrest for taking photographs of the automobile accident scene and the Officers' seizure of his cell phone camera constitutes an unlawful prior restraint of his First Amendment rights.</u>

"The protection of the First Amendment is not limited to written or spoken words, but

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

includes other mediums of expression, including music, pictures, films, *photographs*, paintings, drawings, engravings, prints and sculptures." ETW Corp. v. Jireh Pub., Inc., 332 F.3d 915, 925 (6th Cir. 2003) (emphasis added); Univ. of Alabama Bd. of Trustees v. New Life Art Inc., 2009 WL 5213713 * 14 (N.D. Ala.); see Kaplan v. California, 413 U.S. 115, 118-19 (1973) (recognizing pictures have First Amendment protection unless obscene). Photography that has a communicative or expressive purpose enjoys some First Amendment protection. Gilles v. Davis, 427 F.3d 197, 212 n.14 (3d Cir. 2005); (the protection of the First Amendment includes photographs); Showalter v. Brubaker, 493 F.Supp.2d 752, 756 (E.D. Pa. 2007), aff'd, 283 Fed. Appx. 33 (3d Cir. 2008), citing D'Amario v. Providence Civic Center, 639 F. Supp. 1538, 1541 (D.R.I. 1986) ("Photography, itself, is conduct with limited First Amendment protection").[9]

The automobile accident was a matter of public interest and concern. It was a matter of particular concern to Mr. Adkins because he and his family know the driver of the green truck – he is their next-door neighbor – and the accident occurred in their neighborhood. Mr. Adkins would have shown the photographs of the automobile accident to his family, friends, and especially his Paseo de Oro neighbors, who have an interest in events in their neighborhood. He also would have shown the photographs to his sons in a "teachable moment" about the dangers of drinking and driving.[10] The purpose of his photography, therefore, was communicative.

---

[9] See also Smith v. City of Cumming, 212 F3d 1332, 1333 (11th Cir. 2000) (videotaping or photographing the police in the performance of their duties on public property may be a protected activity; Enlow v. Tishomingo County, Miss., 962 F.2d 501, 509 (5th Cir. 1992) (plaintiff's repeated inquiries as to whether officers had search or arrest warrants, and his photographing of the officers as they executed their search, enjoyed First Amendment protection); Porat v. Lincoln Towers County Ass'n, 2005 WL 646093, at *4 (S.D.N.Y.) ("[c]ommunicative photography is well protected by the First Amendment"); Baker v. City of New York, 2002 WL 31132880, at *5 (S.D.N.Y.) ("[i]t is undisputed that [plaintiff's] street photography is First Amendment expression and that his expression takes place in a traditional public forum").

[10] The Officers feign outrage over "rubber-necking members of the public. . . who have no reason to be there" and who may distract investigating officers and compromise evidence. Mot. at 12, n.6. But there are no facts alleged in the FAC which show that there was any perimeter established by the officers to prevent the public or the press from gaining access to the accident and the Officers were obviously not investigating the accident, since they had all the time in the world to stop and harass Mr. Adkins and then take him to a police station. Moreover, any concern about

In <u>Robinson v. Fetterman,</u> 387 F.Supp.2d 534, 540-541 (E.D. Pa. 2005), the plaintiff suspected that state troopers were inspecting trucks in an unsafe manner. After expressing this view to the state legislature, he started videotaping the inspections from a distance. He was arrested and convicted of harassment, but his conviction was later reversed and the charges dismissed. Thereafter, he filed a 1983 action alleging, among other things, a violation of his right to free speech. The court concluded that the plaintiff had stated a claim, as "[v]ideotaping is a legitimate means of gathering information for public dissemination." <u>Id.</u> The court held that "there can be no doubt that the free speech clause of the Constitution protected [the plaintiff] as he videotaped the defendants . . . (citations omitted). 387 F. Supp.2d at 541. Similarly, the First Amendment protected Mr. Adkins as he photographed the accident scene.

It is of no moment that Mr. Adkins desired to show his photographs in a private communication between individuals or as speech to a limited audience. The First Amendment applies not just to communications broadcast to the public at large but also to private speech between individuals. <u>See, e.g.,</u> <u>Rankin v. McPherson,</u> 483 U.S. 378 (1987) (private comment by one employee to another entitled to protection).

The Officers rely heavily upon <u>Chavez v. City of Oakland,</u> 2009 WL 1537875 (N.D. Cal. 2009), where the district court granted qualified immunity to highway patrol officers. Chavez, a newspaper photographer, was arrested for exiting his car on a freeway to take photographs of an accident, after specifically being instructed not to and to move on by police. The only similarity between Chavez and this case is the fact that both Mr. Adkins and Mr. Chavez photographed an automobile accident. Otherwise, there are two critical differences. First, Chavez had exited his vehicle on the freeway, left his vehicle unattended, and stood in the freeway to take photographs

---

compromising evidence is unwarranted, since Mr. Adkins was in his car and not anywhere close to the green truck. Finally, the Officers' fear of compromising evidence is contradicted by the fact that a police sergeant ordered Mr. Adkins to *delete* the photos in his camera. FAC ¶ 16.

15

of the accident, in clear violation of California Vehicle Code §22400.[11]   By contrast, Mr.

Adkins had not exited his vehicle to stand out in the road, leaving his vehicle unattended; when

he took his pictures, he remained in his car. Second, the district court held that Chavez "did not

have a First Amendment right to take the photograph in the first place *in the absence of evidence*

*that the general public is allowed such access to accident sites, and this accident in particular.*"

2009 WL 1537875 *3 (Emphasis added).  Chavez did not offer any evidence suggesting that the

general public had a right to exit their vehicles on the freeway and stand in the freeway to take

photographs. Id.  Here, however, there is sufficient evidence that other members of the general

public were allowed access to the accident at Paseo de Oro.  An "online viewer" uploaded two

photographs of the accident, which were posted on the KUAM website on October 4, 2009, the

date of the accident. See http://www.kuam.com/Global/story.asp?s=11254049&clientype.  It is

obvious that the "online viewer's" camera was not seized, nor was he or she stopped, detained,

or arrested for taking photographs of the accident, as Mr. Adkins was.

More to the point is Connell v. Town of Hudson, 733 F. Supp. 465 (D.N.H. 1990).

Connell, a news photographer, took pictures of an automobile accident.  The acting police chief

reasoned that because Connell infringed upon the scene of an accident that was being

investigated by the police, he could restrict Connell's access to the scene, and he ordered Connell

away.   The district court disagreed, holding that the acting chief "can fairly be held to the

understanding that he could not chase a photographer away from an accident unless that

photographer was unreasonably interfering with police activity." 733 F. Supp. at 471.  There

was no evidence supporting such interference; the acting chief was denied qualified immunity

and properly held to be liable for violation of Connell's First Amendment rights. Id.   Like

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

---

[11]  The Chavez court held, ". . . common sense dictates that members of the general public are not allowed to exit
their cars in the middle of the freeway to view an accident scene." 2009 WL 1537875 *3.

Connell, taking the FAC's factual allegations as true, there is no evidence to suggest that Mr. Adkins' photography interfered with police investigation of the automobile accident. The situation here is more egregious than Connell because here Mr. Adkins was not merely chased away, he was arrested and confined and his cell phone camera was seized.

Mr. Atkins' final First Amendment claim is that the Officers' seizure of his cell phone camera, which prevented him from taking any more photographs or from showing them to anyone, constituted an unlawful prior restraint of his protected speech. See Fetterman, 387 F. Supp.2d at 541 (" . . . to the extent that the troopers were restraining [the plaintiff] from making any future videotapes and from publicizing or publishing what he had filmed, the defendants' conduct clearly amounted to an unlawful prior restraint upon his protected speech."); Channel 10, Inc. v. Gunnarson, 337 F. Supp. 634, 638 (D. Minn. 1972) (finding that the police seizure of a reporter's camera constituted a prior restraint in violation of the First Amendment); see also Association de Periodistas de Puerto Rico v. Mueller, 2007 WL 5312566 *4 (D. Puerto Rico) (finding no First Amendment violation where law enforcement agents did not ask plaintiffs to turn over their cameras or film).

In sum, Mr. Adkins' First Amendment rights are clearly established: his right to be free of a retaliatory arrest based upon exercise of his free speech rights, Beck, 527 F.3d at 871; his right to take photographs of a matter of public interest for a communicative purpose, Fetterman, 387 F.Supp.2d at 540-541, and his right to be free of an unlawful prior restraint of speech. See id. These First Amendment rights were so clearly established that the Officers should have known that they were acting illegally when they arrested Mr. Adkins and confiscated his cell phone camera. Anderson, 483 U.S. at 640.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

## III.    THE OFFICERS HAVE NO STATUTORY IMMUNITY FROM LIABILITY.

Citing 8 G.C.A. §§ 20.15(a)(2) and (b), the Officers contend that they are immune from liability for the local law claims. This contention rests solely on the argument that there was probable cause to arrest Mr. Adkins which, as demonstrated amply above, is erroneous. Accordingly, these statutes do not apply to immunize the Officers from liability.

## IV.    THE DOCTRINES OF MOOTNESS, STANDING, AND ABSTENTION ARE INAPPLICABLE HERE.

The Officers incorporate by reference the arguments of mootness, standing, and abstention asserted by the Attorney General in her motion to dismiss. Mr. Adkins incorporates by reference herein his memorandum in opposition to the Attorney General's motion to dismiss. The only remaining issue, not addressed in his opposition to the AG's motion to dismiss, is that Mr. Adkins must show that his injuries "fairly can be traced to the challenged actions" of the Officers (the first prong of the standing test). Whitmore v. Arkansas, 495 U.S. 149, 155 (1980). Mr. Adkins easily meets that requirement. The allegations of the FAC, taken as true, lead to more than a plausible inference that the Officers illegally detained him, arrested him, seized his cell phone camera, and violated his civil and constitutional rights.

## CONCLUSION

In Bell Atlantic Corp. v Twombly, 550 U.S. 544, 557 (2007), the Supreme Court held that a plaintiff must plead a set of facts "plausibly suggesting (not merely consistent with)" his claims to survive a motion to dismiss. In Ashcroft, 129 S. Ct. at 1949, the Supreme Court elaborated on the plausibility standard in Twombly: "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., quoting Twombly, 550 U.S. at 556.

For a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. Moss v. Secret Service, 572 F.3d 962, 966 (9th Cir. 2009). The facts pled in the First Amended Complaint, taken as true, preclude qualified or statutory immunity for defendants Artui and Anciano. Plaintiff has standing to sue, the case is not moot, and abstention does not apply here.

For all of the foregoing reasons, plaintiff James L. Adkins respectfully requests that the motion to dismiss filed by defendants D.B. Anciano and Serafino Artui should be denied in its entirety. In the event that the Court grants the motion to dismiss, plaintiff James L. Adkins respectfully requests that the Court grant him leave to amend his First Amended Complaint. Moss, 572 F.3d at 964.

Dated this 20th day of January, 2010.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiff James L. Adkins


By: _____
ANITA P. ARRIOLA

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2010, a true and correct copy of Plaintiff James L. Adkins' Memorandum of Points and Authorities in Opposition to Motion to Dismiss filed by Defendants Serafino Artui and D.B. Anciano was personally delivered to:

**J. PATRICK MASON, ESQ.**
Deputy Attorney General
Office of the Attorney General
287 West O'Brien Drive
Hagatna, Guam   96910

**JAMES T. MITCHELL, ESQ.**
Legal Counsel
Guam Police Department
Bldg. 233, Central Ave.
Tiyan, Guam  96913

Dated this 20th day of January, 2010.

_____
**ANITA P. ARRIOLA**