ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, ESQ.
LEEVIN T. CAMACHO, ESQ.
**ARRIOLA, COWAN & ARRIOLA**
259 MARTYR STREET, SUITE 201
P.O. BOX X, HAGATNA, GUAM 96910
TELEPHONE: (671) 477-9730/33
TELECOPIER: (671) 477-9734

Attorneys for Plaintiff James L. Adkins

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS, | CIVIL CASE NO. CV09-00029 |
| Plaintiff, | |
| vs. | |
| ALICIA G. LIMTIACO, ATTORNEY GENERAL OF GUAM; OFFICE OF THE ATTORNEY GENERAL OF GUAM; PAUL SUBA, CHIEF OF GUAM POLICE DEPARTMENT; GUAM POLICE DEPARTMENT; D.B. ANCIANO; SERAFINO ARTUI; AND DOES I THROUGH X, | |
| Defendants. | |

**PLAINTIFF JAMES L. ADKINS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT PAUL SUBA**

## INTRODUCTION

Defendant Paul Suba ("Suba") has moved to dismiss plaintiff James Larry Adkins' ("Mr. Adkins") claims under Rule 12(b)(6) against Suba in both his individual and official capacities. The ground for Suba's motion is that he is entitled to the defense of qualified immunity. Specifically, Suba contends that the First Amended Complaint ("FAC") does not set forth facts connecting him to the violations of Mr. Adkins' constitutional rights. Incredibly, Suba, Chief of Police for the Guam Police Department ("GPD"), argues in his motion that he is in no way responsible for the lack of training, supervision and guidance of police officers at GPD. This argument is directly contrary to 10 G.C.A. § 77107, which details the duties of the Chief of Police and which specifically require him "to adopt rules, guidelines and policies to insure GPD's resposiveness to the safety, security and peace-keeping needs of the community." 10 G.C.A. § 77107(g).

Construing all facts and reasonable inferences in his favor, Mr. Adkins he has more than adequately demonstrated in his Opposition briefs that defendants D.B. Anciano ("Anciano") and Serafino Artui ("Artui') (collectively "the Officers") and other GPD officers violated Mr. Adkins' clearly established First, Fourth, and Fourteenth Amendment rights. He was illegally detained, illegally questioned, illegally arrested, illegally handcuffed, his cell phone camera was illegally seized, and he was illegally incarcerated, booked and fingerprinted. These unlawful actions were taken by several police officers and a police sergeant at two precincts, which demonstrate that these problems are not isolated, but rather are systematic and prevalent throughout GPD. These constitutional violations were a direct result of Suba's failure to fulfill his responsibilities as the Guam Chief of Police and reflect a policy of GPD and Suba of

1

deliberate indifference to the rights of Mr. Adkins in particular and the people of Guam in general. Suba's motion to dismiss should be denied.

## STANDARD

"[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009)(citing Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

### I. SUBA'S FAILURE TO ADEQUATELY TRAIN POLICE OFFICERS LED DIRECTLY TO A VIOLATION OF CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right;[1] and (2) if so, whether the right was clearly established in light of the specific context of the case." al-Kidd v. Ashcroft, 580 F.3d 949, 965 (9th Cir. 2009). In cases involving qualified immunity asserted by supervisors in a section 1983 claim, "courts have also evaluated personal involvement in the deprivation of the right at the second stage of the qualified immunity analysis." Id.

In evaluating a claim for supervisory liability pursuant to section 1983 in a motion to dismiss, this Court has observed that "[a]t this early stage of the proceedings, [plaintiff] does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights. Rather, he must state the allegations generally so as to provide notice to the

---

[1] Mr. Adkins incorporates by reference herein his Opposition to the Motion to Dismiss filed by the Officers, which detail extensively the violations of plaintiff's First, Fourth, and Fourteenth Amendment rights.

2

defendants and alert the court as to what conduct violated clearly established law." Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (citing Hydrick v. Hunter, 466 F.3d 676, 689-09 (9th Cir. 2006)). "Indeed, we do not see how, prior to discovery, [a plaintiff] *could* plead the individual roles of each state officer with any more specificity." Hydrick, 466 F.3d at 689.

"[D]irect, personal participation is not necessary to establish liability for a constitutional violation." Kwai Fun Wong v. United States, 373 F.3d 952, 966 (9th Cir. 2004). Supervisors can be held liable for the actions of their subordinates: (1) for setting in motion a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others." al-Kidd v. Ashcroft, 580 F.3d at 965 (citations omitted). "Any one of these bases will suffice to establish the personal involvement of the defendant in the constitutional violation." Id.

    A.    <u>Suba was personally involved in the deprivation of Mr. Adkins' constitutional rights, as he failed to fulfill his statutory duties to adequately train and supervise GPD police officers which led directly to Mr. Adkins' injuries.[2]</u>

---

[2] "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989); Price v. Sery, 513 F.3d 962, 973 (9th Cir. 2008). There are two ways in which a plaintiff can show a failure to train claim under section 1983. First, a plaintiff can allege that the "existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the 'moving force' behind the plaintiff's injury". Board of County Commissioners v. Brown, 520 U.S. 397, 407 (1997). Second, a plaintiff may prove a failure to train claim without showing a pattern of constitutional violations where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. Id., 520 U.S. at 409;[2] Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir. 2006). Mr. Adkins has sufficiently alleged a failure to train claim under both tests. He incorporates by reference herein his Opposition to the Motion to Dismiss filed by the Office of the Attorney General, GPD, and the Officers.

Plaintiff has alleged that Suba "is responsible for the implementation and enforcement of the Act and the Charge, and for training police officers and ensuring that they comply with the law in implementing and enforcing the Act and the Charge." FAC ¶ 7. This allegation, taken as true, is supported by Guam law. Suba, as the Chief of Police, has the statutory duty to, among other things, adopt procedures, rules and regulations for the conduct and efficient operation of the Guam Police Department ("GPD"), require GPD to maintain pace with current professional developments and community standards; and adopt rules, guidelines and policies to insure GPD's responsiveness to the safety, security and peace-keeping needs of the community. 10 G.C.A. § 77107.[3]

The well-pled factual allegations of the FAC, which must be taken as true,[4] lead to a strong inference that Anciano, Artui, and the other police officers involved in Mr. Adkins' arrest were not properly trained or supervised concerning the detention or arrest of individuals or the seizure of their property. This failure to train or to supervise amounts to deliberate indifference

---

[3] 10 GCA § 77107 states in its entirety:

The Chief of Police shall have the following duties:

(a) to adopt, internal standard operating procedures, general orders or directives, administrative and operational standards, and subject to the provisions of the Administrative Adjustication Law, rules and regulations for the conduct and efficient operation of the Department;
(b) to prepare the Department's annual budget for approval by the Governor and submissions to the Guam Legislature;
(c) to submit an annual report to the Governor of Guam and the Guam Legislature;
(d) to receive, consider and investigate allegations brought by the public concerning any conduct of the Department through its officers or employees, and to take appropriate action thereon;
(e) to maintain a chronology of information concerning the effectiveness of the Department's operation;
(f) to require the Department to maintain pace with current professional developments and community standards; and
(g) to adopt appropriate rules, guidelines and policies to insure the Department's responsiveness to the safety, security and peace-keeping needs of the community.

[4] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give use to an entitlement to relief." Ashcroft v. Iqbal, ___U.S. ___, 129 S. Ct. 1937, 1949-50 (2009).

of the First, Fourth and Fourteenth Amendment rights of Mr. Adkins.[5] The most basic principle of Fourth Amendment law is that police officers must have a reasonable suspicion that an individual is committing a crime or has committed a crime. Terry v. Ohio, 392 U.S. 1, 29 (1968). Anciano and Artui had no reasonable suspicion to justify detaining Mr. Adkins. Their continued detention of Mr. Adkins was also unjustified and their demand for his cell phone was without probable cause. Illinois v. Caballes, 543 U.S. 405, 408 (2005) (a seizure that is justified solely by issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission). Anciano and Artui then arrested Mr. Adkins without a warrant and without probable cause. They seized his cell phone camera without a warrant and without probable cause. It is clear that Anciano and Artui lacked any proper training or supervision about the very basic Fourth Amendment rights to be accorded to individuals in a vehicle stop, detention, arrest, or seizure of property.

But the lack of training and supervision did not stop with Anciano and Artui. It continued with the other police officers at the Tumon and Hagatna stations. When Mr. Adkins was taken to the Tumon precinct, no one reviewed the reasons behind Mr. Adkins' arrest or the seizure of his cell phone camera. Instead, the police sergeant ordered Mr. Adkins to delete the photos from his cell phone camera, in clear violation of Mr. Adkins' First and Fourth Amendment rights. When Mr. Adkins was taken to the Hagatna station, no one questioned whether there was probable cause for his arrest or the seizure of his cell phone camera.

---

[5] The Ninth Circuit has consistently found that a jurisdiction's lack of affirmative polices or procedures to train or guide employees can amount to deliberate indifference, even when there are other general policies in place. See Gibson v. County of Washoe, 290 F.3d 1175, 1198-94 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003) (county policy which precluded medical evaluation for incoming detainees was sufficiently likely to result in violation of detainees' right to medical care and county was deliberately indifferent to those needs); Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 1992) ( city's failure to instigate procedures to alleviate problem of detaining individuals on the wrong warrant could constitute a policy of deliberate indifference where plaintiff was detained for 12 days); Oviatt, 954 F.2d at 1478 (lack of procedures to alleviate problem of detecting missed arraignments – which resulted in plaintiff's prolonged detention without an arraignment, bail hearing, or trial was policy of inaction that amounted to deliberate indifference to pretrial detainees' constitutional rights).

5

All of the foregoing facts lead to the inescapable conclusion that Suba failed in his statutory duties to adopt procedures, rules and regulations for the conduct and efficient operation of GPD; to require GPD to maintain pace with professional developments and community standards; or to adopt rules, guidelines and policies to insure GPD's responsiveness to the safety, security and peace-keeping needs of the community. No one questioned the initial stop of Mr. Adkins, even though it is clearly established that police officers cannot stop people without reasonable suspicion. No one questioned the Officers when they arrested Mr. Adkins for challenging their authority to demand his cell phone. When Mr. Adkins was transported to the Tumon precinct, the Officers' actions were not only accepted, but a police sergeant met with Mr. Adkins and demanded that he delete the photographs from his cell phone camera, in clear violation of his First Amendment rights. Mr. Adkins was finally brought to the Hagatna precinct where one can reasonably infer that other officers became aware of the circumstances surrounding his arrest. No one questioned the decision to issue a notice to appear to Mr. Adkins for "failure to comply" or "obstructing governmental function."

Taking all the well-pled facts to be true and construing all inferences in favor of Mr. Adkins, there is a strong inference that there is a widespread lack of training for GPD police officers on even the most basic criminal law requirements, such as the requirement of reasonable suspicion to make a vehicle stop or detain an individual. These allegations sufficiently allege Suba's personal participation and involvement in the violations of Mr. Adkins' rights due to his failure to execute the duties mandated to him under Guam law. See Menotti v. City of Seattle, 409 F.3d 1113, 1114 (9th Cir. 2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)) ("[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action *or inaction in the training, supervision, or*

6

*control of his subordinates*, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others.") (emphasis added); see also Cummingham v. Gates, 229 F.3d 1271, 1291 (9th Cir. 2000). All of Mr. Adkins' constitutional injuries would have been avoided had Suba properly trained these officers. See City of Canton, 489 U.S. at 389-90 (plaintiff must show that his or her constitutional injury "would have been avoided had the governmental entity properly trained its employees").

      B.    <u>Suba's adoption of policies and customs that resulted in a failure to train GPD officers set in motion a series of acts by the Officers, which Suba knew or reasonably should have known would cause others to inflict constitutional injury.</u>

Liability against a chief of police in his official capacity can be found "if policy or custom or a one-time decision by a governmentally authorized decisionmaker played a part in the violation of federal law." Larez, 942 F.2d at 646. In Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991), the Ninth Circuit held that "[s]upervisory liability exists *even without overt personal participation in the offensive act* if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'". The requisite causal connection can be established by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Redman, 942 F.2d at 1448 (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

Without question, Suba is the official policymaker for GPD. See 10 GCA § 77107. Taken as true, the facts in the FAC fully support Mr. Adkins' allegations that Suba, with deliberate indifference to the constitutional rights of persons in Guam, maintained or permitted one or more of the following official policies or customs: failure to provide adequate training and

7

supervision to police officers with respect to constitutional limits on the arrest of individuals and seizure of property; failure to provide adequate training and supervision to police officers with respect to the proper procedures to be followed in dealing with individuals who are exercising their right of free speech; failure to take adequate steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct; and ratification of the summary punishment handed out by officers who arrest individuals or seize property under the Act or the Charge without probable or reasonable cause. FAC ¶ 21. These customs and policies were so deficient that they were themselves repudiations of constitutional rights and they were the "moving force" behind the Officers' constitutional violations of Mr. Adkins' rights. Redman, 943 F.2d at 1446.

A person "subjects" another to deprivation of a constitutional right, within the meaning of section 1983, if he "omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).[6] Suba's failure to perform his statutory duties in providing appropriate training and supervision of GPD police officers constitutes a sufficient causal connection between his wrongful conduct and the violation of Mr. Adkins' rights. Redman, 943 F.2d at 1446; see Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them."); Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)

---

[6] As the Ninth Circuit has observed, if there was no violation of rights, there is "no basis for finding the officers inadequately trained." Long v. City and County of Honolulu, 511 F.3d 901, 907 (9th Cir. 2007), quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). The converse is equally true – where there are so many violations of basic constitutional and civil rights, as is the case here, there is more than sufficient basis for finding the officers inadequately trained.

8

(plaintiff may establish deliberately indifferent character of a failure to train by alleging a program-wide inadequacy in training); Larez, 946 F.2d 630 at 646 (failure to establish new procedures for averting the reoccurrence of similar excesses in the future). As a direct result of Suba's failure to train and adequately supervise GPD police officers, he set in motion a series of acts by them, which he knew or reasonably should have known, would result in deliberate indifference to the constitutional rights of individuals like Mr. Adkins. Redman, 942 F.2d at 1448.

II. **ALERNATIVELY, MR. ADKINS REQUESTS LEAVE TO AMEND HIS FIRST AMENDED COMPLAINT.**

"Courts are free to grant a party leave to amend whenever justice so requires, and requests for leave should be granted with extreme liberality. Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Moss, 572 F.3d 962, 972 (9th Cir. 2009). Mr. Adkins has properly stated claims against Suba in both his individual and official capacity. If this Court decides the facts alleged in the FAC do not create a reasonable inference that Suba is liable for his misconduct, Mr. Adkins requests leave to amend his First Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## CONCLUSION

For all of the foregoing reasons, plaintiff James L. Adkins respectfully requests that the Court deny the motion to dismiss filed by defendant Paul Suba.

Dated this 20th day of January, 2010.

ARRIOLA, COWAN & ARRIOLA<br>
Attorneys for Plaintiff James L. Adkins<br>
By: _____<br>
**ANITA P. ARRIOLA**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2010, a true and correct copy of Plaintiff James L. Adkins' Memorandum of Points and Authorities in Opposition to Motion to Dismiss filed by Defendant Paul Suba was personally delivered to:

**J. PATRICK MASON, ESQ.**
Deputy Attorney General
Office of the Attorney General
287 West O'Brien Drive
Hagatna, Guam 96910

**JAMES T. MITCHELL, ESQ.**
Legal Counsel
Guam Police Department
Bldg. 233, Central Ave.
Tiyan, Guam 96913

Dated this 20th day of January, 2010.

_____
**ANITA P. ARRIOLA**