

Office of the Attorney General
Alicia G. Limtiaco
Attorney General of Guam
J. Patrick Mason
 Deputy Attorney General
Civil Division
287 West O'Brien Drive
Hagåtña, Guam 96910   USA
(671) 475-3324   (671) 472-2493 (Fax)
www.guamattorneygeneral.com

**Attorneys for the Government of Guam**

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| **JAMES L. ADKINS**, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **ALICIA G. LIMTIACO, etc., et al.**, ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Case No. 09-00029 <br><br> **DEFENDANT ATTORNEY GENERAL ALICIA G. LIMTIACO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS & SUPPORTING MEMORANDUM OF LAW** |

James Adkins has sued the Attorney General of Guam, two police officers and Guam's chief of police asking the court to enjoin them from ever prosecuting him for, he says, taking photos of an accident scene with his cell phone, arguing with police about his constitutional right to take photos, and refusing to exit his vehicle upon command. He was originally charged by the police with obstructing governmental operations and failure to comply,[1] but the Prosecution Division of the Office of Attorney General had within days of his arrest and two months before

---

[1] *See* 9 GCA § 55.45 (obstruction of governmental operations), and 16 GCA § 3503.3 (failure to comply). Throughout his complaint, Adkins refers to 9 GCA § 55.45 as "the Act," and to 16 GCA § 3503.3 as "the Charge."

he filed this lawsuit, issued a memorandum declining prosecution. Nevertheless, Mr. Adkins continues to claim "[a] controversy has arisen between plaintiff and defendants relative to their legal rights and duties under the Act and the charge" for which he was arrested; that "[i]f the Act and the Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration"; and that "[u]nless and until the relief demanded in this complaint is granted, plaintiff has good reason to believe that his civil rights, right of free speech, right to privacy, right to be free of unlawful arrest and seizure, and right to due process of law will continued to be infringed, chilled, threatened, impeded and otherwise interfered with." (FAC ¶¶ 58, 64, 65). Claiming the local statutes under which he was charged are void for vagueness,[2] and refusing to concede his federal claims for declaratory and injunctive relief were moot two months before they were filed, Mr. Adkins insists he is entitled to a declaration that he may never be prosecuted not merely for the events of October 4, 2009, but ever again, under any circumstances.

---

[2] A facial "void for vagueness" challenge is simply impossible to mount in the circumstances presented by Mr. Adkins' complaint. "A statute must be sufficiently clear so as to allow persons of ordinary intelligence a reasonable opportunity to know what is prohibited. Statutes that are insufficiently clear are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. * * * When a statute clearly implicates free speech rights, it will survive a facial challenge so long as it is clear what the statute proscribes in the vast majority of its intended applications. Outside the First Amendment context, a plaintiff alleging facial vagueness must show that the enactment is impermissibly vague in all its applications." *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1146 (9th Cir. 2009) (internal quotations and citations omitted). Given the numerous federal cases that discuss local "obstructing governmental operations" and "failure to comply" statutes in the context of first and fourth amendment claims for damages without a hint that their proscriptions are unclear, *see, e.g., Defendants Serafino Artui's and D.B. Anciano's Motion to Dismiss & Supporting Memorandum of Law*, pp. 12 – 13, notes 6 – 7 and accompanying text, Mr. Adkins cannot argue that persons of ordinary intelligence do not have a reasonable opportunity to know what is prohibited, or that such statutes are subject to facial attack.

When he filed this lawsuit, Mr. Adkins did not know that the Attorney General had declined to prosecute two months earlier. Know that he knows, he cannot now dispute that if the Attorney General had *not* declined to prosecute, and his criminal charges were still pending, then the *Younger* abstention doctrine would bar his claims for declaratory and injunctive relief against the Attorney General. *See Younger v. Harris*, 401 U.S. 37 (1971). To avoid the jurisdictional bar of the *Younger* abstention doctrine, Mr. Adkins has modified the argument presented in his complaint "that he will face criminal prosecution and incarceration" if his prosecution is not enjoined. Now he argues that *Younger* does not apply because "no judicial proceeding was filed in local Guam courts nor is one pending …." *Plaintiff's Opp.* [Doc. 39] p. 14.

If there is *not* a pending prosecution, nor an imminent threat of a prosecution, there is simply nothing to review, it is non-justiciable. Nevertheless, Mr. Adkins will not concede that his claims against the Attorney General and remaining defendants in their official capacities were moot before they began, relying entirely and exclusively on his claim of past injury to support his demand for future declaratory and injunctive relief. But past injury is not enough to confer standing to ask for prospective relief absent a credible and imminent threat that prosecution will occur should Adkins seek to exercise his claimed constitutional privilege to engage in conduct which, he alleges, resulted once in his arrest. Mr. Adkins may have standing in a suit for damages against the officers who arrested him, but he must demonstrate separately that he has standing with respect to his demand for prospective injunctive and declaratory relief. " '[A] plaintiff must demonstrate standing separately for each form of relief sought.' Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment. *See id*. at 185-86." *Mayfield v. United States*, 583 F.3d 1252, 1257-58 (9th Cir. 2009) (editorial

brackets in original) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000); and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Mr. Adkins is required to allege he has suffered an "injury in fact," that is, the violation of a protected interest that is (a) "concrete and particularized," and (b) "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Mr. Adkins' complaint fails this part of the analysis. For prospective declaratory or equitable relief to obtain, the Supreme Court requires not merely that the violation of a protected interest be "concrete and particularized," but also, that it be "actual or imminent." Without a showing that he faces a real or immediate threat *that he may be injured again in a similar way*, Mr. Adkins' claim of past injury at the hands of two police officers, for which he may or may not be entitled sue for damages, is insufficient to assert a claim for prospective injunctive or declaratory relief against the Attorney General and remaining defendants in their official capacities. It is too remote and speculative.

> To establish Article III standing, a plaintiff must show *inter alia* that he faces imminent injury on account of the defendant's conduct. *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. *Id*. at 564, 112 S.Ct. 2130. Nor does speculation or "subjective apprehension" about future harm support standing. *Friends of the Earth*, 528 U.S. at 184, 120 S.Ct. 693; *see also Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat ... that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660 (1983).

*Mayfield*, 583 F.3d 1258 (editorial ellipsis in original). Mr. Adkins insists in the heading of his opposition at p. 4, that "there is a genuine, credible threat of prosecution," but he alleges no facts to substantiate what is nothing more than a legal conclusion. He offers nothing more than that the

4

Attorney General has the power to prosecute him and therefore *may* do so in the future, because, she "believes" the statutes at issue are constitutional.[3]

In order to pursue declaratory and prospective injunctive relief, Mr. Adkins must allege more than speculation as to what he believes. At a minimum, he must allege *facts* that if believed would demonstrate that he faces a credible and *imminent* threat of prosecution.

> When contesting the constitutionality of a criminal statute, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974. When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973). But "persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971); *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). When plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court. *Younger v. Harris*, *supra*, at 42, 91 S.Ct., at 749.

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298-99 (1979) (additional citations omitted; editorial brackets in original). Mr. Adkins *says* he "has a cognizable interest in the outcome," *Opp.*, p. 6, and that may be. But his insistence that "there continues to be a genuine, credible threat of imminent prosecution by the AG's office," *id.*, is entirely lacking in factual

---

[3] *See Opp.*, p. 6 ("The AG and her office believe that the statutes are constitutional and they will enforce the statutes by prosecuting plaintiff under both."). To prop up his argument, Mr. Adkins further speculates in footnote 4 that "[i]f the AG has no intention of prosecuting Mr. Adkins, she would have accepted plaintiff's counsel's request to Mason on December 7, 2009 that the parties stipulate to an order that the AG would not prosecute Mr. Adkins pending a final decision in this case." The Attorney General does not owe Mr. Adkins a gratuitous "stay out of jail free" card when two months before he filed his federal lawsuit she had already declined to prosecute. Mr. Adkins' traces his claim of future injury to the fact that the Attorney General has the authority and discretion to prosecute crime under Guam law, as though that were the factual equivalent of an actual threat to exercise that discretion in a particular manner. *See Opp.*, p. 11. It is incumbent upon Mr. Adkins to articulate more, that there exists an actual and imminent threat of future prosecution. He has not done that.

support. Unlike the cases he cites in opposition, Mr. Adkins alleges no actual facts, only naked conclusions. Despite the fact that the Attorney General declined to prosecute his arrest two months before filing suit in federal court, Mr. Adkins *infers* standing from the fact that the Attorney General will not concede the statutes' unconstitutionality or promise not to prosecute him, that she may in fact prosecute him in the future. The Fifth Circuit's decision in *KVUE, Inc. v. Moore*, 709 F.2d 922 (5th Cir. 1983), cited by Mr. Adkins at p. 14, note 8, is directly on point:

> A plaintiff may establish standing to sue in federal court by demonstrating that his federal rights are jeopardized by the action of a state. However, "persons having no fears of state prosecution except those that are imaginary or speculative ...." lack standing. A litigant may not, therefore, challenge the constitutionality of a state criminal statute merely because he desires to wipe it off the books or even because he may some day wish to act in a fashion that violates it.

*KVUE*, 709 F.2d 928 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971) (ellipsis in original); also citing *Boyle v. Landry*, 401 U.S. 77, 81 (1971); and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).[4]

It is true enough that "it is not [always] necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Or, as the Supreme

---

[4] Characterizing the Attorney General's offer to return Mr. Adkins' cell phone provided the evidence it contains is preserved as "self-serving," *Opp.*, p. 6 n. 5, Mr. Adkins cites *United States v. Oregon State Medical Soc.*, 343 U.S. 326 (1952), for the proposition that "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *Id.*, 343 U.S. 333 (citation omitted). But that truism does not apply, because the Attorney General has offered no such protestations and because Mr. Adkins has failed to articulate facts to suggest the Attorney General had a hand in any complained of constitutional violation, let alone that there is a "probability of resumption." What the case does say of relevance here is this: "It will simplify consideration of such cases as this to keep in sight the target at which relief is aimed. *The sole function of an action for injunction is to forestall future violations*. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured. All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to continue or recur." *Id.*, 343 U.S. 332 (emphasis added). The complaint in this case fails to articulate a single fact that lends credulity to any sense of "a real threat of future violation."

6

Court also said, "while a pending state prosecution provides the federal plaintiff with a concrete opportunity to vindicate his constitutional rights, a refusal on the part of the federal courts to intervene when no state proceeding is pending may place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Id.*, 415 U.S. 462. And it is true that whereas "one who seeks to challenge a state statute as violative of the federal constitution may not sue before he is truly injured; yet he may not wait until he is charged with a crime. He may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction." *KVUE*, 709 F.2d 928. But if Mr. Adkins is to move through that narrow door, he must articulate *facts* in his complaint that his future exercise of some constitutional right is at risk, that without federal declaratory relief the exercise of those rights may be chilled, not merely that he was injured in the past and prosecution declined. A would-be plaintiff does this by alleging an actual threat that is communicated in some fashion. The Fifth Circuit's discussion of *Steffel* in *KVUE* is again instructive:

> In *Steffel*, however, the Court found an actual controversy because the plaintiff had been twice warned to stop distributing handbills and had been told that, if he continued to pass out the leaflets, he would likely be prosecuted. In addition, his handbilling companion had been prosecuted. The Court stated that this evidence was "ample demonstration that petitioner's concern with arrest has not been 'chimerical.' In these circumstances, it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." 415 U.S. at 459, 94 S.Ct. at 1215-16, 39 L.Ed.2d at 514 (citation omitted). It was not necessary for the plaintiff to allege or demonstrate irreparable injury.

*KVUE*, 709 F.2d 928-29 (footnote omitted). *See also*, *Humanitarian Law Project v. U.S. Treasury Dept.*, 578 F.3d 1133, 1143 (9th Cir. 2009) ("In *Steffel*, there were specific warnings,

7

Case 1:09-cv-00029    Document 47    Filed 01/27/2010    Page 7 of 11

threats of enforcement, and prosecution of the plaintiff's handbilling companion under a local trespass ordinance before suit was brought. 415 U.S. at 459, 94 S.Ct. 1209. This was more than mere chilling effect.").

Unlike in *Steffel* (where one might add the right to pass out hand bills is a recognized form of free speech, and assuming for the sake of argument here that taking photographs at an accident scene is indeed always protected speech), Mr. Adkins does not allege anywhere in his complaint that he has been threatened in any way, or told by any law enforcement official that he will be arrested and prosecuted in the sense approved by the Supreme Court, should he engage in such conduct again.[5] Mr. Adkins does not allege that if the court does not decide his claim he will be made to choose "between abandoning his rights or risking prosecution." *MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 129 (2007).

Unlike handbilling in *Steffel*, Mr. Adkins does not allege he intends to stop at accident scenes in the future and take photos with his cell phone; he does not allege he has been told, warned or threatened that if he does so again, regardless of the circumstances, he will be arrested and prosecuted. Mr. Adkins is seeking an advisory opinion predicated upon speculation which may never come to pass. The only way for Mr. Adkins to "move through the narrow door" and seek prospective declaratory and injunctive relief would be for him to allege (1) that he intends to engage in the same conduct that resulted in his arrest once before, and (2) that he has been warned or threatened that if he does so, he will be arrested again and prosecuted. But he does not

---

[5] *Cf. Steffel*, 415 U.S. 476 (Stewart, J., concurring) ("The petitioner in this case has succeeded in objectively showing that the threat of imminent arrest, corroborated by the actual arrest of his companion, has created an actual concrete controversy between himself and the agents of the State. He has, therefore, demonstrated 'a genuine threat of enforcement of a disputed state criminal statute ....' Cases where such a 'genuine threat' can be demonstrated will, I think, be exceedingly rare.") (quoting the majority opinion at 415 U.S. 475; ellipsis in original). Mr. Adkins has made no *factual* allegation of any "threat of imminent arrest."

8

and cannot. Nor does Mr. Adkins allege in his complaint that there is an island-wide policy and practice among law enforcement to arrest and prosecute picture-takers at accident scenes. Indeed, the Attorney General's declining prosecution two months before this lawsuit was filed negates any inference of that kind, and renders the suggestion all the more speculative and fanciful. The Supreme Court's discussion in *Lyons* is directly on point.

> The Court reiterated the holding in *O'Shea* that past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy. The claim of injury rested upon "what one or a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception" of departmental procedures. 423 U.S., at 372, 96 S.Ct., at 604. This hypothesis was "even more attenuated than those allegations of future injury found insufficient in *O'Shea* to warrant [the] invocation of federal jurisdiction." *Ibid*. The Court also held that plaintiffs' showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of the named defendants, did not provide a basis for equitable relief.

*Lyons*, 461 U.S. 103-04 (editorial brackets in original; footnote omitted). "[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." *Id.*, 461 U.S. 108. Mr. Adkins recites no facts that even hint he may face arrest again let alone be prosecuted in a scenario similar to that which brings him before this court on his claim for damages against the police officers, he offers nothing but conjecture. Another of the cases Mr. Adkins cites in opposition is directly on point.

> [I]f no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes. A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable. *See Laird v. Tatum*, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972); *Chamber of Commerce v. FEC*, 69 F.3d 600, 603-04 (D.C.Cir.1995); *see also ACLU v. Florida Bar*, 999 F.2d 1486, 1492 (11th Cir.1993) (noting that when the claimed injury is one of self-censorship, the likelihood of enforcement action becomes an important factor in determining whether there is more than merely a

9

subjective chill). The bottom line is that, as long as a credible threat of prosecution exists, a litigant has standing to mount a pre-enforcement challenge to the facial constitutionality of a statute on the basis that her First Amendment rights arguably are being trammelled.

*New Hampshire Right to Life Political Action Committee v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996). Again, the fact that Mr. Adkins may have standing to assert a claim for damages against individual officers if it is determined they violated his clearly established constitutional rights does not satisfy standing to claim *prospective* equitable and declaratory relief, not without an "objectively reasonable" expectation that he will find himself in similar circumstances again.

> Absent a sufficient likelihood that he will again be wronged in a similar way, [Adkins] is no more entitled to an injunction than any other citizen of [Guam]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional…A federal court, however, is not the proper forum to press such claims unless the requirements for entry and the prerequisites for injunctive relief are satisfied.

*Lyons*, 461 U.S. 111-12 (citations and footnote omitted). Mr. Adkins' demands for prospective injunctive and declaratory relief are due to be dismissed.

## CONCLUSION

Alicia G. Limtiaco, Attorney General for the Territory of Guam, respectfully moves the court to be dismissed, and for entry of an order dismiss the entirety of plaintiff's demands for declaratory and injunctive relief against all defendants with prejudice.

ALICIA G. LIMTIACO, ATTORNEY GENERAL

\_\_\_\_/s/_____
J. PATRICK MASON
Deputy Attorney General
For defendants Limtiaco and Office of Attorney General

10

Case 1:09-cv-00029    Document 47    Filed 01/27/2010    Page 10 of 11

## CERTIFICATE OF SERVICE

  I hereby certify that on the 27th day of January I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X, Hagåtña, Guam 96910
Email: acalaw@teleguam.net

         /s/
         J. PATRICK MASON
         Deputy Attorney General