James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509   (671) 472-4036 (fax)
email: james.mitchell@gpd.guam.gov

Attorney for defendants Suba, Artui, Anciano,
and Guam Police Department

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br>    Plaintiff,<br><br>vs.<br><br>ALICIA G. LIMTIACO, etc., et al.,<br><br>    Defendants. | Civil Case No. 09-00029<br><br>**DEFENDANT PAUL SUBA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS & SUPPORTING MEMORANDUM OF LAW** |

  James L. Adkins has sued Guam Chief of Police Paul Suba in his official and individual capacities asserting that Suba "is responsible for the implementation and enforcement of the Act and the Charge,[1] and for training police officers and ensuring that they comply with the law in implementing and enforcing the Act and the Charge." (FAC ¶ 7) Mr. Adkins seeks damages, declaratory and injunctive relief. This reply is directed to Mr. Adkins' demand for damages.[2]

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual

---

[1] *See* 9 GCA § 55.45 (obstruction of governmental operations), and 16 GCA § 3503.3 (failure to comply). Throughout his complaint, Adkins refers to 9 GCA § 55.45 as "the Act," and to 16 GCA § 3503.3 as "the Charge."

[2] The Attorney General has filed a motion to to be dismissed, and to dismiss all claims for declaratory and injunctive relief against all defendants. (Docs. 27 and 47). All defendants have filed a separate joint motion to dismiss all claims against the "entity" defendants and all claims against those defendants sued in their official capacities. (Docs. 28 and 45). The arguments in those pleadings are adopted and incorporated by reference here. *See* Fed.R.Civ.P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (editorial brackets in original).

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009) (emphasis added). The allegations in Mr. Adkins' complaint against Chief Suba assert nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Twombly*, 550 U.S. at 555, nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

The only allegations of consequence against Chief Suba in the complaint are not statements of fact, but legal conclusions:

> 23. Defendants Suba, GPD, Anciano, Artui, and each of them, knew or should have known that plaintiff was not violating any laws and was not subject to arrest.

2

24. Upon information and belief, defendants Suba and GPD, with deliberate indifference to the constitutional rights of persons within their jurisdiction, maintained or permitted on or more of the following official policies or customs:

    A. Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the arrest of individuals and seizure of property;

    B. Failure to provide adequate training and supervision to police officers with respect to the proper procedures to be followed in dealing with individuals who are exercising their right of free speech;

    C. Failure to take adequate steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct;

    D. Ratification of the summary punishment handed out by officers who arrest individuals or seize property under the Act or the Charge without probable or reasonable cause.

(FAC ¶¶ 23, 24) These are the only statements in the complaint that refer in any way to Chief Suba, no more than boilerplate assertions of "failure to train and supervise" Officers Anciano and Artui, legal conclusions in the nature of respondeat superior, not allegations of fact that support a claim of supervisory liability under 42 U.S.C. § 1983.[3]

At page 1 of his opposition, Mr. Adkins argues, "Incredibly, Suba, Chief of Police for the Guam Police Department ("GDP"), argues in his motion that he is in no way responsible for the lack of training, supervision and guidance of GPD." That is not what Chief Suba said. What

---

[3] As explained previously, and as Mr. Adkins agrees, respondeat superior liability does not exist under 42 U.S.C. § 1983. *See Ewing v. City of Stockton*, 558 F.3d 1218, 1235 (9th Cir. 2009) ("[T]here is no respondeat superior liability under § 1983.") (citing *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983.")); and *see Larrison v. Butte County Superior Court*, 2009 WL 4573281 * 2 (E.D. Cal. 2009) ("Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.") (citations omitted).

3

Chief Suba said is that Mr. Adkins' complaint draws no factual causal connection between the chief's statutory responsibilities as "supervisor" and the alleged unconstitutional conduct of his subordinates. Also on the first page of his opposition, after detailing his complaint against Officers Artui and Anciano which itself is rife with legal conclusions, Mr. Adkins states in conclusory fashion, "these problems are not isolated, but rather are systemic and prevalent throughout GPD." Where Mr. Adkins' accusation fails is that it lacks even one fact to suggest that Chief Suba is or should have been on notice of any need to train police officers not to arrest picture-taking passers-by at accident scenes that argue with the police about their constitutional rights, and refuse to exit their vehicle upon command.[4]

"In a § 1983 or a Bivens action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009); *Graham v. County of Santa Clara*, 2009 WL 4723376 * 2 (N.D. Cal. 2009) ("A supervisor may be liable under section 1983 [only] upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.") (citing *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th

---

[4] Nowhere, either here or in his opposition to Officers Artui and Anciano's motion to dismiss, does Mr. Adkins dispute the defendants' reading and interpretation of his complaint. Nowhere in any of his opposition filings does Mr. Adkins dispute the following from Officers Artui and Anciano's Motion to Dismiss (Doc. 30, p. 9): "As may reasonably be inferred from an objective reading of Adkins' complaint, a satellite scene had now developed in orbit around the accident with the green truck. Now Adkins was arguing with *two* police officers, that 'there's no law against taking pictures.' (FAC ¶ 14). By the terms of his own complaint, Adkins was arguing with two police officers about whether he could or could not take photographs of an accident scene while it was being investigated. And when, according to Adkins' complaint, they demanded that he turn over his cell phone, which now contained *evidence* of that accident or crime scene, Adkins refused. And it was then that the "second officer demanded that plaintiff get out of his car." This is Adkins' chronology of the events. [¶] But Adkins knew the law, he says, and rather than comply with an officer of the law and get out of the car, in what he must have believed was an act of civil disobedience, Adkins declared, '*The only way I will get out is if I am under arrest*.' So it was that Adkins was arrested. These are the facts from Adkins' complaint. These are his words."

4

Cir. 1991)); *see Larrison v. Butte County Superior Court*, 2009 WL 4573281 * 1 ("[Section 1983] requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.") (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Adkins' first amended complaint is bereft of any non-conclusory facts that tend to even suggest, let alone demonstrate, any "personal involvement" or any "causal link between [Suba] and the claimed constitutional violation." *See again Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). All that Mr. Adkins presents about Chief Suba is contained at ¶¶ 22 – 24 of his amended complaint, and those paragraphs are nothing but a "formulaic recitation of the elements" of a claim of supervisory liability, nothing but naked assertions devoid of further factual enhancement. That does not state a claim upon which relief can be granted, and from which Chief Suba is not immune.

The Ninth Circuit's recent decision in *al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), cited by Mr. Adkins at pp. 2, 3 of his opposition, illustrates the difference between a complaint alleging supervisory liability that survives a motion to dismiss and Mr. Adkins' complaint, which does not. "Al-Kidd's complaint principally alleges that Ashcroft 'developed, implemented and set into motion a policy and/or practice under which the FBI and DOJ would use the material witness statute to arrest and detain terrorism suspects about whom they did not have sufficient evidence to arrest on criminal charges but wished to hold preventively or to investigate further.' Al-Kidd argues that using [the statute] to detain suspects to investigate them violates the Fourth Amendment's guarantee against unreasonable seizure." 580 F.3d 965. There is not a single

5

Case 1:09-cv-00029   Document 48   Filed 01/29/2010   Page 5 of 10

Cir. 1991)); *see Larrison v. Butte County Superior Court*, 2009 WL 4573281 * 1 ("[Section 1983] requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.") (citing *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Adkins' first amended complaint is bereft of any non-conclusory facts that tend to even suggest, let alone demonstrate, any "personal involvement" or any "causal link between [Suba] and the claimed constitutional violation." *See again Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). All that Mr. Adkins presents about Chief Suba is contained at ¶¶ 22 – 24 of his amended complaint, and those paragraphs are nothing but a "formulaic recitation of the elements" of a claim of supervisory liability, nothing but naked assertions devoid of further factual enhancement. That does not state a claim upon which relief can be granted, and from which Chief Suba is not immune.

The Ninth Circuit's recent decision in *al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), cited by Mr. Adkins at pp. 2, 3 of his opposition, illustrates the difference between a complaint alleging supervisory liability that survives a motion to dismiss and Mr. Adkins' complaint, which does not. "Al-Kidd's complaint principally alleges that Ashcroft 'developed, implemented and set into motion a policy and/or practice under which the FBI and DOJ would use the material witness statute to arrest and detain terrorism suspects about whom they did not have sufficient evidence to arrest on criminal charges but wished to hold preventively or to investigate further.' Al-Kidd argues that using [the statute] to detain suspects to investigate them violates the Fourth Amendment's guarantee against unreasonable seizure." 580 F.3d 965. There is not a single

factual allegation in the complaint that Chief Suba "developed, implemented and set into motion a policy and/or practice." Instead, Mr. Adkins argues only that "[t]he well-pled factual allegations of the [first amended complaint] which must be taken as true, lead to a strong inference that Anciano, Artui, and other police officers involved in Mr. Adkins' arrest were not properly trained or supervised…." *Opp.*, p. 4. But to what "factual allegations" is Mr. Adkins referring that lead to such and inference? What policy or practice does he allege that *connects* Chief Suba to the other officers on the facts in the complaint? He alleges no *facts* from which to "infer" a connection, only argument that police officers allegedly violated his constitutional rights, and, *ipse dixit*, the chief of police who superintends them must therefore be liable.

Even under *Kwai Fun Wong v. United States*, 373 F.3d 952 (9th Cir. 2004), cited in Mr. Adkins' opposition at p. 3, that is not enough. "As far as the complaint demonstrates, the actions of the named [] officials were simply too far removed from the violations of which Wong complains." *Id.*, 373 F.3d 967. At page 5 of his opposition Mr. Adkins says, "It is clear that Anciano and Artui lacked any proper training or supervision about the very basic Fourth Amendment rights to be accorded to individuals in a vehicle stop, detention, arrest, or seizure of property." That is not a factual allegation that points to any policy and/or practice Chief Suba is alleged to have put into practice, or from which to "infer" that the alleged violation is causally related to, a foreseeable consequence of, any failure to train and supervise. It is a jury argument.

> Supervisors can be held liable for the actions of their subordinates (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991) (internal quotation marks omitted).

> Any one of these bases will suffice to establish the personal involvement of the defendant in the constitutional violation.

*al-Kidd*, 580 F.3d 965. Reading Mr. Adkins' complaint in the light most favorable to the non-moving party, what he is trying to argue is not that Chief Suba was a direct participant in the alleged constitutional violations, but that the chief either (a) acquiesced in the deprivation by subordinates; or (b) demonstrated reckless or callous indifference to the rights of others. In order to state a claim for either acquiescence or indifference, Mr. Adkins is required to articulate *facts* (from which it may reasonably be inferred) that Chief Suba knew or had reason to know of, and recklessly disregarded, a foreseeable risk of constitutional deprivation by his subordinates.

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell*, 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300-1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle*, 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality-a "policy" as defined by our prior cases-can a city be liable for such a failure under § 1983.

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978); footnote omitted). "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1186 (9th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). *See also*,

7

*Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) ("The requisite causal connection may be established when an official sets in motion a 'series of acts by others *which the actor knows or reasonably should know* would cause others to inflict' constitutional harms.") (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978) (emphasis added)). Mr. Adkins' complaint alleges no facts that, if proved, put the chief of police on "actual or constructive notice" that there existed the problem with officers in the police department that Mr. Adkins describes. What Mr. Adkins is really arguing is a return to respondeat superior liability, a theory of liability expressly rejected more than thirty years ago.

> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident. *See Oklahoma City v. Tuttle*, 471 U.S., at 823, 105 S.Ct. at 2436 (opinion of REHNQUIST, J.). Thus, permitting cases against cities for their "failure to train" employees to go forward under § 1983 on a lesser standard of fault would result in de facto respondeat superior liability on municipalities-a result we rejected in *Monell*, 436 U.S., at 693-694, 98 S.Ct., at 2037.

*City of Canton*, 489 U.S. 391-92. The Ninth Circuit's decision in *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470 (9th Cir. 1992), a case cited by Mr. Adkins at p. 5 n. 5, demonstrates precisely what is missing from his complaint –allegation of *facts* from which to infer that Chief Suba was or had reason to be on notice of the need for training in like circumstances.

> There is no question that Sheriff Pearce was the final policymaker with respect to internal procedures at Multnomah County Detention Center. There is also no question that the decision not to take any action to alleviate the problem of detecting missed arraignments constitutes a policy for purposes of § 1983 municipal liability. Sheriff Pearce *knew* that some inmates were not arraigned in the time required by Oregon law, *but decided not to* create any procedure to remedy the problem. After several meetings to discuss the problem, *he made the conscious choice to continue to do nothing*. Thus, the policy was one of inaction: wait and see if someone complains. It was a policy to keep the system that obviously did not work.

*Oviatt*, 954 F.2d 1477 (emphasis added); *see again Kwai Fun Wong*, 373 F.3d 966 ("Wong's first amended complaint, however, fails to identify what role, if any, each individual defendant had in placing her in detention, *much less whether any of the named [] officials knew or reasonably should have known* of the detention conditions to which Wong would be subjected") (emphasis added); *ibid*. ("The critical question is *whether it was reasonably foreseeable* that the actions of the particular [] officials who are named as defendants would lead to the rights violations alleged to have occurred during Wong's detention.") (citing *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir.1994), described parenthetically: "where official did not directly cause a constitutional violation, *plaintiff must show the violation was reasonably foreseeable* to him") (emphasis added)); *accord Preschooler II*, 479 F.3d 1182 ("Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, *or knew of the violations* [of subordinates] *and failed to act to prevent them.*' ") (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); editorial brackets in original; emphasis added).

Not once in his complaint does Mr. Adkins make a single allegation of fact that Chief Suba knew or had reason to be on notice that the kind of constitutional violations alleged to have occurred at the hands of his subordinates on October 4, 2009 had occurred in the past and that it was therefore reasonably foreseeable to reoccur in the future such that he was or should have been on notice of the need for further training and supervision. As a matter of pleading under Rules 8 and 12 after *Ashcroft v. Iqbal*, when asserting a claim of deliberative indifference or reckless disregard in the context of failure to train or supervise, Mr. Adkins *must* allege *facts* from which to infer that a reasonable public official should have been on notice of the need to

9

address a foreseeable constitutional deprivation. Whether Mr. Adkins can prove it is not the issue; he has not even alleged it.

## CONCLUSION

Guam Chief of Police Paul Suba respectfully moves the court for an order of dismissal of all claims against him, for damages or otherwise, with prejudice.

/s/____**James T. Mitchell**_____
JAMES T. MITCHELL
Attorney for defendant Paul Suba

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X,
Hagåtña, Guam 96910
Email: acalaw@teleguam.net

J. Patrick Mason
Deputy Attorney General
287 West O'Brien Drive
Hagåtña, Guam 96910
pmason@guamattorneygeneral.com

this 29th day of January, 2010.

/s/____**James T. Mitchell**_____
JAMES T. MITCHELL