DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br><br>        Plaintiff,<br><br>        vs.<br><br>GUAM POLICE DEPARTMENT,<br>PAUL SUBA, CHIEF OF GUAM POLICE<br>DEPARTMENT**,** D. B. ANCIANO;<br>SERAFINO ARTUI; AND DOES I<br>THROUGH X,<br><br>        Defendants. | CIVIL CASE NO.  09-00029<br><br>**REPORT AND RECOMMENDATION**<br>RE  MOTIONS TO DISMISS |

The court heard the Defendants' three separately filed motions to dismiss on March 23, 2010.  Plaintiff was present and was represented at the hearing by Anita P. Arriola, Esq., of Arriola, Cowan, & Arriola.  Defendants GPD, Suba, Anciano, and Artui were represented by James T. Mitchell, Esq.  At the conclusion of the hearing, the court took the matter under advisement.  After having reviewed the memoranda in support and in opposition to the motions, the replies to the opposition, the arguments by the parties, the court submits its decision in this report and recommendation.

BACKGROUND

On December 9, 2009, Plaintiff filed his First Amended Complaint.  Therein, he alleged that on October 4, 2009, he drove out of his yard down to Paseo de Oro to Carmen Memorial Drive in Tamuning.  As he drove around a curve, he saw a green truck crashed into a wall.  He then took out his cell phone with camera and took pictures of the accident while in his car.[1]  As

---

[1]See paragraph 12 of the First Amended Complaint.

he was driving away, a police officer stepped out in front of his car and told him to stop. He stopped his car and the officer told him he could not take pictures. He responded, "there is nothing wrong with taking pictures." The officer, after talking to another officer nearby, demanded, "give me your camera." He refused. The officer again demanded that Plaintiff give the officer the camera. He again refused to hand over the camera. The officer who stopped him was either Anciano or Artui.[2]

The other officer then approached him in his car and demanded his camera. He repeated, "there's no law against taking pictures." The said officer again demanded his camera and he refused. The said officer then demanded that he get out of his car and he responded, "the only way I will get out is if I am under arrest." The said officer then told him he was under arrest and he then got out of the car. The said officer was either Anciano or Artui.[3]

One of the officers handcuffed him and placed him in the police car. While he was in the police car, he called his wife and told her to call his attorney because he had been arrested. The officer grabbed his cell phone and confiscated it.[4]

One of the officers then took him to the Tumon police station where he was incarcerated. He was later taken to a conference room where a police Sergeant demanded that he delete the pictures from his cell phone. He refused.[5] He was taken to the Hagåtña station later that night where he was booked, fingerprinted, and photographed. He was restrained for about four hours, from 4:30 p.m. to 8:30 p.m. His cell phone camera was never returned to him.[6] After his release, he was given a Notice To Appear on September 29, 2010. In the Notice To Appear, he learned for the first time that he was charged with "obstructing governmental function" and "failure to comply."[7]

---

[2]See paragraph 13 of the First Amended Complaint.
[3]See paragraph 14 of the First Amended Complaint.
[4]See paragraph 15 of the First Amended Complaint.
[5]See paragraph 16 of the First Amended Complaint.
[6]See paragraph 17 of the First Amended Complaint.
[7]See paragraph 18 of the First Amended Complaint.

Based upon the events which Plaintiff has alleged in his complaint, he has filed eleven causes of action against Defendants Alicia G. Limtiaco, the Attorney General of Guam, the Office of the Attorney General, the Guam Police Department, Paul Suba, Chief of Guam Police Department, D. B. Anciano, Serafino Artui, and Does I through X, naming all of them or only some of them as Defendants in each of the said individual causes of action. The causes of action are as follows:

1. **Violation of Civil Rights under 42 U.S.C. §1983** against Defendants Suba, GPD, Anciano, and Artui.

2. **Violation of Due Process of Law** against all Defendants.

3. **Violation of Free Speech** against all Defendants.

4. **Violation of Right to Privacy and Unlawful Seizure** against all Defendants.

5. **False Arrest and False Imprisonment** against Defendants Anciano and Artui.

6. **Assault and Battery** against Defendants Anciano and Artui.

7. **Violation of 10 G.C.A. § 77117 and Negligence** against Defendants Anciano and Artui.

8. **Theft of Property and Conversion** against Defendants Anciano and Artui.

9. **Declaratory Relief** against all Defendants.

10. **Injunctive Relief** against all Defendants.

11. **Punitive Damages** against Defendants Suba, Anciano, and Artui.

On December 23, 2009, Attorney General Alicia Limtiaco moved the court to dismiss her as a Defendant in this action and also moved to dismiss Plaintiff's demands for declaratory and injunctive relief against all the Defendants.

On December 23, 2009, Defendants Attorney General of Guam, the Guam Police Department, Paul Suba, in his official capacity, Officers Serafino Artui and D. B. Anciano, in their official capacities, moved the court to dismiss all actions against them in their official capacities.

On December 30, 2009, Defendant Paul Suba moved the court to dismiss all actions against him in his official and individual capacity.

On December 30, 2009, Defendants Anciano and Artui moved the court to dismiss all

1    actions filed against them in their individual capacities.

2          On February 4, 2010, Plaintiff dismissed his causes of action against Attorney General of

3    Guam, Alicia Limtiaco, and the Office of the Attorney General, leaving as the sole Defendants

4    herein, GPD, Suba, Anciano, and Artui.  The dismissal was without prejudice.

5          Based upon the dismissal, the motions filed by Attorney General Limtiaco and the Office

6    of the Attorney General have been rendered moot.  There remains, however, three viable motions

7    in relation to the dismissal of this action against the remaining Defendants.

8    DISCUSSION

9          The matter before the court are the motions to dismiss filed by the remaining Defendants.

10   The standard of review in a motion to dismiss under § 1983 requires the court to review

11   Plaintiff's complaint to determine whether a constitutional right has been violated based upon the

12   facts therein alleged taken in the light most favorable to the Plaintiff.  The court's review is

13   limited to the facts as alleged by Plaintiff and those facts must be taken as true.  The court should

14   not look beyond the complaint because the Defendants have yet to file their answers to the

15   complaint.  See *Thompson v. Lambert*, 2004 WL 1673102 (D. Or. July 27, 2004), *Butler v. San*

16   *Diego District Attorney's Office*, 370 F. 3d 956 (9th Cir. 2004).

17         Title 42, United States Code, Section1983 provides that every person who under any

18   statute, ordinance, regulation, custom, or usage, of any State, Territorial, or District of Columbia

19   law subjects or causes to be subjected any citizen or other person to the deprivation of any rights,

20   privileges, or immunities secured by the Constitution and laws of the United States shall be liable

21   to the party injured in an action at law, suit in equity, or other proceeding for redress.

22         Plaintiff has alleged a violation of his constitutional rights in his first four causes of

23   action.  These four causes of action apply to all the remaining Defendants.  Plaintiff has also

24   placed in issue in the Ninth, Tenth, and Eleventh causes of action matters in relation to the

25   constitutional violations.  These three additional causes of action also apply to all the remaining

26   Defendants except the Eleventh which excludes GPD.

27         The individual Defendants argue that the actions against them in their official capacities

28   should be dismissed.  They contend that they are immune from suit under § 1983 because Guam

Page -4-

is not a person within the meaning of the said act. The Guam Police Department likewise argues the claims against it be dismissed for the same reason. Defendants cite the court to the U.S. Supreme Court case of *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). In *Ngiraingas*, petitioner filed a suit in this court against the Government of Guam, the Guam Police Department, the Director in her official capacity, and various police officers in their official and individual capacities. The court dismissed the claims and the Ninth Circuit Court of Appeals affirmed the dismissal with respect to the government, the police department, and the individual defendants in their official capacities. The U.S. Supreme Court affirmed the dismissal and held that "Neither the Territory of Guam nor its officers acting in their official capacities are 'persons' under Section 1983."

Plaintiff appears to have acknowledged the implication of the holding of the U.S. Supreme Court in *Ngiraingas,* when he stated in his opposition memoranda and during oral arguments that he was not suing the Defendants in their official capacities. The court notes, however, that Paragraphs 7, 9, and 10 allege that Defendants Suba, Anciano, and Artui are being sued in their official capacities as well an in their individual capacities. The court further notes that the first four causes of actions do not differentiate whether Defendants are being sued solely in their individual capacities.

In *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the U.S. Supreme Court, while acknowledging that state officials are not persons for purposes of a section 1983 damage action, further acknowledged that its holding did not apply when a state official is sued in his official capacity for prospective injunctive relief. Thus, while the Defendants in their official capacities are not persons within the meaning of section 1983, their official capacity status does not apply to a claim which seeks prospective injunctive relief. *See also Guam Soc. of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366 (9th Cir. 1992); *Office of Hawaiian Affairs v. Dep't of Educ.*, 951 F. Supp. 1484 (D. Haw. 1996); *Aguon v. Commonwealth Ports Authority*, 316 F.3d 899 (9th Cir. 2003).

The Ninth Circuit Court of Appeals has also recognized the ability of a plaintiff to maintain an action against state officials for injunctive relief in addition to a claim for declaratory

1  relief. Suits for declaratory relief are permissible against state officials in their official capacities.

2  *See Jacobsen v. Tahoe Regional Planning Agency*, 566 F.2d 1353(9th Cir. 1977).

3  Based upon the holding of the Supreme Court of the United States in *Ngiraingas*, the

4  court finds that the first four causes of action against all the individual Defendants in their

5  official capacities should be dismissed. The court also finds that the eleventh cause of action

6  against the Defendants in their official capacities should be also dismissed. Consistent with *Will*

7  *v. Michigan Dep't of State Police, Guam Soc. of Obstetricians and Gynecologists v. Ada*, and the

8  other cases cited above, the court will deny dismissal with regard to the ninth and tenth causes of

9  actions which have been brought against Defendants in their official capacities.

10  The court further finds that the claims by Plaintiff against the Guam Police Department in

11  the first four causes of action as well as the ninth and tenth causes of action should also be

12  dismissed. The court finds that the Guam Police Department is an integral part of the Territory

13  of Guam and as a direct line agency of the government of Guam, it is not a person within the

14  meaning of § 1983. Suits may not be maintained against a territorial government and its

15  agencies, whether for damages, declaratory, or injunctive relief. *See Wolfe v. Strankham*, 392

16  F.3d 358(9th Cir.2004) and *Southern Pacific Transp. Co. v. City of Los Angeles*, 922 F. 2d 498

17  (9th Cir. 1990).

18  The court will now address whether Plaintiff's complaint alleges a violation of his

19  constitutional right based upon the facts therein alleged taken in the light most favorable to the

20  Plaintiff. As the court has stated earlier, this is the appropriate inquiry in relation to Plaintiff's

21  action against the Defendants in their individual capacities.

22  Plaintiff's complaint may proceed against Defendants if the claims he alleges are

23  plausible. A claim is plausible on its face when the plaintiff pleads a factual content which

24  allows the court to draw the reasonable inference that the defendant is liable for the conduct

25  alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Plaintiff makes several claims against

26  Defendants in his complaint. The court will first discuss Plaintiff's claims in relation to

27  Defendants' Anciano and Artui and then it will separately address the claims he has made against

28  Defendant Suba.

Page -6-

## CLAIMS AGAINST DEFENDANTS ANCIANO AND ARTUI

In his first cause of action, Plaintiff alleges that his constitutional rights were violated when he was arrested, detained, and incarcerated without probable cause or reasonable suspicion. An arrest of a person without probable cause or reasonable cause is clearly a violation of a constitutional right. Plaintiff alleges that the basis for his arrest was his taking pictures with his cell phone of a car accident which involved someone he had known which occurred shortly after he had left his residence. As he was leaving the area, he was stopped by a police officer and advised that he could not take pictures. His arrest allegedly stemmed from his responses that there was nothing wrong with taking pictures and that he had the right to do so.

Defendants Anciano and Artui argue that Plaintiff was not arrested for taking pictures of an automobile accident but for refusing to obey a police officer's command to step out of his vehicle. Indeed, for the most part, Defendants devote most of their memorandum in support of their motion to dismiss to this particular argument. As the Defendants have stated in their memorandum, regardless of whether Plaintiff "was constitutionally entitled to photograph an accident or a crime scene in the middle of being investigated, " and "regardless whether he was legally entitled to engage two officers of the law in debate about it," Plaintiff "was lawfully arrested when he refused a lawful command from an officer of the law to exit his vehicle."

Defendants suggest in their memorandum that on the day in question, Plaintiff left his home and came upon the scene of an accident and stopped to take pictures of the accident with his cell phone. Defendants infer that Plaintiff stopped his vehicle to take pictures of the accident because in order to be driving away from the scene, Plaintiff must have stopped his vehicle. Defendants also suggest that Plaintiff was not just passing through on his way to where he was going and taking pictures while rolling by, "but he was stopped at or in very near proximity to the scene of an accident."[8] Defendants also suggest that the area could have been a crime scene since there were multiple officers present. Defendants infer that Plaintiff was in close proximity to the accident scene since two officers were able to walk to his vehicle from whatever they were

---

[8]See first paragraph of Defendants' memorandum on page 8.

doing to talk to him. Defendants state that Plaintiff's arrest resulted from his own doing.

Defendants allege in their motion that when Plaintiff was told by one of the officers that he could not take pictures, he began to argue and said "there is nothing wrong with taking pictures." Defendants further speculate that had Plaintiff just moved on along, that might have been the end of the matter. However, they insist that Plaintiff intended to argue and at that point, the officer, after consulting with another officer, demanded that Plaintiff turn over his cell phone. Plaintiff refused. The officer then asked a second time and Plaintiff again refused. Defendants contend that Plaintiff was now arguing with two officers instead of one.[9] It was then that the second officer asked him to get out of his car. Defendants surmise further that Plaintiff knew the law and rather than comply with an officer of the law and get out of his car in what he "must have believed was an act of civil disobedience, he declared, "The only way I will get out is if I am under arrest." And "[s]o it was that Adkins was arrested."[10]

Defendants claim qualified immunity from Plaintiff's suit. Defendants further allege that Plaintiff was arrested for failure to comply with an officer's directive and not because he was taking pictures of the accident or for arguing with the police officers regarding his constitutional right to take such photographs.

Defendants cite the court to *Devenpeck v. Alford*, 543 U.S. 146 (2004). In *Devenpeck*, the U.S. Supreme Court held that the subjective intent of the arresting officer for Devenpeck's arrest was irrelevant. That such intent was no basis for invalidating the arrest as long as the facts known to the arresting officer gave probable cause to arrest.

Defendants also cite the court to *Lawyer v. City Council Bluffs*, 361 F. 3d 1105 (8th Cir. 2004) and *Pennsylvania v. Mimms*, 434 U.S. 106, (1977), cases which hold that a law enforcement officer may order the driver of a vehicle to step out of the vehicle during a lawful traffic stop.

In *Pennsylvania v. Mimms*, police officers on routine patrol observed the defendant

---

[9]See second paragraph on page 9 of Defendants' memorandum.
[10]See third paragraph on page 9 of Defendants' memorandum.

driving an automobile with an expired license plate and lawfully stopped the vehicle for the purpose of issuing a traffic citation. One of the police officers ordered the defendant to get out of the vehicle. The U.S. Supreme Court held that the order by the police officer that defendant get out of his vehicle was reasonable and thus permissible under the Fourth Amendment notwithstanding the fact that there had been nothing unusual or suspicious about the defendant's behavior.

In *Lawyer v. City of Council Bluffs*, a police officer stopped Michael Lawyer for driving 85 miles per hour in a 55 mile-per-hour zone. He was asked by the officer to exit his vehicle and sign the citation on the hood of the police car. Lawyer refused to get out saying he was cold, did not want to be filmed, was afraid of the traffic, and also he felt threatened by the officer. The officer tried to explain to Lawyer that he would be arrested if he did not sign the citation. He also explained to Lawyer that every person he gave citations to was required to exit the vehicle to sign the citation. Lawyer again refused and said he would sign it in his car but not outside. Lawyer was finally arrested. The Eighth Circuit Court of Appeals upheld the arrest.

The court agrees with Defendants that law enforcement officers may order individuals lawfully stopped whether for a minor traffic offense or other offense to step out of their vehicles. But as Plaintiff points out in his brief, the initial stop must have a lawful basis. In *Mimms*, the individual was pulled over for driving a vehicle with an expired license plate. In *Lawyer*, the individual was stopped because he was driving eighty- five (85) miles per hour in a fifty-five (55) mile-per-hour zone. In this case, the factual basis for the stop can only be supplied by the facts as those facts are alleged in the first amended complaint. The complaint does not allege that Plaintiff stopped his vehicle to take photographs of the accident. The complaint does not allege that Plaintiff was in very close proximity to the automobile accident. The complaint states that Plaintiff was stopped and told that he could not take pictures. It would be a reasonable inference for the court to conclude that such was the purpose of the stop. No other facts are alleged to supply the basis for the stop. It would also be reasonable for the court to conclude that the reference to the picture taking was the automobile accident. Plaintiff was then told to relinquish his camera to the officer--"give me your camera." Plaintiff refused. The first amended

Page -9-

complaint alleges that the officers demanded Plaintiff's camera four separate times[11] and twice by each officer. Plaintiff refused each time. After the fourth refusal, one of the officers demanded that Plaintiff get out of the car. Plaintiff again refused and it was then that he was told that he was "under arrest."

The court finds it reasonable for defendants to suggest in their motion to dismiss that Plaintiff was arrested not for taking photographs or arguing with the police officers, but for failing to comply with an order[12] by a law enforcement officer to get out of the car.

The ability of law enforcement officers to tell drivers and other individuals within a car to step out of the car is, however, premised upon an initial lawful stop. In *Pennsylvania v. Mimms*, the dissent was concerned whether police officers could tell drivers to get out of their car whenever confronted by police officers. In footnote 6 of the opinion, the majority responded as follows:

> Contrary to the suggestion in the dissent of our Brother Stevens, post, at 339, we do not hold today that "whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car." We hold only that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

434 U.S. at 111, n.6.

The facts alleged in Plaintiff's first amended complaint do not state that Plaintiff was stopped for a traffic violation. Two inferences appear reasonable under Plaintiff's complaint. First, he was stopped for taking pictures of an accident. Second, he was stopped so that the officers could confiscate his camera. Indeed, he was asked four separate times to hand over his camera to the Defendants and all four times he refused.

Based upon the facts as alleged in Plaintiff's first amended complaint, the court must find that based upon those facts, there was no "lawful stop"[13] that would have justified a police officer

---

[11]See paragraphs 13 and 14 of Plaintiff's first amended complaint.

[12]Paragraph 14 of Plaintiff's first amended complaint would support such contention..

[13]Defendants have not cited the court to any Guam law which would have made Plaintiff's photographing activities illegal under the circumstances as therein alleged.

in ordering the Plaintiff to get out of his vehicle, the refusal of which would have resulted in his lawful arrest for the failure to comply. The court notes that police officers have great discretion to stop individuals in normal every day encounters. Plaintiff could have been stopped by a police officer at the accident scene and told not to take pictures and then told to leave the accident scene. It is clear under the law, however, that not every normal day encounter and stop allows a police officer to order a driver to get out of the car.

Plaintiff is vehement in his opposition to the motion to dismiss that there was no probable cause to stop him. The court must agree with Plaintiff at this juncture of the case. The court is bound to take the facts of the case as Plaintiff has alleged those facts in his first amended complaint and determine whether the facts therein allege a basis for a lawful stop prior to Plaintiff being ordered to get out of his car. The facts as alleged therein do not provide a basis for a "lawful stop" which would make an arrest for the failure to obey an order to get out of the car a lawful arrest. Because the allegations of the amended complaint bear no such facts, the court must find that Plaintiff has alleged a violation of his constitutional rights, the right to be free from arrest without probable cause. This is clearly an established constitutional right. *Beck v. Ohio*, 379 U.S. 89 (1964).

The second cause of action alleges a violation of Defendant's due process rights. The Plaintiff alleges that his arrest based upon Guam's statutes deprived him of protected first amendment rights because it penalizes him for engaging in asserting his first amendment rights. The statutes are thus void for vagueness. The statutes, as applied fail to give notice of prohibited activity that infringes upon Plaintiff's first amendment rights, in this case his free speech rights.

In their motion, Defendants appear to suggest that this issue is rendered moot in light of the Attorney General's issuance of a "decline to prosecute memorandum". The court notes, however, that it cannot give judicial notice to such a fact because it is outside the scope of the pleadings in the first amended complaint. Such an argument may be appropriate in a summary judgment motion.

In his third cause of action, Plaintiff alleges infringement of his free speech rights under the first amendment of the Constitution. Plaintiff alleges that the Guam statutes upon which his

arrest was predicated violated his free speech rights since the acts penalized him for taking pictures in his car on a public road, an act which Plaintiff alleges is a form of expression. Plaintiff also alleges that his First Amendment rights were violated when he was arrested for arguing with the police officers.

In support thereof, Plaintiff cites to *City of Houston v. Hill*, 482 U.S. 451 (1987) which held that the First Amendment protected a significant amount of verbal criticism and challenge directed to police officers. Plaintiff also cites to *ETW Corp. V. Jireh Pub., Inc.*, 332 F. 3d 915 (6th Cir. 2003) in which the court stated that the First Amendment's protection was not limited to the written or spoken words, but also included other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures. In *Kaplan v. California*, 413 U.S. 115 (1973), the U.S. Supreme Court recognized that pictures had First Amendment protection unless obscene. In *Smith v. Cumming*, 212 F. 3d 1332, (11th Cir. 2002), the Eleventh Circuit Court of Appeals agreed with Smith, the Plaintiffs, that they had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct. The court stated: "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." These two cases and other cases acknowledge that pictures and photographs enjoy constitutional protection unless obscene and that the taking of photographs of police conduct on public property is also constitutionally protected, subject to reasonable time, manner, and place restrictions.

Defendants, argue, however, that the taking of photographs of an accident on a public road does not enjoy constitutional protection. Defendants cite the court to *Chavez v. City of Oakland*, 2009 WL 1537875 (N.D. Cal. June 2, 2009). In *Chavez*, the district court held that Plaintiff, a newspaper photographer, had no First Amendment right to access an accident or crime scene if the general public was excluded. The photographer alleged that his First Amendment rights were violated when the officers stopped him from taking pictures of an accident scene on a freeway. The photographer as well as others had gotten out of their cars on the freeway. The photographer was instructed to return to his car and was eventually arrested for

continuing to take pictures. The photographer offered no evidence that he had the right to exit his vehicle on the freeway. When the photographer was arrested, he was handcuffed and forced to sit on the highway for approximately thirty (30) minutes before being released. He was warned not to come back there again and take those kind of pictures.

The court finds that the Defendant's reliance on this case is misplaced. The case does not stand for the proposition that there is no constitutional protection for the taking of pictures of an accident on a public roadway. The case has a limited application and its holding applies solely to the taking of pictures of an accident scene where the general public is excluded.

Plaintiff's complaint does not allege that he took pictures of the accident in question on a public road where the general public was excluded[14]. Thus, the court must find that the holding in *Chavez* has no application at this point in time to the facts of this case.

Moreover, Plaintiff has cited the court to *Connell v. Town of Hudson*, 733 F. Supp. 465 (D. N.H. 1990). Connell was a photographer who took pictures of an accident scene. The acting police chief attempted to prevent Connell's ability to take pictures even when he was outside a particular zone area. The court ruled that the police officers could not chase Connell away from the accident scene unless he was unreasonably interfering with police activity. The court weighed Connell's rights at the accident scene to take pictures against police authority to secure the accident scene.

Thus, the taking of a photograph by Plaintiff at the accident scene of a green truck which has crashed into a wall enjoys constitutional protection because it embodies an expression of First Amendment freedoms, the creation, storage, or reproduction of a depiction. It is a depiction which cannot be said to be obscene, defamatory, fraudulent, or inciting. See *United States v. Stevens*, _____, S. Ct. _____, 2010 WL 1540082 (April 20, 2010) (No. 08-769).

---

[14]The court notes that it must apply the facts as it exists in Plaintiff's complaint in a motion to dismiss. Even if the Defendants were to suggest to the court during oral arguments that the area where the accident occurred did not result in the exclusion of the general public, it would be improper for the court to rely on such information for purposes of deciding this motion to dismiss.

Page -13-

Based upon the cases cited above and the factual allegations in Plaintiff's first amended complaint, the court finds that Plaintiff has sufficiently alleged a violation of his First Amendment right to take photographs of an accident scene on the date in question.

In his fourth cause of action, Plaintiff alleges that the application of the Guam statutes to his conduct on the date in question constituted a violation of his right to privacy and the unlawful seizure of his camera.

Plaintiff brings into issue in the fourth cause of action not just his arrest as a privacy violation but the seizure of his cell phone. The right of privacy was first enunciated by the U.S. Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479 (1965). Although not specifically mentioned in the Bill of Rights, it is said to be found in "penumbras" and "emanations" of other constitutional protections. It has been said to be derived from the Ninth Amendment. For the most part, it has been said to be derived from the due process clause of the 14th Amendment and more recently on a substantive due process rationale. Plaintiff argues that the enforcement of the Guam statutes as applied to him violate his privacy rights by allowing his arrest and incarceration. Plaintiff's privacy may have been violated if he was subjected to arrest and incarceration without probable or reasonable cause.

As the court has stated above, Plaintiff also brings into issue in the fourth cause of action but the seizure of his camera within the cell phone. Plaintiff alleges that the Defendants asked him to relinquish his camera four separate times. Clearly, the court recognizes the right of the people to be secure in the privacy and in the possession of their property. The complaint clearly makes evident that Defendants were after Plaintiff's property, his camera contained within his cell phone. Generally, the taking of property requires its compensation. Do law enforcement officers have the right to take away a person's camera because the person has taken a photograph or photographs of an accident scene? Defendants have cited the court to no case which stands for such a proposition. Even in the *Chavez* case which Defendants cite as support for their proposition that there is no constitutional right to take pictures of an accident in a public road, the court notes that at no time was the photographer's camera ever taken from him. While police

Page -14-

may properly confiscate property which may be evidence[15] of crime, it has not been established that the taking of a picture of an accident scene is a crime which justifies the seizure of the person's camera. Defendants have yet to show any justification for its seizure. Thus, the court finds the fourth cause of action to properly allege a constitutional violation against Defendants.

Plaintiff's fifth, sixth, seventh, and eighth causes of action allege local law claims against the Defendants. These claims are for false arrest and false imprisonment, assault and battery, statutory negligence, and theft of property or conversion.

Defendants argue that they have statutory immunity under local law against these claims. Defendants cite the court to 8 G.C.A. § 20.15(a)(1) and 20.15(b). Section 20.15(a)(1) provides that a peace officer may make an arrest whenever the officer has reasonable cause to believe that the person to be arrested has committed an offense in the officer's presence. Section 20.15(b) provides no civil liability or cause of action against an officer for false arrest or false imprisonment for an arrest which is lawful under Subsection (a). Defendants again argue that Plaintiff was arrested for refusing to obey the order of a law enforcement officer to exit the vehicle. The court has pointed out earlier in a discussion of the same contention that arrests for failure to comply with a law enforcement officer's command to exit a vehicle presupposes a valid or lawful stop. The facts as alleged in plaintiff's first amended complaint do not show the existence of such facts--that there existed facts showing probable cause to stop the Plaintiff on the day in question. Thus the court must find that Defendants at present cannot avail themselves of the immunity provisions of 8 G.C.A. § 20.15(b).

The court also notes that *pendente* jurisdiction would allow the court to address local law claim issues in the overall process of addressing the constitutional violation issues.

The ninth and tenth causes of action seek declaratory and injunctive relief against

---

[15]Defendants may lawfully seize Plaintiff's cell phone if it is evidence that links Plaintiff to conduct which obstructed the police officers' performance of their duties on the day in question. However, a request by a police officer that Plaintiff delete photographs he took at the purported crime scene is inconsistent with the seizure of the cell phone if the seizure was a means to preserve evidence.

Page -15-

Defendants in their official and individual[16] capacities. As the court has stated *supra*, prospective injunctive relief and declaratory relief are viable claims against Defendants in their official capacities. Can these claims be maintained against Defendants in their individual capacities?

The ninth cause of action seeks a declaration by Plaintiff that the pertinent Guam statutes in the course of their enforcement as they have been applied to him has violated his constitutional rights. It appears to the court that these allegations raise conduct by Defendants that occurred while in the performance of their official duties and nothing else. The same can be said with the tenth cause of action. Any injunctive relief would be directed to Defendants in their official capacities as it is in their official capacities as police officers that the complained of conduct occurred.

Acting within an official capacity is said to be best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the injury. An official is sued in his individual capacity if his action was beyond the scope of his designated power (i.e., ultra vires). Action is ultra vires in the following three areas: (1) if the official's act is beyond the limits of his statutorily designated power, (2) if the official is acting pursuant to an unconstitutional statute, and (3) if the official himself commits an unconstitutional act or deprives another of a federal right. See concurring opinion in *Pena v. Gardner*, 976 F. 2d 469(9th Cir. 1992). In *Wolfe v. Strickman,*[17] *supra*, the Ninth Circuit Court of Appeals held that a suit for declaratory and injunctive relief was available to plaintiff against defendants only in their official capacities.

Based upon the court's reading of the allegations in the ninth and tenth causes of action, the court finds that the relief Plaintiff seeks therein is addressed to Defendants in their official capacities and not in the individual capacities. The court thus finds that these causes of action be dismissed against Defendants in their individual capacities.

---

[16] See paragraphs 9 and 10 of Plaintiff's first amended complaint.
[17] See Footnote 2 of the opinion.

Defendants during arguments advised the court that Plaintiff has received a notice of non-prosecution and thus these claims are moot. The court, however, cannot give judicial notice to such a memorandum as its role in deciding the motion to dismiss[18] before it is limited to the allegations as presented in Plaintiff's complaint.

## CLAIMS AGAINST DEFENDANT SUBA

Plaintiff alleges seven causes of action against Defendant Suba in his individual capacity. He is charged with a violation of Plaintiff's civil rights in the first cause of action, a violation of due process in the second cause of action, a violation of Plaintiff's free speech rights under the third cause of action and a violation of Plaintiff's right to privacy in the fourth cause of action. Defendant Suba is named in the ninth cause of action which seeks a declaratory relief against Defendants. He is named in the tenth cause of action which seeks injunctive relief against Defendants and he is named in the eleventh cause of action which seeks punitive damages against the Defendants.

Plaintiff filed his claims against Defendant Suba because as Chief of Police he is responsible for the implementation and enforcement of the Guam statutes under which Plaintiff was arrested. He is further charged with the training of police officers and in ensuring that they comply with the law in implementing and enforcing[19] the pertinent Guam statutes. It is alleged in the first cause of action that Defendant Suba, with deliberate indifference to the constitutional rights of persons within his jurisdiction, maintained or permitted one or more of the official policies or customs:

1.) Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the arrest of individuals and seizure of property;

2.) Failure to provide adequate training and supervision to police officers with respect to the proper procedures to be followed in dealing with individuals who are exercising their right of free speech;

[18]It would be appropriate to take such a memorandum into consideration if the matter before the court were one for summary judgment.

[19]See paragraph 7 of Plaintiff's first amended complaint.

Page -17-

3.) Failure to take adequate steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct;

4.) Ratification of the summary punishment handed out by officers who arrest individuals or seize property under the Act or Charge without probable or reasonable cause.

Defendant Suba seeks a dismissal of all the causes of action against him. He first argues that Plaintiff's allegations do not state a plausible claim. Defendant Suba asserts that Plaintiff's allegations in the complaint assert nothing more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. He argues that Plaintiff must plead a sufficient factual content that would allow the court to draw the reasonable inference that the Defendant is liable to Plaintiff for the misconduct alleged. Has Plaintiff plead enough facts to state a claim that is plausible on its face?

Defendant asserts that Plaintiff has failed to allege any facts that shows his personal involvement in the violation of his constitutional rights if such rights were indeed violated by Defendants Anciano or Artui. Defendant also suggests that there is no factual connection between his actions and the claimed constitutional violations other than the "formulaic recitation of the elements of a cause of action" for supervisory liability.

In order to establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) in the absence of overt personal participation in the offensive act, implemented a policy "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F. 2d 642 (9th Cir. 1989) (citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)). The Ninth Circuit Court of Appeals offered alternative elements to impose section 1983 liability on a supervisor: "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jeffers v. Gomez*,

267 F. 3d 895, 915 (9th Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F. 2d 1435, 1446 (9th Cir. 1991)).

In *al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009), the court was asked to determine whether plaintiff's complaint alleged sufficient facts to state a plausible claim. The court noted that unlike, Iqbal's complaint, al-Kidd's complaint contained specific statements that Ashcroft made regarding the post September 11 use of the material witness statute; reference to congressional testimony from FBI Director stating Plaintiff's arrest was one of the government's anti-terrorism successes-without any caveat al-Kidd was arrested only as a witness. The complaint further made references to one account of material witness practices stating that nearly fifty percent of those detained in connection with 9/11 terrorism practices were not called to testify. The complaint also contained allegations that the Justice Department apologized to 10-12 people who were improperly arrested as material witnesses and it contained extensive citations to the OIG report which discussed abuses and improprieties that occurred in a related context regarding detention of aliens. The court found that all these allegation in the complaint plausibly suggested unlawful conduct.

In *al-Kidd*, the court identified four instances in which a supervisor's conduct could establish personal involvement in the constitutional violation. The supervisor could be liable for (1) setting forth in motion a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the right of others.

In *Willis v. City of Fresno*, 2010 WL 475447 (E.D. Cal. Feb. 4, 2010), Fresno's Police Chief contended he was not subject to section 1983 liability because he had no personal involvement in the constitutional violation and there was no showing that his conduct had a causal connection to the constitutional deprivation. In response, Plaintiff made references to the allegations in his complaint which supported supervisor liability wherein he alleged certain

conduct against the Police Chief as follows:

    1. Knew of disproportionate "excessive force, police brutality, unreasonable searches and seizures, false charges, false arrests and officer-involved shootings" in "impoverished, low-income and predominantly minority neighborhoods" but failed to take "appropriate remedial action to prevent such continuing conduct.

    2. Encouraged, authorized, ratified, condoned and/or ...failed to remedy continuing acts of misconduct and civil-rights violations"

    3. Was "on actual notice of problems with accountability of Fresno Police Officers' given prior shootings which were inadequately investigated and internal affairs failure to investigate complaints;

    4. Has been deliberately indifferent as to needs for more or different training and/or supervision and/or discipline of police officers; and

    5. Fostered a "culture of tolerance" within the City Police Department by acquiescing in misconduct and otherwise failing to take preventive measures to curtail misconduct

The trial court agreed with the plaintiff that the complaint alleged sufficient factual matter to state a facially plausible claim of supervisor liability under section 1983. The complaint made reference to the Police Chief's knowledge of police incidents prior to the shooting in question and also made reference to a certain police officer.

Plaintiff's first amended complaint must establish a prima facie case of supervisor liability under section 1983. Plaintiff must show that Defendant suba personally participated in Plaintiff's alleged deprivation of constitutional rights. Plaintiff does allege in paragraph 22 that Defendant Suba arrested, detained, and incarcerated the Plaintiff, however, the facts of the case do not show any personal involvement by Defendant Suba. If there was no overt act by Defendant Suba in the deprivation of Plaintiff's constitutional rights, then Plaintiff must show a causal connection between Defendant Suba's conduct and the constitutional violation. Plaintiff attempts to show such a link by alleging in paragraph 24 that Defendant Suba failed to provide adequate training to police officers with respect to the constitutional limits on the arrest of individuals and seizure of property; failed to provide adequate training with regard to proper procedures in dealing with individuals asserting their free speech rights; failed to take adequate

steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct; and ratified summary punishment handed out by officers who arrest individuals or seize property under the Guam pertinent statutes without probable or reasonable cause.

In reviewing Plaintiff's first amended complaint and the allegations therein against Defendant Suba, the court must agree with Defendant Suba that Plaintiff has alleged threadbare recitals of elements which are designed to establish a prima facie case of section 1983 supervisory liability against Defendant Suba. The first amended complaint fails, however, to allege sufficient non-conclusory facts which could state a plausible claim for section 1983 supervisory liability. For instance, Plaintiff has not cited to any incident or incidents that would support a claim that Defendant Suba had prior knowledge of similar police conduct as those alleged against Defendants Anciano and Artui. Nor is there any factual allegation that Defendant Suba knew of the constitutional violations and failed to act to prevent them. There are no factual allegations that Defendant Suba has implemented a policy that is so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. Plaintiff's first amended complaint alleges Defendant Suba's failure to adequately train and supervise police officers. Defendant Suba may be liable for the failure to train or supervise if Plaintiff shows that (1) Suba possessed the requisite culpable state of mind and (2) there is a causal connection between Suba's action or inaction and the infliction of the alleged constitutional harm. *Redman v. County of San Diego*, 942 F. 2d 1435, 1446-47 (9th Cir. 1989) (*en banc*), *cert.denied* 502 U.S. 1074(1992). Culpability is established by showing that the supervisor was deliberately indifferent to acts by others which the supervisor knows or reasonably should have known would cause others to inflict the constitutional injury. The deliberate indifference standard is objective in nature.

Some courts have held that identifying a single incident does meet the plaintiff's high burden of showing that the supervisor's indifference amounts to an authorization of the offensive practice. *Stanley v. Goodwin*, 475 F. Supp.2d 1026 (D. Haw. 2006). A single incident, or a

Page -21-

series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability. *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). An inquiry whether or not there has been a history of past abuses or official condonation is only required when a plaintiff sues a municipality. When a plaintiff brings suit against defendants as individuals, plaintiff need only show that the defendants' acts were the product of reckless or callous indifference to his constitutional rights and that they in fact causes his constitutional deprivation. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 567, (1st Cir. 1989).

In reviewing Defendants' motion to dismiss and the memoranda submitted by the parties, the court points out that it is important not to confuse the concept of municipal liability[20] for the failure to train or supervise employees with the concept of supervisory liability. A supervisory liability claim can exist without a finding of municipal liability for the failure to train or supervise employees. The fact that the court has recommended that GPD be dismissed from this action does not necessarily mean that there can be no supervisory liability for the failure to train or supervise. It only means that Plaintiff is not required to show proof of an official GPD policy as the "moving force" behind the conduct. However, the analogy employed by the court in the cited case[21] has been used by several circuits in determining whether a supervisory official is deliberately indifferent with regard to the alleged constitutional violation.

Having found Plaintiff's allegations against Defendant Suba to be lacking substantial facts to allege a plausible claim against Defendant Suba, the court will recommend that Plaintiff's first amended complaint against Defendant Suba be dismissed subject to Plaintiff's ability to amend the first amended complaint to allege sufficient facts therein to plead a plausible claim or claims against Defendant Suba. Having reviewed Plaintiff's complaint, the court finds that the failure to allege non-conclusory facts would apply to the first, second, third, fourth, and eleventh causes of action against Defendant Suba in his individual capacity.

The court also finds it appropriate to dismiss the ninth and tenth causes of action against

---

[20]See page 7 of Defendant Suba's reply to Plaintiff's opposition to the motion to dismiss.
[21]*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)

Defendant Suba in his individual capacity for the reasons stated *supra*. These are claims that are directed to Defendant in his official capacity.

CONCLUSION

Based upon the reasons stated herein above, the court recommends the following in relation to the motions filed by Defendants to dismiss the first amended complaints against them.

1. The court recommends that the motion to dismiss Plaintiff's first amended complaint against Defendants Suba, Anciano, and Artui in their official capacities be dismissed because these Defendants are not persons withing the meaning of 42 U.S.C. § 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). These include the claims against the Defendants in their official capacities in the first, second, third, fourth, and eleventh causes of action.

2. The court recommends that the motion to dismiss Plaintiff's first amended complaint against Defendants Suba, Anciano, and Artui in their official capacities with regard to the ninth and tenth causes of action be denied. Suits against state officials in their official capacities are proper in an action for injunctive and declaratory relief.

3. The court recommends that the motion to dismiss Plaintiff's first amended complaint against GPD be dismissed since Defendant GPD is not a person withing the meaning of 42 U.S.C. § 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182 (Guam 1990). These include the claims against GPD in the first, second, third, fourth, ninth, and tenth causes of action. Declaratory and injunctive relief are not available to a plaintiff against a state agency in a section 1983 action for a constitutional or federal right violation.

4. The court recommends that the motion by Defendants Anciano and Artui to dismiss Plaintiff's complaint against them in their individual capacities be denied as to the first, second, third, fourth, fifth, sixth, seventh, eighth, and eleventh causes of action, but that it be granted as to the ninth and tenth causes of action. The court finds that the ninth and tenth causes of action are claims for relief directed against defendants in their official capacities.

5. The court recommends that the motion by Defendant Suba to dismiss Plaintiff's

complaint against him in his individual capacity for the failure to plead a plausible claim alleging

supervisory liability under section 1983 be granted subject to the right of Plaintiff to amend his

complaint to allege such non-conclusory facts as would constitute a plausible claim against

Defendant Suba in his individual capacity. These claims are the first, second, third, fourth, and

eleventh causes of action. The court also recommends that the ninth and tenth causes of action

against Defendant Suba in his individual capacity be dismissed since the court finds that the

relief sought therein is directed to a claim for relief against his official capacity.

      Dated this 22nd day of April, 2010.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**

**NOTICE:**     **THE PARTIES HAVE FOURTEEN (14) DAYS TO FILE OBJECTIONS**

                 **TO THE REPORT AND RECOMMENDATION.**