James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509   (671) 472-4036 (fax)
james.mitchell@gpd.guam.gov
Attorney for defendants Suba, Artui, and Anciano.

# IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| **JAMES L. ADKINS**, | ) | |
| Plaintiff, | ) | Civil Case No. 09-00029 |
| vs. | ) | |
| | ) | **DEFENDANTS ARTUI'S AND** |
| **GUAM POLICE DEPARTMENT, et al.**, | ) | **ANCIANO'S JOINT OBJECTION TO** |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | **RE: DENIAL OF MOTION TO DISMISS** |
| | ) | **BASED ON QUALIFIED IMMUNITY** |
| | ) | |
| | ) | |

Defendants Guam Police Officer D.B. Anciano; and Police Officer Serafino Artui respectfully object to the *Report and Recommendation re: Motions to Dismiss* entered by the magistrate-judge on April 22, 2010. Specifically, defendants the magistrate-judge's analysis and recommendation with respect to the defense of qualified immunity is flawed and due to be modified before permitting the case to proceed. The magistrate-judge's report may arguably have reached the correct result at this stage of the case, only because limited factual development may still be necessary to flesh out exactly what happened in order to decide whether in the qualified immunity calculus the law is clearly established. If this case is to proceed further, it is important that the parties understand their respective burdens under an appropriate analysis of applicable precedent.

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including "avoidance of disruptive discovery." *Siegert v. Gilley*, 500 U.S. 226, 236, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (KENNEDY, J., concurring in judgment). There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial

> diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Ashcroft v. Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1937, 1953 (2009). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 815 (2009).[1]

The magistrate-judge's report and recommendation purports to present, as "clearly established" law under the first amendment, a case that is wholly inapplicable to the facts alleged and legal claims asserted in this case, a case that is irrelevant to the framework for analysis necessary to decide qualified immunity.

> Thus, the taking of a photograph by Plaintiff at the accident scene of a green truck which has crashed into a wall enjoys constitutional protection because it embodies an expression of First Amendment freedoms, the creation, storage, or reproduction of a depiction. It is a depiction which cannot be said to be obscene, defamatory, fraudulent, or inciting. *See United States v. Stevens*, ___, S.Ct. ___, 2010 WL 1540082 (April 20, 2010) (No. 08-769).

---

[1] Qualified immunity analysis is a two-step process. "In *Saucier*, 533 U.S. 194, 121 S.Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. *Ibid*. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 815-16 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). The Supreme Court in *Pearson* held that the questions may be decided in whichever order the lower courts decide best fit the case.

*Report and Recommendation*, Doc. 63 (filed April 22, 2010), p. 13. The Supreme Court's decision in *Stevens* involved a facial overbreadth challenge under the first amendment to a federal statute that criminalized "the commercial creation, sale, or possession of certain depictions of animal cruelty." The holding, even general propositions within the case dealing with when and in what circumstances the government may regulate speech, have nothing to do with whether police officers violate the clearly established first amendment rights of presumably innocent passers-by who photograph accident scenes and then argue with the police about their right to do so.

Citing *Griswold v. Connecticut*, 381 U.S. 479 (1965), the report and recommendation next states that the right of privacy "though not specifically mentioned in the Bill of rights, [the right of privacy] is said to be found in 'penumbras' and 'emanations' of other constitutional protections … has been said to be derived from the Ninth Amendment." From this, the court posits that the law is clearly established and concludes that "Plaintiff's privacy may have been violated if he was subjected to arrest and incarceration without probable or reasonable cause." *Report and Recommendation*, Doc. 63 p. 14.[2]

The magistrate-judge's reference to "penumbras" and "emanations" to explain that the right of privacy is "derived from the Ninth Amendment," misapprehends and skews the entire analysis. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' *Baker v. McCollan*, 443 U.S. 137,

---

[2] To "posit" is to assume, to hypothesize, to put something forth as the factual predicate for an argument. It is what lawyers mean when they say "assuming arguendo." It does not answer the first question in the qualified immunity analysis, which is what the law is; nor does it answer the second question, which is whether the law was clearly established at the time it was allegedly violated. To "posit" in reliance on "penumbras" and "emanations" assumes both parts of the analysis, and avoids answering the question altogether.

3

144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). **The first step in any such claim is to identify the specific constitutional right allegedly infringed.** *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); and *Baker v. McCollan*, *supra*, 443 U.S., at 140, 99 S.Ct., at 2692." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (emphasis added). If Mr. Adkins' right of privacy during the course of his stop and arrest "derives from the Ninth Amendment" and the authority cited for that proposition is a case involving the right to marital privacy and contraception, then the "clearly established law" component of the qualified immunity analysis has no meaning. It is the court's duty "to say what the [clearly established] law is." *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.). Penumbras and emanations shine no light on that inquiry.

The broad general propositions of law derived from the *Stevens* and *Griswold* cases cited by the magistrate-judge do not "identify the specific constitutional right allegedly infringed,**"** *Graham v. Connor*, 490 U.S. at 394, at issue in this case. Discussion of those cases does not even belong in the same room.

For a right to be clearly established,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted). *See also Hope v. Pelzer*, 536 U.S. at 739; *Saucier*, 533 U.S. at 202; *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("[A]s we explained in *Anderson*, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.") **This level of specificity is required** because "[i]f the law did not

put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202.

*Hypolite v. California Dep't of Corrections*, 2008 WL 4218471 (E.D. Cal. 2008) (emphasis added) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201).

It is the "level of specificity" that is of concern here. Broad and inapposite legal truisms from cases involving entirely different legal principles do not provide the proper framework for a qualified immunity analysis here. "For purposes of qualified immunity, the Plaintiff must do more than simply make general, conclusory allegations of some constitutional violation or state broad legal truisms, generalities are just not helpful." *McDaniel v. Woodard*, 886 F.2d 311, 314 (11th Cir.1989) (internal citations omitted); *C&J Associates Pest Control v. Hornsby*, 2006 WL 3832819 * 8 n. 11 (M.D. Ala. 2006). "The key distinction between whether a constitutional violation occurred and whether that right was clearly established is that **the right violated must 'be defined at the appropriate level of specificity** before a court can determine whether it was clearly established.' " *Wilson v. Poulos*, ___ F.Supp.2d ___, 2010 WL 1068067 * 6 (S.D. Cal. 2010) (emphasis added) (quoting *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir.2005)); *see also Brocato v. Department of Corrections*, 2009 WL 3489367 * 11 (C.D. Cal. 2009) ("when the … **right in issue here is viewed at the appropriate level of specificity**, there was no clearly established constitutional right that [defendants] could have believed they were violating") (emphasis added).

5

The magistrate-judge's reliance as points of reference on a case involving a facial challenge under the first amendment to a statute criminalizing the depiction of animal cruelty, *United States v. Stevens*, and another case defining the right of marital privacy found in "penumbras" and "emanations" in the first and ninth amendments, *Griswold v. Connecticut*, to determine whether the law is clearly established when an "innocent passer-by" is allegedly stopped and instructed not to take photographs of an accident scene, is so general, vague and unwieldy as to defeat the purpose of qualified immunity altogether. Police officers cannot be expected to know from a case that holds the federal government may not criminalize depictions of animal cruelty and *that post-dates the alleged constitutional violation* that they may not to stop and arrest people taking photographs at accident scenes.[3] They are certainly not expected to know that they may be sued for violating the right to privacy found in "penumbras" and "emanations." Those sorts of broad, generalized truisms do not nearly approximate the appropriate level of specificity required to defeat qualified immunity.

> **The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified**. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any

---

[3] The second prong of the qualified immunity analysis focus on whether the law was clearly established *at the time* of the alleged constitutional violation. "Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action. *Harlow*, 457 U.S., at 819, 102 S.Ct., at 2739, assessed in light of the legal rules that were 'clearly established' **at the time it was taken**, *id.*, at 818, 102 S.Ct., at 2738." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (emphasis added). So even if *United States v. Stevens* was an apropos statement of applicable law, the fact that it post-dates the events in this case and in fact announces a refinement in this area of first amendment jurisprudence hardly qualifies as precedent.

6

Case 1:09-cv-00029 Document 69 Filed 05/06/10 Page 6 of 13

> other constitutional or statutory violation. **But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of** *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis*, *supra*, 468 U.S., at 195, 104 S.Ct., at 3019. **It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense**: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) (emphasis added; footnote and additional citations omitted) (referring to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); quoting *Davis v. Scherer*, 468 U.S. 183 (1984)).

When qualified immunity is denied at the motion to dismiss stage because the court has determined further factual development may be necessary, it is important to identify what facts are missing and to proceed no further except as necessary to decide the question presented. For this reason, if discovery is required, it must be narrowly tailored to development of those facts necessary to resolve the qualified immunity question.

> The Supreme Court has recognized that **limited discovery, tailored to the issue of qualified immunity, will sometimes be necessary** before a district court can resolve a motion for summary judgment. *See Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n. 14, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (plurality opinion) (stating that qualified immunity exists to protect officials from "broad-reaching discovery" but not from discovery altogether (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, (1982))).

*Castillo v. Skwarski*, 2009 WL 4844801 * 10 (W.D. Wash. 2009) (emphasis added).

> In rare cases, "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." *Crawford-El v. Britton*, 523 U.S. 574 n. 14, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (citations omitted). **Likewise, the Ninth Circuit, noting that the court has wide discretion in staying discovery, has determined that plaintiffs do not have the right to conduct broad discovery in a civil rights action until the immunity issue is decided, but that they are entitled to conduct limited discovery where discovery can affect the immunity decision.** *See Little v. City of Seattle*, 863 F.2d 681 (9th Cir.1988). Particularly, plaintiffs may propound discovery "concerning issues that bear upon the qualified immunity defense, such as the actions that the [defendant] official actually took ...," if such information is unknown to plaintiffs. *Crawford-El*, 523 U.S. at 599-600.

*Strong v. Director of State of Idaho*, 2005 WL 1421445 * 4 (D. Idaho 2005) (editorial brackets in original; emphasis added). When a motion to dismiss asserting qualified immunity is denied, discovery, when required, is to be narrowly tailored to discovery of those facts necessary to decide the immunity question. "If the plaintiff's action survives these initial hurdles and is otherwise viable, the plaintiff ordinarily will be entitled to **some** discovery. Rule 26 vests the trial judge with broad discretion **to tailor discovery narrowly** and to dictate the sequence of discovery." *Crawford-El*, 523 U.S. at 598 (emphasis added). For example,

> the court may postpone all inquiry regarding the official's subjective motive until discovery has been had on objective factual questions such as whether the plaintiff suffered any injury or whether the plaintiff actually engaged in protected conduct that could be the object of unlawful retaliation. The trial judge can therefore manage the discovery process to facilitate prompt and efficient resolution of the lawsuit; as the evidence is gathered, the defendant-official may move for partial summary judgment on objective issues that are potentially dispositive and are more amenable to summary disposition than disputes about the official's intent, which frequently turn on credibility assessments. **Of course, the judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible.** *See Anderson*, 483 U.S., at 646, n. 6, 107 S.Ct., at 3042.

*Id.*, 523 U.S. 599-600 (footnotes omitted) (emphasis added).

What this means is that *with the proper legal framework for deciding the qualified immunity question presented in this case*, it is a relatively simple matter to tailor the discovery necessary to resolve the immunity question. The defendants have not answered the complaint yet. So the most the defendants could argue was to draw on inferences from the complaint, and admissions subsequent to the complaint, that the plaintiff was or was not in a certain place, that defendants did or did not take certain actions, and that a reasonable police officer in their shoes would have determined that what they were doing did not violate clearly established law.

The parties are fairly in agreement as to what body of case law applies; they disagree as to how the facts of this case apply to the relevant case law. Those cases will include *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004) (Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest.); *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1106 (8th Cir. 2004) ("The arrest was lawful, however, if there was probable cause to believe Timothy had violated any applicable statute, even one not contemplated by the officers at the moment of arrest."); *McCabe v. McCaulay*, 2008 WL 2980013 * 7 (N.D. Iowa 2008) ("[T]he term 'obstruct' is considered broader than 'resist,' and 'includes putting obstacles in the path of officers completing their duties.' ") (quoting *Lawyer*, 361 F.3d 1107); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Chavez v. City of Oakland*, 2009 WL 1537875 * 3 (N.D. Cal. 2009) ("Even assuming, as plaintiff contends, that the officers arrested plaintiff to prevent him from taking a photograph, he did not

9

have a First Amendment right to take the photograph in the first place in the absence of evidence that the general public is allowed such access to accident sites, and this accident in particular."); and *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information.").[4]

The analysis of whether, if *limited* discovery is permitted, Mr. Adkins' constitutional rights were clearly established will also include analysis of a case from Alabama, wherein the plaintiff failed to rebut the argument that "securing an accident scene entails preventing photographs from being taken…." *Kinsey v. City of Opp, Alabama*, 50 F.Supp.2d 1232, 1236 (M.D. Ala. 1999).

> Despite Plaintiff's conclusory allegation that, by denying him access to the accident scene for the purpose of taking photographs, Defendant Kyser violated Plaintiff's constitutional rights, the court finds that Defendant Kyser's actions violated no constitutional rights. First, the court notes that Plaintiff fails to cite, and the court has not found, a single case wherein the Supreme Court, any court in the Eleventh Circuit, or any Alabama state court has addressed whether failure to allow access to an accident scene so a newsperson could take photographs, or

---

[4] *See also, Asociacion de Periodistas de Puerto Rico v. Mueller*, 2007 WL 5312566 * 3 (D. Puerto Rico 2007) (noting cases cited by plaintiffs for the generic proposition that there exists "a general, but qualified, right of the press to gather news" and holding, that "[c]ontrary to Plaintiffs' assertions, these cases do not establish specific rights of the press during the recording of live events from public locations or at an investigatory scene."); *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003) (police officer who arrested freelance cameraman for refusal to comply and move on entitled to qualified immunity); *Connell v. Town of Hudson*, 733 F.Supp. 465, 470 (D. N.H. 1990) ("The undisputed facts demonstrate that Connell followed all instructions reasonably designed to prevent interference with police and emergency activities. Although he may have crossed a police perimeter, that perimeter was not clearly delineated, and, when asked to move, he moved."); *id*. ("It is hard to imagine how Connell could have interfered with police or emergency activities by taking pictures from the second floor of a house that others were using to view the accident."). These cases illustrate the evidence that may be necessary to determine whether Mr. Adkins has stated a claim against police officers under the first or fourth amendments. What exactly Mr. Adkins was doing that brought him to the police officers' attention may require factual development because although they have not answered the complaint yet, the police officers at the scene have a somewhat different version of the events than that presented in the complaint.

> circumstances closely analogous to same, constitutes a constitutional violation. This evidences a finding that no clearly established constitutional right was violated. *See Dowdell v. Chapman*, 930 F.Supp. 533, 552 (M.D.Ala.1996) (finding that, "[b]ecause neither the Eleventh Circuit, the Supreme Court of the United States, nor the Supreme Court of Alabama has considered facts and circumstances which are closely analogous to those in the case at bar, the court finds that it is not clearly established that the law enforcement officials' actions constituted a Fourth Amendment violation") (emphasis in original).
>
> Further, the Supreme Court specifically has held that "[n]ewsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded...." *Branzburg v. Hayes*, 408 U.S. 665, 685, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The court finds that Plaintiff fails to demonstrate that he was excluded from the accident scene while the general public was not.

*Id.* Just as in Alabama which is within the jurisdiction of the Eleventh Circuit Court of Appeals, neither the Ninth Circuit, the Supreme Court of the United States, nor the Supreme Court of Guam "has considered facts and circumstances which are closely analogous to those in the case at bar." The actual facts and circumstances of what precipitated Mr. Adkins' encounter with the police will determine whether the law was clearly established on that day. The broad legal truisms the magistrate-judge "posits" do not begin to frame the question correctly.

> Thus, the court finds that Plaintiff had no right of access to the accident scene and, therefore, Defendant Kyser did not violate any clearly established constitutional right of Plaintiff. Accordingly, the court finds that Defendant Kyser is entitled to qualified immunity, and summary judgment is due to be granted on Plaintiff's § 1983 claims against Defendant Kyser for violation of Plaintiff's First, Fifth or Fourteenth Amendment rights (Counts I and II).

*Id.*, 50 F.Supp.2d 1237. Mr. Adkins has already fashioned a factual issue out of whether he was treated differently from other passers-by by reason of his taking photographs. So that may also be a legitimate area of inquiry.

Another case that may provide guidance on the question whether Mr. Adkins was legally stopped to begin with is *Scheir v. City of Snohomish*, 2008 WL 4812336 (W.D. Wash. 2008).

11

> The Fourth Amendment prohibits "unreasonable searches and seizures" by the police, and its protections extend to brief investigatory stops of persons or vehicles that fall short of a traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *Terry*, 392 U.S. at 9). In Terry, the Supreme Court created a limited exception to the general rule that police detention requires probable cause, wherein "an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). This "reasonable suspicion" standard is considerably less demanding than the preponderance of the evidence standard required for probable cause. *Id.* However, the Fourth Amendment still requires "a minimal level of objective justification for making the stop" and "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* (citing *Terry*, 392 U.S. at 27). A legitimate *Terry* stop therefore requires "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). This determination must be based upon "the totality of the circumstances." *Arvizu*, 534 U.S. at 273.

*Id.*, 2008 WL 4812336 * 6. Crediting Mr. Adkins' allegations on motion to dismiss may have defeated immunity at this stage of the litigation. The facts necessary to decide summary judgment will involve what he was doing on that day and whether there was reasonable suspicion to stop him for obstructing governmental operations. That is the limit of the discovery necessary to resolve this case.

## CONCLUSION

Although they believe that their entitlement to qualified immunity was self-evident from the totality of the pleadings filed to-date, which included concessions made by the plaintiff as to where he was at the time of his stop and arrest not considered by the court, defendants Artui and Anciano acknowledge that *limited* discovery may still be necessary. In order to know what facts are necessary to resolve the immunity question, and to know what limitations to place on future discovery, it is critical to understand the proper framework for analysis of the complaint. The

12

magistrate-judge's analysis of applicable precedent with respect to the question of qualified immunity is fundamentally flawed and due to be modified before permitting the case to proceed.

Respectfully submitted this 6th day of May, 2010.

    /s/ James T. Mitchell
JAMES T. MITCHELL
For defendants Suba, Artui, Anciano

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X,
Hagåtña, Guam 96910
Email: acalaw@teleguam.net

this 6th day of May, 2010.

    /s/ James T. Mitchell
JAMES T. MITCHELL