ANITA P. ARRIOLA, ESQ.
JOAQUIN C. ARRIOLA, ESQ.
LEEVIN T. CAMACHO, ESQ.
ARRIOLA, COWAN & ARRIOLA
259 MARTYR STREET, SUITE 201
P.O. BOX X, HAGATNA, GUAM 96910
TELEPHONE: (671) 477-9730/33
TELECOPIER: (671) 477-9734

Attorneys for Plaintiff James L. Adkins

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ALICIA G. LIMTIACO, ATTORNEY GENERAL OF GUAM; OFFICE OF THE ATTORNEY GENERAL OF GUAM; PAUL SUBA, CHIEF OF GUAM POLICE DEPARTMENT; GUAM POLICE DEPARTMENT; D.B. ANCIANO; SERAFINO ARTUI; AND DOES I THROUGH X,<br><br>　　　　Defendants. | CIVIL CASE NO. CV09-00029<br><br>**PLAINTIFF JAMES L. ADKINS' RESPONSE TO DEFENDANTS' SUBA'S, ARTUI'S, AND ANCIANO'S JOINT OBJECTION TO REPORT AND RECOMMENDATION RE MOTION TO DISMISS OFFICIAL CAPACITY CLAIMS** |

### INTRODUCTION

Defendants Paul Suba, D.B. Anciano, and Serafino Artui have filed objections to the Report and Recommendation re: Motions to Dismiss ("Report") issued by the Magistrate Judge on numerous grounds. Their objections are essentially regurgitations of their arguments in their motions to dismiss, which were rejected by the Magistrate either explicitly or implicitly. For the reasons discussed below, the Magistrate's Report should be affirmed in its entirety.

### ARGUMENT

**I.　THE MAGISTRATE CORRECTLY REFUSED TO CONSIDER EXTRANEOUS EVIDENCE OF THE ATTORNEY GENERAL'S "PROSECUTION DECLINE" MEMORANDUM.**

1

Defendants adopted and incorporated by reference the Attorney General ("AG's") motion to dismiss, which argued that plaintiff's ninth and tenth causes of action were moot because the AG had issued a "Prosecution Decline" memorandum. The AG did not attach the memorandum, but merely referenced it in a footnote. Plaintiff objected to its consideration by the Magistrate, as it was not properly before the court. Plaintiff's Opp. At 4-5. The memorandum was never submitted to the Magistrate and was therefore never before the Magistrate for his consideration. The Magistrate could hardly be faulted for refusing to consider a memorandum that was never produced. Even if it had been submitted, the Magistrate correctly refused to consider it, as otherwise he would have been required, under F.R.C.P. 12(d) to convert Defendants' motion to dismiss to a motion for summary judgment and would also have been required to give notice to plaintiff of such conversion. See Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1207 (9th Cir. 2007). "Failure to make this conversion and to provide litigants with appropriate notice to permit supplementation of the record can constitute reversible error." R.J.R. Services, Inc. v. Aetna Cas. & Sur. Co., 895 F.2d 279, 281 (7th Cir. 1988) (internal citations omitted).

Defendants contend that while plaintiff disputed "its application and interpretation", Objections at 4, the undisputed fact that a memorandum had been issued is sufficient for the Magistrate to have considered it. Id. at 5. This is incorrect. Plaintiff disputed the *content* of the memorandum: "[t]he Prosecution Decline Memorandum states that it is declining prosecution only as to the "obstruction of governmental function" charge, it does not address the "failure to comply" charge." Plaintiff's Opp. to AG Motion to Dismiss at 4, n.2. Further, plaintiff argued that the memorandum was not binding or permanent, and had no effect on the case, since the AG could prosecute plaintiff at will. Id. at 5. Accordingly, the only allegations before the

2

Magistrate were: (1) plaintiff's detention, arrest, and seizure of his cell phone camera; and (2) a notice to appear for hearing on September 29, 2010 to answer to the charges asserted against him. Taking these facts as true, as the Magistrate was required to do, see Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) there continues to be a threat of prosecution and enforcement of the statutes against plaintiff. The Magistrate correctly rejected Defendants' argument that the ninth and tenth causes of action were moot.

## II. THE MAGISTRATE'S RECOMMENDATION TO SUSTAIN THE NINTH AND TENTH CAUSES OF ACTION AGAINST SUBA, ANCIANO, AND ARTUI SHOULD BE AFFIRMED.

### A. Plaintiff has stated a cause of action for declaratory relief against Defendants.

Preliminarily, it should be noted that defendants have cited to only certain sentences in plaintiff's First Amended Complaint ("FAC"), and not to the provisions explicitly directed at them. See Objections at 2, n.1. Plaintiff's ninth cause of action seeks declaratory relief regarding the constitutionality of the statutes under which he was detained, arrested, and his cell phone camera was seized. The ninth cause of action states in its entirety:

**NINTH CAUSE OF ACTION**
**(DECLARATORY RELIEF)**
**(Against All Defendants)**

> *57. Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 62, above.*
>
> *58. A controversy has arisen between plaintiff and defendants relative to their legal rights and duties under the Act and the Charge.*
>
> *59. Plaintiff believes that the Act and the Charge are unconstitutional and that his arrest and incarceration under the Act and the Charge were wrongful and in violation of his civil and constitutional rights.*
>
> *60. Defendants Suba, GPD, Anciano and Artui believe that they acted properly in applying the Act and the Charge against plaintiff*

3

*and that both the Act and the Charge are constitutional.*

61. Upon information and belief, defendants Limtiaco and Office of the Attorney General believe that the Act and the Charge are constitutional and they will enforce the Act and the Charge by prosecuting plaintiff under both.

*62. A judgment is necessary to declare and adjudicate the respective rights and duties of plaintiff and defendants herein.*

FAC ¶¶ 58-62 (emphasis added). Defendants argue that when the AG was dismissed from the lawsuit, "there was no one left in the lawsuit in a position to afford Mr. Adkins the declaratory and injunctive relief he seeks." Objections at 2. Defendants appear to concentrate only on paragraph 61 of the FAC, which sought declaratory relief against the AG for enforcement of the statutes and prosecution of plaintiff under both. But in previous allegations in the FAC, which were incorporated by reference in paragraph 57 in the Ninth Cause of Action, plaintiff alleged all of the following:

> Suba, as Chief of the Guam Police Department, "is responsible for the implementation and enforcement of the Act and the Charge, and for training police officers and ensuring that they comply with the law in implementing and enforcing the Act." FAC ¶ 7.
>
> Anciano and Artui were the GPD police officers who arrested him. FAC ¶ 9, 10.
>
> Defendants Suba, GPD, Anciano, and Artui wrongfully, unlawfully, without process, warrant, or legal authority of any kind, and without information from any person that plaintiff had committed any criminal offense, arrested, detained, and incarcerated plaintiff without probable or reasonable cause, all in deprivation of plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under sections 1421b(a), (c), (e), and (u) of the Organic Act of Guam. FAC ¶ 22.
>
> Defendants Suba, GPD, Anciano, Artui, and each of them, knew or should have known that plaintiff was not violating any laws and was not subject to arrest. FAC ¶ 23.
>
> Defendants Suba, GPD, Anciano, and Artui are "persons"

4

who, under color of law, deprived plaintiff of his rights, privileges and immunities secured by the United States Constitution, the Organic Act, and the laws of Guam, in violation of 42 U.S.C. § 1983. As a direct and proximate result of the wrongful acts of Suba, Anciano, Artui, and DOES I through X, plaintiff was deprived of his liberty and was caused great mental anguish and suffering, physical injury, humiliation, shame, and embarrassment, and has been damaged in his good name and reputation, in an amount to be determined at trial. FAC ¶ 25.

The Act and the Charge on their face and as applied fail to provide adequate notice as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally protected rights and inviting selective prosecution. They are, therefore, void for vagueness, as they deprive plaintiff of due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. FAC ¶ 27.

Defendants Anciano and Artui's purpose and intent in arresting plaintiff and seizing his cell phone camera was to deprive him of his freedom of speech. FAC ¶ 29.

The Act and the Charge on their face and as applied violate the First Amendment to the United States Constitution and the Organic Act and are void for vagueness, as they penalize plaintiff's right of free speech within their scope and application. The operation of the Act and the Charge creates a chilling effect upon plaintiff's exercise of his right to free speech. The Act and the Charge penalize plaintiff's taking of photographs in his car on a public road, which is protected speech. FAC ¶ 30.

As the Court can plainly see from the foregoing allegations, plaintiff sufficiently alleged facts and violations of law by the Defendants. Pursuant to paragraphs 60 and 62 of the FAC, plaintiff seeks declaratory relief against the Defendants that the Act and the Charge are unconstitutional, that his arrest and incarceration under the Act and the Charge were wrongful, and in violation of his civil and constitutional rights. FAC ¶¶ 59, 62.

Contrary to Defendant's argument, Suba, Anciano, and Artui are the appropriate defendants who are in a position to afford Mr. Adkins the declaratory relief he seeks. The Magistrate recognized this in holding that declaratory relief against Suba, Anciano, and Artui in

their official capacities is warranted. Report at 6, 23.

   B. <u>Plaintiff has sufficiently stated a cause of action for injunctive relief against Defendants.</u>

As with the ninth cause of action, Defendants do not present all of the allegations in the tenth cause of action to the Court; they merely point out one sentence concerning injunctive relief to prevent prosecution of plaintiff. Plaintiff's claim for injunctive relief reads in its entirety:

<b>TENTH CAUSE OF ACTION<br>
(INJUNCTIVE RELIEF)<br>
(Against All Defendants)</b>

 63. Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 62, above.

 64. *If the Act and the Charge are allowed to be enforced and executed by all of the defendants against plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration.*

 65. *Unless and until the relief demanded in this complaint is granted, plaintiff has good reason to believe that his civil rights, right of free speech, right to privacy, right to be free of unlawful arrest and seizure, and right to due process of law will continue to be infringed, chilled, threatened, impeded and otherwise interfered with by all of the defendants.*

 66. *The relief requested by plaintiff in this complaint is essential to prevent interference with plaintiff's civil and constitutional rights.*

 67. Plaintiff has no adequate remedy at law.

FAC ¶¶ 63-67.

As discussed above in Part I, the AG's decision not to prosecute plaintiff is neither binding nor permanent, and has no effect on this case or plaintiff's claims against Defendants. At any time, the Prosecution Division may change its mind for any reason and prosecute the case against Mr. Adkins at will. Plaintiff has alleged that Suba "is responsible for the implementation

and enforcement of the Act and the Charge, and for training police officers and ensuring that they comply with the law in implementing and enforcing the Act and the Charge." FAC ¶ 7. This allegation, taken as true, is supported by Guam law. Suba, as the Chief of Police, has the statutory duty to, among other things, adopt procedures, rules and regulations for the conduct and efficient operation of the Guam Police Department ("GPD"), require GPD to maintain pace with current professional developments and community standards, 10 G.C.A. § 77107, adopt rules, guidelines and policies to insure GPD's responsiveness to the safety, security and peace-keeping needs of the community, id., and prescribe by general order or directive the necessary instructions to GPD employees as to their official duties, functions and responsibilities. 10 G.C.A. § 77116. Most importantly, the Defendants continued to vouchsafe the constitutionality of the statutes, indicating their intent to enforce them and to seek plaintiff's prosecution under the statutes and incarceration. See Anciano and Artui Mot. at 12, n.6, 13-16; Suba Mot. at 3, n.3 (adopting and incorporating by reference therein AG's Motion to Dismiss). Under these circumstances, the Magistrate's recommendation to deny the motion to dismiss as to plaintiff's tenth cause of action for injunctive relief against Defendants is correct and should be affirmed.

### III. THE MAGISTRATE IMPLICITLY AND CORRECTLY REJECTED DEFENDANTS' ARGUMENTS OF LACK OF STANDING AND NON-JUSTICIABILITY.

A. The Younger abstention doctrine does not apply here, where there is no pending state judicial proceeding.

Defendants argue that because there is "a pending prosecution", this action is barred by the Younger abstention doctrine. This argument displays a fundamental misunderstanding of that doctrine. In Younger, 401 U.S. 37, the U.S. Supreme Court articulated a doctrine for federal courts to abstain in certain matters in order to permit state courts to try state cases free of federal interference. *Younger* abstention is required when: (1) state judicial proceedings are pending;

7

(2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the federal issue, meaning that there is no procedural bar preventing a party from raising the issue. World Famous Drinking Emporium v. City of Tempe, 820 F.2d 1079, 1082 (9th Cir. 1987). Because the Defendants failed to meet the first, threshold requirement, its Objections are without merit.

*Younger* and its progeny "espouse a strong federal policy against federal-court interference with *pending state judicial proceedings* absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, (1982) (emphasis added) (involving constitutional challenge to state bar disciplinary rules that were the subject of a pending disciplinary proceeding in state supreme court). *Younger* abstention therefore applies only when there are pending state judicial proceedings. Gilbertson v. Albright, 381 F.3d 965, 976 (9th Cir. 2004) (*Younger* applies in an action for damages under 42 U.S.C. § 1983 in which the federal plaintiff brings a constitutional challenge to a state proceeding that is "ongoing" and is "of a judicial nature"); see NOPSI, 491 U.S. at 372 (a challenge to completed legislative action is not "the interference with ongoing judicial proceedings against which *Younger* was directed"). The critical date for purposes of deciding whether abstention principles apply is the date the federal action is filed. Gilbertson, 381 F.3d at 969, n.4. The question is whether the state proceedings were underway *before* initiation of the federal proceedings. Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir. 1987).

It is undisputed that no judicial proceeding was filed in local Guam courts nor is one pending in order for this Court to apply the *Younger* doctrine.[1] Absent a pending local judicial proceeding that was underway before this case was filed, there is no merit to the Defendants'

---

[1] "When no state proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system . . . " Steffel, 415 U.S. at 462.

argument that the Court should abstain from adjudicating Mr. Adkins' claims against them.[2] Defendants made a half-hearted attempt to respond to this argument, but essentially conceded that there was no pending local judicial proceeding that would trigger Younger abstention.

B.  Mr. Adkins has standing to sue the Defendants in this action.

Defendants rely upon two cases in support of their argument that Mr. Adkins lacks standing to sue, Lyons, 461 U.S. 95, and Mayfield v. U.S., 599 F.3d 964 (9th Cir. 2009). Both cases are cited for the proposition that Mr. Adkins lacks standing because the possibility that he will suffer the same injuries (i.e., arrest and incarceration based on the same acts) are remote. Objections at 12-13. Neither decision, however, establishes the applicable rule for standing in this case.

In City of Los Angeles, Lyons sought damages arising out of injuries he received from an illegal chokehold administered by the Los Angeles police. He sought declaratory and injunctive relief concerning a statute which allowed the chokeholds. The Supreme Court found that the single episode in which Lyons was harmed by the statute's application was insufficient to confer standing, absent a realistic likelihood that the statute would, in the future, be applied to his own detriment. Lyons, 462 U.S. at 106.

In Mayfield, the plaintiff was arrested and imprisoned for two weeks under the Foreign Intelligence Surveillance Act (FISA), as amended by the Patriot Act. After his release, Mayfield filed a lawsuit against the government for unlawful arrest and imprisonment and unlawful seizures and searches. The parties reached a settlement agreement, in which Mayfield agreed to

---

[2] As the Fifth Circuit Court of Appeal has observed, ". . one who seeks to challenge a state statute as violative of the federal constitution may not sue before he is truly injured; yet he may not wait until he is charged with a crime. He may invoke federal jurisdiction only if he can move through the narrow door between prematurity and exclusive state jurisdiction." KVUE, Inc. v. Austin Broadcasting Corp., 709 F.2d 922, 928 (5th Cir. 1983). Mr. Adkins did precisely that.

release all claims against the government, except one – Mayfield could seek declaratory judgment that certain portions of the FISA violated the Fourth Amendment. Mayfield argued that he had standing to sue because the government continued to retain derivative materials it had unlawfully seized from him. The court held that the only relief that would redress this alleged Fourth Amendment violation was an injunction requiring the government to return or destroy such materials, but because he had bargained this form of relief away, a declaratory judgment would not redress Mayfield's past injuries or prevent likely future injuries. Mayfield, 2009 WL 4674172 *6.

There are two critical distinctions between Lyons, Mayfield, and the instant case which dictate a different standard and a different result. First, in Lyons and Mayfield there was no threat of prosecution, as is the case here. For this reason, the applicable standard is found in Steffel v. Thompson, 415 U.S. 452 (1974). There, the Court held that an individual who had been threatened with prosecution for distributing literature at a shopping center, and whose companion had been arrested when he refused to stop distributing the literature, had standing to challenge the constitutionality of the statute because he showed a credible threat of prosecution. Steffel, 415 U.S. at 475. For injunctive and declaratory relief, a federal plaintiff has standing when he demonstrates "a genuine threat of enforcement of a disputed criminal statute, whether an attack is made on the constitutionality of the statute on its face or as applied." Id. (equitable relief is available when a prosecution based on an assertedly unconstitutional state statute is threatened, but is not pending); see Younger v. Harris, 401 U.S. 37, 42 (1971) (to establish standing to challenge the constitutionality of a criminal statute, plaintiff must show a "credible threat" that the statute will be enforced against him). In contrast to Steffel, where the plaintiff was not arrested but only threatened with prosecution, here Mr. Adkins *was* arrested and

incarcerated. As discussed above in Part II, the threat of prosecution and enforcement of the statutes against Mr. Adkins is genuine and credible, as the "Prosecution Decline" memorandum is not before the Court and even if it was, it is not binding or permenant.

Second, unlike this case, Lyons and Mayfield did not claim any constitutional right to act as they had prior to their arrest. In Steffel, *supra*, and Dombrowski v. Pfister, 380 U.S. 479, 490 (1965), the Supreme Court allowed anticipatory relief against threatened state law enforcement. Both cases turned on that enforcement's deterrent threat to the plaintiffs' constitutional, in particular First Amendment, rights. See also Hernandez v. Cremer, 913 F.2d 230, 234-35 (5th Cir. 1990) (finding that Lyons' standing requirements did not apply where plaintiff was engaged in activity protected by the Constitution, exercising his right to travel outside the U.S.). Here, Mr. Adkins was exercising his right to free speech in taking photographs of the accident scene and in stating his understanding of the law to Anciano and Artui. He was arrested for both. An actual injury exists when a plaintiff is chilled from exercising his right to free expression or forgoes expression in order to avoid enforcement consequences. See Meese, 481 U.S. at 473. Further, within the First Amendment context, courts properly apply an expanded notion of standing to determine who may institute the asserted claim for relief. Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392-93 (1988); St. Paul Area Chamber of commerce v. Gaertner, 439 F.3d 481, 487 (8th Cir. 2006) (the chilling effect of a threat of prosecution on a plaintiff's exercise of First Amendment's rights constitutes the injury); Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003) (the evidentiary bar that must be met to determine a First Amendment plaintiff's credible threat of prosecution is extremely low).

Mr. Adkins must show that his injuries "fairly can be traced to the challenged actions" of Defendants. Whitmore v. Arkansas, 495 U.S. 149, 155 (1980). Mr. Adkins easily meets that

requirement. The allegations of the FAC, taken as true, lead to more than a plausible inference that Anciano and Artui illegally detained him, arrested him, seized his cell phone camera, and violated his civil and constitutional rights. Further, plaintiff alleged that Suba also detained, arrested, and incarcerated plaintiff and that he is liable under the theory of supervisory liability. The Magistrate allowed plaintiff to amend the FAC to allege sufficient facts to plead plausible claims against Suba. In the event this Court finds that the FAC contains insufficient facts supporting the ninth and tenth causes of action, plaintiff requests that he be allowed leave to amend those claims.

## CONCLUSION

For all of the foregoing reasons, plaintiff James L. Adkins respectfully requests that the Court affirm the Magistrate's Report and Recommendation Re Motions to Dismiss in its entirety. In the event that the Court rejects any portion of the Magistrate's Report, plaintiff respectfully requests that the Court grant him leave to amend his First Amended Complaint. Moss v. Secret Service, 572 F.3d 962, 964 (9th Cir. 2009).

Dated this 20th day of May, 2010.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiff James L. Adkins

By: /s/ Anita P. Arriola
ANITA P. ARRIOLA

# CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2010, a true and correct copy of Plaintiff James L. Adkins' Response to Defendants' Suba's, Artui's and Anciano's Joint Objection to Report and Recommendation Re Motion to Dismiss Official Capacity Claims was personally delivered to:

        JAMES T. MITCHELL, ESQ.
        Legal Counsel
        Guam Police Department
        Bldg. 233, Central Ave.
        Tiyan, Guam 96913

Dated this 20th day of May, 2010.

                                                  /s/ Anita P. Arriola
                                                  ANITA P. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910