James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509  (671) 472-4036 (fax)
james.mitchell@gpd.guam.gov
Attorney for defendants Suba, Artui, and Anciano.

# IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| **JAMES L. ADKINS**, | ) | Civil Case No. 09-00029 |
| Plaintiff, | ) | |
| vs. | ) | **DEFENDANTS SUBA'S,[1] ARTUI'S AND** |
| | ) | **ANCIANO'S REPLY TO PLAINTIFF'S** |
| **GUAM POLICE DEPARTMENT, et al.**, | ) | **RESPONSE TO OBJECTION TO** |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | **RE: OFFICIAL CAPACITY CLAIMS** |
| | ) | |
| | ) | |
| | ) | |

Mr. Adkins doesn't get it. Originally, Mr. Adkins filed suit against two police officers, their supervisor, and the attorney general seeking, in addition to damages, *prospective* injunctive and declaratory relief. To avoid the possibility of future prosecution he has filed a facial and as-applied attack challenging two Guam statutes alleging they are void for vagueness, and otherwise constitutionally infirm under the first, fourth, fifth, and fourteenth amendments.[2] He has since

---

[1] Since the filing of this lawsuit and the original objections to the magistrate-judge's report and recommendation, Paul Suba has resigned as Chief of Police. Major Ricardo Leon Guerrero currently serves as acting Chief of Police. When a permanent appointment is made and confirmed, the court will be notified.

[2] Mr. Adkins is referring to 9 GCA § 55.45, which states in its entirety: "Obstructing Governmental Functions; Defined & Punished. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions." The charge Mr. Adkins is referring to, not cited in the complaint, is the offense of "failure to comply," *see* 16 GCA § 3503.3(d) ("It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority.").

voluntarily dismissed the attorney general, the only defendant who can provide relief as to those claims.

Police officers are "authorized to: (1) Protect life and property; (2) Enforce the law; (3) Prevent crime; (4) Preserve the peace; (5) Arrest violators pursuant to Title 8 Guam Code Annotated; (6) Serve the public; (7) Conduct searches and seizures of property pursuant to Title 8 Guam Code Annotated; and (8) Perform the duties of a peace officer." *See* 10 GCA § 77103; *see* 8 GCA § 5.55 (listing persons authorized by law to serve as "peace officers"). While authorized to enforce the law by arresting violators and conducting searches and seizures, police and peace officers are *not* charged with prosecuting violations of the law; nor is it their duty or responsibility to *defend* the constitutionality of statutes. That is reserved to the attorney general, who is not a party in this case.[3]

By law, the attorney general is the "chief legal officer of the government of Guam." *See* 48 U.S.C.A. § 1421g(d)(1). By law, she has "cognizance of all legal matters, excluding the Legislative and Judicial Branches of the government of Guam, involving the Executive Branch of the government of Guam." *See* 5 GCA § 30102. By law, she has "cognizance of all matters pertaining to public prosecution." *See* 5 GCA § 30104. By law, the attorney general "is the public prosecutor [who], by [her]self, a deputy or assistant, shall…[c]onduct on behalf of the Government of Guam the prosecution of all offenses against the laws of Guam which are prosecuted in any of the courts of Guam, the District Court of Guam, and any appeals therefrom

---

[3] Mr. Adkins does not allege that the local police are routinely enforcing laws that have previously been declared unconstitutional. Nor does he allege that there is a department-wide policy sanctioning arrests pursuant to the obstruction of governmental operations and failure to comply statutes of members of the public who photograph accident and crime scenes in violation of their first and fourth amendment rights. If either of those factual allegations were contained in the complaint Mr. Adkins' claims for prospective equitable relief to enjoin future conduct against only the police, but not the attorney general, might be actionable. There are none. Mr. Adkins cannot make the police the defenders of the constitutionality of laws whose final enforcement decision rests with the attorney general.

2

Case 1:09-cv-00029   Document 72   Filed 05/24/10   Page 2 of 11

[and shall c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party." *See* 5 GCA § 30109(a), (c). And, by law, she is mandated to "[i]nstitute by any appropriate action proceedings on behalf of [her]self or any other public officer (not an employee) to have determined by the courts the validity of any law, rule or regulation." *See* 5 GCA § 30109(g). And the term "prosecuting attorney" is defined as "any attorney, by whatever title designated, having by law the right of duty to prosecute any offense in behalf of the Territory." 8 GCA § 5.60. Those are functions and duties reserved exclusively *by law* to the attorney general. Where is the attorney general? She has been dismissed. Why? Mr. Adkins is the master of his complaint. Ask him.

What Mr. Adkins refuses to appreciate is that the police have already done whatever they are going to do. They arrested and charged Mr. Adkins, confiscated his cell phone, then released him. He may or may not have a claim for damages if he can state a claim for violation of clearly established constitutional law. Anything from the point in time of his arrest forward is, under the law of Guam, entirely in the hands of the attorney general. Even if Mr. Adkins were to obtain a declaratory judgment against the police that their actions violated (past tense) his civil rights, it would not bind the attorney general or restrain her from prosecuting him. She is not a party.[4]

In *Ex parte Young*, 209 U.S. 123 (1908), it was the attorney general of Minnesota who defended, because he was the person charged with final authority to prosecute violations of the statutes that were alleged to be unconstitutional.

---

[4] *See Leu v. International Boundary Com'n*, ___ F.3d ___, 2010 WL 1980398 * 2 (9th Cir. May 19, 2010) ("Accordingly, any judgment entered in this case would not bind executive officials. *See Restatement (Second) of Judgments* §§ 34, 62 cmt. a (1982) ('It is a basic principle of law that a person who is not a party to an action is not bound by the judgment in that action.'). Where requested relief 'depends on the unfettered choices made by independent actors not before the courts' …the claim is not redressable and this court lacks jurisdiction over it.").

> It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional. His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before the United States circuit court.

*Id.*, 209 U.S. 161.

There have been many cases challenging state laws alleged to violate or restrict specific constitutional freedoms since *Ex parte Young*, and although often dismissed on other grounds, the appropriate defendant was the attorney general, district attorney, or prosecutor, however he or she was denominated, so long as it was the ultimate authority under local law charged with not only its application, but its enforcement and defense. In *National Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963), it was the attorney general of Virginia who was sued in a first and fourteenth amendment challenge to certain state statutes. In *Golden v. Zwickler*, 394 U.S. 103 (1969), it was the district attorney for the City of New York who was the proper defendant in declaratory judgment action challenging the constitutionality of a statute making it a crime to distribute anonymous literature in connection with an election campaign. That case was ultimately dismissed for lack of a justiciable case or controversy, because the allegations of prospective injury were too remote and speculative. "Since the New York statute's prohibition of anonymous handbills applies only to handbills directly pertaining to election campaigns, and the prospect was neither real nor immediate of a campaign involving the Congressman, it was wholly conjectural that another occasion might arise when Zwickler might be prosecuted for distributing the handbills referred to in the complaint." *Id.*, 394 U.S. 109. Nonetheless, in that facial challenge brought under the first amendment, it was not the police

4

officers who were named defendants, but the prosecutor of the statute who was called upon to defend it.

In *Younger v. Harris*, 401 U.S. 37 (1971), the plaintiff was "was indicted in a California state court, charged with violation of the California Penal Code §§ 11400 and 11401, known as the California Criminal Syndicalism Act… He then filed a complaint in the Federal District Court, asking that court to enjoin the appellant, Younger, *the District Attorney* of Los Angeles County, from prosecuting him, and alleging that the prosecution and even the presence of the Act inhibited him in the exercise of his rights of free speech and press, rights guaranteed him by the First and Fourteenth Amendments." *Id.*, 401 U.S. 38-39 (emphasis added). In the first amendment context alone, in *Samuels v. Mackell*, 401 U.S. 66 (1971), appellants "were all indicted in a New York state court on charges of criminal anarchy, in violation of §§ 160, 161, 163, and 508(1) of the New York Penal Law… They later filed these actions in federal district court, alleging (1) that the anarchy statute was void for vagueness in violation of due process, and an abridgment of free speech, press, and assembly, in violation of the First and Fourteenth Amendments;" *Id.*, 401 U.S. 67 (footnotes omitted). The appellee in the case, Thomas J. Mackell, was the district attorney for the City of New York.

The case of *Boyle v. Landry*, 401 U.S. 77 (1971), is instructive, in part because it was the prosecutors who were the principal defendants, not only the police, in an action for declaratory relief and injunction challenging the constitutionality of various states and local laws:

> This action was brought in federal court by seven groups of Negro residents of Chicago, Illinois, seeking a declaratory judgment and an injunction against the enforcement of a number of Illinois statutes and Chicago ordinances on the grounds that they violated various provisions of the Federal Constitution. The complaint named as defendants and sought relief against a number of officials of Cook County and the City of Chicago: the Mayor, the Chief Judge, and two Magistrates of the Circuit Court, the State's Attorney for the county, the

5

> Sheriff, the Superintendent of Police, the city's Corporation Counsel and his assistant, and three city police officers. Their complaint challenged as invalid the Illinois statutes prohibiting mob action, resisting arrest, aggravated assault, aggravated battery, and intimidation. They alleged that some of the plaintiffs had been arrested under some of these statutes and that those prosecutions were currently pending in Illinois state courts, and that Negroes were being intimidated in the exercise of their First Amendment rights (1) through the wholesale use of all the statutes alleged to be unconstitutional to prosecute members of the Negro community and (2) through the use of arrests without probable cause, coupled with the setting of exorbitant bail. The complaint contended that the defendants had threatened to enforce all of the named statutes for the sole purpose of harassing and intimidating the plaintiffs.

*Id.*, 401 U.S. 78 (footnotes omitted). The Supreme Court ordered the case dismissed because for those plaintiffs who had been charged, they had an adequate remedy at law available by which to raise their constitutional claims in whatever criminal cases were pending, and for those that were not charged, they had failed to allege an imminent threat of irreparable injury sufficient to confer standing.

> There is nothing contained in the allegations of the complaint from which one could infer that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute under the intimidation statute in the normal manner. As our holdings today in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688, show, the normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future. The policy of a century and a half against interference by the federal courts with state law enforcement is not to be set aside on such flimsy allegations as those relied upon here.

*Id.*, 401 U.S. 81. Those are the same alternative arguments presented originally by the attorney general in the case at bar. If the "prosecution memorandum" is not considered and the original charges against Mr. Adkins remain pending, then he has an adequate forum to raise his constitutional claims, and the *Younger* abstention doctrine bars his claims for prospective

6

declaratory and injunctive relief. If the memorandum is considered and there are no pending charges, then his "flimsy allegations" are not enough to state a justiciable case or controversy.

In *Hicks v. Miranda*, 422 U.S. 332 (1975), plaintiffs filed suit against "four police officers of Buena Park *and the District Attorney and Assistant District Attorney* of Orange County. The complaint … stated that the action was for an injunction against the enforcement of the California obscenity statute, and prayed for judgment declaring the obscenity statute unconstitutional, and for an injunction …." *Id.*, 422 U.S. 337-38 (emphasis added).

In *Roe v. Wade*, 410 U.S. 113 (1973) and *Doe v. Bolton*, 410 U.S. 179 (1973), Henry Wade was the district attorney for Dallas County, Texas and Arthur K. Bolton was the attorney general for the State of Georgia. In a frontal assault on those decisions, in *Guam Soc. of Obstetricians and Gynecologists v. Ada*, 776 F.Supp. 1422 (D. Guam 1990), *aff'd* 962 F.2d 1366 (9th Cir.), *cert. denied*, 506 U.S. 1011 (1992), the Guam Legislature enacted a statute "outlawing almost all abortions," considered by the district court to be "a direct challenge to the regime" of the United States Supreme Court's decision in *Roe v. Wade*, 410 U.S. 113 (1973). *Id.*, 962 F.2d 1368-69. Sued for declaratory and injunctive relief to have the law declared unconstitutional and to enjoin its enforcement, it was the governor, attorney general, and director of Department of Public Health and Human Services ("DPHSS"), against whom declaratory and prospective injunctive relief were entered. *See*, 776 F.Supp. 1422. Interestingly, one of the plaintiffs in that case, "Janet Benshoof, in a luncheon speech before the Guam Press Club, after acknowledging that Guam's new law prohibited the 'soliciting' of abortions, 'informed' the audience that abortions could be obtained in Hawaii and gave a telephone number in that state for further information. She was promptly arrested under the solicitation provisions of the new law. (These charges subsequently were dismissed, but without prejudice.)." *Id.*, 776 F.Supp. 1426. But the

7

police who arrested her were not named defendants in the suit for declaratory judgment and injunctive relief, or if they were, they were unnecessary to the relief ultimately obtained.[5]

In *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997), plaintiffs filed suit against the attorney general of the United States, not federal law enforcement officers, asserting that the Communications Decency Act of 1996 was facially overbroad in violation of the first amendment. Similarly, in *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004), it was the attorney general who was sued by Internet content providers and civil liberties groups seeking a preliminary injunction, alleging that Child Online Protection Act violated the first amendment. By now, Mr. Adkins should be beginning to see a pattern.

Officers Artui and Anciano and the chief of police are not empowered under Guam law to determine whether or not Mr. Adkins will be prosecuted *in the future* based upon the events alleged in the complaint from the past. When Mr. Adkins voluntarily dismissed the Attorney General, *see*, Doc. 50, there was no one left in the lawsuit in a position to afford Mr. Adkins the future declaratory and injunctive relief he seeks – not to be prosecuted – because the one official with the final authority to prosecute him is no longer a party, and would not be bound by any decision or decree from this court.

Mr. Adkins acknowledges repeatedly that it is the attorney general whose decision it is to prosecute, *see Response* filed May 20, 2010, Doc. 71, p. 6.[6] Defending the constitutionality of

---

[5] *Cf.*, *McGuire v. Reilly*, 386 F.3d 45 (1st Cir. 2004) (facial and as-applied challenge by anti-abortion protestors to Massachusetts statute that created buffer zones around health care facilities performing abortions naming as defendants the attorney general and district attorneys).

[6] *See* plaintiff's *Memorandum of Points and Authorities in Opposition to Motion to Dismiss Filed by Attorney General Alicia G. Limtiaco*, Doc. 39, p. 1 ("The *AG may prosecute Mr. Adkins at will*."); *id*., p. 5 ("Similarly, the AG's decision not to prosecute Mr. Adkins is neither binding nor permanent, and has no effect on this case or Mr. Adkins' claims against the AG. *At any time, the Prosecution Division may change its mind for any reason and prosecute* the case against Mr. Adkins at will.") (footnote omitted; emphasis added); *id*., p. 6 ("The AG and her

8

local laws, facially or as-applied, deciding whether or not to *prosecute* him, now or in the future, is the province of the attorney general, not the police, and the courts are not empowered to provide advisory opinions or instruct a non-party through the offices of another.[7]

Mr. Adkins can only be seeking an advisory opinion from this court that he can use as a shield to some future criminal prosecution if he is ever prosecuted for "failure to comply" and "obstruction of government operations." If so, he fundamentally misapprehends the nature of a federal court's jurisdiction to entertain certain claims for relief.

> In limiting the judicial power to "Cases" and "Controversies," Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law. Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Los Angeles v. Lyons*, 461 U.S. 95, 111-112, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). This limitation "is founded in concern about the proper-and properly limited-role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See United States v. Richardson*, 418 U.S. 166, 179, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

*Summers v. Earth Island Institute*, 555 U.S. ___, 129 S.Ct. 1142, 1149 (2009).

Simply because Mr. Adkins may or may not have a civil rights claim for damages against Officers Artui and Anciano for what happened on the day of his arrest, it does not mean he also has a claim for *prospective* equitable and declaratory relief against them too, not when he has, for whatever reason known only to himself, voluntarily dismissed the only official authorized by

---

office believe that the statutes are constitutional *and they will enforce the statutes by prosecuting plaintiff* under both.") (emphasis added).

[7] "From the early days of our Republic, the Supreme Court has consistently held that federal courts are not here to give advisory opinions. *See, e.g., Cohens v. Virginia*, 6 Wheat. 264, 19 U.S. 264, 399-402, 5 L.Ed. 257 (1821); *Flast v. Cohen*, 392 U.S. 83, 96-97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). It is not permissible under Article III for [the courts] to give an essay-like lecture to the executive branch in a decision that will not bind it because it is not a party to this litigation." *Leu v. International Boundary Com'n*, ___ F.3d ___, 2010 WL 1980398 * 2 (9th Cir. May 19, 2010).

9

Guam law to prosecute him. Mr. Adkins fails to acknowledge that "a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185, 186 (2000); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Here is the bottom line:

> To the extent that [Mr. Adkins] merely seeks to have [the police officer's conduct] declared unlawful, that is "not an acceptable Article III remedy." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106-07, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that "psychic satisfaction," seeing "that a wrongdoer gets his just deserts," or ensuring that another is "punished for [his] infractions," are not cognizable Article III remedies); *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 962 (6th Cir.2009) ("In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing.").

*Leu*, ___ F.3d ___, 2010 WL 1980398 * 1. Mr. Adkins voluntarily dismissed the one official who might have provided him prospective declaratory and injunctive relief, yet still he seeks his pound of flesh from the police for what he says was done to him, not merely by way of damages, but by a judicial declaration from the court that he was wronged by the police, and an injunction that they shall never do it again. He cannot have it.

## CONCLUSION

Mr. Adkins has voluntarily dismissed the attorney general, the one government official who could arguably have afforded him the declaratory and prospective injunctive relief from prosecution he fears in his challenge to the constitutionality of local laws. Without the attorney general, defendants Artui, Anciano and Suba in their official capacities are in no position to give him any prospective relief. Adkins' remaining claims for equitable and declaratory relief must be dismissed.

10

Respectfully submitted this 24th day of May, 2010.

_____
JAMES T. MITCHELL
For defendants Suba, Artui, Anciano

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X,
Hagåtña, Guam 96910
Email: acalaw@teleguam.net

this 24th day of May, 2010.

_____
JAMES T. MITCHELL

11