James T. Mitchell
Guam Police Department
233 Central Avenue
Tiyan, Guam 96913
(671) 475-8509   (671) 472-4036 (fax)
james.mitchell@gpd.guam.gov
Attorney for defendants Suba, Artui, and Anciano.

# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| **JAMES L. ADKINS**, <br> Plaintiff, <br> vs. <br><br> **GUAM POLICE DEPARTMENT, et al.**, <br><br> Defendants. | Civil Case No. 09-00029 <br><br> **DEFENDANTS ARTUI'S AND ANCIANO'S REPLY TO PLAINTIFF'S RESPONSE TO OBJECTION TO REPORT AND RECOMMENDATION RE: QUALIFIED IMMUNITY** |

On March 2, 2010, this court issued an order, pursuant to 28 U.S.C. § 636(b)(1)(B), referring all pending motions to the magistrate-judge "to determine and to issue his report and recommendation to the court as to the appropriate disposition of each motion." Doc. 53. With respect to the particular objections defendants have made, the standard of review is de novo.

> This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."

*Ventana Medical Systems, Inc. v. St. Paul Fire & Marine Ins. Co.*, ___ F.Supp.2d ___, 2010 WL 1752507 * 2 (D. Ariz. 2010) (editorial brackets in original).

Mr. Adkins asserts the strangest argument at page 5 of his response by asserting that defendants are attempting to interject new argument by urging that what is required of the court at this juncture is to determine "what facts are necessary to resolve the immunity question, and to know what limitations to place on future discovery." Defendants have presented no new

arguments. Their objections are entirely consistent with the arguments and controlling legal analysis and authority they have presented to-date. Despite the magistrate-judge's misguided analysis as to what law applies, the magistrate-judge did get it right when he ordered a stay of "all further discovery until the immunity issues are resolved *or it is determined that limited discovery may be required*." Doc. 54. *Adkins v. Suba*, 2010 WL 934017 * 1 (D.Guam 2010) (emphasis added). There is no "new" issue or argument presented here. It is the logical extension of the original motion to dismiss and the basis for the stay being granted in the first place. If the court cannot dismiss the case based on the pleadings on file, then the stay of proceedings is still necessary *until* the court can properly determine what "limited discovery may be required." In order for the litigants to know how to frame discovery properly, the court must first conduct a proper analysis of the constitutional questions presented. That has not been done.[1]

Defendants appreciate Mr. Adkins highlighting page 12, ll. 17 – 20, of the *Report and Recommendation*, wherein the court stated, "These two cases and other cases acknowledge that pictures and photographs enjoy constitutional protection unless obscene and that the taking of photographs of police conduct on public property is also constitutionally protected subjected to reasonable time, manner and place restrictions." The two cases the court was referring to were *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"); and the Eleventh Circuit's

---

[1] That the magistrate-judge and the plaintiff may be unfamiliar with the correct approach to the qualified immunity analysis may be understandable. Judging only by a Westlaw search of all courts within the Ninth Circuit ("CTA9-ALL"), combining the search terms "qualified immunity" and "Guam," the last time the federal courts in Guam were presented with a case resulting in a reported decision discussing qualified immunity appears to be *Figueroa v. United States*, 7 F.3d 1405 (9th Cir. 1993); before that, the last time the issue of qualified immunity arose in a reported decision originating in Guam was when qualified immunity was denied by the trial court in *Ngiraingas v. Sanchez*, 858 F.2d 1368 (9th Cir. 1988), *appealed and affirmed on other grounds*, 495 U.S. 182 (1990). That was a long time ago in qualified immunity jurisprudence, and the landscape has changed tremendously in this area of the law since the local bench and bar have last grappled with the issues presented here.

2

decision *Smith v. Cumming*, 212 F.3d 1332 (11th Cir. 2002) (there exists "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"). In *Hill*, the Court was confronted with a facial overbreadth challenge to a statute that was "not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that "in any manner ... interrupt[s]" an officer." *Id*., 482 U.S. 462. But that vague legal truism is nowhere near particularized enough to satisfy the qualified immunity inquiry, and is therefore not very helpful in considering Mr. Adkins' claims.

The Eleventh Circuit's *Smith* decision, from whence comes the magistrate-judge's conclusion that the law is clearly established that the right to take photographs in public "is also constitutionally protected, subject to reasonable time, manner, and place restrictions" is frankly odd to anyone familiar with this area of the law. "Time, place and manner" are buzz words from free speech in a public forum analysis. That is not the nature of the claim Mr. Adkins brings, nor does he contend that the scene of an accident or crime scene is any kind of traditional public forum. Mr. Adkins' claim is more in the nature of those cases involving the news media's and public's "right" to gather and disseminate information *from* newsworthy events, not create them. But if the holding in *Smith* sounds odd to defendants, they are alone. A recent case from another district court also referencing *Smith* demonstrates the magistrate-judge's may have relied in error on "precedent" from the Eleventh Circuit in concluding that the law is clearly established, here or anywhere else.

In *Kelly v. Borough of Carlisle*, 2009 WL 1230309 (M.D. Pa. May 4, 2009), five months before Mr. Adkins was arrested, Chief Judge Yvette Kane of the Middle District of Pennsylvania considered the *Smith* decision and said that while the law may be established in the Eleventh Circuit that *some* sort of time, place and manner analysis applies to claims like Mr. Adkins has

3

filed, that does not necessarily mean the law is clearly established everywhere else, certainly not yet in the Third Circuit.

> First, it was, and still is, unclear whether Plaintiff had a First Amendment right to videotape the police stop at all. While a few courts have held that a citizen has a First Amendment right to videotape police conduct, subject to reasonable time, place, and manner restrictions, **such a right has not been determined by the Third Circuit**. *Compare Gilles v. Davis*, 427 F.3d 197, 212 n. 14 (3d Cir.2005) ("[V]ideotaping or photographing the police in the performance of their duties on public property may be a protected activity.... **More generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection**.") (emphasis added), with *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir.2000) (finding that there is a First Amendment right to videotape police conduct but denying plaintiff's § 1983 action for failure to state how defendants violated that right), and *Robinson v. Fetterman*, 378 F.Supp.2d 534 541-542 [(E.D. Pa. 2005.)] (finding a First Amendment right to videotape and a valid First Amendment retaliation claim where police arrested citizen under the auspices of a clearly invalid court directive). **At most, the Third Circuit has clearly stated that there is some First Amendment protection for videography that has a communicative or expressive purpose**. *Gilles*, 427 F.3d at 212.

*Kelly*, 2009 WL 1230309 * 8 (Kane, Chief Judge) (emphasis added). That certain activities, including photographing newsworthy events, may enjoy "some" first amendment protection, which defendants do not dispute as a general proposition, is not the same as clearly established law applicable to Mr. Adkins' claims in the particularized sense required by the Supreme Court.[2]

---

[2] *See again*, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy 'the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties,' by making it impossible for officials 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' ") (referring to *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984); editorial brackets in original).

The question is what precedential weight to give non-binding decisions from other courts when neither the Supreme Court nor the Ninth Circuit have sufficiently addressed whether the law is clearly established.

> The Supreme Court has provided little guidance as to where courts should look to determine whether a particular right was clearly established at the time of the injury. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 n. 32, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (declining to define "the circumstances under which 'the state of the law' should be 'evaluated by reference to the opinions of this Court, of the Courts of Appeals, or of the local District Court' ") (quoting *Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)). In the Ninth Circuit, we begin our inquiry by looking to binding precedent. *See Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985). If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end. On the other hand, when "there are relatively few cases on point, and none of them are binding," we may inquire whether the Ninth Circuit or Supreme Court, at the time the out-of-circuit opinions were rendered, would have reached the same results. *See id.* at 1515. Thus, in the absence of binding precedent, we "look to whatever decisional law is available to ascertain whether the law is clearly established" for qualified immunity purposes, "including decisions of state courts, other circuits, and district courts." *Drummond*, 343 F.3d at 1060 (quoting *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir.1995))."

*Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003)); *accord Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010).

As Chief Judge Kane's opinion in *Kelly* suggests, the "decisional law" cited here by the magistrate-judge from the Eleventh Circuit for the proposition that "time, place and manner" analysis applies to claims such as those brought by Mr. Adkins has not been endorsed by other courts. And while an inter-circuit split is not dispositive, it ought to be enough to give the court pause before concluding that the law is, indeed, clearly established. Neither the U.S. Supreme Court, the Ninth Circuit Court of Appeals, the Guam Supreme Court, nor this court has ever held or even suggested (until now, perhaps) that the "right" to photograph accident scenes is subject

to any kind of "reasonable time, place and manner" public forum analysis, or that a police officer's failure to engage in and debate that analysis prior to arresting someone violates clearly established law. The claim Mr. Adkins now brings, that his arrest is subject to the kind of "time, place and manner" analysis traditionally reserved for public forum free speech cases may now be the law in the Eleventh Circuit, but it has not been adopted anywhere else and is not clearly established law in the Ninth Circuit. Even if the Ninth Circuit should adopt that kind of analysis for future cases, it cannot be said that the law was clearly established *at the time* Mr. Adkins was arrested.[3]

The more insistent Mr. Adkins' defense of the magistrate-judge's analysis of the constitutional questions presented becomes, the more he is illustrates the point that the law is not clearly established. By defending the magistrate-judge's reliance on penumbras, emanations, obscenity, and free speech in a public forum cases, Mr. Adkins steers the court away from the proper qualified immunity analysis. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987) ("[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense…."). This case has nothing to do with the constitutional limits of obscenity or the right to marital privacy, and it has

---

[3] "Whether a right is clearly established turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.' " *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) (quoting *Harlow*, 457 U.S. at 822). *See Wilson v. Layne*, 526 U.S. 603 (1999) (unpublished district court opinions from other circuits does not create "clearly established" law). That is not to suggest "that entitlement to qualified immunity is the guaranteed product of disuniform views of the law in the other federal, or state, courts, and the fact that a single judge, or even a group of judges, disagrees about the contours of a right does not automatically render the law unclear if we have been clear." *Safford Unified School Dist. No. 1 v. Redding*, 557 U.S. ___, ___, 129 S.Ct. 2633, 2644 (2009). Nor does it mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Wilson*, 526 U.S. 615. While the Supreme Court has said that "general statements of the law are not inherently incapable of giving fair and clear warning." *United States v. Lanier*, 520 U.S. 259, 271 ((1997), in view of the lack of precedent on point within the Ninth Circuit or from the Supreme Court, and the lack of agreement on whether the law is clearly established in other jurisdictions, "general statements of the law" will not suffice to defeat qualified immunity.

nothing to do with "time, place and manner" restrictions on free speech in a public forum. Mr. Adkins was charged with obstructing governmental operations and failing to comply with orders of the police for, he alleges, taking photographs of an accident and crime scene. Worse than apples and oranges, the cases cited by the magistrate-judge for the proposition that the law is clearly established do not even belong in the same food group.

Reliance on first amendment decisions involving obscenity, free speech in a public forum, or penumbras and emanations from the ninth amendment right to marital privacy is about as meaningful to the qualified immunity calculus in this case as precedent from first amendment cases involving political campaign contributions, viewpoint discrimination, and separation of church and state. To illustrate, if Mr. Adkins decided to hold a prayer vigil ten, twenty or thirty yards away while the accident scene was still being investigated, or to protest police brutality, or to solicit donations to fund a driver safety campaign, could he be stopped and told to move away from the scene of the accident, and arrested for obstruction of government operations and failure to comply if he refused? Does the Constitution guarantee Mr. Adkins free rein to photograph a "newsworthy" event even if his presence only *might* be a distraction to the investigation or *might* impede traffic? The first amendment is clearly implicated in some fashion, but these hypothetical scenarios are not so remote or attenuated from the arguments presented by Mr. Adkins' complaint. Are the police constitutionally required to set up barricades and yellow tape around every accident or crime scene before directing traffic away from it? Are Mr. Adkins' constitutional rights in each of these cases really so obvious as to be clearly established? Of course not.[4]

---

[4] For that matter, does it really make a difference if Mr. Adkins was the first or only person told to stop taking photographs and move along because other drivers may have had enough common courtesy and decency that they did not have to be told?

*Limited* factual development may be required to determine where Mr. Adkins was in relation to the government operations, what was going on at the time, and who said what to whom, in order to judge the objective legal reasonableness of the public officials' actions. Mr. Adkins' purpose, intent and motivation for whatever he thought he was doing are in fact irrelevant because what matters is not what he was thinking, but whether the officers' conduct was objectively reasonable in light of the state of the law at the time and the information possessed by the officers.[5] The magistrate-judge's reliance on vague legal truisms and generalities contained in inapposite and non-binding "precedent" from another circuit whose reasoning has not been adopted in the Ninth Circuit and is doubted by a court in yet another does not assist that inquiry.

Considering that "[t]he right to speak and publish does not carry with it the unrestrained right to gather information," *Zemel v. Rusk*, 381 U.S. 1, 17 (1965), and that the Supreme Court "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control," *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978), it is simply error for the court to rest its analysis on the questionable relevance of cases dealing with obscenity, public forum free speech, and marital privacy. This case involves whether it is clearly established that the first and fourth amendments are violated by police when a member of the

---

[5] *See, e.g., Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) ("To reject a defense of qualified immunity, we must find that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151; *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In making this determination, we consider the state of the law at the time of the alleged violation. *See Blankenhorn*[ *v. City of Orange*], 485 F.3d [463], at 476 [(9th Cir. 2007)]; *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002). We also examine the 'information possessed' by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal."). It is an "an objective but fact-specific inquiry." *Id.* (citing *Saucier*, 533 U.S. at 202).

8

Case 1:09-cv-00029   Document 73   Filed 05/26/10   Page 8 of 12

public is excluded, *assuming the rest of the public is not similarly excluded*, from accessing an accident and crime scene for purposes of taking photographs or otherwise capturing an event, and then arrested for refusing to stop. By the terms of his own complaint, Mr. Adkins was arguing with the police about his rights at the moment he was told to exit of his vehicle; he deliberately refused to exit his vehicle unless he was placed under arrest; and he was arrested.[6] Only the facts and circumstances leading up to that stop and resulting in his arrest are what may be needed to be developed at this stage in order to determine whether the law is clearly established.

While the magistrate-judge indicated that the qualified immunity analysis will depend on the facts of why Mr. Adkins was stopped in the first place and what happened next, that is because the magistrate-judge considered itself bound, *at this stage of the case*, not to consider plaintiff's concessions in later pleadings that provide visual context to the initial stop. But the court was not so encumbered, as defendants have previously explained. If all that the court said was that additional factual development was necessary to answer the question why Mr. Adkins was stopped, defendants may not be as concerned about the remainder of its analysis. But the interjection of wholly inapplicable theories of "clearly established" first and fourth amendment

---

[6] Confining its analysis to the minimalist details in the complaint, the court explained that at this stage of the case, it may be premature to determine the basis and lawfulness of the initial stop. "Plaintiff is vehement in his opposition to the motion to dismiss that there was no probable cause to stop him. The court must agree with Plaintiff *at this juncture of the case*." *Report and Recommendation*, p. 11, ll. 7, 8 (emphasis added). "Thus, the court must find that the holding in *Chavez* [*v. City of Oakland*, 2009 WL 1537875 (N.D. Cal. June 2, 2009,] has no application *at this point in time* to the facts of this case." Id., p. 13, ll. 10 – 12 (emphasis added). Nevertheless, the magistrate judge agreed with defendants that it is reasonable for them to suggest "that Plaintiff was arrested not for taking photographs or arguing with the police officers, but for failing to comply with an order by a law enforcement officer to get out the car." *Report*, p. 10 ll. 5 – 7. Where the magistrate-judge seemed to get hung up was on the question whether Mr. Adkins could even be stopped to begin with if he were, hypothetically as the court presented during oral argument, merely driving by and clicking his cell phone camera out the window while in transit. The purpose of defendants' objection is to identify precisely what facts need to be adduced in order to answer that concern properly. As the Supreme Court has made clear, "any such discovery should be tailored specifically to the question of [defendants'] qualified immunity." *Anderson*, 483 U.S. 646 n. 6.

9

law made formal objection necessary. Because if qualified immunity is denied "at this stage" and "at this point in time," the next step in the proceedings will be for the parties to conduct limited discovery. The case law cited by the magistrate-judge for the principle that the law is clearly established will not corral that inquiry within reasonable limits, but will throw the gates wide open to precisely the kind of "disruptive discovery," *see Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment), and "heavy costs," *Ashcroft v. Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1937, 1953 (2009), the doctrine of qualified immunity is intended to prevent.

This is no ordinary civil case. The Supreme Court has repeatedly observed, "[l]itigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government." *Ashcroft v. Iqbal*, 556 U.S. at ___, 129 S.Ct. 1953. "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987). When qualified immunity is placed in issue and denied on motion to dismiss, the court's task is also to define the parameters of the "limited discovery" necessary to decide the question of immunity at the next stage, summary judgment.[7]

---

[7] "The trial judge can therefore manage the discovery process to facilitate prompt and efficient resolution of the lawsuit; as the evidence is gathered, the defendant-official may move for partial summary judgment on objective issues that are potentially dispositive and are more amenable to summary disposition than disputes about the official's intent, which frequently turn on credibility assessments. **Of course, the judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took,** since that defense should be resolved as early as possible." *Crawford-El v. Britton*, 523 U.S. 574, 599-600 (1998) (footnotes and citation omitted) (emphasis added).

Therefore, the court must identify, with specificity, what the *applicable* law is, and if facts are missing that are necessary to make that determination, then the court must tailor discovery to those facts necessary to engage the *appropriate* qualified immunity analysis. By insisting on a legally defensible qualified immunity analysis from this court, what defendants are trying to do "at this stage" is avoid unnecessary future discovery disputes and appeals to the Ninth Circuit were this court to simply adopt the magistrate-judge's report. Rather than oppose defendants' quest for clarity and coherence in future proceedings, Mr. Adkins might have considered joining their efforts to ensure this court applies the proper analysis *at this stage*, rather than invite error for the next.

## CONCLUSION

The magistrate-judge's analysis of precedent applicable to the qualified immunity question is fundamentally flawed. In order to know what discovery will be necessary to resolve the immunity question, it is critical that the questions presented by the complaint be framed correctly. Accordingly, defendants Artui and Anciano must respectfully object to the magistrate-judge's analysis of the question of qualified immunity in its entirety and submit that it is due to be revisited and reviewed de novo.

Respectfully submitted this 26th day of May, 2010.

_____
JAMES T. MITCHELL
For defendants Suba, Artui, Anciano

## CERTIFICATE OF SERVICE

  I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

  Anita P. Arriola, Esq.,
  Arriola, Cowan & Arriola
  259 Martyr Street, Suite 201
  P.O. Box X,
  Hagåtña, Guam 96910
  Email: acalaw@teleguam.net

this 26th day of May, 2010.

*[signature]*
JAMES T. MITCHELL