# DISTRICT COURT OF GUAM

# TERRITORY OF GUAM

JAMES L. ADKINS,

    Plaintiff,

vs.

GUAM POLICE DEPARTMENT,
PAUL SUBA[1], CHIEF OF GUAM POLICE
DEPARTMENT, D. B. ANCIANO,
SERAFINO ARTUI; AND DOES I
THROUGH X,

    Defendants.

Civil Case No. 09-00029

**ORDER AND OPINION RE: REPORT AND RECOMMENDATION RE: MOTIONS TO DISMISS**

## INTRODUCTION

Presently before the court are the Defendants' Motions to Dismiss. *See* Docket Nos. 28-30. On March 2, 2010, these matters were referred to the United States Magistrate Judge Joaquin V.E. Manibusan, Jr. *See* Docket No. 53. An evidentiary hearing was held on March 23, 2010, before Magistrate Judge Manibusan, Jr. *See* Docket No. 60. On April 22, 2010, the Magistrate Judge issued his Report and Recommendation. *See* Docket No. 63. On May 6, 2010, the Defendants filed objections to the Report and Recommendation.[2] *See* Docket Nos. 68 and

---

[1] The court understands that Defendant, Chief of Police Paul Suba has resigned and that once a permanent appointment is made counsel for the Defendants will notify the court.

[2] Defendants D.B. Anciano and Serafino Artui, moved *pro se* for additional time to file their objections to the Report and Recommendation. *See* Docket No. 65. They indicated that they needed additional time in order to retain counsel. The court considers the motion moot and will not rule on

69. On May 20, 2010, the Plaintiff filed his Responses to the Defendants' objections. *See* Docket Nos. 70 and 71. And, on May 24, 2010 and May 26, 2010, the Defendants filed their respective Replies. *See* Docket Nos. 72 and 73.

Under 28 U.S.C. § 636(b)(1)(C), the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, but must review *de novo* any part as to which an objection has been filed. Upon said review, the court herein adopts in part and rejects in part the Report and Recommendation, and overrules in part and sustains in part Defendants' Objections.

**RELEVANT PRIOR PROCEEDINGS**

The Plaintiff initiated this case by filing his complaint on December 3, 2009. *See* Docket No. 1. The Defendants named in the Complaint are: Alicia G. Limtiaco, Attorney General of Guam ("Attorney General"), Office of the Attorney General of Guam; Paul Suba ("Defendant Suba"), Chief of the Police Department; Guam Police Department ("GPD"); D.B. Anciano ("Defendant Anciano"); Serafino Artui ("Defendant Artui"); and Does I through X. *Id.*

On December 23, 2009, the Attorney General filed a Motion to Dismiss. Docket No. 27. That same day, a Joint Motion to Dismiss was filed by all of the Defendants. Docket No. 28. On December 30, 2009, Defendants Suba, Anciano, and Artui filed Motions to Dismiss. Docket Nos. 29 and 30.

On January 19, 2010, the Plaintiff filed an Opposition to the Attorney General's motion. Docket No. 39. On that same day, the Plaintiff filed an Opposition to the Joint Motion to Dismiss. Docket No. 40. On January 20, 2010, the Plaintiff filed Oppositions to Defendant Suba's Motion to Dismiss and to Defendants Anciano and Artui's Motion to Dismiss. Docket Nos. 42 and 43.

On January 22, 2010, Defendants filed a Joint Reply. Docket No. 45. On January 27, 2010, the Attorney General filed a Reply. Docket No. 47. On January 29, 2010, Defendant Suba filed a Reply. Docket No. 48. Defendants Anciano and Artui filed their Reply on February 2,

---

it since Attorney James T. Mitchell filed objections on their behalf on May 6, 2010. *See* Docket Nos. 68 and 69.

2010. Docket No. 49.

On February 4, 2010, Plaintiff filed a Notice of Dismissal of Action against Defendant Attorney General and the Office of the Attorney General of Guam.[3] Docket No. 50.

On March 2, 2010, these matters were referred to the Magistrate Judge. *See* Docket No. 53. An evidentiary hearing was held on March 23, 2010, before Magistrate Judge Manibusan and on April 22, 2010, he issued his Report and Recommendation. *See* Docket Nos. 60 and 63.

### FACTUAL BACKGROUND[4]

On October 4, 2009, James L. Adkins, (the "Plaintiff") drove out of his yard down Paseo de Oro to Carmen Memorial Drive in Tamuning. *See* First Am. Compl., Docket No. 9 at ¶ 12. As he drove around a curve he saw a green truck crashed into a wall. *Id.* The Plaintiff took out his cell phone with a camera and took pictures of the accident while in his car. *Id.* As the Plaintiff was leaving the scene, a police officer stepped out in front of his vehicle and told the Plaintiff to stop. *Id.* at ¶ 13. The Plaintiff stopped his car and the officer told him that he could not take pictures. *Id.* Plaintiff told the officer that "there is nothing wrong with taking pictures." *Id.* The officer spoke to a second police officer[5] who was there and then the first officer demanded that the Plaintiff give him the camera. *Id.* The Plaintiff refused. *Id.* The first officer again ordered the Plaintiff to give him the camera. *Id.*

The second officer approached the Plaintiff in his car and demanded the Plaintiff's

---

[3] In light of the Plaintiff's notice of dismissal of the Attorney General, the court agrees with the Magistrate Judge's finding that the motions filed by the Attorney General and the Office of the Attorney General have been rendered moot. *See* Docket No. 50.

[4] For purposes of the motions to dismiss, the court recounts the facts as alleged in the Plaintiff's First Amended Complaint and assumes their veracity for the limited purposes of deciding the motions. *"*When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[5] The Plaintiff believes that Defendants Anciano and Artui were the police officers at the scene. The Plaintiff however, is unsure of which one is the first officer and which one is the second officer.

- 3 -

camera. *Id.* at ¶ 14. The second officer again demanded the Plaintiff's camera and the Plaintiff refused. *Id.* The second officer then ordered the Plaintiff out of his car. *Id.* The Plaintiff told the officer that "the only way I will get out is if I am under arrest." *Id.* The second officer then told the Plaintiff he was "under arrest" and the Plaintiff got out of his car. *Id.*

One of the officers handcuffed the Plaintiff and put him in a police car. *Id.* at ¶ 15. While he was in the police car, the Plaintiff retrieved his cell phone and called his wife to tell her he had been arrested and to call his attorney. *Id.* The Plaintiff's cell phone was then grabbed and confiscated. *Id.*

The Plaintiff was then taken to the Tumon police station, where he was incarcerated. *Id.* at ¶ 16. He was later taken to a conference room. *Id.* A police sergeant demanded that the Plaintiff delete the pictures from his cell phone. Again the Plaintiff refused. *Id.* at ¶ 16.

Later that night the Plaintiff was taken to the Hagåtña police station by another police officer where he was booked, fingerprinted, and photographed. *Id.* at ¶ 17. The Plaintiff was restrained and detained for approximately four hours, from 4:30 p.m. to 8:30 p.m. The cell phone camera was never returned to the Plaintiff. *Id.*

After his release, the Plaintiff was given a notice to appear in court on September 29, 2010. *Id.* at ¶ 18. In the notice to appear the Plaintiff learned for the first time that he was charged with "obstructing governmental function" in violation of 9 Guam Code Ann. § 55.45[6]

---

[6] Title 9 GCA § 55.45 provides in its entirety:

**Obstructing Government Functions; Defined & Punished**. A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

and "failure to comply."[7] *Id.*

Based upon the alleged events which led to the confiscation of the Plaintiff's camera and his arrest, the Plaintiff has filed eleven causes of action against Defendants Alicia G. Limtiaco, the Attorney General of Guam, the Office of the Attorney General,[8] the Guam Police Department, Paul Suba, Chief of Guam Police Department, D. B. Anciano, Serafino Artui, and Does I through X, naming all of them or only some of them as Defendants in each of the said individual causes of action. The causes of action are as follows:

1. **Violation of Civil Rights under 42 U.S.C. §1983** against Defendants Suba, GPD, Anciano, and Artui.

2. **Violation of Due Process of Law** against all Defendants.

3. **Violation of Free Speech** against all Defendants.

4. **Violation of Right to Privacy and Unlawful Seizure** against all Defendants.

5. **False Arrest and False Imprisonment** against Defendants Anciano and Artui.

6. **Assault and Battery** against Defendants Anciano and Artui.

7. **Violation of 10 G.C.A. § 77117 and Negligence** against Defendants Anciano and Artui.

8. **Theft of Property and Conversion** against Defendants Anciano and Artui.

9. **Declaratory Relief** against all Defendants.

10. **Injunctive Relief** against all Defendants.

11. **Punitive Damages** against Defendants Suba, Anciano, and Artui.

The Defendants move for dismissal of the complaint. In the Magistrate Judge's Report and Recommendation he made a number of recommendations concerning the requested

---

[7] Not cited to in the complaint, the offense of "failure to comply" is found at 16 GCA § 3503(d). It states:

> It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority.

[8] Since the Plaintiff filed his Notice of Dismissal (*see* Docket No. 50), the causes of action are no longer applicable to the Attorney General and the Office of the Attorney General.

dismissal. In turn, the Defendants filed objections to some of the Magistrate Judge's findings and recommendations, which are now before this court.

**STANDARD OF REVIEW**

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (2005); *see Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991); *see also* Fed.R.Civ.P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed.R.Civ.P. 72(b)(3) (stating a district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").

A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate judge's report and recommendation does not require that the judge conduct a *de novo* hearing on the matter. *United States v. Raddatz*, 447 U.S. 667, 676 (1980). It is sufficient that the district court "arrive at its own, independent conclusion about those portions of the magistrate's report to which objection is made...." *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983). Accordingly, the court makes a *de novo* review to those portions of the Report and Recommendation in which the Defendants have lodged objections.[9]

**LEGAL STANDARDS FOR MOTIONS TO DISMISS**

Gone are the days of notice pleading where conclusory or "bare-bones" allegations in a complaint could survive a motion to dismiss. Pleading standards have seemingly shifted from

---

[9] The court conducted a full review of the entire record before it, including the moving papers, the Magistrate Judge's Report and Recommendation (Docket No. 63), Defendants' Objections (Docket Nos. 68 and 69); Plaintiff's Responses (Docket Nos. 70 and 71) and Defendants' Replies (Docket Nos. 72 and 73).

simple notice pleading to a more heightened form of pleading beginning with the United States Supreme Court opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and further explained in *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009). In those cases, the Court addressed the pleading standard as applied to Rule 12(b)(6) motions to dismiss. The Supreme Court in *Twombly* stated that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In *Iqbal*, the Court interpreted *Twombly* as raising the pleading standard for all actions. The Court in *Iqbal* extended the reach of *Twombly* and instructed that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**DISCUSSION**

**I. RECOMMENDATION TO SUSTAIN THE NINTH AND TENTH CAUSES OF ACTION AGAINST DEFENDANTS SUBA, ANCIANO, AND ARTUI**

The Defendants object to the Magistrate Judge's conclusion that the Plaintiff's ninth and tenth causes of action should not be dismissed against Defendants Suba, Anciano, and Artui in

their official capacities. In the Plaintiff's ninth cause of action, he seeks declaratory relief against all Defendants because "[a] controversy has arisen between the plaintiff and defendants relative to their legal rights and duties under the Act and the charge" for which he was arrested. *See* First Am. Compl., Docket No. 9 at ¶ 58. In his tenth cause of action the Plaintiff seeks injunctive relief enjoining all Defendants from prosecuting him in the local courts of Guam on the charges for which he was arrested. Specifically, the Plaintiff claims "[i]f the Act and Charge are allowed to be enforced and executed by all of the defendants against the plaintiff, plaintiff will be subjected to serious, immediate and irreparable injury in that he will face criminal prosecution and incarceration." *Id.* at ¶ 64.

The Defendants make a number of arguments claiming the Magistrate Judge erred in not dismissing these causes of action. While the court does not agree with all of the Defendants' arguments, it does agree with one. The Defendants correctly assert that the Plaintiff is without standing to pursue these counts. In order for a plaintiff to demonstrate standing for injunctive and declaratory relief:

> [A] plaintiff must show that he [or she] is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A plaintiff must demonstrate "a real and immediate threat that he would again" suffer the injury to have standing for prospective equitable relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). A plaintiff must demonstrate that a "credible threat" exists that he will again be subject to the specific injury for which he seeks injunctive or declaratory relief. *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983). The "mere physical or theoretical possibility" of a challenged action again affecting a plaintiff is not sufficient. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). It is necessary that there be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the plaintiff. *Weinstein v. Bradford*, 423 U.S.

147, 149 (1975).

> To establish Article III standing, a plaintiff must show *inter-alia* that he faces imminent injury on account of the defendant's conduct. *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects. *Id*. at 564, 112 S.Ct. 2130. Nor does speculation or "subjective apprehension" about future harm support standing. *Friends of the Earth,* 528 U.S. at 184, 120 S.Ct. 693; *see also Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130. Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a "real or immediate threat . . . that he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111, 103 S.Ct. 1660 (1983).

*Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010).

In *Lyons*, the plaintiff sought an injunction against the City of Los Angeles barring the use of "chokeholds." 461 U.S. at 97-98. The plaintiff alleged that police officers stopped him for a traffic or vehicle code violation and the officers, without provocation, seized him and applied a chokehold. *Id.* at 98. The plaintiff further alleged that the city's officers regularly and routinely applied chokeholds in situations when they were not threatened with deadly force, that numerous persons had been injured as a result, and that the plaintiff and others were threatened with irreparable bodily injury. *Id.* The Supreme Court held that the plaintiff did not have standing to seek an injunction because the complaint did not establish that there was a real and immediate threat that the plaintiff would again be stopped and again without provocation be subject to a chokehold. *Id.* at 101-03.

In this case, the allegations contained in the ninth and tenth causes of action do not state a credible threat or demonstrated probability that the Plaintiff will suffer similar constitutional injuries at the hands of the Defendants in the future. *See* First Am. Compl., Docket No. 9 at ¶¶s 57-67. There is no pending case against the Plaintiff by the Attorney General, and, in fact the Attorney General indicated that she has no plans to prosecute the Plaintiff.[10] *See* Docket No. 27,

---

[10] The Attorney General at the time of the filing of the motion to dismiss has assumed a new position as the U.S. Attorney of the Districts of Guam and the Northern Mariana Islands. The acting Attorney General has not indicated any change to the position previously held by the Office of the Attorney General.

1  p.8 n.5. While the Plaintiff may believe that there is a possibility of prosecution, that remains
2  speculative at best. A general threat of prosecution is not enough to confer standing. *See, e.g.*
3  *Poe v. Ullman*, 367 U.S. 497, 501 (1961) (mere allegation that state attorney intended to
4  prosecute any offense against local law held insufficient to confer standing).

5  The Plaintiff "must demonstrate genuine threat that the allegedly unconstitutional law is
6  about to be enforced against him." *Stoianof v. State of Montana,* 695 F.2d 1214, 1223 (9th Cir.
7  1983)). "A plaintiff must do more than merely allege imminent harm sufficient to establish
8  standing, he or she must demonstrate immediate threatened injury as a prerequisite to
9  preliminary injunctive relief." *Associated General Contractors of California, Inc. v. Coalition*
10 *for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). Here, the Plaintiff has neither
11 demonstrated a real threat, nor shown a history of past prosecutions for the same conduct
12 engaged in by the Plaintiff. There is no reason for this court to believe there is a department-
13 wide policy in place that requires the arrest of citizens who take photographs of an accident
14 scene.

15 In addition, the Plaintiff's inability to point to any history of prosecutions undercuts his
16 argument that he faces a genuine threat of prosecution. *Rincon Band of Mission Indians v.*
17 *County of San Diego*, 495 F.2d 1, 4 (9th Cir. 1974) (no standing where the record did not did not
18 reveal there had been a history of prosecution under the county ordinance); *Western Mining*
19 *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (no standing where plaintiffs failed to allege
20 that the challenged statute had ever been applied or threatened to apply). At most, the Plaintiff
21 speculates that there is the possibility of prosecution. Because the Plaintiff has not sufficiently
22 alleged how the Defendants will immediately harm him, this court sustains the Defendants'
23 objection and the Magistrate Judge's report and recommendation is rejected on this issue.
24 Accordingly, the ninth and tenth causes of action are hereby dismissed.

25 **II. 42 U.S.C. § 1983 AND STATE ACTORS**

26 As previously noted, the Plaintiff is suing under 42 U.S.C. § 1983 for the violation of his
27 civil rights. Specifically, he alleges he was deprived of his rights under the First, Fourth, Fifth

and Fourteenth Amendments to the United States Constitution. *See* First Am. Compl., Docket No. 9 at ¶ 22. Section 1983 provides a remedy to parties who have been deprived or had a violation of their rights under the United States Constitution by a state official's abuse of his or her position while acting under color of state law. To state a claim under § 1983, a plaintiff must allege that the claimed deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

Section 1983 "only creates a cause of action for violations of the federal 'Constitution and laws.'" *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting 42 U.S.C. § 1983). When an alleged deprivation is caused by the exercise of some right or privilege created by the state, or by a state actor, a person for whom the state can fairly be called responsible, it is considered a state action. *West*, 487 U.S. at 49. Generally, state employment is sufficient to classify someone as a state actor. *Id.* at 50. A person can fairly be said to be a state actor when he or she acts with the authority of state law. *Id.*

The Supreme Court outlined a standard for determining the presence of state action in *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982). The Court held that the conduct causing the deprivation of a federal right must be fairly attributable to the state and, therefore proposed a two-pronged test to determining such attribution.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible .... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937.

As to prong one of the *Lugar* test it seems clear that the alleged conduct of the

Defendants in the course of their work could fairly be attributed to the Territory as the Defendants' employers. And, because the Defendants are employees of the Territory of Guam and presumably acted under the authority of the Territory, the second prong of the test is satisfied. Accordingly, the Defendants qualify as state actors and are subject to liability under § 1983.

**A. Qualified Immunity Doctrine**

The court has reviewed the Defendants' objection as it relates to the doctrine of qualified immunity. Unfortunately, the objection is confusing. The Defendants seem to concede that the Magistrate Judge "reached the correct result at this stage of the case" only to argue that the "magistrate-judge's analysis of applicable precedent with respect to the question of qualified immunity is fundamentally flawed . . . ." *See* Docket No. 69, pp.1 and 13. Regardless of the lack of clarity, the court finds that the gist of the Defendants' objection concerns the Plaintiff's third cause action– violation of the Plaintiff's right to free speech. *See* Docket No. 9.

In a motion to dismiss, government officials are entitled to immediately raise qualified immunity as a defense to avoid the burdens of discovery and pre-trial procedures. *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004).

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an *immunity* from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Ibid*. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ( *per curiam* ).

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).[11]

The doctrine is judicially created and rooted in public policy. "[T]here is a strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford-El v. Brittion*, 523 U.S. 574, 590 (1998).

The fear of suit may have a chilling effect on official decision-making, seriously

---

[11] *Pearson v. Callahan*, 129 S. Ct. 808 (2009) subsequently held that courts have discretion in applying the sequence of *Saucier's* two-prong test for qualified immunity. *See infra*, pages 13-15.

deterring officials from exercising judgment with the decisiveness important to their office. *See Richardson v. McKnight*, 521 U.S. 399, 407, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (describing the purposes of qualified immunity "as protecting governmen's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.") (internal quotations omitted); *Wyatt v. Cole*, 504 U.S. 158, 165, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) (detailing the public policy basis for the qualified immunity privilege).

*Train v. City of Albuquerque*, No. CIV 08-0152 JB/RLP, 2009 WL 1330095, *3 (D.N.M. April 15, 2009).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 129 S. Ct. at 815. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Harlow*, the Supreme Court stated:

> [I]t cannot be disputed seriously that claims frequently run against the innocent as well as the guilty-at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. . . .[T]here is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.

457 U.S. at 814 (footnote and quotations marks omitted).

**B. Two-Part Test for Qualified Immunity**

Until recently, courts were required to apply a two-step analysis in determining whether a

governmental officer is immune from suit based on the doctrine of qualified immunity. The first step is to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the answer is no, the analysis ends, with qualified immunity protecting the defendant from liability. *Id.* However, if the court finds that a constitutional right was violated, then the court must further inquire "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The reasonableness of a defendant's conduct is judged "against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The defendant should not be subject to liability if the law at that time did not clearly establish that the defendant's actions would violate the Constitution. *Id.* The Supreme Court has emphasized that "the qualified immunity inquiry must be undertaken in light of the specific context of the case." *Id.* (internal quotation marks omitted).

The Supreme Court has since withdrawn its mandate that qualified immunity analysis must proceed under the sequence originally dictated by *Saucier*. In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Court held:

> On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.
>
> Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial.

*Id.* at 818.

While leaving the determination whether to adhere to the *Saucier* two prong test in the lower courts' sound discretion, the Supreme Court mentioned various circumstances where such sequencing might be undesirable. For example, there are cases in which it is clear that a right is not clearly established, but less clear whether such a right even exists. *See id.* Under these kinds

of circumstances, it might be considered a waste of resources to engage in an analysis under the first prong-whether a constitutional right was violated-when it is already obvious that, even if such a right existed, it was not clearly established. *See id.* Here is such a set of circumstances, therefore, the court appropriately begins the qualified immunity analysis on the Plaintiff's First Amendment claim with whether the right was clearly established, rather than whether the constitutional right was violated.[12]

**C. Any First Amendment right was not clearly established.**

The Plaintiff alleges that Defendants violated his First Amendment right to take "photographs in his car on a public road, which is protected speech." *See* First Am. Compl., Docket No. 9 at ¶ 30.

Turning to the conduct of the Defendants here, the court must determine whether the admonishment of the Plaintiff to stop taking photographs of an accident scene while in his car on a public road violated clearly established law. An officer prohibiting a citizen from taking photographs at an accident scene is entitled to qualified immunity where clearly established law does not show that the prohibition of such violated the First Amendment. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). For a constitutional law to be clearly established,

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell, supra*, 472 U.S., at 535, n. 12, 105 S.Ct., at 2820, n. 12; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *See, e.g.*, *Malley, supra*, 475 U.S., at 344-345, 106 S.Ct., at 1097-1098; Mitchell, supra, 472 U.S., at 528, 105 S.Ct., at 2816; *Davis, supra*, 468 U.S., at 191, 195, 104 S.Ct., at 3017, 3019.

*Id.* This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 639 (internal quotation marks omitted). The constitutional violation must be "clearly established" at the time of the alleged misconduct. *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

---

[12] If the court finds that the alleged First Amendment at issue here is not clearly established, the court does not and need not reach the issue of whether the Defendants violated Plaintiff's constitutional rights under the First Amendment.

"The operation of [the clearly established] standard, however, depends
substantially upon the level of generality at which the relevant `legal rule' is to be
identified." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97
L.Ed.2d 523 (1987). "[T]he right the official is alleged to have violated must have
been 'clearly established' in a more particularized, and hence more relevant,
sense: The contours of the right must be sufficiently clear that a reasonable
official would understand that what he is doing violates that right." *Id.* at 640, 107
S.Ct. 3034. "[T]he injured party need not establish that the Defendants behavior
had been previously declared unconstitutional." *CarePartners*, 545 F.3d at 882
(internal quotation marks omitted). "The dispositive inquiry is `whether it would
be clear to a reasonable [official] that his conduct was unlawful in the situation he
confronted.'" *Id.* at 883 (quoting *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151).

*Rodis v. City, County of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009).

To demonstrate that a right is clearly established, a party need not find a case with directly parallel facts. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). In *Chavez v. City of Oakland*, No. C 08-04015 CRB, 2009 WL 1537875 (N.D. Cal. June 2, 2009), a newspaper photographer was arrested for exiting his car on a freeway to take photographs of an accident, after specifically being instructed not to and move on by police. Chavez alleged "that defendants violated his First Amendment right 'not to be detained or arrested to prevent him from taking photographs of a newsworthy event.'" *Id.* at *3. In considering Chavez's argument, the court stated:

> The press has no First Amendment right to access accident or crime scenes if the general public is excluded. *See Houchins v. KQED*, 438 U.S. 1, 10-11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (holding that the press does not enjoy a constitutional right to access to news sources); *Branzburg v. Hayes*, 408 U.S. 665, 684-85, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) ("Newsmen have no constitutional right of access to the scenes of crime or disaster when the general public is excluded."); *see also Los Angeles Free Press Inc. v. City of Los Angeles*, 9 Cal.App.3d 448, 455, 88 Cal.Rptr. 605 (1970) ("Restrictions on the right of access to particular places at particular times are consistent with other reasonable restrictions on liberty based upon the police power, and these restrictions remain valid even though the ability of the press to gather news and express views on a particular subject may be incidentally hampered.").
>
> Even assuming, as plaintiff contends, that the officers arrested plaintiff to prevent him from taking a photograph, he did not have a First Amendment right to take the photograph in the first place in the absence of evidence that the general public is allowed such access to accident sites, and this accident in particular. Plaintiff, however, does not offer any evidence that suggests that the general public had a right to exit their vehicles on the freeway and stand in the freeway to take photographs. His declaration assertion that at the time of his arrest he saw at least one other stopped vehicle with its occupant outside the car is insufficient. There is no evidence in the record as to what that person was doing; perhaps the person was a witness to the accident. Moreover, common sense dictates that members of

the general public are not allowed to exit their cars in the middle of the freeway to view an accident scene.

*Id.* at *3.

At a minimum, the law was not clearly established that an officer could not arrest someone for exiting his car in the lane of a freeway to take photographs of an accident scene. The law was also not clearly established that an officer could not arrest someone for refusing to comply with an order from the officer when, rather than immediately complying, the person asserts that he has the right to stand in the freeway and take photographs. Finally, the law was not clearly established that members of the press have a federal First Amendment right to leave a vehicle unattended in a lane of a freeway in order to photograph an accident.

*Id.* at *6.

The Plaintiff's complaint is similar to that of the plaintiff in *Chavez*. The Defendants argue that if the press has no greater right of access to accident or crime scenes than the general public, it seems clear that the Plaintiff in this case would not be able to establish a clearly established constitutional right protected by the first amendment.

The Supreme Court has said:

[F]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell* [*v. Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

*Hope*, 536 U.S. at 739.

A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983) (quoting *Wood v. Strickland*, 420 U.S. 308, 321 (1975)). "In order to find that the law was clearly established ... we need not find a prior case with identical, or even 'materially similar,' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003) (quoting *Hope*, 536 U.S. at 740).

- 17 -

The court concludes that the Plaintiff cannot demonstrate that "preexisting law provided … 'fair warning' " to police that telling the Plaintiff that he had no right to take photos and to move on from the scene of an accident, was unlawful and in violation of the First Amendment. It would not have been clear to a reasonable officer in the Defendants' position that prohibiting the Plaintiff from taking photos at an accident scene would violate the Plaintiff's First Amendment rights. There is no Ninth Circuit case which addresses this issue, and the court cannot consider the Supreme Court opinion of *United States v. Stevens*, 130 S. Ct. 1577 (2010), since it must determine what the "clearly established law" was at the time of the incident. *See Crawford-El*, 523 U.S. at 590 (under the doctrine of qualified immunity, the court must consider "the state of the law at the time of the challenged conduct").

While a few courts have held that a citizen has a First Amendment right to take such photographs, subject to reasonable time, place, and manner restrictions, such a right has not been determined by the Ninth Circuit. *Compare Gilles v. Davis,* 427 F.3d 197, 212 n.14 (3d Cir. 2005) ("[V]ideotaping or photographing the police in the performance of their duties on public property may be a protected activity . . . . More generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection.") *with Smith v. City of Cummings*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding there is a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct). The limited case law hardly evokes a sense of consensus on the issue, let alone establish a First Amendment right to take photographs of an accident scene. If the only way to find there is a clearly established right is to look to other circuits for guidance then it is likely that the right is not, in fact, clearly established in this circuit. Given the lack of guidance from the Ninth Circuit, this court is unable to find as a matter of law that there is a clearly established right to take photographs at an accident scene. Accordingly, the court sustains the Defendants' objection as to count three and hereby dismisses it.

## CONCLUSION

For the above stated reasons, the court adopts in part and rejects in part the Magistrate

Judge's Report and Recommendations, and overrules in part and sustains in part the Defendants' Objections as follows:

    1. The court Adopts the recommendation that the motion to dismiss Plaintiff's First Amended Complaint against Defendants Suba, Anciano, and Artui in their official capacities be dismissed because these Defendants are not persons withing the meaning of 42 U.S.C. § 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990). These include the claims against the Defendants in their official capacities in the first, second, third, fourth, and eleventh causes of action.

    2. The court Denies the recommendation that the motion to dismiss Plaintiff's First Amended Complaint against Defendants Suba, Anciano, and Artui in their official capacities with regard to the ninth and tenth causes of action be denied. The court sustains the Defendants' objection and finds there is no standing by the Plaintiff as to the ninth and tenth causes of action. Accordingly, the court dismisses both counts.

    3. The court Adopts the recommendation that the motion to dismiss Plaintiff's First Amended Complaint against GPD be granted since Defendant GPD is not a person withing the meaning of 42 U.S.C. § 1983. *Ngiraingas*, 495 U.S. 182. These include the claims against GPD in the first, second, third, fourth, ninth, and tenth causes of action.

    4. The court Adopts the recommendation that the motion by Defendants Anciano and Artui to dismiss Plaintiff's complaint against them in their individual capacities be denied as to the first, second, fourth, fifth, sixth, seventh, eighth, and eleventh causes of action, but that it be granted as to the ninth and tenth causes of action.

    5. The court Denies the recommendation that the motion by Defendants Anciano and Artui to dismiss Plaintiff's complaint against them in their individual capacities be denied as to the third cause of action. Consistent with the discussion herein, the court finds the Defendants are entitled to qualified immunity on this count.

    6. The court Adopts the recommendation that the motion by Defendant Suba to dismiss Plaintiff's complaint against him in his individual capacity for the failure to plead non-conclusory facts alleging supervisory liability under §1983 be granted subject to the right of

Plaintiff to amend his complaint to allege such non-conclusory facts as would constitute a plausible claim against Defendant Suba in his individual capacity.  These claims are the first, second, third, fourth, and eleventh causes of action.  The court also Adopts the Magistrate Judge's recommendation that the ninth and tenth causes of action against Defendant Suba in his individual capacity be dismissed.

**SO ORDERED.**



/s/ **Frances M. Tydingco-Gatewood**
     **Chief Judge**
**Dated: Aug 24, 2010**