

**Office of the Attorney General**
**John M. Weisenberger**
Attorney General of Guam
**ROBERT M. WEINBERG**
Assistant Attorney General
287 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
**Attorneys for defendants D.B. ANCIANO**
 and **SERAFINO ARTUI**

# IN THE DISTRICT COURT OF GUAM

| | | |
|---|---|---|
| **JAMES L. ADKINS**, | ) | Civil Case No. 09-00029 |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS ARTUI'S AND ANCIANO'S OPPOSTION TO PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| vs. | ) | |
| | ) | |
| **D.B. ANCIANO** and **SERAFINO ARTUI**, | ) | |
| | ) | |
| Defendants. | ) | |

The arguments Mr. Adkins presents on motion for reconsideration repeat the same legal arguments previously presented to the court, only now he is putting a different emphasis on his "facts," omitting details from his own complaint and other filings in order to draw inferences in ways he did not present before.

> **Motions for reconsideration are not "the proper vehicles for rehashing old arguments**," *Resolution Trust Corp. v. Holmes*, 846 F.Supp. 1310, 1316 (S.D. Tex. 1994)(footnotes omitted), **and are not "intended to give an unhappy litigant one additional chance to sway the judge**." *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D. Va. 1977).

*Chavez v. California Reconveyance Co.*, 2010 WL 3488987 * 1 (D. Nev. 2010).

> Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm.

Moore et al., supra § 59.30[4]. Indeed, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange Street Partners*, 179 F.3d at 665. **A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation**. *See id.*

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 2000)) (emphasis in bold added; emphasis in italics in the original); *accord Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009); *see esp.* LR 7.1(i) (No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.").

When this court reviewed the magistrate-judge's report and recommendation, "[t]he court conducted a full review of the entire record before it, including the moving papers, the Magistrate Judge's Report and Recommendation …, Defendants' Objections …; Plaintiff's Responses … and Defendants' Replies …." *Order and Opinion*, Doc. 78, page 6, n. 9. Mr. Adkins' argument that the court "committed clear error" in dismissing his first amendment claims rests in part on the assertion that the court's review is limited to the four corners of complaint alone and the inferences he draws for himself. He errs in two ways. First, the court is not limited in its review to Mr. Adkins' selective readings from his complaint, but may consider concessions he has made in his other filings. Second, although on motion to dismiss, "all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party… [t]he Court is not required 'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " *Neri v. County of*

2

*Stanislaus Dist. Attorney's Office*, 2010 WL 3582575 ** 2, 3 (E.D. Cal. 2010) (quoting *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); also citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Ordinarily, "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss… The focus of any Rule 12(b)(6) dismissal–both in the trial court and on appeal–is the complaint." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993)) (emphasis in original). And ordinarily, when a plaintiff opposing a motion to dismiss supplements facts omitted from his complaint – as Mr. Adkins did here when the matter was under consideration before the magistrate-judge – those fact will not be considered.[1] The rule is not absolute, however, particularly where, as here, the facts tendered *by the plaintiff* for the court's consideration are not in dispute. As noted by the Seventh Circuit Court of Appeals in a case cited with approval by the Ninth Circuit, *see Schneider v. California Dept. of Corrections*, *supra*, 151 F.3d at 1197 n. 1, "[s]uits are frequently dismissed as frivolous because of concessions made or facts established after the complaint was filed." *Harrell v. United States*, *supra*, 13 F.3d at 236.

> It is true that a plaintiff cannot amend his complaint in his appeal brief. *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). **But just as he might make a concession in his brief that showed that his case has no merit, though that might not have been apparent from the complaint**, *Harrell v. United States*, *supra*, 13 F.3d at 235-

---

[1] *See Johnson v. Wennes*, 2009 WL 1228500 * 1 (S.D. Cal. 2009) ("[I]n determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint for additional facts, e.g., facts presented in plaintiff's memorandum in opposition to a defendant's motion to dismiss or other submissions.") (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003); and *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)); *accord Pataky v. City of Phoenix*, 2009 WL 4755398 * 3 (D. Ariz. 2009); *Easter v. CDC*, 2010 WL 903165 * 4 (S.D. Cal. 2010).

> 36, **so he can be estopped by statements in his appeal brief to deny the interpretation that the brief places on the complaint**, if the invocation of estoppel is required for the protection of his opponent. As it is here.

*Kennedy v. Venrock Associates*, 348 F.3d 584, 594 (7th Cir. 2003) (emphasis in bold added).

Here, plaintiff has conceded two material facts omitted from his complaint: (a) that Mr. Adkins was on a narrow public road taking photos with his cell phone when he was (according to the complaint) stopped; and (b) that other persons, who were *not* on the road, *were* permitted to take photos without interference from the police. These facts supplemented by the plaintiff do not merely provide context; they are concessions that contradict the inference Mr. Adkins now insists upon – that he was stopped in order for the police to destroy his photographs.

Mr. Adkins says, "A reasonable inference can be drawn from these facts that Mr. Adkins photographed an accident scene *still the subject of police activity*." *Plaintiff's Memorandum in Support of Motion for Reconsideration*, page 5 (emphasis added). Knowing that he was taking photos from the narrow road he was on, as opposed to off and away from it, Mr. Adkins' own filings demonstrate why reasonable police officers charged with investigating an accident scene and directing traffic around it had an objective basis to stop him from taking photographs *from the road*, because his very presence could become a "physical interference or obstacle" in the performance of their duties.[2]

The chronology from Mr. Adkins' first amended complaint is very precise, but it differs from the timing of the events he now presents. His complaint says, "As plaintiff was driving away, a police officer stepped out in front of his car and told plaintiff to stop. Plaintiff stopped

---

[2] *See* 9 GCA § 55.45 ("A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, *physical interference or obstacle*, breach of official duty, or any other unlawful act…") (emphasis added).

4

his car and *the officer told him that he could not take pictures*. Plaintiff said, 'there is nothing wrong with taking pictures.' The first officer talked to a second officer who was nearby…" *FAC* ¶ 13 (emphasis added). It was *then* that "the first officer demanded, 'give me your camera.' Plaintiff refused." *Id.* This was followed by a second demand for his camera, which Mr. Adkins refused again. *Id.*

Mr. Adkins' memorandum seeking reconsideration repeatedly ignores the sequence of events he describes in ¶ 13 of his amended complaint wherein he was told he could not take pictures. Instead, he now asks the court to infer that as soon as the officer stopped Mr. Adkins, he immediately proceeded to demand Mr. Adkins turn over his cell phone. But according to the complaint, "Plaintiff stopped his car and the officer told him that he could not take pictures," and "Plaintiff said, 'there is nothing wrong with taking pictures'," *before* the officers' first demands to turn over his cell phone. According to his complaint, Mr. Adkins' *right* to take photos *is* what they were arguing about (or "exchanging words" if plaintiff prefers).³

Mr. Adkins having twice refused the first officer's demands, "[t]he second police officer approached plaintiff in his car and demanded plaintiff's camera and plaintiff [a third time] refused." *At that point*, "[t]he second officer *then* demanded that plaintiff get out of the car." *FAC* ¶ 14 (emphasis added). Mr. Adkins replied, "The only way I will get out is if I am under arrest." *Id*. *That* is the chronology of the complaint.

---

³ At page 8 of his memorandum, Mr. Adkins says, "The FAC does not allege that Defendants 'admonished' Mr. Adkins to stop taking photographs." That is precisely what the amended complaint says. According to Merriam-Webster online, http://www.merriam-webster.com/dictionary/admonish, the word "admonish" is defined as "to express warning or disapproval to especially in a gentle, earnest, or solicitous manner." There is no better word to describe what Mr. Adkins said the police officer said when he "told him that he could not take pictures."

5

In his opposition to defendants' original motion to dismiss Mr. Adkins provided a link to an online news report which contained pictures of the accident provided by an online viewer. Mr. Adkins specifically offered that link as evidence that "other members of the general public were allowed access to the accident at Paseo de Oro." *See Plaintiff's Mem. in Opposition to Motion to Dismiss*, Doc. 42, page 16. *See generally, Reply to Plaintiff's Opposition to Motion to Dismiss*, Doc. 49, pp. 4 – 6, which includes the photo from the link supplied by Mr. Adkins. That is contrary to what he argues today. The photo shows a narrow road. Mr. Adkins' complaint states he was *on that road* when he stopped to take photos with his cell phone. *See FAC* ¶ 12 ("Plaintiff took out his cell phone with camera and took pictures of the accident *while in his car*.") (emphasis added). Mr. Adkins' comparator from the general public who was permitted to take photos was not on the road, but *across* the road, out of the way of traffic.[4]

Mr. Adkins has previously argued it "is obvious that the 'online viewer's' camera was not seized, nor was he or she stopped, detained or arrested for taking photographs of the accident, as Mr. Adkins was." *Plaintiff's Opp. to Motion to Dismiss*, Doc. 42, page 16. His argument *then* was that people who were off the road were permitted to take pictures but that because he was on the road that he was not. Today, he argues, "A reasonable inference could be drawn that, when the officer told Mr. Adkins that 'he could not take pictures,' the officer intended to have Mr. Adkins delete the photos he has already taken or delete the photos himself." *Motion for Reconsideration*, Doc. 83, page 8. But there is no basis for that inference, because

---

[4] Mr. Adkins' suggestion at page 6 of his memorandum that, "A reasonable inference can be drawn that Mr. Adkins never interfered with the ability of the police officers to conduct their investigation, that Mr. Adkins never left public property, or that Mr. Adkins ever stopped the flow of traffic," is sheer conceit. It is not his call to decide whether or not he is in the way, having admitted that he was on that narrow road and cognizant of a police investigation of a serious traffic accident. The law does not require that Mr. Adkins actually obstruct governmental operations before being "admonished" by police not to.

6

Mr. Adkins has previously argued that people who were not on the road *were* permitted to take pictures.

> **The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations**. *See Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553-56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 545 ("**Factual allegations must be enough to raise a right to relief above the speculative level**, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir.2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' **and reasonable inferences from that content**, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

*Grant v. Aurora Loan Services, Inc.*, ___ F.Supp.2d ____, 2010 WL 3517399 * 5 (C.D. Cal. 2010) (emphasis in bold added; editorial brackets in original). Mr. Adkins is estopped by his prior arguments to deny the interpretation he previously put on the complaint. *Kennedy*, *supra*, 348 F.3d at 594. Mr. Adkins was stopped in order to tell him "that he had no right to take photos and to move on from the scene of an accident." *Order*, Doc. 78, page 19 ¶ 5. The court did not "portray[] the conduct of Defendants in a manner inconsistent with the facts actually alleged in the complaint." *Mem*. page 7. Those *are* the facts in the complaint.

### Whether the Law was *Clearly* Established

"Whether a right is clearly established turns on the 'objective legal reasonableness of the action, *assessed in light of the legal rules that were clearly established* at the time it was

7

taken.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 822 (1982)) (emphasis added).

> In determining whether a right is clearly established, we begin our analysis by looking to binding precedent from our circuit and from the Supreme Court. *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004). In the absence of precedent, we may also "look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts." *Id*. (internal quotation marks omitted).

*Mattos v. Agarano*, 590 F.3d 1082, 1089 (9th Cir. 2010).

The "decisional law" cited at page 4 of Mr. Adkins' *Memorandum* in support of his motion for reconsideration from the Second, Sixth, Third and Eleventh Circuits are no authority for the proposition, in the context of the facts presented by the complaint, that the law was clearly established that they could not (a) stop him; (b) tell him "that he had no right to take photos and to move on from the scene of an accident"; (c) demand to see his cell phone; or (d) order him to exit his vehicle when he thrice refused. His citation to *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003); and *Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996), is frankly baffling. The decision in *ETW Corp.* addressed the first amendment in the context of reviewing a *defense* to claims brought by a professional athlete claiming infringement under the Lanham Act for Unfair Competition and False Endorsement, and state law claims alleging infringement of the right to privacy under Ohio law. The decision in *Bery* involved a challenge brought by two groups of visual artists to a city regulation prohibiting artists from exhibiting or selling their work at public places without general vendor's licenses. Beyond a general catalog of the protections afforded by the first amendment, neither case has anything to do with whether the law is clearly established in the context of the facts presented in Mr. Adkins' complaint.

Mr. Adkins' citations to cases from the Third and Eleventh Circuits at page 4 of his *Memorandum* have been addressed in prior pleadings. In *Kelly v. Borough of Carlisle*, 2009 WL 1230309 (M.D. Pa. 2009), Chief Judge Yvette Kane of the Middle District of Pennsylvania considered the very cases cited by Mr. Adkins from the Third and Eleventh Circuits, in particular, *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005); *Robinson v. Fetterman*, 378 F.Supp.2d 534, 541 (E.D. Pa. 2005); and *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

> First, it was, and still is, unclear whether Plaintiff had a First Amendment right to videotape the police stop at all. **While a few courts have held that a citizen has a First Amendment right to videotape police conduct, subject to reasonable time, place, and manner restrictions, such a right has not been determined by the Third Circuit**. *Compare Gilles v. Davis*, 427 F.3d 197, 212 n. 14 (3d Cir.2005) ("[V]ideotaping or photographing the police in the performance of their duties on public property may be a protected activity.... **More generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection**.") (emphasis added), with *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding that there is a First Amendment right to videotape police conduct but denying plaintiff's § 1983 action for failure to state how defendants violated that right), and *Robinson v. Fetterman*, 378 F.Supp.2d 534, 541-542 [(E.D. Pa. 2005.)] (finding a First Amendment right to videotape and a valid First Amendment retaliation claim where police arrested citizen under the auspices of a clearly invalid court directive). **At most, the Third Circuit has clearly stated that there is some First Amendment protection for videography that has a communicative or expressive purpose**. *Gilles*, 427 F.3d at 212.

*Kelly*, 2009 WL 1230309 * 8 (Kane, Chief Judge) (emphasis added).

Not only were two district courts from the same state in the same circuit already in disagreement, a different judge, Magistrate-Judge Cathy Bissoon of the Western District of Pennsylvania – on remarkably similar claims to those presented by Mr. Adkins, addressing and rejecting the very "decisional law" Mr. Adkins cites – has recently concluded that the law is *still* not clearly established in Pennsylvania.

> **This limited case law hardly evokes a sense of consensus on the issue, let alone that a First Amendment right to record the police is clearly**

> **established.** See *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that Fourth Amendment right was not clearly established, despite the existence of a state intermediate appellate court decision and two unpublished federal district court decisions; stating that "[p]etitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, nor have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful"); *see also Kelly v. Borough of Carlisle*, --- F.Supp.2d ----, No. 07-cv-1573, 2009 WL 1230309, at *8-9 (M.D. Pa. May 4, 2009) (in a factually analogous case, noting and distinguishing many of the same cases cited by the parties in the present action, including *Robinson*, and concluding that a First Amendment right to record the police was not clearly established as of the time of plaintiff's arrest in May, 2007); *Gravolet v. Tassin*, --- F.Supp.2d ----, No. 08-3646, 2009 WL 1565864, at *3-4 (E.D. La. June 2, 2009) (citing to, inter alia, *Robinson* and concluding that "[g]iven the uncertainty in the caselaw and the lack of guidance from the Fifth Circuit, this Court is unable to find as a matter of law that there was a 'clearly established right to videotape police officers' at the time of the arrest [i.e., June 10, 2008] under these circumstances," which circumstances involved an individual who was arrested for stalking after he was discovered to have been videotaping an on-duty police officer who had previously arrested plaintiff).

*Matheny v. County of Allegheny Pa.*, 2010 WL 1007859 ** 4, 5 (W.D. Pa. Mar. 16, 2010) (emphasis in bold added; editorial brackets in original). As noted above in *Matheny*, yet another district court considering factually analogous claims to those brought by Mr. Adkins, this time from within the Fifth Circuit, agrees with the Middle and Western Districts of Pennsylvania and now this court that the law is not clearly established in factually analogous circumstances. *See Gravolet v. Tassin*, 2009 WL 1565864 * 4 (E.D. La. 2009) ("Given the uncertainty in the caselaw and the lack of guidance from the Fifth Circuit, this Court is unable to find as a matter of law that there was a "clearly established right to videotape police officers" at the time of the arrest under these circumstances.").

The emphasis of Mr. Adkins' original argument has always been that the officers required probable cause before they could stop him and tell him he could not take photographs

10

*from a public road* that was still the subject of police activity. Now, he insists the officers stopped him not merely to prevent him from taking photos from the road (while others were permitted to take photos if they were not on the road) and to tell him to move on, but that the court must infer that the officers' primary purpose in stopping him was to compel him to delete the photos he had already taken.[5]

Of course, Mr. Adkins speculation as to the officer's subjective intent is irrelevant. " 'An officer's subjective understanding of the constitutionality of his or her conduct is irrelevant.' The determination of whether [the officer] is entitled to qualified immunity is based on an objective, not a subjective standard." *C.F. v. Capistrano Unified School Dist.*, 656 F.Supp.2d 1190, 1197 (C.D. Cal. 2009) (quoting *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir.2008); also citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). What matters is whether in the chronology as set forth in the complaint the law was *clearly established* that Mr. Adkins could not be stopped (he could); whether the first amendment permitted him to disagree with police about his

---

[5] Mr. Adkins' references at pages 2, 10, and 11 in his memorandum to *People v. Maysho*, 2005 Guam 4, authored by the Chief Judge of this court when she was an associate justice of the Guam Supreme Court, and tendered for the proposition that the arresting officer there who is one of the defendants here has a history of abusing the "failure to comply" statute by arresting persons on insufficient evidence is obvious pandering, but it is easily distinguished. First, the burden of proof in order to obtain any criminal conviction is considerably higher than that required to stop someone, let alone establish probable cause to arrest them. So the fact that there was insufficient evidence to convict the criminal defendant in *Maysho* is in now way dispositive of the question whether there was lawful cause to stop Mr. Adkins, let alone arrest him when ordered to step out of his vehicle and he retorted, "The only way I will get out is if I am under arrest." *FAC* ¶ 14. Second, unlike the facts presented in the case at bar, the trial court in *Maysho* very likely determined that Maysho's "failure to comply" was based on the fact that the Maysho may not have understood what Officer Anciano was instructing him to do in flagging him down, and just as importantly that he may have been *unable* to comply. "Maysho may have failed to understand Officer Anciano's instruction to stop the van immediately, but he alleged that it was necessary to execute a safe stop in order to avoid cars located behind him from colliding with his van." *Id.*, 2005 Guam 4 ¶ 20. Mr. Adkins cannot claim he did not understand or was unable to comply with the police officers' directive to exit his vehicle before continuing their argument, or debate, or discussion of Mr. Adkins' understanding of the first amendment however he chooses to characterize it.

understanding of the law (probably, if only to a limited degree); whether he could refuse a demand to turn over his cell phone in the circumstance presented (unlikely, and Mr. Adkins has presented no clearly established law to suggest otherwise); and whether after arguing some more and refusing a third demand to turn over his phone he was constitutionally immunized from being ordered out of his vehicle before the debate escalated further (categorically not).

Even if the court were to indulge Mr. Adkins' fanciful inferences – that the police stopped Mr. Adkins for the purpose of having him delete photos he had taken (and this is why Mr. Adkins' speculation as to the officers' subjective intent is indeed irrelevant) – the law is still not *clearly established* that their actions would have constituted a prior restraint in violation of Mr. Adkins' *constitutional* rights, which is what he has always argued. *See McCormick v. City of Lawrence*, 325 F.Supp.2d 1191, 1206 (D. Kan. 2004) ("Even if Plaintiffs have alleged a constitutional violation, however, the court determines that it is not clearly established that destruction of recordings constitutes violation of the First Amendment.") (citations omitted); *Dreibelbis v. Scholton*, 2006 WL 1626623 * 4 (M.D. Pa. 2006) ("[I]t is less than clear that the destruction of a videotape recording … constitutes a violation of the First Amendment.").

In the qualified immunity analysis, the question will never be as broad as Mr. Adkins paints. Mr. Adkins has led the magistrate-judge into that trap once already. All agree that the first amendment *generally* protects the right to take photographs and even to photograph or videotape police officers in the performance of their duties. That is the most the best of the cases cited by Mr. Adkins have to say. "But if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our

cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading." *Anderson*, 483 U.S. 639-40. "But we stress that 'the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.'" *Dunn v. Castro*, ___ F.3d ____, 2010 WL 3547637 * 3, 4 (9th Cir. Sept. 14, 2010) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

The "preexisting law" relied upon by Mr. Adkins from the Second, Third, Sixth and Eleventh Circuits, the "weight of authority" as Mr. Adkins describes them, are not "defined at the appropriate level of specificity." Mr. Adkins offers nothing more by way of clearly established law than the "general proposition that the First Amendment protects expressive conduct," *Matheny*, 2010 WL 1007859 * 4, whereas when factually analogous cases are examined, "[f]ar from demonstrating that the right is clearly established, the existing decisions demonstrate that the law on the subject is plainly underdeveloped." *Id.*, 2010 WL 1007859 *6.

What is clear is this: The cases Mr. Adkins cites from the Second and Sixth Circuits are far too generic to be of legal significance in the qualified immunity calculus; three courts from within the Third and Fifth Circuits have recently considered and expressly rejected Mr. Adkins' arguments; ten years after publication, the case Mr. Adkins cites from the Eleventh Circuit is not as well-defined as he argues, nor has it been adopted or applied by any other court in a factually analogous case; and there is no precedent from the Supreme Court, the Supreme Court of Guam, or any court within the Ninth Circuit defined with the requisite specificity on point other than *Chavez v. City of Oakland*, 2009 WL 1537875 (N.D. Cal. 2009), which is remarkably on point and decidedly against him on the fact-specific question in this case whether the law is clearly established. The court did not err in dismissing Mr. Adkins' first amendment claims.

13

## The Right To "Verbally Challenge Police Action" Is Not at Issue Here

Mr. Adkins argues, "Defendants violated Mr. Adkins' clearly established First Amendment right to verbally challenge police action." It is true "that the right to verbally challenge police officers has been deemed clearly established by the Ninth Circuit."*Acosta v. City of Costa Mesa*, 2008 WL 5103205 * 9 (C.D. Cal. 2008) (citing *MacKinney v. Nielson*, 69 F.3d 1002, 1007 (9th Cir. 1995)). But in the context of the facts alleged in the complaint, that is yet another vague legal truism. The chronology of Mr. Adkins' complaint demonstrates that he was arrested not when he "exchanged words" over his not-clearly established "right" to take photos from the road after being told not to; he was arrested when he refused a perfectly legitimate order to exit his vehicle.[6] His complaint *says* that. "The second officer then demanded that plaintiff get out of the car." Whereupon Mr. Adkins said, "The only way I will get out is if I am under arrest." *FAC* ¶ 14. Mr. Adkins' "right to verbally challenge police officers, while clearly established, was not implicated." *Acosta*, *supra.* The court did not err.

## Whether Mr. Adkins Should Have Been Given Leave to Amend

Aside from the fact that he has not been denied to leave to amend yet, the court did not err by dismissing plaintiff's first amendment claims without gratuitously offering it to him. Mr. Adkins is represented by very able counsel, unlike the *pro se* plaintiff in the case he cites, *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2003) (en banc). He was perfectly capable of amending the complaint as a matter of course as provided by Rule 15(a)(1), Fed.R.Civ.P., anytime before an answer was filed, or with the court's leave as provided by Rule 15(a)(2). Unlike the plaintiff's

---

[6] *Compare Report and Recommendation*, Doc. 63, page 10 ("The court finds it reasonable for defendants to suggest in their motion to dismiss that Plaintiff was arrested not for taking photographs or arguing with the police officers, but for failing to comply with an order by a law enforcement officer to get out of the car.") (footnote omitted).

complaint in *Lopez*, it is not self-evident that Mr. Adkins can "cure the deficiencies in his complaint" and overcome the defense of qualified immunity by "the allegation of other facts." *Id.*, 203 F.3d at 1127; *see Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995). Mr. Adkins certainly tenders none other than fanciful inferences, and it is not incumbent upon the court to guess what those facts or claims might be.[7] If Mr. Adkins can cure the *legal* deficiencies in his complaint and state a claim not barred by qualified immunity, he should file an appropriate motion so the defendants can properly respond and the court can assess its merits.

### Conclusion

Defendants respectfully submit that plaintiff's motion for reconsideration is without merit and should be denied. If he wishes to amend his complaint, he should file an appropriate motion.

OFFICE OF THE ATTORNEY GENERAL
**JOHN M. WEISENBERGER**, Attorney General

By: _____
    **ROBERT M. WEINBERG**
    Assistant Attorney General

---

[7] Mr. Adkins has separately intimated that he will seek leave to file an amended complaint "to add a new claim and new defendants based on the tampering with and destruction of Mr. Adkins' cell phone" subsequent to his arrest. *See Motion for Stay of Decision* [*etc.*], Doc. 84, page 2. Mr. Adkins has not indicated what the legal basis of that claim might be, nor has he submitted a proposed amended complaint as required by LR 15.1. *See United States v. Lot No. 9-1, Tract No. 19312 Ordot-Chalan Pago, etc.*, 2010 WL 2899066 * 1 (D. Guam 2010) ("LR 15.1 of the Local Rules [] requires any party seeking leave to file an amended complaint to attach the proposed amended complaint to their filing. Without that proposed amended complaint, the court cannot tell whether the proposed amendments would be futile or not."); *cf.*, *Mahler v. Bednarz*, 2007 WL 2769000 * 1 (D. Or. 2007) ("Plaintiff has not filed a copy of the proposed third amended complaint as required by LR 15.1(d)(1). The court cannot assess the propriety of granting leave."). Mr. Adkins may or may not have a claim under *local* law for the alleged damage to his cell phone while it was in police custody, subsequent to the arrest which forms the factual basis for the first amendment claims that have been dismissed, but he would have no kind of claim under the *Constitution*, *see Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1479 (9th Cir. 1989) ("[I]n physical taking cases, compensation must first be sought from the state if adequate procedures are available."), or from which defendants would not be entitled to qualified immunity. *See again McCormick v. City of Lawrence*, 325 F.Supp.2d 1191, 1206 (D. Kan. 2004); *Dreibelbis v. Scholton*, 2006 WL 1626623 * 4 (M.D. Pa. 2006).

15

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the forgoing on all counsel by hand delivery, or electronically with the Clerk of Court using the CM/ECF System, or via first class mail, postage prepaid and properly addressed to the following:

Anita P. Arriola, Esq.,
Arriola, Cowan & Arriola
259 Martyr Street, Suite 201
P.O. Box X,
Hagåtña, Guam 96910
Email: acalaw@teleguam.net

this 1st day of October, 2010.

OFFICE OF THE ATTORNEY GENERAL

_____
**ROBERT M. WEINBERG**
Assistant Attorney General

16