**ANITA P. ARRIOLA, ESQ.**
**JOAQUIN C. ARRIOLA, ESQ.**
**LEEVIN T. CAMACHO, ESQ.**
**ARRIOLA, COWAN & ARRIOLA**
259 MARTYR STREET, SUITE 201
P.O. BOX X, HAGATNA, GUAM   96910
TELEPHONE:  (671) 477-9730/33
TELECOPIER: (671) 477-9734

Attorneys for Plaintiff James L. Adkins

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br><br>               Plaintiff,<br><br>   vs.<br><br>PAUL SUBA, CHIEF OF GUAM POLICE DEPARTMENT;   D.B.   ANCIANO; SERAFINO ARTUI; JOHN F. TAITANO; J. P. RODRIGUEZ, AND DOES I THROUGH X,<br><br>               Defendants. | ) CIVIL CASE NO. **CV09-00029**<br>)<br>)<br>)<br>)<br>)<br>)     **SECOND AMENDED**<br>)  **COMPLAINT FOR DAMAGES;**<br>)   **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>)<br>) |

Plaintiff James L. Adkins, by his undersigned attorneys, brings this Second Amended Complaint for damages, against the defendants, their employees, agents and successors, and in support thereof avers the following:

### I.   **Preliminary Statement**

1.    This action challenges the wrongful arrest, detention, and incarceration of plaintiff James L. Adkins by Guam police officers D.B. Anciano and Serafino Artui, as constituting a violation of plaintiff's civil and constitutional rights.   The crime they suspected him of committing was taking photographs with his cell phone camera of a car accident in his neighborhood.   Plaintiff challenges the validity of his arrest, which was purportedly under 9

1

G.C.A. § 55.45, ("obstructing governmental functions") ("the obstruction statute"), and 16 G.C.A. § 3503.3(d) ("the failure to comply statute") (collectively "the Acts"), as violating the United States Constitution and the Guam Organic Act, 48 U.S.C. §§ 1421, 1421b *et seq.* (Copies of the two statutes are attached as Exhibits A and B).

2. Plaintiff seeks damages on the grounds that the defendants' conduct, and the Acts, violate his civil rights, right to free speech, right to due process of law, right to freedom of movement, right to privacy, and right to be free of unlawful arrest and seizure, all as guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and 48 U.S.C. § 1421b of the Guam Organic Act.

## II. Jurisdiction and Venue

3. Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and the Fourteenth Amendment to the United States Constitution. Venue is proper under 23 U.S.C. § 1391(b).

4. Supplemental jurisdiction over plaintiff's Guam law claims is conferred by 28 U.S.C. § 1367(a).

## III. Parties

5. Plaintiff James L. Adkins ("Plaintiff") is a resident of Guam and is a prominent and successful Guam businessman.

6. Defendant Paul Suba ("Suba") was the Chief of the Guam Police Department ("GPD"). At all times mentioned herein, he was responsible for the implementation and enforcement of the Acts, and for training police officers and ensuring that they comply with the law in implementing and enforcing the Acts. He is sued in his individual capacity.

7. Defendant D.B. Anciano ("Anciano") is a GPD police officer who arrested

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

plaintiff. He is sued in his individual capacity.

8. Defendant Serafino Artui ("Artui") is a GPD police officer who arrested plaintiff. He is sued in his individual capacity.

9. Defendant John F. Taitano ("Taitano") is a GPD police officer who, upon information and belief, tampered with plaintiff's cell phone, which tampering resulted in the deletion of photographs and other information from plaintiff's cell phone. He is sued in his individual capacity.

10. Defendant Jesse P. Rodriguez ("Rodriguez") is a GPD police officer who, upon information and belief, tampered with plaintiff's cell phone, which tampering resulted in the deletion of photographs and other information from plaintiff's cell phone. He is sued in his individual capacity.

11. Upon information and belief, other police officers and defendants were involved in the wrongful arrest, detention, and incarceration of plaintiff and the seizure and destruction of his personal property, but their identities are presently unknown to plaintiff and they are therefore sued herein fictitiously as defendants DOES I through X. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is in some manner and to some extent liable for the injuries alleged in this Second Amended Complaint. Plaintiff will seek leave to amend this Second Amended Complaint to allege the true identities and capacities of these fictitiously named defendants when they are ascertained.

## IV.  Factual Allegations

**A.  Plaintiff's illegal detention, arrest, incarceration, and seizure of his cell phone.**

12. On October 4, 2009 plaintiff drove out of his yard down Paseo de Oro to Carmen Memorial Drive in Tamuning. As he drove around a curve he saw, on his left-hand side, a green

3

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

truck crashed into a wall. He saw, to his right, several police officers in front of a house across the street from the accident scene standing in the shade of the two-story house. There were no police officers on the left hand of the street near the green truck. There was no crime scene tape surrounding the green truck or any part of the automobile accident scene prohibiting persons from entering the area. There was no roadblock or other obstacle preventing persons from driving near the accident scene or on the public road itself. Plaintiff pulled over to the right, off the road, took out his cell phone with camera and took pictures of the accident scene while in his car. Plaintiff never left his car.

13.     As plaintiff was driving away, a police officer stepped out in front of his car and told plaintiff to stop. Plaintiff complied with the police officer's request and stopped his car. The officer told him that he could not take pictures. Plaintiff said, "there is nothing wrong with taking pictures". The first officer talked to a second officer who was nearby and the first officer demanded, "give me your camera." Plaintiff refused. The first officer demanded that plaintiff give him the camera a second time, and again plaintiff refused. Upon information and belief, the first officer who stopped plaintiff was either Anciano or Artui.

14.     The second police officer approached plaintiff in his car and demanded plaintiff's camera. Plaintiff repeated, "there's no law against taking pictures." The second officer again demanded plaintiff's camera and plaintiff refused. After plaintiff repeatedly challenged the officers' authority to take his camera, the second officer demanded that plaintiff get out of the car. Plaintiff replied, "the only way I will get out is if I am under arrest." The second officer then told plaintiff, "you're under arrest" and plaintiff got out of his car. Upon information and belief, the second officer who arrested plaintiff was either Anciano or Artui.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

15.     Members of the general public were not excluded from the accident scene or the road where plaintiff had been traveling. Other vehicles were traveling in both directions along Carmen Memorial Drive. At least one other member of the general public was allowed access to the accident scene at Paseo de Oro. An "online viewer" uploaded two photographs of the accident scene, which were posted on the KUAM website on October 4, 2009, the date of the accident, and same day that plaintiff was arrested. A copy of the photographs is attached hereto as Exhibit C. Upon information and belief, the "online viewer's" camera was not seized, nor was he or she stopped, detained, or arrested for taking photographs of the accident, as plaintiff was.

16.     Anciano or Artui handcuffed plaintiff and put him in a police car. While he was in the police car, plaintiff retrieved his cell phone and called his wife to tell her he had been arrested and to call his attorney. Anciano or Artui grabbed plaintiff's cell phone and confiscated it.

17.     Anciano or Artui took plaintiff to the Tumon police station, where he was incarcerated. When plaintiff's attorney Donald Calvo arrived, a police sergeant demanded that attorney Calvo delete the photographs in plaintiff's cell phone. Attorney Calvo refused. Mr. Adkins was later taken to a conference room. A police sergeant asked plaintiff if he knew that the auto accident was a serious accident? Plaintiff responded affirmatively. The police sergeant said that it was a serious incident and they were trying to figure out how to handle the case. He then held out the phone and demanded Plaintiff delete the pictures from his cell phone camera. This seemed to imply to plaintiff that if he deleted the pictures, that he would be released from custody. Plaintiff refused.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

5

18.     Later that night plaintiff was taken to the Hagatna police station by a police officer where he was booked, fingerprinted, and photographed. Plaintiff was restrained and detained for about 4 hours, from 4:30 p.m. to 8:30 p.m.

19.     Plaintiff's cell phone camera was not returned to him but instead was kept by GPD. After plaintiff's arrest and the seizure of his cell phone, he returned to the Tumon police station and signed his signature on the exterior of the plastic custody bag. This was witnessed by plaintiff's wife and a police officer that showed plaintiff his cell phone.

20.     Upon his release from custody, plaintiff was given a notice to appear in court on Sept. 29, 2010. In the notice to appear plaintiff learned for the first time that he was charged with "obstructing governmental function" and "failure to comply." Prior to that time he had not been informed of the grounds for his arrest and incarceration.

**B.      Systematic and department-wide lack of training at GPD; the tampering of plaintiff's cell phone**

21.     Anciano and Artui had no reasonable suspicion to justify detaining plaintiff, as he had not committed, nor was he committing, a crime. They arrested plaintiff without a warrant and without probable cause. They arrested him in retaliation for his comments that "there's no law against taking pictures", and ""the only way I will get out is if I am under arrest", and because he refused to give them his cell phone. They seized plaintiff's cell phone camera without a warrant and without probable cause. Anciano and Artui lacked proper training or supervision about the very basic Fourth Amendment rights to be accorded to individuals in a vehicle stop, detention, arrest, or seizure of property and the First Amendment rights of individuals to take photographs of a matter of public interest in a public area, to challenge police authority, and to be free of unlawful prior restraint.

22.     The lack of training and supervision at GPD did not stop with Anciano and Artui. It continued with the other police officers at the Tumon and Hagatna stations. When plaintiff was taken to the Tumon precinct, no one reviewed the reasons behind his arrest or the seizure of his cell phone. Instead, a police sergeant ordered plaintiff's attorney and plaintiff to delete the photos from his cell phone camera, in clear violation of plaintiff's First and Fourth Amendment rights. When plaintiff was later taken to the Hagatna station, no one questioned whether there was probable cause for his arrest, the seizure of his cell phone, or his continued detention and incarceration. Suba ratified the actions of all of the police officers involved in plaintiff's illegal detention, arrest and seizure of personal property by failing to take any action to prevent the detention, arrest and seizure of property, and failing to prevent issuance of the Notice to Appear.

23.     The lack of training and supervision at GPD did not stop even after the filing of this action. On March 10, 2010, plaintiff went to the GPD Property Section at Tiyan to retrieve his cell phone. He received the cell phone and a GPD Evidence/Property Custody Receipt from Taitano at about 1:40 p.m. When plaintiff picked up his cell phone on March 10, the custody bag containing the cell phone was not the same as the one he signed on Oct. 4, it had been placed in a different custody bag and his signature was missing. Plaintiff advised the police officer who returned the phone that it was not the same custody bag in which the phone was originally placed.

24.     The GPD Evidence/Property Custody Receipt (attached hereto as Exhibit D) shows that plaintiff's cell phone was logged in on October 4, 2009, the day of plaintiff's arrest, by Artui at "1648 hrs". It was not logged out, but then logged in again at "12:04 a.m." on October 4 by Artui. On October 5, 2009 the cell phone was logged into an "evidence box" and later the same day was logged into the "vault/bin". Nothing further occurred until December 7,

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

2009 – **four days after this lawsuit was filed.** On December 7, Taitano signed out the cell phone at 3:05 p.m. for "retrieval of evidence." On the same day, at 3:15 p.m. Rodriguez signed out the cell phone for "evidence analysis". The cell phone was relinquished to Rodriguez "by direction and verbal standing instruction by Mr. Jim Mitchell." Over an hour later, at 4:35 p.m., the cell phone was returned by Rodriguez to Taitano.

25.     The day after plaintiff's arrest and release from custody, GPD was notified and therefore aware that the Office of the Attorney General of Guam had refused to prosecute plaintiff under the charges for which he was arrested. (A copy of the Prosecution Decline Memorandum is attached hereto as Exhibit E). Suba knew, or should have known, of the Prosecution Decline Memorandum and should have ordered the return of the cell phone camera to plaintiff. Suba's failure to return plaintiff's cell phone constituted an unlawful seizure of plaintiff's cell phone camera since the Attorney General's office had declined prosecution and there was no legal basis for any "evidence analysis" or continued retention of the cell phone.

26.     After obtaining his cell phone, plaintiff tried to turn on the cell phone but it would not turn on. Plaintiff sent his cell phone to Independent Technology Service, Inc. ("ITS"), a data recovery specialist company. ITS determined that the data on plaintiff's cell phone was not recoverable because: (a) the phone was exposed to water; (b) the phone had been completely erased; and/or (3) the SD card was blown, rendering it useless, and this may have been done by the application of voltage.

27.     Upon information and belief, Artui, Taitano, Rodriguez and/or others tampered with plaintiff's cell phone and destroyed it by exposing it to water, erasing the contents, or applying voltage to it. The tampering of plaintiff's cell phone and the destruction of his photos

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

8

was unlawful under federal law (18 U.S.C. § 1512(c)) and Guam law (9 G.C.A. §§ 34.50(c), 46.25, 52.60, and 55.10(a)(1) and (3)).

28.     The photographs taken by plaintiff on October 4 of the automobile accident scene are the crux of plaintiff's case against defendants. The photographs were last seen by plaintiff when he took them, but after being in GPD's possession and control, they were evidently erased or destroyed from plaintiff's cell phone by Artui, Taitano, Rodriguez and/or others. During the time that the cell phone was in Mr. Adkins' possession, before its seizure by police officers, it was not immersed in or exposed to any water, the phone was not erased, nor was voltage applied to it.

## C.     Liability of Suba

29.     Pursuant to 10 G.C.A. § 77116, Suba, as Chief of Police, was required "to prescribe by general order or directive the necessary instructions to GPD officers as to their official duties, functions and responsibilities". Suba was also mandated "to require [GPD] to maintain pace with current professional developments and community standards," 10 G.C.A. § 77107(f), and "to adopt appropriate rules, guidelines and policies to insure [GPD's] responsibilities to the safety, security and peace – keeping needs of the community." 10 G.C.A. §77107(g).

30.     On or about January 26, 2010, plaintiff, through undersigned counsel, sent a Sunshine Act request to the GPD requesting information concerning, *inter alia*, the training and supervision provided to police officers regarding vehicle stops, arrests, seizure of personal property; the detention, interrogation, or arrest of .individuals exercising their right of free speech; and preventing police officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or who condone such conduct.

9

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

31. GPD's responses to plaintiff's Sunshine Act request showed:

A. The last General Order (G.O. No. 92-20) regarding field contact (stopping and questioning of individuals) procedures was issued on August 25, 1992. Anciano and Artui clearly violated G.O No. 92-20;

B. The General Order (G.O. No. 93-15) regarding handling and processing of persons in custody was last amended on January 14, 1994. It contains no procedures regarding a review by supervisors or others about whether arrests of individuals by GPD officers are correct, lawful, or proper.

C. The General Order (G.O. No. 90-19 and S.O. 89-165) regarding basic procedures for conducting criminal investigations was last amended on August 11, 1993. Anciano, Artui, and others violated G.O. 90-19 and S.O. 89-165.

D. The General Order (G.O. No. 93-06) regarding evidence and property handling was last amended on September 19, 1996. Taitano and Rodriguez and others violated G.O. No. 93-06.

E. While certain "Legal Advisor's Roll Call Training" was performed by GPD's legal counsel on Fourth Amendment issues, the last one was issued or provided in 2007.

F. There are no general orders, or directives concerning the protection of individuals' First, Fourth, or Fourteenth Amendment rights who are exercising their right of free speech.

G. There are no general orders, or directives concerning the prevention of police officers from using arrest and seizure of property as a form of summary punishment or to discipline officers who do so or who condone such conduct.

32. The numerous unlawful acts of Anciano, Artui, Taitano, Rodriguez, and others at GPD establish a systematic and department-wide lack of knowledge, training and supervision concerning the protection of individuals' First, Fourth, and Fourteenth Amendment rights. The caselaw on First, Fourth, and Fourteenth Amendment rights has changed drastically since the mid-1990's and even more recently such law continues to evolve and change through Guam and U.S. Supreme Court decisions.

33.    Suba failed to adopt appropriate and current general orders or directives concerning individuals' First, Fourth and Fourteenth Amendment rights and failed to mandate appropriate and current training and supervision for police officers. Suba's inaction: (a) set forth in motion the series of unlawful acts by Anciano, Artui, Taitano, Rodriguez, and the other police officers involved in plaintiff's arrest and seizure of his property which Suba knew or reasonably should have known would cause them to inflict constitutional injury on plaintiff and others; (b) constitutes culpable inaction in the training, supervision, and control of his subordinates; (c) constitutes conduct that shows a reckless, callous, and deliberate indifference to the rights of others, including plaintiff; and (d) constitutes reckless, callous, and deliberate indifference to the need for more or different training, supervision, or discipline of police officers at GPD.

34.    Upon information and belief, Suba knew of prior instances where officers arrested individuals and charged them with obstruction of governmental functions and "failure to comply" without sufficient evidence to support the charges.  Specifically, Suba knew or should have known of the case where Anciano arrested an individual and took the individual into custody for "failure to comply" after the two exchanged words, since Anciano's actions were the subject of a Guam Supreme Court decision in  People v. Maysho, 2005 Guam 4.

35.    Upon information and belief, Suba encouraged, authorized, ratified, condoned the actions alleged in ¶¶ 11 - 27, above, and/or failed to take appropriate remedial action to prevent officers from taking such actions. In addition, Suba failed to prevent GPD officers from using the charges of "obstruction" and/or "failure to comply" as an intimidation tactic against individuals verbally challenging police conduct.

36.    Upon information and belief, Suba knew or should have known that Anciano had previously arrested and taken into custody an individual for "failure to comply" without

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

sufficient evidence, but encouraged, authorized, ratified, condoned and/or failed to take appropriate remedial action to prevent Anciano, Artui and other police officers from wrongfully arresting and confining individuals on Guam under such "failure to comply" charge, including plaintiff.

37.     Suba acted with deliberate indifference to the need to train, supervise, or discipline police officers for arresting individuals without sufficient cause and then charging them with "failure to comply." Suba's failure to train, supervise, or discipline officers for arresting individuals without sufficient cause and then charging them with "failure to comply" resulted in Anciano's and Artui's violation of Plaintiff's constitutional rights.

38.     Suba's policy of lack of training and supervision and failing to discipline police officers for arresting individuals without sufficient cause constitutes a policy that is so deficient it is a repudiation of the constitutional rights and the moving force of the constitutional violations against plaintiff.

### FIRST CAUSE OF ACTION
### (VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983)
### (Against Defendants Suba, Anciano, Artui)

39.     Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 38, above.

40.     Anciano, Artui and others wrongfully, unlawfully, without process, warrant, or legal authority of any kind, and without information from any person that plaintiff had committed any criminal offense, arrested, detained, and incarcerated plaintiff without probable or reasonable cause, all in deprivation of plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under sections 1421b(a), (c), (e), and (u) of the Organic Act of Guam.

41.     Anciano and Artui, and each of them, knew or should have known that plaintiff was not violating any laws and was not subject to arrest.

42.     Upon information and belief, Suba knew or should have known of prior instances where police officers arrested individuals without sufficient evidence and charged individuals for "failure to comply" in retaliation for challenging police authority.   Specifically, Suba knew or should have known of Anciano's conduct in People v. Maysho.

43.     Upon information and belief, and as more specifically alleged in ¶¶ 11- 27, above, Suba, with deliberate indifference to the constitutional rights of persons within their jurisdiction, maintained or permitted one or more of the following official policies or customs:

A.     Failure to provide adequate training and supervision to police officers with respect to constitutional limits on the arrest of individuals and seizure of property;

B.     Failure to provide adequate training and supervision to police officers with respect to the proper procedures to be followed in dealing with individuals who are exercising their right of free speech;

C.     Failure to take adequate steps to prevent officers from using arrest and seizure of property as a form of summary punishment and to discipline officers who do so or condone such conduct;

D.     Ratification of the summary punishment handed out by officers who arrest individuals or seize property under the Acts without probable or reasonable cause.

44.     Upon information and belief, Artui, Taitano, Rodriguez and/or others tampered with plaintiff's cell phone and destroyed it by exposing it to water, erasing the contents, or applying voltage to it.

45.     Defendants Suba, Anciano, Artui, Taitano and Rodriguez are "persons" who,

- 13

Case 1:09-cv-00029   Document 103   Filed 11/24/10   Page 13 of 30

under color of law, deprived plaintiff of his rights, privileges and immunities secured by the United States Constitution, the Organic Act, and the laws of Guam, in violation of 42 U.S.C. § 1983. As a direct and proximate result of the wrongful acts of Suba, Anciano, Artui, and DOES I through X, plaintiff was deprived of his liberty and was caused great mental anguish and suffering, physical injury, humiliation, shame, and embarrassment, and has been damaged in his good name and reputation, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF DUE PROCESS OF LAW)
#### (Against All Defendants)

46.     Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 45, above.

47.     Plaintiff was charged with violating the obstruction statute, where a person commits a misdemeanor if he "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act . . ."  Each of the terms of the statute are so vague that they may extend to lawful and unlawful acts, thereby inviting selective prosecution and infringement of constitutionally protected rights.

48.     Plaintiff was also charged under the failure to comply statute, a statute that is so vague, ambiguous and overbroad that it may extend to lawful and unlawful acts, thereby inviting selective prosecution and infringement of constitutionally protected rights.

49.     The Acts on their face and as applied fail to provide adequate notice as to the precise nature of conduct prohibited, thereby inhibiting the exercise of constitutionally protected rights and inviting selective prosecution. They are, therefore, void for vagueness, as they deprive plaintiff of due process of law, in violation of the Fifth and Fourteenth Amendments to the

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

United States Constitution and Section 1421b of the Organic Act.

### THIRD CAUSE OF ACTION
### (VIOLATION OF FREE SPEECH)
### (Against All Defendants)

50. Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 49, above.

51. Anciano and Artui's purpose and intent in arresting plaintiff and seizing his cell phone camera was to deprive him of his freedom of speech.

52. Anciano and Artui stopped and detained plaintiff with the intent of deleting the pictures on his camera, forcing plaintiff to delete them, or taking away plaintiff's camera.

53. Anciano and Artui arrested plaintiff and threatened him with criminal prosecution in retaliation for his repeated challenges to their authority.

54. Suba's failure to adopt general orders protecting individuals' First, Fourth, and Fourteenth Amendment rights and his failure to mandate training and supervision of police officers in the protection of such rights constitute deliberate indifference to the rights of others, including plaintiff, and resulted in the infringement of plaintiff's free speech rights.

55. Taitano and Rodriguez's unlawful seizure of plaintiff's cell phone and their tampering with the phone and destruction of plaintiff's photographs violated plaintiff's free speech rights.

56. Each of the acts of Anciano, Artui, Suba, Taitano and Rodriguez prevented plaintiff from distributing, showing, or otherwise sharing the pictures he had gathered at the accident scene and constituted an unlawful prior restraint of speech.

57. In addition, the Acts on their face and as applied violate the First Amendment to the United States Constitution and the Organic Act and are void for vagueness, as they penalize

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

plaintiff's right of free speech within their scope and application. The operation of the Acts creates a chilling effect upon plaintiff's exercise of his right to free speech. The Acts penalize plaintiff's right to take photographs of matters of public interest and to challenge verbally police conduct, which are protected by the First Amendment.

## FOURTH CAUSE OF ACTION
### (VIOLATION OF RIGHT TO PRIVACY AND UNLAWFUL SEIZURE)
### (Against All Defendants)

58.     Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 57, above.

59.     The Acts on their face and as applied violate the Fourth Amendment of the United States Constitution and the Organic Act in that the operation of the Acts invade plaintiff's right to privacy by allowing the arrest and incarceration of plaintiff and seizure of plaintiff's property without probable cause or a duly authorized warrant.

60.     The unlawful conduct of Anciano, Artui, Suba, Taitano, and Rodriguez, all as alleged above, violated plaintiff's Fourth and Fourteenth Amendment rights.

## FIFTH CAUSE OF ACTION
### (FALSE ARREST AND FALSE IMPRISONMENT)
### (Against Defendants Anciano and Artui)

61.     Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 60, above.

62.     Anciano and Artui wrongfully, unlawfully, without process, warrant, or legal authority of any kind, and without information from any person that plaintiff had committed any criminal offense, arrested plaintiff and compelled him to go with them to the Tumon police station.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

63.     At the Tumon police station, Defendant DOE I, without process, warrant, or legal authority of any kind, and without information from any person that plaintiff had committed any criminal offense, unlawfully took plaintiff into custody, and forcibly imprisoned plaintiff and restrained him of his liberty.

64.     Plaintiff continued to be unlawfully restrained and confined when he was taken to the Hagatna police station by defendant DOE II for booking, photographing, fingerprinting, and detention without probable cause and against his will. Plaintiff was detained for approximately four hours, between 4:30 p.m. and 8:30 p.m. on October 4, 2009.

65.     Anciano, Artui and defendant DOES I-II intended to confine plaintiff.

66.     At the time of his arrest and incarceration, plaintiff was acting peaceably and in a lawful manner. Plaintiff did not commit any offense and Anciano, Artui and Defendant DOES I through X did not have any reasonable grounds for believing that plaintiff committed any offense.

67.     Plaintiff was conscious of his arrest and the confinement, and he did not consent to the arrest or the confinement.

68.     Plaintiff's arrest and confinement were not privileged, as both were effected without probable or reasonable cause.

69.     As a direct and proximate result of the wrongful acts of Anciano, Artui, and DOES I through X, plaintiff was deprived of his liberty and was caused great mental anguish and suffering, physical injury, humiliation, shame, and embarrassment, and has been damaged in his good name and reputation in the amount of $1,000,000.00.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

## SIXTH CAUSE OF ACTION
### (ASSAULT AND BATTERY)
### (Against Defendants Anciano and Artui)

70.     Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 69, above.

71.     When Anciano and Artui demanded that plaintiff stop his car, give them his cell phone camera, and then get out of his car, Anciano and Artui intended to create an imminent apprehension on plaintiff's part that they would use unreasonable force against plaintiff, including taking plaintiff's cell phone camera away from him if plaintiff did not cooperate with them, and handcuffing him.

72.     Plaintiff reasonably believed and anticipated that Anciano and Artui would forcibly take Plaintiff's camera away from him and forcibly restrain him with handcuffs, which they did.

73.     Plaintiff did not consent to being put in fear of offensive contact.

74.     While Plaintiff was talking on his cell phone, Anciano or Artui intentionally grabbed Plaintiff's cell phone out of his hands. Plaintiff did not consent to Anciano or Artui grabbing Plaintiff's cell phone out of his hands.   In addition, plaintiff did not consent to being handcuffed.

75.     Plaintiff was offended by Anciano's and Artui's conduct in grabbing his cell phone out of his hands and forcibly restraining him with handcuffs.

76.     As a direct and proximate result of Anciano's and Artui's wrongful acts, plaintiff has suffered damages in an amount to be determined at trial.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

77. Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 76, above.

78. Pursuant to 10 G.C.A. § 77117(a)(1), "no police officer shall in any way interfere with the rights or property of any person, except where such interference is permitted by law."

79. Under 10 G.C.A. § 77117(a)(1), Anciano and Artui owed a duty of care towards plaintiff in which they were required to use reasonable care and diligence to ensure that plaintiff's rights and property were not harmed by their acts or omissions. Anciano and Artui's acts, as described above, intentionally interfered with plaintiff's rights and property by assaulting and battering him, arresting him, threatening and intimidating him, physically restraining his freedom of movement, and incarcerating him for an appreciable period. Anciano and Artui breached their duty of care to plaintiff and as a result caused damages to plaintiff.

80. Under 10 G.C.A. § 77117(a)(1), Artui, Taitano and Rodriguez owed a duty of care towards plaintiff in which they were required to use reasonable care and diligence to ensure that plaintiff's rights and property were not harmed by their acts or omissions. Taitano's and Rodriguez's acts, as described above, intentionally interfered with plaintiff's cell phone. Taitano and Rodriguez breached that duty of care to plaintiff and as a result caused damages to plaintiff.

81. As a direct and proximate result of the negligence of Anciano, Artui, Taitano, and Rodriguez, violation of 10 G.C.A. § 77117(a)(1), and wrongful acts, plaintiff has suffered damages in an amount to be determined at trial.

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

## EIGHTH CAUSE OF ACTION
### (THEFT OF PROPERTY AND CONVERSION)
### (Against Defendants Anciano, Artui, Suba, Taitano and Rodriguez)

82.    Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 81, above.

83.    Anciano and Artui committed theft of property by confiscating plaintiff's cell phone camera.  Suba, Taitano and Rodriguez committed theft of property by failing to return plaintiff's cell phone camera after being notified that plaintiff would not be prosecuted.

84.    Anciano, Artui, Taitano, and Rodriguez, and each of them, illegally and intentionally converted plaintiff's cell phone camera to their own use.

85.    As a direct and proximate result of the wrongful acts of Anciano, Artui, Taitano, and Rodriguez, plaintiff has suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (PUNITIVE DAMAGES)
### (Against Defendants Suba, Anciano, Artui, Taitano, and Rodriguez)

86.    Plaintiff re-alleges and incorporates herein by this reference all of the allegations contained in paragraphs 1 through 85, above.

87.    The acts of Suba, Anciano, Artui, Taitano and Rodriguez, as described above, were willful, wanton, malicious and/or intentional misconduct, and plaintiff is entitled to punitive or exemplary damages in the amount of $2,000,000.00.

WHEREFORE, plaintiff prays for relief from this Court as follows:

1.    An award of damages to plaintiff in an amount to be determined at trial against defendants Suba, Anciano, Artui, Taitano and Rodriguez for violation of 42 U.S.C. § 1983;

2.    An award of general, compensatory, and special damages against defendants Anciano and Artui for false arrest and false imprisonment in the amount of $1,000,000.00;

3. An award of general, compensatory, and special damages against defendants Anciano and Artui in an amount to be determined at trial under plaintiff's Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action;

4. An award of punitive damages against Anciano, Artui, Suba, Taitano and Rodriguez in the amount of $2,000,000.00;

5. An award of attorneys fees and costs of suit under 42 U.S.C. § 1988; and

6. That the Court grant such other and further relief as may be just and proper.

Dated this 24th day of November, 2010.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiff James L. Adkins

By: _____
ANITA P. ARRIOLA

## DEMAND FOR JURY TRIAL

Plaintiff James L. Adkins, by and through his undersigned counsel, hereby demands a jury trial on all issues triable by a jury.

Dated this 24th day of November, 2010.

ARRIOLA, COWAN & ARRIOLA
Attorneys for Plaintiff James L. Adkins

By: _____
ANITA P. ARRIOLA

ARRIOLA, COWAN & ARRIOLA, AGANA, GUAM 96910

reasonably should know to be a peace officer acting in an official capacity, he prevents or delays that arrest by the use or threat of force or by physical obstruction. For purposes of this Section, a peace officer shall include apprehending officers designated under Article 2 of 10 GCA Chapter 51, as well as peace officers as defined under 9 GCA §1.70.

SOURCE: G.P.C. §§69, 148; cf. §166; M.P.C. §242.2; Cal. §1182 (1971); Mass. ch. 268, §10; N.J. §2C:29-2; Amended by P.L. 17-87:8.

CROSS-REFERENCES: §55.45 - Obstructing Government Operation; 8 GCA §25.50.

COMMENT: §55.35 deals specifically with resisting arrest in order to make clear that the arrest need not be lawful. The defendant must know that the law enforcement officer is acting in an official capacity, but if this requirement is satisfied, it is a crime to resist even an unlawful arrest. There are many remedies for such an unlawful arrest - Habeas Corpus, exclusion of illegally obtained evidence, possible tort relief - and it seems preferable to discourage as much violent conduct surrounding police activity as possible.

Note that this Section also proscribes resistance or obstruction, including "going limp," but does not deal with flight from arrest.

At common law, the Model Penal Code and the law of some States require that the arrest be lawful before resistance is made criminal. Such was not the case in the former Penal Code, nor is it the case in the States of Connecticut and Kentucky.

## §55.45. Obstructing Governmental Functions; Defined & Punished.

A person commits a misdemeanor if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this Section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

SOURCE: G.P.C. §§65, 69, 102, 148, 385; See also §428; *M.P.C. §242.1; Cal. §§1162, 1186, 1408 (1971); Mass. ch. 268, §9; N.J. §2C:29-1.

CROSS-REFERENCES: §55.35 - Refusal to submit to arrest; Chapter 58 -Escape; Chapter 25 - Code of Cr. Proc.

COMMENT: §55.45 replaces a number of diverse sections of the former Penal Code and is intended to prohibit a broad range of behavior designed to impede or defeat the lawful operation of Government. This Section supplements provisions of this Code which deal with particular means of interference such as bribery, intimidation and perjury. Although broad, the Section does not proscribe political agitation or other exercise of civil liberty; it is confined to physical interference or acts which are unlawful independently of the purpose to obstruct the Government.

This Section, and this Chapter, clarify the situation as it existed in the former Penal Code whereby it was possible to charge a person under one of a number of sections for the same general offense of "resisting arrest." Such a confusion will not exist in this Code.

© 2002 – Government of Guam. All Rights Reserved.

EXHIBIT

A

name and address of the operator and owner of the vehicle involved in such accident and a brief statement of the circumstances thereof and in addition shall within twenty-four (24) hours, forward to the Department of Public Safety a similar notice, regardless of the amount of damage done to such unattended vehicle or property.

(f) Any person violating the provision of this Section by failing to stop after being involved in an accident resulting in injury to any person, other than himself, or death of any person shall be guilty of a felony.

(g) Any person violating a provision of this Section by failure to stop after being involved in an accident resulting in damage to property shall be guilty of a petty misdemeanor.

SOURCE: GC § 23136 enacted by P.L. 1-88. Subsections (f) and (g) as amended by P.L. 13-187:146.

### § 3502. Accident Report.

The operator of any motor vehicle involved in an accident resulting in injuries or death to any person or total property damage to an apparent extent of Fifty Dollars ($50.00) or more shall, within twenty-four (24) hours, make a written report of such accident to the Department of Public Safety, and if the operator is physically incapable, as a result of the accident, of making such report, it shall be the duty of any other occupant of his vehicle or any other person involved in such accident, who is not also physically incapable as a result of the accident, of making such report, to make such a written report to the Department of Public Safety.

SOURCE: GC § 23143, enacted by P.L. 1-88.

### § 3503. Enforcement.

(a) The operator of any vehicle shall stop upon the request or signal of any peace officer in proper uniform who shall exhibit his badge or other sign of authority, and upon such request or signal the operator shall exhibit, in addition to his license or permit as required by this Title, his registration card, and if requested, shall sign his name in the presence of such peace officer for the purpose of establishing his identity.

(b) Any peace officer, who shall be in uniform and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request or signal, for the purpose of inspecting the said vehicle as to its equipment and operation, manufacturer's serial number, engine number

COL 06112010

EXHIBIT

**B**

or for securing of other lawful information, and it shall be unlawful for any operator of any vehicle to refuse such requests.

(c) Any peace officer, who shall be in uniform or shall exhibit his badge or other sign of authority, shall have the right to investigate any motor vehicle in any public garage or repair shop for the purpose of locating stolen motor vehicles and the owner or custodian of any such garage or repair shop shall permit such investigation.

(d) It shall be unlawful for the operator of any vehicle to refuse to comply with any lawful order, sign or direction of a peace officer who shall be in uniform and shall exhibit his badge or other sign of authority.

SOURCE: GC § 23144, enacted by P.L. 1-88.

### § 3504. Delegation of Powers and Duties.

Whenever, by the provisions of this Code, a power is granted to a public officer or a duty imposed upon such an officer, the power may be exercised or the duty performed by a deputy of the officer or by a person authorized pursuant to law by the officer.

SOURCE: GC § 23144.1, enacted by P.L. 3-18.

--------

### ARTICLE 6
### SAFETY INSPECTION

§ 3601.  Safety Inspection Required.
§ 3602.  Regulations: Fee.
§ 3603.  Inspection Stations.
§ 3604.  Prohibitions.
§ 3605.  False Certificates.
§ 3606.  Abandoned Vehicles: Removal: Sale.
§ 3607.  Applicability of Article for Government of Guam Owned Vehicles.

### § 3601. Safety Inspection Required.

(a)  Every motor vehicle, trailer, semi-trailer and pole or pipe dolly shall be inspected by an official inspection station authorized or established by the Director of Revenue and Taxation and an official certificate of safety inspection and approval obtained for each such vehicle as follows:

82



# Three injured in Tamuning car crash

*Posted: Oct 04, 2009 7:18 PM*
*Updated: Oct 15, 2009 11:51 AM*



Uploaded by an online viewer

by <u>Michele Catahay</u>

The Guam Fire Department responded to an auto accident just before 3:30 Sunday afternoon at Paseo De Oro in the village of Tamuning. While GFD says there were two indivuduals that were transported to the nearby Guam Memorial Hospital, nursing supervisor Bill Toves confirmed with KUAM News that three people were treated.

A 27-year-old woman is in serious condition, while one man is in stable condition, with another in critical condition and on life support. Both of the men are believed to be in their 20s.



Uploaded by an online viewer



All content © Copyright 2000-2009, WorldNow and KUAM. All Rights Reserved.
For more information on this site, please read our <u>Privacy Policy</u> and <u>Terms of Service</u>.

EXHIBIT
C
PENGAD 800-631-6989

# GUAM POLICE DEPARTMENT
## EVIDENCE/PROPERTY CUSTODY RECEIPT

| 1. CLASSIFICATION | 2. CASE No. | 3. DIVISION | 4. PROPERTY No. | 5 LAB No. |
|---|---|---|---|---|
| Arrested person | 09.25982 | NHP/TTpc | 09100530 | |

**6. NAME OF PERSON FROM WHOM PROPERTY IS OBTAINED**

☒ OWNER: James L. Adkins M/Cau DOB 5/12/1942

☐ OTHER: #168 Paseo De Oro Tamuning 649.0556 DLH #128080508

**7. ADDRESS:** #168 Paseo De Oro Tamuning

**8. PHONE:** (H) 649.0556 (W) 646.7463

**9. LOCATION OF PROPERTY WHEN OBTAINED**

On His person (James L. Adkins)

| 10. PURPOSE FOR WHICH OBTAINED | ☒ EVIDENCE | ☐ FOUND | ☐ IMPOUNDED | 11. DATE/TIME OBTAINED |
|---|---|---|---|---|
| ☐ ANALYSIS (Attach Evidence Analysis Request Form, G.O. 85-11) ☐ OTHER (Specify) | | | | 10/04/07 1648Hrs |

| 12. ITEM NO. | 13. QUANTITY | 14. DESCRIPTION OF PROPERTY | 15. DISPOSAL ACTION |
|---|---|---|---|
| 1 | 1 EA | SEALED IN A CLEAR PLASTIC BAG: 1 EA. BEIGE NOKIA CELLULAR PHONE ESERIES E71 — NOTHING FOLLOWS — | |

### 16. CHAIN OF CUSTODY

| ITEM NO. | DATE & TIME | RELINQUISHED BY | RECEIVED BY | PURPOSE OF CHANGE OF CUSTODY |
|---|---|---|---|---|
| 1 | 10/04/09 1648Hrs | Name (type or print) James L. Adkins  Signature | Name (type or print) PO1 S.Artui #700  Signature | Evidence |
| 1 | 10/04/09 12:04am | Name (type or print) PO1 S.Artui #700  Signature | Name (type or print) Evidence  Signature Box | Evidence |
| 1 | 10/5/09 11:00am | Name (type or print) HPC  Signature Evidence Box | Name (type or print) PO3 A.J. Kamminga #503  Signature A.J.King | EVIDENCE |

**CHAIN OF CUSTODY CONTINUED ON REVERSE**

DO NOT WRITE IN THIS SPACE

E.C.S.

**EXHIBIT D**

CS No. 09-25982   PROP No. 09100530   LOC

VAULT / BIN E

NOTE: REMOVE AND REVERSE CARBONS BEFORE COMPLETING THIS SIDE.

16. CHAIN OF CUSTODY (continued)

| ITEM NO. | DATE & TIME | RELINQUISHED BY | RECEIVED BY | PURPOSE OF CHANGE OF CUSTODY |
|---|---|---|---|---|
| 1 | 10/5/09 12:00PM. | Name (type or print) PO3 A.J. KAMMINGA #503  Signature a.J. Kam | Name (type or print) E.C.S.  Signature VAULT / BIN  E | EVIDENCE & STORAGE |
| 1 | 12-7-09 3:05pm | Name (type or print) E.C.S.  Signature VAULT / BIN (E) | Name (type or print) P.C.O. JOHN F. TAITANO #971  Signature Taitano, JF | RETRIEVAL OF EVIDENCE |
| 1 | 12-7-09 3:15pm | Name (type or print) P.C.O. JOHN F. TAITANO #971  Signature Taitano, JF | Name (type or print) PO3 J.F. RODRIGUEZ  Signature | EVIDENCE ANALYSIS |
| 1 | 12/7/09 4:35pm | Name (type or print) PO3 J.F. RODRIGUEZ #844  Signature | Name (type or print) J.F. TAITANO #971  Signature | EVIDENCE |
| 1 | 12-7-09 5:15pm | Name (type or print) J.F. TAITANO #971  Signature | Name (type or print) EVIDENCE VAULT BIN (E)  Signature | EVIDENCE STORAGE |
| 1 | 3-10-2010 11:00AM | Name (type or print) EVIDENCE VAULT BIN (E)  Signature | Name (type or print) J.F. TAITANO #971  Signature | RETRIEVAL OF EVIDENCE |

17. REMARKS  Reference to (09-25977) #1 Relinquish to PO3
Sgt. Rodriguez By Direction and Verbal
Request Standing instruction By Mr. Jim Mit
Capt Borentoch (FSD/one) Sgt JF Roban ow
E.C.S. Sgt MA. Torrce one Internal affairs
Section.  Ay921  12-7-09  3:15 pm

18. DISPOSAL ACTION

Indicate in disposal action column (on front), by letter code, type of action.   CODES:  (A) Returned to submitting agency  (C) Superior Co
(D) Destroyed   (F) District Court  (I) Returned to individual owner   (M) Other method - explain in remarks.

If disposal action is (I), complete the following:
Release of article(s) indicated as item(s) No. _____  authorized by _____

I,  JAMES L. ADKINS _____ , rightful owner / authorized agent, hereby acknowledge receipt o.
Item(s) No.  #1 _____ , as indicated on front, in good condition from  E.C.S.  Bin (E) _____
_____  958 N. MARINE DR.
Signature of Owner / Agent                TAMUNING, GUAM  3-10-10
                                         Address                        Date

If disposal action is (D), complete the following:
On _____, the following item(s) No. _____ were destroyed as authorized by _____

Cont page (#2)

Bui (E)

| Item No | DATE | RELINQUISHED BY | RECEIVED BY | Purpose of Change of Cust |
|---|---|---|---|---|
| 1 | 3.10.10 1:40pm | Name (Type or Print) **J.F. TAITANO #971** <br> Signature | Name (Type or Print) ✗ JAMES L. ADKINS <br> Signature ✗ | RELEASE TO OWNER |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |
| | | Name (Type or Print) <br> Signature | Name (Type or Print) <br> Signature | |

**Alicia G. Limtiaco**
*Attorney General*



**Dianne H. Corbett**
*Chief Prosecutor*
*Prosecution Division*

# Office of the Attorney General

┌─────────────────────────────────────┐
│ **CONFIDENTIAL**                     │
│ To be used for Law Enforcement purposes only. Not to │
│ be duplicated. Its contents are not to be distributed │
│ outside your agency.                 │
└─────────────────────────────────────┘

AG # _____

Date: **10/5/09**

### PROSECUTION DECLINE MEMORANDUM

TO:  **GPD RECORDS DIVISION**
      Officers Involved: *Arthur Sarapino #700*
FROM:  Prosecution Division
Police Report No.: *09-25982*
Suspect/Victim: *James L. Adkins*
Charge(s): *Obstructing Government Functions*
Prior Record(s): _____

The above-referenced case is declined for the following reason(s):

____  This matter can be handled in a civil action.
____  Crime occurred in another jurisdiction.
____  Will be filed as a violation of probation or parole.
____  Statute of Limitations has run.
____  The offense, as charged, is not a crime under the statutory/case law of Guam now in effect.
____  The report names no suspects.

____  The interests of justice are best served by declining to prosecute because:
      ____  Victim refuses to cooperate.
      ____  Our office has received information indicating that the subject has left Guam.  Expense of extradition not justified.
      ____  The victim has submitted a request that charges be dropped.
      ☒  The arrest and detention of the suspect(s) served as sufficient sanctions in this case, as the seriousness of the offense does not warrant further legal action.
      ____  The suspect is serving a sentence under another charge.
      ____  The suspect died in the course of the reported incident.  Charges are not allowed against a decedent.

287 West O'Brien Drive • Hagåtña • Guam 96910 • U.S.A.
(671) 475-3406 • (671) 477-3390 (Fax) • www.guamattorneygeneral.com

EXHIBIT
**E**
_____

PENGAD 800-631-6989



_____ Jurisdiction has been transferred to the U.S. Navy / U.S. Air Force. Any evidence, to include laboratory reports and/or analyses, related to this matter may be released to the appropriate military representative.

_____ Other _____

_____ Insufficient evidence due to:
  _____ Bad search.
  _____ Confession not admissible - insufficient advice of rights.
  _____ Necessary witnesses are not available to testify.
  _____ Element of charged offense not provable, specifically _____

_____ Pursuant to *People v. Villapando, et al.*, 1999 Guam 31 and *People v. Palomo*, 1998 Guam 12.

_____ Other: _____
_____
_____

Second review taken? ___ Yes ___ No Date: _____
_____ Assistant Prosecuting Attorney decision upheld.
_____ Assistant Prosecuting Attorney modified as follows: _____
_____

**UNLESS INDICATED BELOW**, any and all physical property seized in connection with this case can now be returned to its rightful owner or disposed of without concern for its future use in a criminal trial. Any and all physical property may be released **without** the standard property release flier.

( ) No property may be released at this time.
( ) No property may be released at this time subject to military jurisdiction transfer.

By: _____
    **Assistant Attorney General**

cc: GPD - Legal Affairs
    GPD - Property Division
    GPD - Crime Lab

**CONFIDENTIAL**
To be used for Law Enforcement purposes only. Not to be duplicated. Its contents are not to be distributed outside your agency.

H:\TEMPLATES\DECLINE.WPD

O'Brien Drive • Hagåtña •Guam 96910 • U.S.A
71) 477-3390 (Fax) • www.guamattorneygeneral.com