# IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| JAMES L. ADKINS,<br><br>               Plaintiff,<br><br>v.<br><br>PAUL SUBA *et al.*,<br><br>               Defendants. | Case Number: 1:09-cv-00029<br><br>**OPINION AND ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT FILED BY DEFENDANTS ANCIANO AND ARTUI** |

       Before the court in this wrongful-arrest-and-detention case is the "Motion to Dismiss Second Amended Complaint" ("the Motion") filed by Defendants D.B. ANCIANO and SERAFINO ARTUI. *See* Docket No. 116. As explained below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**(I)**      **BACKGROUND**[1]

      **(A)**      **Plaintiff's Arrest and Detention**

      On October 4, 2009, Plaintiff JAMES L. ADKINS ("Plaintiff") was driving down Paseo de Oro in Tamuning. *See* Docket No. 103 at ¶12. Rounding a curve he saw, on his left, a truck that had crashed into a wall. *Id*. On his right, he saw some Guam Police Department ("GPD") personnel standing in the shade of a house across the street from the crash site. *Id*. There were no police officers on the left, near the crash site, nor were there any obstacles preventing persons from approaching the crash site, such as "crime scene tape" or a roadblock. *Id*. Plaintiff pulled over to the right-hand side of the road and, without leaving his car, took photos of the crash site using the camera feature of his cell phone. *Id*.

---

[1] On a motion to dismiss, the court takes "all well-pleaded factual allegations as true." *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010). For its statement of facts, then, the court relies entirely on the Second Amended Complaint.

"As [P]laintiff was driving away," a GPD officer stepped out in front of his car and told him to stop. Docket No. 104 at ¶13. When Plaintiff stopped his car, the officer ("Officer One") told him that he could not take pictures. *Id.* Plaintiff said something like: "There is nothing wrong with taking pictures." *Id.* Officer One spoke with a second police officer ("Officer Two") who was present, and then demanded that the Plaintiff give him the cell phone. *Id.* Plaintiff refused. *Id.* Officer One again demanded the cell phone, and Plaintiff again refused. *Id.*

Plaintiff believes that Defendants Anciano and Artui are Officers One and Two, but he is not sure which was which. See Docket No. 103 at ¶¶13, 14.

Officer Two then approached Plaintiff's car and also demanded the cell phone. *See* Docket No. 103 at ¶14. Plaintiff said something like: "There's no law against taking pictures." *Id.* Officer Two again demanded the cell phone, and Plaintiff again refused. *Id.* Officer Two then ordered the Plaintiff out of his car. *Id.* Plaintiff said something like: "The only way I will get out is if I am under arrest." *Id.* Officer Two then told Plaintiff that he was under arrest, whereupon Plaintiff got out of his car. *Id.*

One of the GPD officers handcuffed Plaintiff and put him in a police car. *See* Docket No. 103 at ¶16. While in the police car, Plaintiff retrieved his cell phone and called his wife to tell her he had been arrested and to ask her to call his attorney. *Id.* At that point, either Officer One or Officer Two grabbed Plaintiff's cell phone and took it away. *Id.*

Plaintiff was driven to the Tumon police station, where he was incarcerated. *See* Docket No. 103 at ¶17. When Plaintiff's lawyer, Donald Calvo, arrived, a police sergeant demanded that Mr. Calvo delete the photos stored on Plaintiff's cell phone. *Id.* Mr. Calvo refused. *Id.* Plaintiff was then brought to a conference room, where a police sergeant informed Plaintiff that the accident had been a serious one, and that the photo-taking incident was also serious and that they were trying to figure out how to handle the case. *Id.* The police sergeant then held out Plaintiff's cell phone and demanded that he delete the pictures from it. *Id.* This led Plaintiff to believe that the "deal on the table" was that he could go free if he deleted the pictures. *Id.* Plaintiff refused. *Id.*

A little while later, another police officer took Plaintiff to the Hagåtña police station where he was booked, fingerprinted, and photographed. *See* Docket No. 103 at ¶18. Plaintiff was restrained and detained from about 4:30 PM to 8:30 PM. *Id*.

After his release, Plaintiff was given a notice to appear, which instructed him to appear in court on September 29, 2010. *See* Docket No. 103 at ¶20. In the notice to appear, Plaintiff learned that he was charged with (1) "obstructing governmental function," based on Section 55.45 of Title 9, Guam Code Annotated ("the Obstruction Statute"), and (2) "failure to comply," based on Section 3503(d) of Title 16, Guam Code Annotated ("the Compliance Statute"). *Id*. at ¶¶1, 20.

### (B) The "Prosecution Decline" Memorandum

The day after Plaintiff's arrest and detention—that is, on October 5, 2009—the Office of the Attorney General ("OAG") issued a "Prosecution Decline Memorandum" ("the Memorandum"), in which it explained that it would not prosecute Plaintiff on the charge for which he was arrested. *See* Docket No. 103 at ¶25; *see also id*., Exh. E (the Memorandum). The Memorandum was addressed to the "GPD Records Division." *Id*., Exh. E. It identified the potential charge as "Obstructing Government Functions," and stated that "[t]he arrest and detention of the suspect(s) served as sufficient sanctions in this case, as the seriousness of the offense [did] not warrant further legal action." *Id*., Exh. E.

### (C) The Public's Access to the Accident Scene

Plaintiff asserts that members of the general public were not excluded from the accident scene, nor from the road Plaintiff had been driving on. *See* Docket No. 103 at ¶15. Other vehicles were traveling in both directions along Carmen Memorial Drive. *Id*. Plaintiff also asserts that at least one other member of the general public had access to the accident scene, insofar as an anonymous "online viewer" posted two digital photographs of the accident scene on the website of local news station KUAM on October 4, 2009—the date of the accident and of Plaintiff's arrest and detention. *Id*. Plaintiff asserts, "[u]pon information and belief," that this "online viewer" was not stopped, detained, or arrested for taking photographs of the accident, nor did GPD officers seize his or her camera. *Id*.

### **(D)** **Plaintiff's Cell Phone**

At the Tumon police station, on the day of his arrest, Plaintiff signed the plastic "custody bag" in which GPD was to keep his phone. *See* Docket No. 103 at ¶19. In affixing his signature to the custody bag, Plaintiff had two witnesses: (1) his wife, and (2) a police officer who showed Plaintiff his cell phone. *Id*.

On March 10, 2010, Plaintiff went to the GPD Property Section at Tiyan to get his cell phone. *See* Docket No. 103 at ¶23. Defendant JOHN F. TAITANO returned the phone, along with a "GPD Evidence/Property Custody Receipt." *Id*. However, Plaintiff noticed that the custody bag was not the same one he had signed on October 4, 2009: his signature was missing. *Id*. Plaintiff told Defendant Taitano that the custody bag was different. *Id*.

Plaintiff also found that his cell phone would not turn on. *See* Docket No. 103 at ¶26. He sent the phone to Independent Technology Service, Inc. ("ITS"), a company specializing in data recovery. *Id*. ITS determined that the data on Plaintiff's cell phone were not recoverable, because (1) the phone had been exposed to water, (2) the phone had been completely erased, and/or (3) the digital memory card had been "blown" and rendered useless, perhaps by the application of electric current. *Id*. During the time that the cell phone was in Plaintiff's possession, it was not immersed in or exposed to any water, nor had it been erased, nor had electric current been applied to it. *Id*. at ¶28.

Studying the "GPD Evidence/Property Custody Receipt," Plaintiff saw that his cell phone was logged on the day of his arrest—October 4, 2009—at 4:48 PM by Defendant Artui. *See* Docket No. 103 at ¶24; *see also id*., Exh. D (copy of the evidence/property custody receipt). The next entry shows that the cell phone was logged in at 12:04 AM on October 4 [*sic*], 2009, again by Defendant Artui. *Id*. at ¶24. On October 5, 2009, the cell phone was logged in to an "evidence box," and later that same day was logged in to the "vault/bin." *Id*. Nothing further occurred until December 7, 2009—four days after this lawsuit was filed—when Defendant Taitano signed out the cell phone, at 3:05 PM, for "retrieval of evidence." *Id*. Defendant J. P. RODRIGUEZ also signed out the cell phone that same day, at 3:15 PM, for "evidence analysis." *Id*.

## (II) PROCEDURAL HISTORY

This case began on December 3, 2009, when Plaintiff filed his original complaint. *See* Docket No. 1. Plaintiff filed his First Amended Complaint ("FAC") on December 9, 2009. *See* Docket No. 9. On the basis of several challenges mounted by Defendants, the court dismissed parts of the FAC on August 24, 2010. *See* Docket No. 78.[2]

Plaintiff filed his Second Amended Complaint ("SAC") on November 24, 2011. *See* Docket No. 103. There are nine causes of action: (I) Violation of Civil Rights, per 42 U.S.C. § 1983, against Defendants Suba, Anciano, and Artui; (II) "Violation of Due Process of Law," against all Defendants; (III) "Violation of Free Speech," against all Defendants; (IV) "Violation of Right to Privacy and Unlawful Seizure," against all Defendants; (V) False Arrest and False Imprisonment, against Defendants Anciano and Artui; (VI) Assault and Battery, against Defendants Anciano and Artui; (VII) Violation of 10 G.C.A. § 77177 and Negligence, against Defendants Anciano, Artui, Taitano, and Rodriguez; (VIII) Theft of Property and Conversion, against Defendants Anciano, Artui, Taitano, Rodriguez, and Suba; and (IX) "Punitive Damages," against Defendants Anciano, Artui, Taitano, Rodriguez, and Suba. *See* Docket No. 103 at ¶¶39-87.

Defendants Anciano and Artui moved to dismiss the SAC on January 7, 2011. *See* Docket No. 116 ("the Motion"). Plaintiff opposed the Motion on February 4, 011. *See* Docket No. 141 ("the Opposition"). Defendants Anciano and Artui replied to the Opposition on February 18, 2011. *See* Docket No. 143 ("the Reply"). Finally, the court heard oral argument on the Motion on September 13, 2011. *See* Docket No. 161.

## (III) JURISDICTION AND VENUE

Jurisdiction is proper. Counts One through Four are within the court's federal question jurisdiction; all others are within the court's supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Venue is proper here, in the District of Guam, because all of the events or omissions complained of occurred here. *See* 28 U.S.C. § 1391(b)(2).

---

[2] The reasoning underlying this dismissal is relevant to the instant Motion, so the court discusses it further below, in the "DISCUSSION" section.

1  **(IV) APPLICABLE STANDARDS**

A pleading that states a claim for relief must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure enables a defendant to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

"[A] complaint may survive a [Rule 12(b)(6)] motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to 'state a claim to relief that is plausible on its face.'" *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009)).

Underlying that rule are two basic principles. "First, allegations in a complaint or counterclaim must be sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011). "Second, the allegations must be sufficiently plausible that it is not unfair to require the opposing party to be subjected to the expense of discovery." *Id*.

As for the meaning of the term "plausible," "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

This standard

> . . . is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief."

*Iqbal,* 129 S. Ct. at 1949. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. And this standard applies to "all civil actions"—"antitrust and discrimination suits alike." *Id*. at 1953.

## (V) DISCUSSION

Defendants are named in all nine counts of the SAC. They argue that each count should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

We must start by looking at the instant Motion in its "historical context." The nine counts of the SAC are the same as Counts I-VIII and XI of the FAC. *Compare* Docket No. 103 *with* Docket No. 9. When Defendants Anciano and Artui moved to dismiss those FAC counts on the basis of qualified immunity, the court rejected their challenge and upheld all counts, except for Count III, "Violation of Free Speech." *See* Docket No. 78 at 19:17-24.

The court thought that Defendants were entitled to qualified immunity on Count III, the Free Speech count, as pled, because it asserted violation of Plaintiff's right to take photographs at an accident scene, which right the court thought was not clearly established. *See* Docket No. 78 at 15:7-18:25. But all other counts survived the qualified immunity challenge, because they were grounded in factual allegations showing arrest and detention without probable cause, which circumstances will defeat a claim of qualified immunity because the right to be free of such arrest and detention is very clearly established and no reasonable police officer could make a mistake about that. *See* Docket No. 78 at 19 ¶4; *cf. McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984).

In deciding the Motion, then, the essential questions are (1) whether Plaintiff has recast his Free Speech claim so as to survive a qualified immunity challenge, and (2) whether he has preserved the factual allegations showing arrest and detention without probable cause.

### (A) Count I

Count I contends that, acting as they did, Defendants Anciano and Artui deprived Plaintiff of rights secured to him by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution, and that he has a remedy against them for these deprivations under Section 1983 of Title 42, United States Code. *See* Docket No. 103 at ¶¶39-45. Count I is really three distinct Section 1983 claims, then: one based on a First Amendment freedom-of-speech theory, one based on a Fourth Amendment unreasonable-search-and-seizure theory, and one based on a Fifth/Fourteenth Amendment due-process-of-law theory.

Seeing Count I in this way prompts the court to look ahead to Counts II, III, and IV, which deal in similar theories. Specifically: Count II is entitled "Violation of Due Process of Law," and cites the Fifth and Fourteenth Amendments; Count III is entitled "Violation of Free Speech," and cites the First Amendment; and Count IV is entitled "Violation of Right to Privacy and Unlawful Seizure," and cites the Fourth Amendment. *See* Docket No. 103 at ¶¶46-60.

"[A] plaintiff may not sue a state defendant [*i.e.*, a state actor] directly under the Constitution where [S]ection 1983 provides a remedy, even if that remedy is not available to the plaintiff." *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1382 (9th Cir. 1998). Rather, "a litigant complaining of a violation of a constitutional right must utilize [Section] 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). *See also* MARTIN A. SCHWARTZ & KATHRYN R. URBONYA, SECTION 1983 LITIGATION 8 (2d ed. 2008) ("[Section] 1983 provides the exclusive available federal remedy for violations of federal constitutional rights under color of state law. Thus, plaintiffs may not avoid the limitations of a [Section] 1983 claim for relief by asserting a claim directly under the Constitution.") (citing, *inter alia*, *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 735 (1989)).

When plaintiffs run afoul of that rule, courts generally re-frame the direct constitutional claims as Section 1983 claims. *See*, *e.g.*, *Gamboa v. King County*, 562 F. Supp. 2d 1288, 1296 (W.D. Wash. 2008) ("the Court construes each cause of action in which a federal constitutional right is asserted by Plaintiff as a cause of action under [Section] 1983"). *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). Plaintiff runs afoul of that rule in Counts II, III, and IV, so the court will construe those counts as Section 1983 claims.

With Counts II, III, and IV properly re-framed as Section 1983 claims, though, we have a problem. Count I—insofar as Defendants Anciano and Artui are concerned—does not assert anything or pursue any relief that is not asserted or pursued in Counts II, III, and IV. Thus, either Count I or Counts II, III, and IV must be dismissed as redundant. *See* FED. R. CIV. P. 12(f) (court may strike redundant matter from a pleading).

Although the decision is almost arbitrary, the court will dismiss Count I because it is less detailed than Counts II, III, and IV. This dismissal is **WITHOUT LEAVE TO AMEND**, because, in light of Counts II, III, and IV, there is no change that Plaintiff could make to Count I to make it non-redundant. Count I is simply the same legal claim as Counts II, III, and IV. For that reason, though, it should be seen that this dismissal does not affect Plaintiff's case in any way; it only streamlines his pleading. *See Rutledge v. County of Sonoma*, No. C 07-4274 CW, 2008 WL 2676578, at *3-5 (N.D. Cal. July 1, 2008) (dismissing with prejudice redundant Section 1983 claims "because they are inherently duplicative and Plaintiff faces no prejudice by their dismissal").

### (B) Count II

Count II contends that the Obstruction Statute and the Compliance Statute are void for vagueness. *See* Docket No. 103 at ¶¶46-49. This count bears three readings. On one reading, it asks the court to declare the statutes unconstitutional under the void-for-vagueness doctrine. On another reading, it asks the court to hold Defendants Anciano and Artui liable to Plaintiff for damages under Section 1983 because they violated his due process rights when they seized him on such vague statutes. On a third reading, it asks the court to hold Defendants Anciano and Artui liable to Plaintiff for damages under Section 1983 because they violated his due process rights when they seized, and ultimately destroyed, his cell phone without legal reason. Whatever the reading, the court must dismiss this count.

The problem with the first reading is that it has Plaintiff seeking a declaratory judgment that the Obstruction Statute and the Compliance Statute are unconstitutional. The court has already held that Plaintiff lacks standing to do this. *See* Docket No. 78 at 7:24-10:24. Plaintiff has offered no facts that would cause the court to reconsider its holding. In fact, by appending the Memorandum to the SAC, Plaintiff can only be said to have bolstered the factual basis for the court's holding that he cannot "demonstrate genuine threat that the allegedly unconstitutional law is about to be enforced against him." *Id*. at 10:5-6 (quoting *Stoianof v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)).

The problem with the second reading of Count II that it makes the claim about false arrest and wrongful detention. Under *Albright v. Oliver*, 510 U.S. 266 (1994), and *Graham v. Connor*, 490 U.S. 386 (1989), the Fourth Amendment, not the Due Process Clause, governs claims for false arrest and wrongful detention brought under Section 1983. The reason for this rule is that "[the Fourth Amendment's] balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 50 (1993) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975)). Moreover, where a constitutional amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior," it is that particular amendment, not the guarantee of due process, that "must be the guide for analyzing" the complaint. *Albright*, 510 U.S. at 273 (plurality opinion). Since the Fourth Amendment defines the "process that is due" for seizures of person or property in criminal cases, there is no need for—and perhaps no sense to—recourse to more generalized notions of "due process" in order to challenge any such seizure. On this reading, then, Count II fails to state a due process claim, and so must be dismissed. *See, e.g.*, *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998) ("Picray's due process claim was properly dismissed. The constitutionality of his arrest may only be challenged under Fourth Amendment standards."); *Larson v. Neimi*, 9 F.3d 1397, 1400-01 (9th Cir. 1993) ("Fourth Amendment standards must be used when a person asserts that a public official has illegally seized him.").

The problem with the third reading of Count III is that it makes the claim about deprivation of property. There is no Section 1983 due process claim for negligent or intentional deprivation of property, if the deprivation was "random and unauthorized" and state law provides a meaningful post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). A deprivation of property is "random and unauthorized" if contrary to law or established procedure. *See, e.g.*, *King v. Massarweh*, 782 F.2d 825, 826-27 (9th Cir. 1986).

Plaintiff's allegations involve a "random and unauthorized" deprivation of property, because he claims that his cell phone was seized and ultimately destroyed without legal reason. Guam law provides an adequate remedy for such deprivations. *See generally* G.C.A. T. 5, Div. 1, Ch. 6 ("Government Claims Act"). The availability of this adequate state post-deprivation remedy—*e.g.*, a state tort action—precludes constitutional relief because it provides adequate procedural due process. *See King*, 782 F.2d at 826. The third reading of Count II, then, is the sort of claim that is not cognizable under Section 1983.

Count II must therefore be dismissed. The dismissal is **WITHOUT LEAVE TO AMEND**, because (1) Plaintiff cannot show that he has standing to seek declaratory relief, (2) as a matter of law he must challenge his arrest and detention on Fourth Amendment grounds, not generalized due process grounds, and (3) his allegations of random and unauthorized deprivation of property cannot state a Section 1983 due process claim.

### **(C)** **Count III**

Count III contends that Defendants Anciano and Artui are liable to Plaintiff under Section 1983 because, in taking all the actions described above, they deprived him of his right to freedom of speech, as secured by the First Amendment. *See* Docket No. 103 at ¶¶50-57. Specifically, Count III contends that Defendants Anciano and Artui stopped Plaintiff only to get him to delete the pictures from his cell phone, and then arrested him only because of his repeated challenges to their authority. *See id*. Such circumstances would make Plaintiff's arrest an illegal retaliatory arrest and prior restraint. *See* Docket No. 141 at 15-22.

This count calls for some close reading. As stated above, the court thought that Defendants Anciano and Artui were entitled to qualified immunity on a prior iteration of Count III, as pled, because it asserted violation of Plaintiff's right to take photographs at an accident scene, which right the court thought was not clearly established. *See* Docket No. 78 at 15:7-18:25. The question now is whether Plaintiff has recast Count III in such a way as to assert violation of a clearly established right, so as to survive a qualified immunity challenge.

Criticism of police is not a crime, and arresting an individual in retaliation for such criticism constitutes a violation of First Amendment rights. *See Duran v. City of Douglas, Arizona*, 904 F.2d 1372, 1377-78 (9th Cir. 1990) (citing *Houston v. Hill*, 482 U.S. 451, 461-63 (1987)).

"To prevail on a [Section 1983] First Amendment retaliation claim, a plaintiff must show: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Buckheit v. Dennis*, 713 F. Supp. 2d 910, 921 (N.D. Cal. 2010) (quotation marks omitted) (citing, *inter alia*, *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999)).[3] *See also Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006) (same elements, in student speech context).

In arguing that the SAC fails to state a retaliatory arrest claim, Defendants do not discuss these elements. However, Defendants acknowledge that "[Plaintiff] alleges that '[Defendants] Anciano and Artui arrested plaintiff and threatened him with criminal prosecution in retaliation for his repeated challenges to his [*sic*] authority.'" Docket No. 116 at 11 (quoting the SAC). They also acknowledge "the generic legal truism 'that the right to verbally challenge police officers has been deemed clearly established by the Ninth Circuit.'" *Id*. (quoting *Acosta v. City of Costa Mesa*, No. SACV 06-0233 DOC (MLGx), 2008 WL 5103205, at *9 (C.D. Cal. Dec. 2, 2008)). As such, they implicitly admit that Plaintiff has adequately alleged the first element of his retaliatory arrest claim, that "he was engaged in constitutionally protected activity."

---

[3] Plaintiff thinks that he must also show "that the arrest lacked probable cause." Docket No. 141 at 12 n.10. While such a showing can be relevant, it is not a necessary element—though it is for a claim of retaliatory *prosecution*. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1232, 1234-35 (9th Cir. 2006).

Page 12 of 17

Defendants would also have to admit that Plaintiff has adequately alleged the second element of his retaliatory arrest claim, that he "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in that activity," because Plaintiff alleges that he was arrested and detained; by law this is an injury of the requisite dimension. *See*, *e.g.*, *Cwiak v. Scott*, Nos. CV 09-1858-PHX-MHM, CV 09-2686-PHX-MHM, 2010 WL 2743225, at *6 (D. Ariz. July 12, 2010) (arrest a qualifying injury); *Corser v. County of Merced*, No. 1:05-CV-00985 OWW DLB, 2009 WL 174144, at *22 (E.D. Cal. Jan. 26, 2009) (same). *Cf. Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) (plaintiff "may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives").

The real question, then, is whether the SAC adequately alleges the final element of his retaliatory arrest claim, "that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." The term "substantially motivated" goes to causation: a plaintiff must "ultimately prove that [the defendant's] desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006). Relevant evidence on this point is the presence or absence of probable cause. Though "not necessarily dispositive," the absence of probable cause is of "high probative force" in showing retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 265 (2006) (retaliatory prosecution case). If a plaintiff can show the absence of probable cause, "the claim of retaliation will have some vitality." *Id*. *See also Gullick v. Ott*, 517 F. Supp. 2d 1063, 1072 (W.D. Wis. 2007) ("[I]f an officer had probable cause for making an arrest, that tends to undermine an allegation that the arrest was fabricated, just as the absence of probable cause is strong evidence that the officer's true motive for the arrest was an illegal one.").

This element is adequately alleged, because the allegations show a lack of probable cause combined with other actions suggesting that a desire to cause the chilling effect was a but-for cause of Defendants' action. As to probable cause, the court previously held that the FAC alleged facts that, taken as true, showed that Defendants arrested and detained

Plaintiff without probable cause. *See* Docket No. 78 at 19:17-20; *cf*. Docket No. 63 at 9:15-11:16, 15:5-21. The SAC contains those same factual allegations. Thus, there is no reason for the court to change its view. In the SAC, Plaintiff has alleged facts that, taken as true, show that Defendants arrested and detained him without probable cause.

As to the desire to cause the chilling effect, the SAC clearly alleges that Defendants acted with this state of mind. *See* Docket No. 103 at ¶¶51-53. Moreover, these perhaps conclusory allegations are supported by factual allegations rendering them plausible. *See Iqbal,* 129 S. Ct. at 1950. Plaintiff's narrative shows that, after he was stopped and told that he could not take pictures, Plaintiff exercised his First Amendment right to challenge police conduct by insisting that there was "nothing wrong with taking pictures." Docket No. 103 at ¶13. The narrative then shows that the police officers immediately shifted into a punitive mode, demanding that Plaintiff surrender his cell phone to them for no discernible reason. *See id*. After they repeated this demand several times, with Plaintiff refusing each time and continuing to exercise his right to challenge their conduct, they arrested him. *See id*. at ¶14. On this narrative, it is easy to infer a retaliatory motive. Thus, it is plausible that such a motive was a but-for cause of Defendants' conduct. *See Iqbal*, 129 S. Ct. at 1949.

Defendants seem to argue that the SAC does not adequately allege this final causation element. Their theory is that the SAC affirmatively shows that any "adverse action" was "substantially motivated" by probable cause to arrest Plaintiff, not by any hostile reaction to Plaintiff's questions and challenges. Specifically, Defendants argue that the SAC clearly shows that Plaintiff had put himself in the way of GPD officers responding to the accident, such that they lawfully ordered him to leave (pursuant to the Obstruction Statute) and then, when he refused that order, lawfully arrested him because they had probable cause to believe—indeed, they *knew*—that he was violating the Obstruction Statute. *See* Docket No. 116 at 4-12.

This argument fails. As indicated above, at this stage in the proceedings it looks like Defendants lacked probable cause to arrest and detain Plaintiff. Defendants' argument to the contrary proceeds not from a mere difference of opinion but a legally proscribed reading of

the SAC. It is a commonplace that on a motion to dismiss, the facts must be construed in the light most favorable to the party opposing dismissal. *See*, *e.g.*, *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 1007 (9th Cir. 2010) (when its sufficiency is challenged, complaint must be viewed "in the light most favorable to the Plaintiffs"); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010) (*en banc*) ("We emphasize that this factual background is based only on the allegations of plaintiffs' complaint, which at this stage in the litigation we construe in the light most favorable to the plaintiff[s] . . . .").

Defendants violate this rule by reading the SAC as showing (1) that Plaintiff was "squarely *between* the police and the accident when he stopped to take his photos" (Docket No. 116 at 5 (emphasis in original)) and (2) that he was still parked and taking photos when Defendants "approach[ed] and [told] him to stop taking pictures, and to move on and away from the accident" (*id*. at 4). Neither reading is permissible.

As to the first point, the SAC does *not* say that Plaintiff was "squarely between the police and the accident." The SAC simply says that "Plaintiff pulled over to the right, off the road . . . ." Docket No. 103 at ¶12. While it may be *possible* to read that as saying that Plaintiff put himself "squarely between the police and the accident," another, more common-sense reading is that Plaintiff went past the police officers before pulling over to the right. That reading is more favorable to Plaintiff—as it does not have him doing something as unreasonable as putting himself between a car accident and the police on the scene—and so is the one the court must now subscribe to.

Similarly, as to the second point, the SAC does *not* say that Plaintiff was still parked and taking photos when Defendants approached him and told him to leave. The SAC actually says that, "[a]s [P]laintiff *was driving away*, a police officer stepped out in front of his car and *told [P]laintiff to stop*." Docket No. 103 at ¶13 (emphasis added). Defendants seem to willfully ignore this. Their reading of the SAC is quite unreasonable here.[4]

---

[4] Defendants take pains to argue that they engaged with Plaintiff "*before* he could obstruct governmental operations." Docket No. 116 at 8 (emphasis in original); *see also id*. at 7 (officers approached Plaintiff "to prevent him from obstructing oncoming traffic . . . , or from obstructing the police

Page 15 of 17

In sum, Count III is adequately alleged. It states a claim for retaliatory arrest, an unreasonable violation of a clearly established right, and so survives the Motion.

### (D) Counts IV-VIII

As indicated above, Counts IV-VIII of the SAC are the same as Counts IV-VIII of the FAC. *Compare* Docket No. 103 *with* Docket No. 9. On the motion to dismiss the FAC, the court sustained Counts IV-VIII, because they were grounded in factual allegations showing arrest and detention without probable cause. *See* Docket No. 78 at 19 ¶4. As indicated above, the SAC has preserved the factual allegations showing arrest and detention without probable cause, and Defendants' argument to the contrary is unreasonable. Thus, for the same reasons they were adequately alleged in the FAC, Counts IV-VIII are adequately alleged in the SAC.

### (E) Count IX

Count IX simply contends that Plaintiff is entitled to punitive damages. *See* Docket No. 103 at ¶¶86-87. "A request for punitive damages is not a separate cause of action and can only be awarded based on a finding of liability for an underlying claim." *Nat'l Union Fire Ins, Co. of Pittsburgh, Pa. v. Guam Housing and Urban Renewal Auth.*, 2003 Guam 19, ¶50. *See also* 1 PUNITIVE DAMAGES: LAW AND PRACTICE 2d § 6:16 ("Punitive damages are not awarded as an independent theory of recovery."); 22 AM. JUR. 2D *Damages* § 551 ("[T]here is no cause of action for punitive damages by itself; a punitive-damages claim is not a separate or independent cause of action. Rather, a punitive-damages award is an element of recovery, a type of relief, or an additional remedy.") (footnotes omitted).

Thus, Count IX must be dismissed. The dismissal is **WITHOUT LEAVE TO AMEND**, because Count IX simply is not a cause of action. However, this should not affect Plaintiff's case. Should he prove any substantive claim at trial, he might also be able to

---

officers' view and access to the crash site"), 9 (officers enforcing Obstruction Statute need not wait until "conduct actually 'obstructs, impairs or perverts the administration of law,'" implying that Plaintiff's conduct had not yet done so). If we try to fit the factual allegations of the SAC to Defendants' version of the story, we have Plaintiff driving *away from the scene*, but then being stopped by police officers and told to move on—*i.e.*, to drive away from the scene—so he would not obstruct traffic or governmental operations. This makes no sense whatsoever.

prove "oppression, fraud, or malice, express or implied," which would allow him to recover punitive damages in addition to compensatory damages. *See* 20 G.C.A. § 2120.

**(VI) CONCLUSION**

For the reasons stated above, the court hereby **GRANTS** the Motion as to **Counts I, II, and IX**, and **DISMISSES** those counts **WITHOUT LEAVE TO AMEND**. The court hereby **DENIES** the Motion as to **Counts III, IV, V, VI, VII,** and **VIII**. Plaintiff shall file his Third Amended Complaint by October 24, 2011, if at all.



**/s/ Frances M. Tydingco-Gatewood**
 **Chief Judge**
**Dated: Sep 22, 2011**